UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————————x

ELIZABETH "BETSY" COMBIER,

                      Plaintiff,

   -against-

FRANCESCO PORTELOS, LUCIO CELLI,
BRYAN GLASS, ESQ., JORDAN HARLOW, ESQ.,
NEW YORK CITY DEPARTMENT OF EDUCATION,
CARMEN FARINA, CHANCELLOR OF THE
NEW YORK CITY DEPARTMENT OF EDUCATION,
all sued individually and officially,

                   Defendants

————————————————————————x

DOCKET NO.:

COMPLAINT

**JURY TRIAL DEMANDED**

       PLAINTIFF, ELIZABETH "BETSY" COMBIER, by her Attorneys the Luthmann Law Firm PLLC, AS AND FOR HER Complaint against Defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

       1.This is a civil action seeking injunctive relief, monetary relief,  including past and on-going economic loss, compensatory and punitive damages, costs and fees for violations of Constitutionally protected rights brought pursuant to:  the First, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution; 42 U.S.C §1983, 28 U.S.C. § 1331, §1343, §1367, Article I, § 8, §11 of the New York State Constitution; State law claims codified in the New York State Constitution as well as in the New York Civil Practice Law and Rules ("CPLR") as they relate to:  support for freedom of speech and assembly; freedom from malice in law, from abuse of process and malicious prosecution, from defamation, from the tortious interference with business expectations and from the intentional infliction of emotional harm.

1

2. Specifically, Plaintiff alleges that the individual Defendants, with flagrant disregard for Plaintiff's Constitutionally protected rights, wantonly, recklessly, maliciously, knowingly and purposefully, with malice, acting *ultra vires* individually under a ministerial cloak and in conspiracy with each other under color of state law, have deprived Plaintiff of her protected rights by pursuing internet posters, statements and letters on social media in order to deny Plaintiff her right to earn money as an advocate for educators working for the Department of Education in favor of their personal gain.

3. Plaintiff seeks economic and compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal, state and city laws.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to the Fourth and Fourteenth Amendment to the Constitution, 42 U.S.C §1983, 18 U.S. Code § 241 - Conspiracy against rights, 18 U.S. Code § 242 - Deprivation of rights under color of law, 28 U.S.C. § 1331, as this case involves at least one federal question.

5. Venue is appropriate, citing 28 U.S. Code § 1391 because the primary unlawful conduct occurred from the home and person of Defendant Francesco Portelos, who lives and runs his real estate company from Staten Island, County of Richmond.

6. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

7. This Court has pendent jurisdiction and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

8. Plaintiff previously served and filed a Notice of Claim on Defendants the New

York City Department of Education, Defendant Francesco Portelos, and Defendant Lucio Celli regarding her state and city law claims which has not yet been adjusted or responded to. Claim No. 2016P1012684.

## PARTIES

9. At all times relevant in this Complaint, Plaintiff ("Plaintiff") ELIZABETH "BETSY" COMBIER is an advocate and reporter residing in Manhattan, New York City. At all times relevant hereto Plaintiff is a consultant/reporter to newspapers, online newsmagazines and international groups, individuals and organizations interested in corruption, fraud, and illegal actions of public and private individuals and courts. She is also Editor of a website that publishes stories of court corruption, and Editor of blogs that deal with these issues as well as Federal and State Whistleblower Protection. From August 2007-July 2010 Plaintiff was a part-time consultant/advocate for the United Federation of Teachers in New York City, whose responsibility it was to manage the cases of UFT members in the rubber rooms throughout New York City. Currently Plaintiff is self-employed as a paralegal/writer for several attorneys in the New York City area.

10. At all times relevant herein, Defendant Francesco Portelos ("Portelos") was and is a public employee of Defendant the New York City Department of Education. Portelos is a former environmental engineer/inspector turned science and technology teacher at the New York City Department of Education. While working at IS 49, he noticed several acts of the Assistant Principal which looked to him like abuse of students. He secretly videotaped several incidents, against the Department policies of videotaping students without their consent. Then, elected to the School Leadership Team, he confronted Principal Linda Hill for hiding money and them for misuse of her p-card. He

spoke out about Hill's harm to the kids and school, and was removed and charged with 3020-a arbitration in 2013. He was found guilty of harassment, ignoring privacy laws for internet access, and using his computer skills for nefarious purposes in April 2014. His punishment was a fine of $10,000. As an employee of the Department of Education, Defendant Portelos is under the supervision and control of the Department and yet has remained immune for any prosecution for his violation of Department guidelines of decency, respect, and privacy. At all times relevant to this Complaint Defendant Portelos was and remains, an employee of the NYC Department of Education, and as such, was, and is, under the Supervision of the Department and it's rules, regulations and policies.

