UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

ELIZABETH "BETSY" COMBIER,

                       Plaintiff             DOCKET NO. 17-cv-02239 (FB)(RLM)

     -against-                        AMENDED COMPLAINT

FRANCESCO PORTELOS, LUCIO CELLI,
BRYAN GLASS, ESQ., JORDAN          **JURY TRIAL DEMANDED**
HARLOW, ESQ., NEW YORK CITY
DEPARTMENT OF EDUCATION,
CARMEN FARINA, CHANCELLOR
OF THE NEW YORK CITY DEPARTMENT OF
EDUCATION, all sued individually and officially,

                Defendants

_____x

     **PLAINTIFF** ELIZABETH "BETSY" COMBIER, by her Attorneys the Luthmann Law

Firm PLLC, as and for her Complaint against Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

     1. This is a civil action seeking injunctive relief, monetary relief, including past

and on-going economic loss, compensatory and punitive damages, costs and fees for

violations of Constitutionally protected rights after Defendants deliberately lied about

Plaintiff and then encouraged the defamation, libel per se, harassment and extortion of

Plaintiff by creating a poster mounted on the internet with Plaintiff's face, saying that she

was a criminal, thief and liar, and that she was about to be prosecuted for her crimes.

     2. Defendants' libel per se and tortious interference with business and

commerce is based upon a scheme which involved hacking into Plaintiff's protected

computer used in and affecting interstate commerce, then deliberately and maliciously

without authorization altering her blog to enrich themselves and giving unearned profits

and/or renown to each of the co-conspirators. The defamation and libel per se caused Plaintiff immense emotional and financial harm. Defendants, with flagrant disregard for Plaintiff's Constitutionally protected rights, joined together and wantonly, recklessly, maliciously, knowingly and purposefully, with malice and without authorization, acting *ultra vires* under a ministerial cloak and in conspiracy with each other under color of state law as well as Federal Statutes, have deprived Plaintiff of her protected rights by pursuing internet posters, statements and letters on social media saying she was a criminal, thief, liar and evil fucking cunt in order to deny Plaintiff her right to earn money as an advocate/paralegal. Their stated goal was to individually and officially profit off of her loss.

3. Plaintiff seeks economic and compensatory damages and punitive damages to the extent allowable by law, injunctive relief from ongoing defamation, harassment and libel per se, declaratory judgment, and other appropriate legal and equitable relief pursuant to federal, state and city laws. Plaintiff seeks appropriate relief to deter and punish Defendants for their exceedingly bad conduct using the internet and callous disregard for the reputation and welfare of others.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to the Computer Fraud and Abuse Act; the Fourth and Fourteenth Amendment to the Constitution, 5 U.S.C.§702; 42 U.S.C §1983, 18 U.S. Code § 241 - Conspiracy against rights; 18 U.S. Code § 242 - Deprivation of rights under color of law; 18 U.S.C. § 1030 - fraud and related activity in connection with computers; and 18 U.S.C. § 1962, §1964; 28 U.S.C. § 1331; as this case involves at least one federal question, namely Defendants' tortious interference with business and commerce in a scheme based upon hacking into Plaintiff's protected

2

computer used in and affecting interstate commerce, then deliberately and maliciously without authorization altered her blog to enrich themselves and give unearned profits and/or renown to each of the co-conspirators.

5. Venue is appropriate, citing 28 U.S. Code § 1391 because the primary unlawful conduct occurred from the home and person of Defendant Francesco Portelos, who lives and runs his real estate company as well as his internet-based conspiracy of harm and so-called teacher advocacy group "UFT Solidarity" from Staten Island, County of Richmond.

6. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202. 7. This Court has pendent jurisdiction and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

8. Plaintiff previously served and filed a Notice of Claim on Defendants the New York City Department of Education, Defendant Francesco Portelos, and Defendant Lucio Celli regarding her state and city law claims which has not yet been adjusted or responded to. Claim No. 2016P1012684.