11. Defendant Lucio Celli ("Celli") is a teacher with the Department of Education. He met Plaintiff in 2007 while he was reassigned to the Bronx rubber room, and Plaintiff worked for the United Federation of Teachers, or UFT as the Special Representative for the rubber room teachers. He joined the Francesco Portelos group UFT Solidarity when Francesco Portelos decided to run for UFT President, and followed all the directives of Defendant Portelos, including defaming Plaintiff and creating a national profile of Plaintiff as a thief, evil fucking cunt, vicious old woman and the like, with the goal of ending Plaintiff's business. He used his Department email address, during the school day as well as before and after official hours to do his dirty business to please Portelos. As an employee of the Department of Education, Defendant Celli is under the supervision and control of the Department and yet has remained immune for any prosecution for his violation of Department guidelines of decency, respect, and privacy. At all times relevant to this Complaint Defendant Celli was and remains, an employee of the NYC Department

of Education, and as such, was, and is, under the Supervision of the Department and it's rules, regulations and policies.

12. Attorney Bryan Glass ("Glass") is a lawyer who in 2012 asked Plaintiff, whom he knew as a well-known advocate for teachers, to assist him at 3020-a arbitration hearings and to train his Associate Defendant Jordan Harlow in how to do these hearings. Glass was hired by Portelos in 2012 to file a Federal Lawsuit against the Department and Portelos' Principal at IS 49, Linda Hill. The case went to a jury and Portelos lost, but Glass has Appealed to the Court of Appeals and remains Portelos' Attorney.

13. Plaintiff gave Glass/Harlow five (5) cases to try in 2012-2014, and worked on these cases as Harlow's paralegal. The first three clients were terminated due to his incompetence. Client #4, B.K., was called into Defendant's office in or about February 2014 and told by Defendant Glass and Defendant Harlow to resign, but not to tell Plaintiff. She did tell Plaintiff, who was shocked. Plaintiff was never paid for her work on this case. Glass and Harlow then told client #5 to resign or take a deal, and he did take a very long suspension and became an ATR. Defendants Glass and Harlow told K.C. not to tell Plaintiff. He did, in December 2014. Defendants told K.C., that Plaintiff was acting as if she knew what she was doing, but did not, they said. Plaintiff was never paid for her work on that case. Defendant Glass allowed Defendant Portelos to create the campaign of defamation, libel, and injurious falsehoods contained in the poster received by Plaintiff October 11, 2016. Defendants Glass, Harlow, Portelos and Celli wanted to remove Plaintiff from the very small group of teacher advocates in New York City and take all the work for themselves.

14. Defendant Jordan Harlow ("Harlow") is the Associate who works on 3020-a arbitration for the Glass Krakower Law Firm. In 2013-2014 he worked with Plaintiff on 3020-a hearings, but spoke badly about her behind her back. In May, 2016, Defendant Harlow saw one of the 3020-a clients of Glass Krakower talking with Plaintiff in the waiting room of 100 Gold Street, where hearings take place. The client was asking Plaintiff to help her and to help Harlow, who, she felt, was not defending her properly.

15. Plaintiff was on another case with another attorney and could not take the case, so she turned the offer down. Immediately after, according to V.B., Harlow told his client never to speak with Plaintiff, that everyone Plaintiff assisted was terminated, and Plaintiff was not an Attorney and did not know what she was talking about. On or about June 9, 2016, V.B. was so unhappy with Harlow's work that she fired him, and he threw all of her papers at her face and stormed out. Defendant Harlow is under the supervision of Defendant Glass, and works with Defendant Portelos in the attacks on Plaintiff described herein.

16. At all times relevant in this Complaint, Defendant New York City Department of Education ("Department") is currently and was an employer within the meaning of the Constitution of the State of New York and was a governmental entity acting under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York. As such, the Department is liable for the defamatory injury to reputation of Plaintiff, being subjected to injurious falsehoods, libel, defamation, the tortious interference with business expectations, and the intentional infliction of emotional harm.