## PARTIES

7. At all times relevant in this Complaint, Plaintiff ("Plaintiff") ELIZABETH "BETSY" COMBIER is an advocate and reporter residing in Manhattan, New York City. At all times relevant hereto Plaintiff is a consultant/reporter to newspapers, online newsmagazines and international groups, individuals and organizations interested in New York City rubber rooms and the process called "3020-a Arbitration". From August 2007-July 2010 Plaintiff was a part-time consultant/advocate/Special Representative for the United Federation of Teachers ("UFT") in New York City, and her responsibility it was to manage the cases of

UFT members in the rubber rooms throughout New York City. Outside of these duties as well as before, during and after she worked for the UFT, Plaintiff participated as an observer at the labor arbitration for tenured teachers known as "3020-a arbitration" first as a member of the public 2003-2011; then, as a paralegal/advocate 2011-present, paid by charged educators to assist him/her at these hearings or to be the paralegal for the attorney representing the Respondents. Currently Plaintiff is self-employed as a non-lawyer paralegal/writer/advocate for teachers charged with 3020-a and as a paralegal for other legal actions with several attorneys in the New York City area. She has spent 14 years examining all aspects of the arbitration known as "3020-a". Plaintiff has never represented anyone at any time as a lawyer, nor has she ever written or said anything to anyone as legal advice, only her opinion. Plaintiff received a graduate degree from the School for Advanced International Studies ("SAIS") at Johns Hopkins University, where her focus was the Soviet Military Industrial Complex. (1974-1976). She received a Master's in Interactive Telecommunications from New York University in 1984, and a Certificate from New York University in Dispute Resolution – Arbitration, Negotiation, and Mediation in 2015. She has been a parent advocate representing special needs students at impartial Hearings since 1999, and has assisted in defending the rights of teachers since 2003. She is the Editor of Parentadvocates.org, NYC Rubber Room Reporter, New York Court Corruption, NYC Public Voice and National Public Voice.

8. At all times relevant herein, Defendant Francesco Portelos ("Portelos") was and is a public employee of Defendant the New York City Department of Education. Portelos is a former environmental engineer/inspector turned science and technology teacher at the New York City Department of Education. While working at IS 49, he secretly

4

videotaped several incidents, against the Department policies of videotaping students without their consent. Then, elected to the School Leadership Team, he confronted Principal Linda Hill for hiding money and for misuse of her p-card. He was removed and charged with 3020-a arbitration in 2013, then found guilty of harassment, ignoring privacy laws for internet access, and using his computer skills for nefarious purposes in April 2014. His punishment was a fine of $10,000. He proceeded to disregard the warning of the Arbitrator, Felice Busto, not to continue this pattern and practice of of abuse and harassment and set up a group called Administrators in Need of Improvement ("A.N.O.I.") which allows the posting of anonymous defamatory comments about principals and assistant principals who work for the New York City Department of Education. Portelos uses his computer expertise to hack into websites and Facebook pages to threaten all people who think they can get away with any" bad" acts, which are never investigated and always defined by him as "bad" simply because he wants it that way. Truth does not matter to Defendant Portelos. However, Plaintiff is not an employee of the Department but a private citizen., and Defendants did not want her well-known work in 3020-a arbitration to continue. Attorney Bryan Glass and his Associate Jordan Harlow are supposed to be the only 'real' advocates for teachers. There is no room in this universe for Plaintiff. At all times relevant to this Complaint Defendant Portelos was and remains, an employee of the NYC Department of Education, and as such, was, and is, under the Supervision of the Department and its rules, regulations and policies yet has remained immune from any prosecution for his violation of Department social media guidelines of decency, respect, truth and privacy.

9. Defendant Lucio Celli ("Celli") is a teacher with the Department of Education. He met Plaintiff in 2007 while he was reassigned to the Bronx rubber room, and Plaintiff worked for the United Federation of Teachers, or UFT as the Special Representative for the rubber room teachers. He joined the Francesco Portelos group UFT Solidarity when Francesco Portelos decided to run for UFT President, and followed all the directives of Defendant Portelos, including defaming Plaintiff and creating a national profile of Plaintiff as a thief, lowlife, criminal, evil fucking cunt, vicious old woman and the like, with the goal of ending Plaintiff's business. He used his Department email address, during the school day as well as before and after official hours to do his dirty business to please Portelos. Anyone who supported Plaintiff received the same degrading treatment. At all times relevant to this Complaint Defendant Celli was, and is, an employee of the Department of Education, and as such is under the supervision and control of the Department and has remained immune from any prosecution for his violation of Department social media guidelines of decency, respect, truth and privacy.

10. Attorney Bryan Glass ("Glass") is a lawyer who was hired by Portelos in 2012 to file a Federal Lawsuit against the Department and Portelos' Principal at IS 49, Linda Hill. The case went to a jury and Portelos lost, but Glass has Appealed to the Court of Appeals and remains Portelos' Attorney for another Federal action filed February 6, 2017 against the Department of Education and the NY Police Department (17-cv-00872-PKC-LB). In 2012 Defendant Glass asked Plaintiff, whom he knew as a well-known advocate for teachers, to assist him at 3020-a arbitration hearings and to train his Associate Defendant Jordan Harlow in how to do these hearings. After Plaintiff discovered the underhanded activities of Glass and Harlow which undermined her work as well as

6

harmed clients Glass wanted Associate Jordan Harlow to take the business of representing tenured New York City Employees at 3020-a arbitration and remove Plaintiff and her attorney partners from doing the job of representing anyone. He permitted Defendant Portelos to use Plaintiff's picture and false fact that she was giving legal advice to stop anyone from hiring her to do 3020-a hearings, for his personal and professional financial gain and renown.