6

17. Plaintiff filed a Notice of Claim, Claim number 2016-P1012684 against Defendants for the ongoing harm done to her by the Department, Portelos and Harlow. Plaintiff never received any response.

18. PLAINTIFF is informed and believes and based thereon alleges that, at all times mentioned, Defendants, in doing the things herein mentioned, were acting within the scope of their authority as agents and employees with the permission and consent of the law firm of Glass Krakower and the New York City Department of Education.

10. PLAINTIFF is informed and believes and based thereon alleges that, at all times mentioned, Defendants, in doing the things herein mentioned, formed a partnership to work together in engaging in the wrongful conduct directed towards PLAINTIFF, which wrongful acts caused resulting damage to PLAINTIFF, as further alleged herein.

## STATEMENT OF FACTS

19. Plaintiff alleges that the individual Defendants set up a conspiracy to deny Plaintiff her right to earn money as a non-lawyer advocate by characterizing her and creating a poster of her sent out to all teachers around the country but particularly in New York City and Los Angeles as a greedy, controlling thief and an "evil, fucking cunt" ready and willing to steal the money from her clients without doing any work. The goal was to defame PLAINTIFF to such an extent that Defendants Bryan Glass and his Law Associate Jordan Harlow could benefit financially and take on all of Plaintiff's Arbitration cases and other complaints of Educators. Individual Defendants wanted Plaintiff to stop her advocacy business and work without payment or, not work at all with educators who would be harmed by Plaintiff's fraudulent so-called "help". In 2014 Plaintiff assisted in the 3020-

a of another teacher, L.B., who had originally asked for help from Defendants Glass and Harlow. L.B. was told to hire a former principal, Virginia Noville, to help her, by Defendant Glass. Noville charged L.B. huge prices to do the rebuttals and binder, then L.B. looked up Ms. Noville and found out that she, Noville, had been arrested in 1993 for fraud, and resigned. When, in 2014, Plaintiff asked Defendant Glass why he worked with Noville, he never spoke with Plaintiff again.

20. Specifically, the plan created by DEFENDANT Portelos worked as follows with his Assistant, DEFENDANT Celli: Plan A was to stop Plaintiff's business and prevent her from making any income as follows: a teacher would ask PLAINTIFF for help writing a letter, or edit a complaint or whatever, knowing that PLAINTIFF would willingly help anyone for free. Immediately following the completion of her help in the writing phase, the Portelos strategy was for the person who received the help to send Plaintiff a check, for any amount, as payment for her help, despite the fact that Plaintiff asked no payment and did not send any invoice. Then, the person would say that Plaintiff was told that she must return the check given as payment for work never done. When Plaintiff did not return the check, considering the money given as a gift for the services she provided, Plaintiff was labelled a thief, and a liar. Plan B: knowing that Plaintiff was a very successful paralegal for attorneys who work on 3020-a arbitration for teachers, individual Defendants decided to broadcast a "fact" that they made up, namely that Plaintiff was practicing law without a license and must be criminally prosecuted for working at the table in 3020-a cases, an absolute falsehood. The individual Defendants encouraged anyone around the United States to extort money from Plaintiff citing a "pending prosecution" if she did not pay up, or do whatever favors requested for working on 3020-a arbitration.

21. Portelos, after receiving his fine, decided to confront the Department head on, with his social media expertise and disregard the warning given by Arbitrator Busto. He created a website called Don't Tread on Educators, and Administrators In Need of Improvement, where any anonymous tip about the misconduct of a principal was placed on the website. Truth did not matter. Arbitrator Busto, in her 3020-a decision in his case, wrote that: "Despite the provocative nature of his postings and airing of his disciplinary process, there has been no showing that the notoriety regarding his charges or reassignment "seriously compromised his ability to retain the respect of students and to be perceived as a responsible adult to whom they should pay attention." See Matter of Goldin v. Board of Ed. 45 A.D.2d 870 (1974)" and added, "At the same time, Respondent, in his quest to defend himself, lost sight of the fact that the Department is his employer, and not his enemy. Notwithstanding the events of the last two years, Respondent must refocus his energies on their shared mission of educating children". Busto fined Portelos $10,000 instead of terminating his employment. Then Defendant Portelos enlarged his attacks on his employer and. He sent emails out during the school day to attack the Department and the UFT and then made a quest for UFT President, to replace Michael Mulgrew. He failed, but put in place a defamation scheme against Plaintiff which made her an enemy of the State and a fraud, liar and criminal in retaliation for her being what he always wanted to be.