11.  Defendant Jordan Harlow ("Harlow") is the Associate who works on 3020-a arbitration for the Glass Krakower Law Firm. In 2013-2014 he teamed up with Plaintiff to do 3020-a hearings, but spoke badly about her behind her back. In May, 2016, Defendant Harlow saw one of the 3020-a clients of Glass Krakower talking with Plaintiff in the waiting room of 100 Gold Street, where hearings take place. The client was asking Plaintiff to help her and to help Harlow, who, she felt, was not defending her properly. Plaintiff was on another case with another attorney and could not take the case, so she turned the offer down. Immediately after, according to V.B., Harlow told his client never to speak with Plaintiff, that in every case Plaintiff worked on the teacher was terminated, and Plaintiff was not an Attorney and did not know what she was talking about. On or about June 9, 2016, V.B. was so unhappy with Harlow's work that she fired him, and he threw all of her papers at her face and stormed out. Defendant Harlow is under the supervision of Defendant Glass, and works with Defendant Portelos in the attacks on Plaintiff described herein.

12.  At all times relevant in this Complaint, Defendant New York City Department of Education ("Department") is currently and was an employer within the meaning of the Constitution of the State of New York and was a governmental entity acting under color

of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York. As such, the Department is liable for the defamatory injury to the reputation of Plaintiff, and ignoring the violations of the rules and regulations of the Department by Defendants Portelos and Celli. These Regulations are in place to prevent/stop any employee from doing what Francesco Portelos and Lucio Celli have been allowed to do, namely use the internet for their extortion, harassment and threats as public employees of the Department, not as private citizens on matters of public concern. Yet the Department has ignored Defendants' violations of these rules and regulations.

13.    Plaintiff filed a Notice of Claim, Claim number 2016-P1012684 against Defendants the New York City Department of Education, Portelos and Celli, for the ongoing harm done to her. Plaintiff never received any response to her claim.

14. PLAINTIFF is informed and believes and based thereon alleges that, at all times mentioned, Defendants, in doing the things herein mentioned, were acting within the scope of their authority as agents and employees with the permission and consent of the law firm of Glass Krakower and the New York City Department of Education.

15. PLAINTIFF is informed and believes and based thereon alleges that, at all times mentioned, Defendants, in doing the things herein mentioned, formed a partnership to work together in engaging in the wrongful conduct directed towards PLAINTIFF, which wrongful acts caused resulting damage to PLAINTIFF, as further alleged herein. By filing this action, Plaintiff seeks substantial redress for the significant harm caused by Defendants' intentionally tortious behavior and to send a message that such conduct will not be tolerated.

## STATEMENT OF FACTS

8

16. Plaintiff alleges that the individual Defendants set up a scheme to deny Plaintiff her right to earn money as a non-lawyer advocate by characterizing her as a criminal and creating a poster of her which was sent out in October 2016 to all teachers around the country telling all readers that Plaintiff is a greedy, controlling thief and an "evil, fucking cunt" ready and willing to steal the money from her clients without doing any work. The poster stated that Plaintiff was a criminal, about to be prosecuted, and this poster was followed up on by multiple emails to Facebook pages, websites, and any other social media outlet which could be read by educators anywhere in the country and the world. The picture used on this poster is a snapshot on the internet of the July 27, 2011 Lawline TV class on which Defendant Bryan Glass requested Plaintiff be a participant along with him and lawyer Michael Mazzariello, former Chief Prosecutor of the New York City Department of Education. The goal was to defame PLAINTIFF to such an extent that Defendants Bryan Glass and his Law Associate Jordan Harlow could benefit financially and take on all of Plaintiff's Arbitration cases and other complaints of educators. Individual Defendants wanted Plaintiff to stop her advocacy business and work without payment or, not work at all with educators who would be harmed by Plaintiff's fraudulent so-called "help". They deliberately and maliciously made up a law which supposedly forbade Plaintiff from working on 3020-a arbitration cases because she is not a lawyer. There is no such law in New York State.

17. Defendant Glass and Plaintiff worked together on a 3020-a hearing starting in 2011. Defendant Glass asked Plaintiff to assist him at this hearing, and Plaintiff agreed. Plaintiff sat at the table with Defendant Glass throughout the hearing as his assistant.