22. On or about August 25, 2015, Portelos had lunch with former UFT President Randi Weingarten. He asked for a job at the UFT and was turned down.

23. Portelos knew that Plaintiff had worked for the UFT under Randi Weingarten and the Michael Mulgrew, and had done a good job. Furious at not being able to have the

same good fortune, Portelos decided to attack Plaintiff in order to tell Randi Weingarten he did not like the fact that she refused to hire him as he told his friends and followers was a sure thing.

24. On September 20, 2015, Portelos held a meeting of disgruntled UFT members – potential clients for Plaintiff – and invited Jim Callahan, a former reporter for the UFT who worked with Plaintiff on the rubber rooms. Callahan was a problem both for the Plaintiff and the UFT during the time that Plaintiff worked at the UFT. He insisted that no one should visit the rubber rooms because everyone was guilty, and they should just be put into their hearings and terminated. He resented Plaintiff's position and the fact that she visited all the rubber rooms every day, actually helping the people sitting there figure out what was going on. Portelos videotaped Callahan's talk.

25. A few days later, Celli called Plaintiff and told her that he was sending the video to her, and she was not going to like it because Portelos must have made a mistake, and edited the tape so that Callahan accused Plaintiff of being a homophobe. Celli is a gay man and knew that Plaintiff was no homophobe. Upon reviewing the tape of the meeting, Plaintiff saw that Portelos had deliberately made the video into a damaging and defamatory statement about Plaintiff as a person and as an advocate for teachers. Plaintiff called Portelos and asked him why he did that, and he must take the video down off the internet. Portelos told Plaintiff to leave him alone, Callahan's speech was about the UFT, not her.

26. Portelos then put in place his scheme to deny Plaintiff her business and her advocacy work. He and Celli sent emails out to all who would listen, on his Facebook page, his website, and other social media from November 2015 until the present, saying:

"…you stopped helping me directly with my lawsuit. But, you continued to help me in PERB. You know me, I don't really think when I'm upset……(Celli, November 9, 2015).

Where is my money? You took and did not render services. I have many damaging recordings…" (Celli, December 30, 2015)

"We need to teach Betsy a lesson now….(Celli, January, 2016);

"Yeah, this won't go well…With every UFT member and parent who asks me "What about Betsy?" and I respond "There are better people to use than Betsy." I have some solace knowing that's money out of her pocket. A lot of money." (Portelos, January 20, 2016).

27. Laurie Luft, a close friend of Plaintiff, came under attack on January 24, 2016, after she defended Plaintiff. Portelos, in retaliation, revealed that she was on a medical sabbatical to restore her health to all on Laurie's ATR Support Facebook page members. Then he sent this email out:

"Many are reporting the ill politics in Laurie's group. It's more about Laurie than it is about ATR issues. Good job Betsy. How's business?" (Portelos, January 24, 2016)

28. Celli, on February 27, 2016 stated:

"YOU, Betsy Combier, are an evil cunt……I am glad I recorded you being a liar and a wretched human being."

29. To Laurie Luft, Francesco Portelos, Randi Weingarten, Attorney Steve Morelli, Jonathan Hinesley, Claudia Giordano and Lydia Howrilka:

"Betsy threatened my lawsuit….You are only a chip in Betsy's evil plan……you got my email from evil Combier to harass me…I only called Betsy evil and sick…"

30. In March 2016 Celli sent emails to a mass group, including Preet Bharara, Cy Vance, the Bronx DA, PERB, all the newspaper reporters, everyone who works at the UFT and the Department of Education, saying:

"Ms. Combier told me the story of how she was hired at the UFT – not a plausible story to me. Most interesting fact told by Ms. Combier, the UFT made backdoor phone calls to agencies, like PERB, while she worked for the Union – ex parte conversions…..Ms. Combier is working with my lawyer and helped my lawyer to lie to me…..Ms. Combier informed me that she records conversations as well – she attends many 3020-a hearings. Somehow or someway we have to force the truth out." (Celli, March 16, 2016, from his Department email address "Celli Lucio (08X519)"LCelli@schools.nyc.gov).