18. In 2012, Defendant Glass asked Plaintiff to give him and Jordan Harlow 3020-a cases so that Plaintiff could train Defendant Harlow in the procedures used at these hearings. Plaintiff agreed, and gave Glass/Harlow five (5) cases to try in 2012-2014. Plaintiff worked on these cases as Harlow's paralegal. The first three clients were terminated due to his incompetence, and the fact that Harlow would not listen to any suggestions given to him by Plaintiff. Client #4, B.K., was called into Defendant's office in or about February 2014 and told by Defendant Glass and Defendant Harlow to resign, but not to tell Plaintiff. B.K. did tell Plaintiff, who was shocked. Plaintiff was never paid for her work on this case ($2000). Glass and Harlow then told client #5 to resign or take a deal, and he did take a very long suspension and became an ATR. Defendants Glass and Harlow told K.C. not to tell Plaintiff. He did, in December 2014. Defendants told K.C. that Plaintiff was acting as if she knew what she was doing, but did not, they said. Plaintiff was never paid for her work on that case ($2000). Defendant Glass allowed Defendant Portelos to create the campaign of defamation, libel, and injurious falsehoods contained in the poster received by Plaintiff October 11, 2016. Defendants Glass, Harlow, Portelos and Celli wanted to remove Plaintiff from the very small group of teacher advocates in New York City and take all the clients for themselves.

19. Specifically, the plan created by DEFENDANT Portelos worked as follows with his Assistant, DEFENDANT Celli: Plan A was to stop Plaintiff's business and prevent her from making any income as follows: an educator working at individual Defendants' request would ask PLAINTIFF for help writing a letter, or edit a complaint or whatever, knowing that PLAINTIFF would willingly help anyone for free as a non-lawyer advocate. Immediately following the completion of her help in the writing phase, the Portelos

strategy was for the person who received the help to send Plaintiff a check, for any amount, as payment for her help, despite the fact that Plaintiff asked for no payment and did not send any invoice. Then, the person would say that Plaintiff was told that she must return the check given as payment for work never done. When Plaintiff did not return the check, considering the money given as a gift for the services she provided, Plaintiff was labelled a thief, and a liar. Plan B: knowing that Plaintiff was a very successful paralegal for attorneys who work on 3020-a arbitration for teachers, individual Defendants decided to broadcast a "fact" that they made up, namely that Plaintiff was practicing law without a license and must be criminally prosecuted for working at the table in 3020-a cases, an absolute falsehood. The individual Defendants encouraged anyone around the United States to extort money from Plaintiff citing a "pending prosecution" if she did not pay up, or do whatever favors were requested for working on 3020-a arbitration.

20. In 2014 Plaintiff paid $2000 to a lawyer to argue at a 3020-a, in the case of Yolanda Walker, that New York State allows non-lawyer advocates to assist respondents charged with 3020-a arbitration. Plaintiff won this argument, and since that time has worked with and without attorneys at 3020-a.

21. Portelos, after receiving his fine for workplace harassment and other charges in 2014, decided to confront the Department head on with his social media expertise, and disregard the warning given by Arbitrator Busto that he had to stop his nefarious activities. He created a website called Don't Tread on Educators, and Administrators In Need of Improvement, where any anonymous tip about the misconduct of a principal was placed on the website. Truth did not matter. Arbitrator Busto, in her 3020-a decision in his case, wrote that: "Despite the provocative nature of his postings and airing of his disciplinary

process, there has been no showing that the notoriety regarding his charges or reassignment "seriously compromised his ability to retain the respect of students and to be perceived as a responsible adult to whom they should pay attention." See Matter of Goldin v. Board of Ed. 45 A.D.2d 870 (1974)" and added, "At the same time, Respondent, in his quest to defend himself, lost sight of the fact that the Department is his employer, and not his enemy. Notwithstanding the events of the last two years, Respondent must refocus his energies on their shared mission of educating children". Busto fined Portelos $10,000 instead of terminating his employment. Then Defendant Portelos enlarged his attacks on his employer. He sent emails out during the school day to attack the Department and the UFT and then made a quest for UFT President, to replace Michael Mulgrew. He failed, but put in place a defamation scheme against Plaintiff which made her an enemy of the State and a fraud, liar and criminal in retaliation for her being what he always wanted to be.

22. On or about August 25, 2015, Portelos had lunch with former UFT President Randi Weingarten. He asked for a job at the UFT and was turned down.