These emails created a very difficult time for Plaintiff at 3020-a hearings, where arbitrators were informed that she taped secretly, which is absolutely untrue. Plaintiff has never taped anyone secretly at any hearing, anywhere. Plaintiff also never said anything about backdoor calls to PERB. Celli knew that his statements were lies.

31. On October 11, 2016 Plaintiff was sent a poster created by DEFENDANT Portelos via email from former client James Geist, a client also of Bryan Glass and Jordan Harlow, with whom Plaintiff worked on Geist's 3020-a Arbitration. This poster is available online at: www.tinyurl/BetsyCombier, and https://docs.google.com/forms/d/e/1FAIpQLSf_1coyF9VLCV3i5HLZFVYk25kWHTreGtc 0aDCKyrV71nGA4w/viewform.

32. Geist, in a prior email also in October 2016, said in an email sent to the listserv group founded by Defendant Portelos, accused Plaintiff of being the person who got him

terminated from his job at the NYC Department of Education, and sent this fake news out to all the educators on the Portelos listserv, to become a player in the Portelos scheme. Geist paid Harlow and Glass to do his 3020-a and Appeal of his termination, which he lost in the Supreme Court. Glass and Harlow posted the decision of Arbitrator Marc Winters in their Exhibits, with Geist's social security number. Plaintiff put the decision of Geist on her website without the social security number, mindful of identity thieves who might harm Geist. Suddenly, on October 11, 2016, Geist sent Plaintiff the above mentioned poster, which was created by Defendant Portelos, and showed Plaintiff's face from the TV Show "Lawline", which Bryan Glass had suggested she be on camera with him, and the title "Have You Ever Paid For Legal Advice/Work To Betsy Combier?"  And, if so, then you must get your money back because Combier is a thief and a pretender. The date of creation of this poster is unknown. Geist threatened Plaintiff with criminal charges if she did not take down the post on her website Parentadvocates.org, and Geist told her that he would join "the others" in this lawsuit. Plaintiff told Geist that his social security number was in the Court papers filed by Defendant Harlow or Defendant Glass, not on her website. The error was Defendants Glass and Harlow's mistake, not Plaintiff's.

33. On October 19, 2016, Portelos sent out an email across the country stating:

"Friends and Colleagues, please be careful. Unfortunately, so called advocate Betsy Combier lost another case where she allegedly provided illegal legal consultation for a New York City UFT member in a 3020-a hearing, something she does not share on her site. Just be vigilant.

34. Apparently, others have been warning about this for some time. and if you have been burned, join the others in the complaint. We have enough trouble with our employer

and union. We don't need another obstacle when it comes to surviving. www.tinyurl.comBetsyCombier"

Portelos attached the poster saying that Plaintiff stole money.

But that's not all. Portelos also attached a blogspot called nycrubberroomreportercom.blogspot.com, saying:

"Has Elizabeth Betsy Combier lost her attempt to grab money from a New York City Church? It seems that Judge O. Peter Sherwood has seen through....."

Which refers to the theft by Plaintiff's church, Madison Avenue Presbyterian, of the estate and ashes of Plaintiff's mother after the death of her mother on March 15 1998. Plaintiff tried to get the estate back, and suffered heart failure on July 22, 2006.

35. This allusion to her stealing from her church – in addition to her stealing from all her clients, was extremely upsetting to Plaintiff who in January was hospitalized and had cancer surgery.

36. This blog was never created or worked on by Plaintiff, but Portelos posted articles from Plaintiff's blog NYC Rubber Room Reporter, altered these posts with his own material, and then put as the owner of the blog Plaintiff's Foundation, the E-Accountability Foundation, with her home address and telephone number. Plaintiff cannot do anything about this blog as she is not an administrator, and does not know Word press. In March 2017 Plaintiff was threatened with a federal lawsuit if she did not remove a picture on this blog. The photographer claimed that Plaintiff owed him money for posting the photo, but Plaintiff did not do that.

37. Celli filed a Federal Lawsuit against several Department employees, and attacked Plaintiff, begging Judge Cogan to attack her as well (15-cv-3679 (BMC)(LB)). In

document 56 filed December 29, 2016 Celli claimed that Plaintiff and Randi Weingarten pulled in favors to prevent Celli from winning in Court, that Plaintiff practiced law by assisting Celli with his Complaint (which is untrue, Plaintiff did not assist Celli with his Complaint), and, in other documents, that Plaintiff was a "lowlife".