23. Portelos knew that Plaintiff had worked for the UFT under Randi Weingarten and the Michael Mulgrew, and had done a good job. Furious at not being able to have the same good fortune, Portelos decided to attack Plaintiff in order to tell Randi Weingarten he did not like the fact that she refused to hire him as he told his friends and followers was a sure thing. Randi Weingarten also told Portelos that Plaintiff had done a good job for the UFT, which enraged Portelos further.

24. On September 20, 2015, Portelos held a meeting of disgruntled UFT members – potential clients for Plaintiff – and invited Jim Callahan, a former reporter for the UFT

who worked with Plaintiff on the rubber rooms. He resented Plaintiff's position and the fact that she visited all the rubber rooms every day, actually helping the people sitting there figure out what was going on. Portelos videotaped Callahan's talk.

25. A few days later, Celli called Plaintiff and told her that he was sending the video to her, and she was not going to like it because Portelos must have made a mistake, and edited the tape so that Callahan accused Plaintiff of being a homophobe. Celli is a gay man and knew that Plaintiff was no homophobe. Upon reviewing the tape of the meeting, Plaintiff saw that Portelos had deliberately made the video into a damaging and defamatory statement about Plaintiff as a person and as an advocate for teachers. Plaintiff vigorously denied this claim, but Portelos would not listen to her.

26. Portelos then put in place his scheme to deny Plaintiff her business and her advocacy work. He and Celli sent emails out to all who would listen, on his Facebook page, his website, and other social media from November 2015 until the present, saying:

"…you stopped helping me directly with my lawsuit. But, you continued to help me in PERB. You know me, I don't really think when I'm upset……(Celli, November 9, 2015).

Where is my money? You took and did not render services. I have many damaging recordings…" (Celli, December 30, 2015)

"We need to teach Betsy a lesson now….(Celli, January, 2016);

"Yeah, this wont go well…With every UFT member and parent who asks me "What about Betsy?" and I respond "There are better people to use than Betsy." I have some solace knowing that's money out of her pocket. A lot of money." (Portelos, January 20, 2016).

13

27. Laurie Luft, a close friend of Plaintiff, came under attack on January 24, 2016, after she defended Plaintiff. Portelos, in retaliation, revealed that she was on a medical sabbatical to restore her health to all on Laurie's ATR Support Facebook page members. Then he sent this email out:

"Many are reporting the ill politics in Laurie's group. It's more about Laurie than it is about ATR issues. Good job Betsy. How's business?" (Portelos, January 24, 2016)

28. Celli, on February 27, 2016:

"YOU, Betsy Combier, are an evil cunt……I am glad I recorded you being a liar and a wretched human being."

To Laurie Luft, Francesco Portelos, Randi Weingarten, Attorney Steve Morelli, Jonathan Hinesley, Claudia Giordano and Lydia Howrilka:

"Betsy threatened my lawsuit….You are only a chip in Betsy's evil plan……you got my email from evil Combier to harass me…I only called Betsy evil and sick…"

In March 2016 Celli sent emails to a mass group numbering about 350 addresses for each email, including Preet Bharara, Cy Vance, the Bronx DA, PERB, all the newspaper reporters, everyone who works at the UFT and the Department of Education, saying that Plaintiff went behind teachers' backs and spoke with Courtenaye Jackson -Chase, General Counsel of the NYC Department of Education to harm people, and she must be stopped. This was a lie.

"Ms. Combier told me the story of how she was hired at the UFT – not a plausible story to me. Most interesting fact told by Ms. Combier, the UFT made backdoor phone calls to

agencies, like PERB, while she worked for the Union – ex parte conversions…..Ms. Combier is working with my lawyer and helped my lawyer to lie to me…..Ms. Combier informed me that she records conversations as well – she attends many 3020-a hearings. Somehow or someway we have to force the truth out." (Celli, March 16, 2016, from his Department email address "Celli Lucio (08X519)"LCelli@schools.nyc.gov)

These emails created a very difficult time for Plaintiff at 3020-a hearings, where arbitrators were informed that she taped secretly, which is absolutely untrue. Plaintiff has never taped anyone secretly at any hearing, anywhere. Plaintiff also never said anything about backdoor calls to PERB. Celli knew that his statements were lies designed to get Plaintiff charged with something, anything.

29. In August 2016, Plaintiff saw that an entire section of her blog NYC Rubber Room Reporter, titled "3020-a Arbitration Newswire" was missing. Everything, all the articles under that title as well as the picture of UFT General Counsel Adam Ross, UFT President Michael Mulgrew, NYC Department of Education Carmen Farina, and former General Counsel Courtenaye Jackson Chase, as well as the video obtained through FOIL by Plaintiff of a meeting held at Education headquarters Feb. 27, 2015, was gone, and then the picture and video appeared on Defendant Portelos' website "UFT Solidarity" under the toolbox link. He had created the "UFT Solidarity 3020-a Guide" and posted it on September 30, 2016, using Plaintiff's material which he had deleted from her blog. At the end of this Guide Portelos advised all readers to hire Attorney Bryan Glass for the 3020-a, and this was starred: *"do not get help from someone without a law degree".