38. Defendants Portelos and Celli are teachers at the New York City Department of Education. One of the policies of the Department is that no employee can send out emails during the school day using their DOE email and/or the DOE computers unless under unusual circumstances. Yet the New York City Department of Education has ignored the extremely inappropriate mass emails from Francesco Portelos and Lucio Celli. Thus, the NYC DOE allows Defendants Portelos and Celli to defame, libel, and scar Plaintiff without any repercussions and is complicit in the schemes described herein. This is a pattern and practice for Defendants Portelos and Celli, who send out emails which are racist, degrading and insulting, without any facts upon which to base their claims.

39. Plaintiff's invocation of the equitable powers of this Court is just and proper based upon a pattern, practice, custom and policy of bad faith, harassment, defamation and unlawful use of the internet to further a corrupt scheme created and pursued by Defendants against Plaintiff's person and property.

### FIRST CAUSE OF ACTION
Violations of 42 U.S.C. 1983
(As against all Defendants)

40. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 39 of this complaint, inclusive, and incorporates the same by reference, as though fully set forth herein.

41. In abusing their official and individual duties as role models for students at the

Department on how to use social media and have respectful exchanges on the internet, as described above, Defendants Celli and Portelos acted under color of state law in their continuous harassment of Plaintiff via websites, blogs, facebook pages, Portelos' TWITTER account, and emails under their control.

42. Defendants the Department, Glass and Harlow knew about the harassment and defamation, yet did nothing to stop either Portelos or Celli's harassment of Plaintiff and thus allowed the defamation of Plaintiff for actions they knew she did not perform, all to end Plaintiff's advocacy work in favor of Portelos, Glass, and Harlow working as "true" advocates.

43. As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, lost earnings, and other pecuniary loss.

44. Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, defendants (a) acted with the intent to injure, vex, annoy and harass Plaintiff, (b) subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and (c) intentionally misrepresented and concealed material facts known to the defendants with the intention on the part of the defendants of thereby depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury. As a result of the foregoing, plaintiff is entitled to exemplary and punitive damages against Defendants.

## SECOND CAUSE OF ACTION
False Light Invasion of Privacy
(As Against All Defendants)

45. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 44 inclusive, of this Complaint and incorporates the same by reference, as though

16

fully set forth herein.

46. Defendant's partnership of harm declaring, without any fact or truth, that Plaintiff was a thief and undeserving of helping any teacher, anywhere, as well as supposedly "stealing" from her church, was highly offensive and objectionable, judged by a reasonable person standard.

47. By consistently and relentlessly painting Plaintiff as a liar, as dishonest, and as self-absorbed, Defendants purposefully and with malice placed Plaintiff in a highly offensive false light.

48. Defendants intended to paint PLAINTIFF as the perpetrator of fraudulent allegations to gain money and prestige at Plaintiff's expense.

49. As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, expense incurred in defense and her work, lost earnings, and other pecuniary loss.

50. Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, defendants (a) acted with the intent to injure, vex, annoy and harass plaintiff, (b) subjected plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and acted with malice, (c) intentionally misrepresented and concealed material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury.

51. As a result of the foregoing, Plaintiff is entitled to exemplary and punitive damages against Defendants.

## THIRD CAUSE OF ACTION
Defamation
(As Against All Defendants)

52. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 51, inclusive, of this Complaint and incorporates the same by reference, as though fully set forth herein.

53. The tweets, emails, website posts and blog posts about Plaintiff, read by an audience numbering in the thousands, were deliberately, maliciously and knowingly false and defamatory, and had a natural tendency to injure the Plaintiff's reputation. Plaintiff is informed and believes and based thereon alleges that even though Plaintiff is not a "public official" (and thus a showing of "actual malice" is not required by the first Amendment), Defendants Portelos and Celli did make the statements mentioned herein either knowing they were false or in reckless disregard of the truth and with actual malice, hatred and ill will.

54. As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, expense incurred in defense of her actual performance as an advocate, lost earnings, and other pecuniary loss.

55. Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, Defendants (a) acted with the intent to injure, vex, annoy and harass plaintiff, (b) subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, and (c) intentionally misrepresented and concealed material facts known to the Defendants with the intention on the part of the Defendants of thereby

depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury. As a result of the foregoing, Plaintiff is entitled to exemplary and punitive damages against Defendants.