On June 10, 2016, Glass wrote "Beware of snake oil salesmen".

30. On October 11, 2016 Plaintiff was sent a poster created by DEFENDANT Portelos via email from former client James Geist, a client also of Bryan Glass and Jordan Harlow, with whom Plaintiff worked on Geist's 3020-a Arbitration. He had previously written about Plaintiff on April 19, 2013 that "Betsy Combier. She is the Serpico (whistleblower) of the Board of Education." And on January 15, 2014, he wrote a letter to Carmen Farina, Chancellor of the New York City Department of Education, asking Mrs. Farina to look into 3020-a arbitration, and to put Betsy Combier onto the review Committee. But suddenly, Geist accused Plaintiff of getting him fired at his 3020-a, in order to please Defendant Portelos who was working with Geist's lawyer, Bryan Glass. When Geist started his campaign to vilify Plaintiff, he wanted to please Glass, his attorney, and Portelos, the "leader" of teacher advocacy. Plaintiff posted Geist's 3020-a case on her website, with his praise for the work of Plaintiff. Plaintiff also posted Geist's arbitrator's decision from the filing by Geist's Attorney, Bryan Glass.

But Glass had posted the decision in Geist's 3020-a case on the New York State Court System with Geist's social security number clearly visible. Plaintiff saw this, and whited out the number for her website. Nevertheless, on October 11 2016 Geist sent to Plaintiff a threat that he would report her for crimes to the District Attorney unless she took down her post about him. Geist sent her the poster created by Portelos, which was to have people sign up to get all the money back that had been paid to Plaintiff over the years. This poster is available online at: www.tinyurl/BetsyCombier, and https://docs.google.com/forms/d/e/1FAIpQLSf_1coyF9VLCV3i5HLZFVYk25kWHTreGtc 0aDCKyrV71nGA4w/viewform

16

This poster which was created by Defendant Portelos, and showed Plaintiff's face from the TV Show "Lawline", which Bryan Glass had suggested she be on camera with him, and the title "Have You Ever Paid For Legal Advice/Work To Betsy Combier?" And, if so, then you must get your money back because Combier is a thief and a pretender. The date of creation of this poster is unknown. Plaintiff told Geist that his social security number was in the Court papers filed by Defendant Harlow or Defendant Glass, not on her website. The error was Defendants Glass and Harlow's mistake, not Plaintiff's.

31. On October 19, 2016, Portelos sent out an email across the country stating:

"Friends and Colleagues, please be careful. Unfortunately, so called advocate Betsy Combier lost another case where she allegedly provided illegal legal consultation for a New York City UFT member in a 3020-a hearing, something she does not share on her site. Just be vigilant.

Apparently, others have been warning about this for some time. and if you have been burned, join the others in the complaint. We have enough trouble with our employer and union. We don't need another obstacle when it comes to surviving. www.tinyurl.comBetsyCombier"

Portelos attached the poster saying that Plaintiff stole money.

But that's not all. Portelos also attached a blogspot called nycrubberroomreportercom.blogspot.com, saying:

"Has Elizabeth Betsy Combier lost her attempt to grab money from a New York City Church? It seems that Judge O. Peter Sherwood has seen through....."

Which refers to the theft by Plaintiff's church, Madison Avenue Presbyterian, of the estate and ashes of Plaintiff's mother after the death of her mother on March 15 1998. Plaintiff tried to get the estate back, and suffered heart failure on July 22, 2006.

This allusion to her stealing from her church – in addition to her stealing from all her clients, was extremely upsetting to Plaintiff who in January 2017 was hospitalized and had surgery.