### FOURTH CAUSE OF ACTION
Intentional infliction of Emotional Distress
(As Against All Defendants)

56. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 55, inclusive, of this complaint and incorporates the same by reference, as though fully set forth herein.

57. Defendants' intentional and/or reckless campaign of defamatory harassment against Plaintiff and intentional and/or reckless disregard for the truth or facts were beyond the bounds of decency and is therefore extreme and outrageous conduct.

58. As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, expense incurred in defense and repair of her credit rating, lost earnings, and other pecuniary loss.

59. Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, defendants (a) acted with the intent to injure, vex, annoy and harass Plaintiff, (b) subjected plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and (c) intentionally misrepresented and concealed material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury. As a result of the foregoing, Plaintiff is entitled to exemplary and punitive damages against defendants.

## FIFTH CAUSE OF ACTION
### Negligent Supervision
(As Against Glass, Department)

60. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 59, inclusive, of this complaint and incorporates the same by reference, as though fully set forth herein.

61. Plaintiff informed and believes and based thereon alleges that Defendants the Department and Glass did not exercise their supervisory authority over Portelos, Celli and Harlow while engaged in the course and scope of their employment during business hours and after.

62. Defendants Department and Glass were deliberately negligent in their supervision in order to gain financially from the actions of Harlow, Portelos and Celli.

63. Thus liability for each and every cause of action listed herein may be imposed Defendants Glass and the Department under the doctrine of respondeat superior.

64. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including harm to Plaintiff's business and reputation, emotional distress, lost earnings, and pecuniary loss.

## SIXTH CAUSE OF ACTION
### Violation/Interference with Constitutionally Protected
Rights 42 U.S.C §1983 et seq.

65. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 64, inclusive, of this complaint and incorporates the same by reference, as though fully set forth herein.

66. Defendants' infringement upon and violation of Plaintiff's rights protected under the statutes listed above was and is intended to harm Plaintiff as an advocate for teachers, and to place a chilling effect upon the exercise of such rights by Plaintiff.

67. Defendants' conduct and actions are intentional, malicious, taken with deliberate indifference and or reckless disregard for the natural and probable consequences.

68. Defendants Glass and Department failed to intervene, prevent, or correct the conduct and actions that deprived Plaintiff of her Constitutional rights.

69. As a direct result of Defendants actions described herein, Plaintiff has suffered and continues to suffer trauma, emotional distress, mental anguish, loss of income, and loss of her health.

70. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages.

### SEVENTH CAUSE OF ACTION
42 U.S.C. §1983 – STATE AND MUNICIPAL VIOLATIONS;
Deprivation of Rights Under Color of Law

71. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 70, inclusive, of this complaint and incorporates the same by reference, as though fully set forth herein.

72. It can be said that to condone lies, false documentation, and the acts cited herein is contrary to Municipal Law and Public Officers Law.

73. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well

as damages for mental anguish and is entitled to damages sustained to date and continuing in an amount to be determined at trial as well as punitive damages and costs.

### EIGHTH CAUSE OF ACTION
Injurious Falsehood, Libel, Defamatory Injury to Reputation,
Tortious Interference With Business Prospects

74. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 73, inclusive, of this complaint and incorporates the same by reference, as though fully set forth herein.

75. Defendants deliberately and with malice created a scheme where Plaintiff became the enemy of teachers in order for Defendants to stop Plaintiff from working as an advocate.

76. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in an amount to be determined at trial as well as punitive damages and costs.

### DEMAND FOR JURY TRIAL
PLAINTIFF hereby demands a jury trial for all causes of action and issues which may be determined by jury under federal and/or New York State law.

### PRAYER FOR RELIEF
**WHEREFORE**, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, on each and every cause of action as follows:

1. For general damages according to proof at trial by a jury.

2. Special damages according to proof at trial;

3. Award of exemplary damages;

4. Punitive damages;

5.      Declaratory relief;

6.      Directing Defendants to pay attorney's fees, compensatory damages, penalties, interest, costs; and,

7.      For such other and further relief as the Court deems just and proper.


Dated: April 12, 2017


Respectfully submitted,

**LUTHMANN LAW FIRM, PLLC**

By: _____
RICHARD A. LUTHMANN, ESQ.
1811 Victory Blvd.
Staten Island, NY 10314
Tel:  (718) 447-0003
Fax:  (347) 252-0254
LuthmannFirm@gmail.com