This blog, NYC Rubber Room (nycrubberroom.com) was never created or worked on by Plaintiff, but Portelos posted articles himself, without Plaintiff's knowledge. He altered posts with his own material, and then put as the owner of the blog Plaintiff's Foundation, the E-Accountability Foundation, with her home address and telephone number. Plaintiff cannot do anything about this blog as she is not an administrator, and does not know Word press. In March 2017 Plaintiff was threatened with a federal lawsuit if she did not remove a picture on this blog. The photographer, William Farrington, claimed that Plaintiff owed him money for posting the photo, but Plaintiff did not do that and could not take down any photo on this blog, because she is not the one administering it, and has no idea how to do Word Press. She received a proposed lawsuit for supposedly writing this fake blog and the Attorney, Michael Higbee, in California, told Plaintiff that they were going to sue Plaintiff for $150,000 in damages. Plaintiff went to WHO IS? And found out that, upon information and belief, Defendant Portelos had put Plaintiff's name, Foundation, Foundation address and her home telephone number as the buyer of the domain "nycrubberroom.com" from a re-seller located in Nevada. When she started receiving telephone calls from the Higbee law firm, saying that she had to pay $2500 immediately, or they would file the lawsuit. Plaintiff refused, and told them that she was going to go to

the Manhattan District Attorney and file for internet fraud and identity theft. Plaintiff is in the process of hiring a forensic investigator.

32. Defendants Portelos and Celli are teachers at the New York City Department of Education. One of the policies of the Department is that no employee can send out emails during the school day using their DOE email and/or the DOE computers unless under unusual circumstances. Yet the New York City Department of Education has ignored the extremely inappropriate mass emails from Francesco Portelos and Lucio Celli. Thus, the NYC DOE allows Defendants Portelos and Celli to defame, libel, and scar Plaintiff without any repercussions and is complicit in the schemes described herein. This is a pattern and practice for Defendants Portelos and Celli, who send out emails which are racist, degrading and insulting, without any facts upon which to base their claims. Plaintiff's invocation of the equitable powers of this Court is just and proper based upon a pattern, practice, custom and policy of bad faith, harassment, defamation and unlawful use of the internet to further a corrupt scheme created and pursued by Defendants against Plaintiff's person and property.

## FIRST CAUSE OF ACTION
Violations of 42 U.S.C. 1983 – internet fraud affecting interstate commerce
(As against all Defendants)

33. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 32 of this complaint, inclusive, and incorporates the same by reference, as though fully set forth herein.

34. In abusing their official and individual duties as role models for students at the Department on how to use social media and have respectful exchanges on the internet,

as described above, Defendants Celli and Portelos acted under color of state law in their continuous harassment of Plaintiff via websites, blogs, facebook pages, Portelos' TWITTER account, and emails under their control.

35.Defendants the Department, Glass and Harlow knew about the harassment and defamation, yet did nothing to stop either Portelos or Celli's harassment of Plaintiff and thus allowed the defamation of Plaintiff for actions they knew she did not perform, all to end Plaintiff's advocacy work in favor of Portelos, Glass, and Harlow working as "true" advocates.

36. As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, lost earnings, and other pecuniary loss.

37. Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, defendants (a) acted with the intent to injure, vex, annoy and harass Plaintiff, (b) subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and (c) intentionally misrepresented and concealed material facts known to the defendants with the intention on the part of the defendants of thereby depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury. As a result of the foregoing, plaintiff is entitled to exemplary and punitive damages against Defendants.

## SECOND CAUSE OF ACTION
False Light Invasion of Privacy
(As Against All Defendants)

38. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 37 inclusive, of this Complaint and incorporates the same by reference, as though fully set forth herein.

39. Defendant's partnership of harm declaring, without any fact or truth, that Plaintiff was a thief and undeserving of helping any teacher, anywhere, as well as supposedly "stealing" from her church, was highly offensive and objectionable, judged by a reasonable person standard.

40. By consistently and relentlessly painting Plaintiff as a liar, as dishonest, and as self-absorbed, Defendants purposefully and with malice placed Plaintiff in a highly offensive false light.

41. Defendants intended to paint PLAINTIFF as the perpetrator of fraudulent allegations to gain money and prestige at Plaintiff's expense.

42. As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, expense incurred in defense and her work, lost earnings, and other pecuniary loss.

43. Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, defendants (a) acted with the intent to injure, vex, annoy and harass plaintiff, (b) subjected plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and acted with malice, (c) intentionally misrepresented and concealed material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury.

44. As a result of the foregoing, Plaintiff is entitled to exemplary and punitive damages against Defendants.

## THIRD CAUSE OF ACTION
Defamation and Libel per se

(As Against All Defendants)

45. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 44, inclusive, of this Complaint and incorporates the same by reference, as though fully set forth herein.

46. The tweets, emails, website posts and blog posts about Plaintiff, read by an audience numbering in the thousands, were deliberately, maliciously and knowingly false and defamatory, and had a natural tendency to injure the Plaintiff's reputation. Plaintiff is informed and believes and based thereon alleges that even though Plaintiff is not a "public official" (and thus a showing of "actual malice" is not required by the first Amendment), Defendants Portelos and Celli did make the statements mentioned herein either knowing they were false or in reckless disregard of the truth and with actual malice, hatred and ill will.

47.As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, expense incurred in defense of her actual performance as an advocate, lost earnings, and other pecuniary loss.

48.Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, Defendants (a) acted with the intent to injure, vex, annoy and harass plaintiff, (b) subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, and (c) intentionally misrepresented and concealed material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury. As a result of the foregoing, Plaintiff is entitled to exemplary and punitive damages against Defendants.

## FOURTH CAUSE OF ACTION
Intentional infliction of Emotional Distress
(As Against All Defendants)

49. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 48, inclusive, of this complaint and incorporates the same by reference, as though fully set forth herein.

51.Defendants' intentional and/or reckless campaign of defamatory harassment against Plaintiff and intentional and/or reckless disregard for the truth or facts were beyond the bounds of decency and is therefore extreme and outrageous conduct.

52.As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, expense incurred in defense and repair of her credit rating, lost earnings, and other pecuniary loss.

53.Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, defendants (a) acted with the intent to injure, vex, annoy and harass Plaintiff, (b) subjected plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and (c) intentionally misrepresented and concealed material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury. As a result of the foregoing, Plaintiff is entitled to exemplary and punitive damages against defendants.

## FIFTH CAUSE OF ACTION
Negligent Supervision
(As Against Glass, Department)

45. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 53, inclusive, of this complaint and incorporates the same by reference, as

though fully set forth herein.

46.Plaintiff informed and believes and based thereon alleges that Defendants the Department and Glass did not exercise their supervisory authority over Portelos, Celli and Harlow while engaged in the course and scope of their employment during business hours and after.

47.Defendants Department and Glass were deliberately negligent in their supervision in order to gain financially from the actions of Harlow, Portelos and Celli.

48.Thus liability for each and every cause of action listed herein may be imposed Defendants Glass and the Department under the doctrine of respondeat superior.

49. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including harm to Plaintiff's business and reputation, emotional distress, lost earnings, and pecuniary loss.

## SIXTH CAUSE OF ACTION
### Violation/Interference with Constitutionally Protected Rights  42 U.S.C §1983 et seq

50. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 49, inclusive, of this complaint and incorporates the same by reference, as though fully set forth herein.

51. Defendants' infringement upon and violation of Plaintiff's rights protected under the statutes listed above was and is intended to harm Plaintiff as an advocate for teachers, and to place a chilling effect upon the exercise of such rights by Plaintiff.

52. Defendants' conduct and actions are intentional, malicious, taken with deliberate indifference and or reckless disregard for the natural and probable consequences.

24

53. Defendants Glass and Department failed to intervene, prevent, or correct the conduct and actions that deprived Plaintiff of her Constitutional rights.

54. As a direct result of Defendants actions described herein, Plaintiff has suffered and continues to suffer trauma, emotional distress, mental anguish, loss of income, and loss of her health.

55. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages.

## SEVENTH CAUSE OF ACTION
42 U.S.C. §1983 – STATE AND MUNICIPAL VIOLATIONS;
Deprivation of Rights Under Color of Law

56. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 55, inclusive, of this complaint and incorporates the same by reference, as though fully set forth herein.

57. It can be said that to condone lies, false documentation, and the acts cited herein is contrary to Municipal Law and Public Officers Law.

58. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in an amount to be determined at trial as well as punitive damages and costs.

## EIGHTH CAUSE OF ACTION
Injurious Falsehood, Libel, Defamatory Injury to Reputation,
Tortious Interference With Business Prospects

59. Plaintiff repeats and realleges each and every allegation in paragraphs 1

25

through 58, inclusive, of this complaint and incorporates the same by reference, as though fully set forth herein.

60.Defendants deliberately and with malice created a scheme where Plaintiff became the enemy of teachers in order for Defendants to stop Plaintiff from working as an advocate.

61. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in an amount to be determined at trial as well as punitive damages and costs.

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a jury trial for all causes of action and issues which may be determined by jury under federal and/or New York State law.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, on each and every cause of action as follows:

1.    For general damages according to proof at trial by a jury.

2.    Special damages according to proof at trial;

3.    Award of exemplary damages;

4.    Punitive damages;

5.    Declaratory relief;

6.    For such other and further relief as the Court deems just and proper.

Dated: April 24 2017
     Staten Island, NY

                      Respectfully submitted,

                      **LUTHMANN LAW FIRM, PLLC**

By: _____
RICHARD A. LUTHMANN, ESQ.
1811 Victory Blvd.
Staten Island, NY 10314
Tel:  (718) 447-0003
Fax:  (347) 252-0254
LuthmannFirm@gmail.com