UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

ELIZABETH "BETSY" COMBIER,

                Plaintiff          DOCKET NO. 17-cv-02239 (FB)(RLM)

  -against-               SECOND AMENDED COMPLAINT

FRANCESCO PORTELOS, LUCIO CELLI,     ***JURY TRIAL DEMANDED***
BRYAN GLASS, ESQ., JORDAN HARLOW, ESQ.,
NEW YORK CITY DEPARTMENT OF
EDUCATION, CARMEN FARINA, CHANCELLOR
OF THE NEW YORK CITY DEPARTMENT OF
EDUCATION, all sued individually and officially,

                Defendants

_____x

      **PLAINTIFF** ELIZABETH "BETSY" COMBIER, proceeding pro se with the permission of this court on October 3, 2017, respectfully alleges as follows:

PRELIMINARY STATEMENT

1.This is a civil action seeking declaratory and injunctive relief, monetary relief, including past and on-going economic loss, compensatory and punitive damages, costs and fees for violations of Constitutionally protected rights under the First, Fifth, Fourteenth Amendments, the Computer Fraud and Abuse Act 18 USC §1030 et seq., 18 USC §2701 - Unlawful access to stored communications, 18 USC §2707 – Civil Action after Defendants hacked into Plaintiff's blog, deliberately lied about Plaintiff, filed false criminal charges against Plaintiff with the intent to harm her personally and professionally, and then encouraged the hacking into Plaintiff's blogs and websites, as well as allowing defamation, libel per se, harassment, financial ruin and of Plaintiff by anyone who read about Plaintiff's private business called Advocatz in order for Defendants to gain economic rewards they were not entitled to receive.

2.  Defendants' libel per se and tortious interference with business and commerce is based upon a scheme which involved unauthorized access and hacking into Plaintiff's protected computer used in and affecting interstate commerce, then deliberately and maliciously without authorization altering her blogs, deleting a section on 3020-a arbitration, and posting it on "UFT Solidarity" as their own to enrich themselves and to give themselves unearned profits and/or renown. Defendants, with flagrant disregard for Plaintiff's Constitutionally protected rights, joined together and wantonly, recklessly, maliciously, knowingly and purposefully, with malice and without authorization, acting *ultra vires* under a ministerial cloak and in conspiracy with each other under color of state law as well as under Federal Statutes, have deprived Plaintiff of her protected rights by pursuing internet posters, statements and letters on social media saying she was a criminal, thief, liar and evil fucking cunt, and by hacking into her computer in order to deny Plaintiff her right to earn money as an advocate/paralegal. Their stated goal was to individually and officially profit off of her loss of income and good character.

3. Plaintiff seeks economic and compensatory damages and punitive damages which exceed $15,000 at this point, with unknown loss of business to the extent allowable by law, injunctive relief from ongoing defamation, harassment and libel per se, declaratory judgment, and other appropriate legal and equitable relief pursuant to federal, state and city laws.

JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to the Computer Fraud and Abuse Act; the Fourth, Fifth, and Fourteenth Amendment to the Constitution, 5 U.S.C.§702 (Defendants Celli, Portelos, NYC department of Education); 42 U.S.C §1983, 18 U.S. Code § 241 - Conspiracy against rights;  18 U.S. Code § 242 - Deprivation of rights under color of law; 18 U.S.C. 1343 – wire fraud; 18 U.S.C. § 1030 - fraud and related activity in connection with computers; and 18 U.S.C. § 1962, §1964;  28 U.S.C. § 1331; as this case involves at least one federal question,

2

namely Defendants' tortious interference with business and commerce in a scheme based upon hacking into Plaintiff's protected computer used in and affecting interstate commerce, then deliberately and maliciously without authorization altered her blog to enrich themselves and give unearned profits and/or renown to each of the co-conspirators.

One provision of the CFAA prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer." The jurisdictional element of the CFAA is satisfied by virtue of the requirement that any violation of the Act concern a "protected computer," defined as a computer "used in interstate or foreign commerce or communication."  18 U.S.C. § 1030(a)(2)(C) defines the term "protected computer" to mean a computer "exclusively for the use of a financial institution or the United States Government . . . or . . . [a computer] which is used in or affecting interstate or foreign commerce or communication . . . ." 18 U.S.C. § 1030(e)(2). The term "exceeds authorized access" means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). This requirement is easily satisfied, as under this definition "virtually any computer that sends e-mail in the course of its business is a 'protected computer.''(see Nick Akerman, *CFAA Resembles RICO*, Nat'l L.J., Aug. 2005, at 13). The CFAA's jurisdictional requirements are met where the targeted computer regularly transmits interstate e-mails, regardless of the defendant's physical location while committing his culpable acts. (U.S. v. Ivanov, 175 F.Supp.2d 367, 368-69 (D. Conn 2001)). "[T]he concept of 'exceeds authorized access' may include exceeding the purposes for which access is 'authorized'" in a case where the information was used in furtherance of the commission of a separate crime.); United States v. Nosal, 676 F.3d 854, 863-64 (9th Cir. 2012). ("[W]e hold that the phrase

'exceeds authorized access' in the CFAA does not extend to violations of use restrictions[;]" the term is "limited to violations of restrictions on access to information, and not restrictions on its use.") (emphasis in original). The D.C. Circuit has not ruled on the issue; the district courts in this circuit that have addressed the matter have followed the narrower interpretation adopted by the Ninth Circuit. See, e.g., Roe v. Bernabei & Wachtel PLLC, 85 F. Supp. 3d 89, 103 (D.D.C. 2015) ("[T]he plain meaning of the statute . . . speaks only of authorized 'access' to data and not of use."); Lewis–Burke Assocs. LLC v. Widder, 725 F. Supp. 2d 187, 194 (D.D.C. 2010) ("'Exceeds authorized access' should not be confused with exceeds authorized use.")

5. Venue is appropriate, citing  28 U.S. Code § 1391 because the unlawful conduct of Defendant Francesco Portelos lives and runs his real estate company as well as his internet-based conspiracy of harm and so-called teacher advocacy group "UFT Solidarity" from Staten Island, County of Richmond. Plaintiff lives in Manhattan N.Y. and her blog posts and computers are in Manhattan, but this Court denied a request to move this case to the Southern District even after Plaintiff was refused any help by the Federal Pro Se Legal Assistance Project, whose Project Director told Plaintiff they were only assisting Francesco Portelos, who asked for assistance first.

6. This Court has the power to issue declaratory relief and jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. This Court may award Plaintiff's declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and this Court's inherent equitable jurisdiction.

7. This Court has pendent jurisdiction and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

8. Plaintiff previously served and filed a Notice of Claim on Defendants the New York City Department of Education, Defendant Francesco Portelos, and Defendant Lucio Celli regarding

4

her state and city law claims which has not yet been adjusted or responded to. Claim No.

2016P1012684.

PARTIES

9. At all times relevant in this Complaint, Plaintiff ("Plaintiff") ELIZABETH "BETSY"

COMBIER is an advocate and reporter residing in Manhattan, New York City. At all times

relevant hereto Plaintiff is a consultant/reporter to newspapers, online newsmagazines and

international groups, individuals and organizations interested in New York City rubber rooms

and the process called "3020-a Arbitration". She has been involved in labor arbitration as a non-

attorney advocate since 1994 (Local 32B&J Arbitration) as well as a parent advocate

representing parents in Impartial Hearings since 1999. From August 2007-July 2010 Plaintiff

was a part-time consultant/advocate/Special Representative for the United Federation of

Teachers ("UFT") in New York City, and her responsibility it was to manage the cases of UFT

members in the rubber rooms throughout New York City. Outside of these duties as well as

before, during and after she worked for the UFT, Plaintiff participated as an observer at the labor

arbitration for tenured teachers known as "3020-a arbitration" first as a member of the public

2003-2011; then, as a paralegal/advocate 2011-present, paid by charged educators to assist

him/her at these hearings when the charged employee did the hearings pro se, or Plaintiff assists

the Attorney hired to represent the employee. Currently Plaintiff is self-employed as a nonlawyer

paralegal/writer/advocate for teachers charged with 3020-a and as a paralegal for other legal

actions with several attorneys in the New York City area. Plaintiff has never represented anyone

at any time as a lawyer, nor has she ever written or said anything to anyone as legal advice, only

her opinion. Plaintiff received a graduate degree from the School for Advanced International

Studies ("SAIS") at Johns Hopkins University, where her focus was the Soviet Military

Industrial Complex. (1974-1976). She received a Masters in Interactive Telecommunications from New York University in 1984, and a Certificate from New York University in Dispute Resolution – Arbitration, Negotiation, and Mediation in 2015. She has been a parent advocate representing special needs students at Impartial Hearings since 1999, and has assisted in defending the rights of teachers since 2003. She is the Editor of Parentadvocates.org, NYC Rubber Room Reporter, New York Court Corruption, Advocatz, RubberRoom3020-a/Inside 3020-a Teacher Trials, NYC Public Voice and National Public Voice. She has been an Expert witness in Part 83 Hearings as well as on multiple television shows.

10. At all times relevant herein, Defendant Francesco Portelos ("Portelos") was and is a public employee of Defendant the New York City Department of Education. Portelos is a former environmental engineer/inspector turned science and technology teacher at the New York City Department of Education. He obtains the email addresses of his victims as well as his followers as an employee of the New York City Department of Education, not as a private citizen. While working at IS 49, he secretly videotaped several incidents, against the Department policies of videotaping students without their consent. Defendant Portelos never heard of a Department of Education rule, regulation or law which he did not undermine or violate outright. After he was elected to the School Leadership Team, he confronted Principal Linda Hill for hiding money and for misuse of her p-card. He was removed and charged with 3020-a arbitration in 2013, then found guilty at 3020-a of harassment, ignoring privacy laws for internet access, and using his computer skills for nefarious purposes, and several other misconduct charges, in April 2014. His punishment was a fine of $10,000. He proceeded to disregard the warning of the Arbitrator, Felice Busto, not to continue this pattern and practice of abuse and harassment and set up a group called Administrators in Need of Improvement ("A.N.O.I.") which allows the posting of

6

anonymous defamatory comments about principals and assistant principals who work for the
New York City Department of Education. Almost all comments are sent as Anonymous, and are
profane, defamatory and libelous. Portelos uses his computer expertise to hack into websites and
facebook pages to threaten all people who think they can get away with any" bad" acts, which
are never investigated and always defined by him as "bad" simply because he wants it that way.
Truth does not matter to Defendant Portelos. He uses his computer knowledge to terrorize
anyone who challenges him, in his schools (he is a substitute teacher who roams from school to
school), and hacks into Department websites on a daily basis. He has also violated the FERPA
rights of students by putting student records and their names online. He was arrested for putting
the post "How to Hack the DOE Payroll Portal and Give Yourself a Raise" on his Facebook page
and websites in February 2014, then sued the Department and the police for "falsely" charging
him. In July 2016 he hacked into Plaintiff's blog "NYC Rubber Room Reporter", deleted the
entire section "The 3020-a Arbitration Newswire" and put her information into a Guide for UFT
members going into 3020-a hearings. Portelos added, at the end of the Guide, that no one should
hire a non lawyer, and all teachers should 'Beware' of people pretending to be lawyers, meaning
Plaintiff. He directed all readers to hire Attorney Bryan Glass, instead of Betsy Combier.
Plaintiff Betsy Combier is not an attorney, is not in competition with Bryan Glass or Francesco
Portelos who has no experience in assisting anyone at 3020-a hearings. Portelos has made his
malicious intent to harm Plaintiff very clear in his complaints inside the poster he created, the
complaint he filed with the Manhattan DA, and his website posts, emails, and statements online.
At all times relevant to this Complaint Defendant Portelos was, and is, an employee of the
Department of Education, and as such is under the supervision and control of the Department and

has remained immune from any prosecution for his violation of Department social media guidelines of decency, respect, truth and privacy.

4. Defendant Lucio Celli ("Celli") is a teacher with the Department of Education. He met Plaintiff in 2007 while he was reassigned to the Bronx rubber room, and Plaintiff worked for the United Federation of Teachers, or UFT as the Special Representative for the rubber room teachers. Celli has spent many years getting his $100,000+ salary without doing any work, due to his delusional thinking and explosive anger towards anyone who confronts him. Celli joined the Francesco Portelos group UFT Solidarity when Francesco Portelos decided to run for UFT President, and followed all the directives of Defendant Portelos, including defaming Plaintiff and creating a national profile of Plaintiff as a thief, lowlife, criminal, evil fucking cunt, vicious old woman and the like, with the intent, similar to Portelos, of ending Plaintiff's business. He used his Department email address, during the school day as well as before and after official hours to do his dirty business to please Portelos and harm Plaintiff. Celli also attacks any friend of Plaintiff, to scare or harass any supporter of Plaintiff who would dare to say he is lying. By all accounts, including the Federal Court System where Celli was just sanctioned for his profane writing to Judge Cogan, Celli is delusional and unable to connect with reality. At all times relevant to this Complaint Defendant Celli was, and is, an employee of the Department of Education, and as such is under the supervision and control of the Department and has remained immune from any prosecution for his violation of Department social media guidelines of decency, respect, truth and privacy.

5. Attorney Bryan Glass ("Glass") is a lawyer who asked Plaintiff in 2011 to help him in the 3020-a of a teacher who was charged with writing an inappropriate statement on her facebook page. Glass could not defend this teacher, and the teacher was terminated. Glass does not

represent teachers at 3020-a hearings anymore. He gives this job to Defendant Harlow.Glass was

hired by Defendant Portelos in 2012 to file a Federal lawsuit against the Department and

Portelos' Principal at IS 49, Linda Hill. The case went to a jury and Portelos lost, but Glass

Appealed to the Court of Appeals and lost there as well. Glass remains Portelos' Attorney for

another Federal action filed February 6, 2017 against the Department of Education and the NY

Police Department (17-cv-00872-PKC-LB) after Portelos was arrested for posting on his website

"How To Hack Into The DOE Payroll Portal and Give Yourself a Raise". Also in 2012

Defendant Glass asked Plaintiff, whom he knew as a well-known advocate for teachers, to assist

him at 3020-a arbitration hearings and to train his Associate Jordan Harlow in how to do these

hearings. Plaintiff brought him five teachers who hired Plaintiff as well as Glass. Unknown to

Plaintiff, Glass wanted to get all of Plaintiff's clients and have Jordan Harlow take over the

3020-a hearings without her, but get her clients. He planned to remove Plaintiff and her attorney

partners from doing the job of representing anyone. Glass knew that non-attorneys are permitted

to represent Respondents in Arbitration in New York State yet he permitted Defendant Portelos

to use Plaintiff's picture and to lie about her, that she was giving legal advice, with the intent to

stop anyone from hiring her to do 3020-a hearings, for his personal and professional financial

gain and renown. Glass is aware that filing a false statement with the police/District Attorney

with the intent to pursue criminal charges when there is no crime is a misdemeanor/felony in

New York State. (Penal Code Article 175). When Portelos posted the Guide to 3020-a Hearings

with Plaintiff's information which she obtained under the Freedom of Information Law (FOIL),

Glass sent out a comment through Portelos' social media "Beware of snake-oil salesmen" –

referring to Plaintiff. Defendant Glass bears liability for the acts of his employee Defendant

Jordan Harlow for reasons including, but not limited to, his failure to supervise Harlow and his

failure to uniformly enforce policies of internet use and computer abuse by Defendant Portelos and instead, encouraged and empowered Portelos' actions against Plaintiff for his personal and professional gain. Defendant Bryan Glass has an office at 100 Church Street, 8th floor, in Manhattan.

6. Defendant Jordan Harlow ("Harlow") is the Associate who works on 3020-a arbitration for the Glass Law Firm. In 2013-2014 he teamed up with Plaintiff to do 3020-a hearings, but spoke badly about her behind her back to deliberately stop her from getting clients and he could get her business. In May, 2016, Defendant Harlow saw one of the 3020-a clients of Glass Krakower talking with Plaintiff in the waiting room of 100 Gold Street, where hearings take place. The charged employee was asking Plaintiff to help her and to help Harlow, who, she felt, was not defending her properly. Plaintiff was on another case with another attorney and could not take the case, so she turned the offer down. Immediately after, according to V.B., Harlow told his client never to speak with Plaintiff, that in every case Plaintiff worked on the teacher was terminated, and Plaintiff was not an Attorney and did not know what she was talking about. On or about June 9, 2016, V.B. was so unhappy with Harlow's work that she fired him, and he threw all of her papers at her face and stormed out. V.B. could not proceed by herself and was terminated by the Arbitrator solely because of Defendant Harlow's actions. On October Defendant Harlow is under the supervision of Defendant Glass, and works with Defendant Portelos in the attacks on Plaintiff described herein. Harlow shares an office with Defendant Bryan Glass at 100 Church Street in Manhattan.

7. At all times relevant in this Complaint, Defendant New York City Department of Education ("Department") is currently and was an employer within the meaning of the Constitution of the State of New York and was a governmental entity acting under color of the laws, statutes,

ordinances, regulations, policies, customs and usages of the State of New York. Plaintiff alleges that Defendant the New York City Department of Education ("Department") bears vicarious liability for the acts of the individual defendants for reasons including, but not limited to, its' failure to supervise its employees and its failure to uniformly enforce policies of internet use and computer abuse. As such, the Department is liable for the defamatory injury to the reputation of Plaintiff, the hacking into Plaintiff's blog, and ignoring the violations of the rules and regulations of the Department by Defendants Portelos and Celli, both employees of the Department throughout the years of the attacks on Plaintiff. These Regulations are in place to prevent/stop any employee from doing what Francesco Portelos and Lucio Celli have been allowed to do, namely use the internet for their extortion, harassment and threats as public employees of the Department, not as private citizens. Yet the Department has ignored Defendants' violations of these rules and regulations despite terminating other employees at 3020-a for exactly the same misconduct for more than 10 years.

8. Plaintiff filed a Notice of Claim, Claim number 2016-P1012684 against Defendants the New York City Department of Education, Portelos and Celli, for the ongoing harm done to her. Plaintiff never received any response to her claim.

9. Plaintiff is informed and believes and based thereon alleges that, at all times mentioned, Defendants, in doing the things herein mentioned, were acting within the scope of their authority as agents and employees with the permission and consent of the law firm of Glass Krakower and the New York City Department of Education.

10. Plaintiff is informed and believes and based thereon alleges that, at all times mentioned, Defendants, in doing the things herein mentioned, formed a partnership to work together in engaging in the wrongful conduct directed towards Plaintiff, which wrongful acts caused

resulting damage to Plaintiff, as further alleged herein. By filing this action, Plaintiff seeks

substantial redress for the significant harm caused by Defendants' intentionally tortious behavior

and to send a message that such conduct will not be tolerated.

## STANDARD OF REVIEW

11. Congress enacted the Computer Fraud and Abuse Act ("CFAA") in 1984 in an attempt to

address the emergence of computer crimes, namely to prohibit breaking into computers in order

to access or alter information. See United States v. Valle, 807 F.3d 508, 527–28 (2nd Cir. 2015);

WEC Carolina Energy v. Miller, 687 F.3d 199, 206 (4th Cir. 2012); Pub. L. No. 98-473, 98 Stat.

1837, 2190 (1984); H.R. Rep. No. 98-894, at 6 (1984), reprinted in 1984 U.S.C.C.A.N. 3689,

3692. Prior to the CFAA's enactment, law enforcement had been forced to bootstrap

enforcement efforts against computer crime by relying on statutory restrictions designed for

other offenses. See S. Rep. No. 104-357, at 11 (1996) (accompanying the 1996 amendments to

the CFAA). Congress has modified the CFAA multiple times, most recently in 2008, as it

continues to address the changing climate of computer crime, gradually adding protection for

privately-maintained computers and incorporating civil remedies. See Pub. L. No. 110-326, 122

Stat. 3561, 3563 (2008); Kilpatrick Townsend, " The Computer Fraud and Abuse Act: An

Underutilized Litigation Weapon" *Technology Litigation Desk Reference,* January 1, 2009.

12. Actions brought under the CFAA are subject to a two-year limitations period. See CFAA

§(g).

13. Because the CFAA is a federal statute, any civil action brought thereunder triggers federal

question jurisdiction and may be filed in a federal district court. Without the 'pattern' and

'enterprise' elements essential to prove a RICO violation, the CFAA provides a basis to bring a

civil action predicated on a scheme to defraud . . . The jurisdictional element of the

CFAA is satisfied by virtue of the requirement that any violation of the Act concern a "protected

computer," defined as a computer "used in interstate or foreign commerce or communication."

See CFAA at §§ (a)(5)(A); (e)(2). This requirement is easily satisfied, as under this definition

"virtually any computer that sends e-mail in the course of its business is a 'protected computer.'

See *U.S. v. Ivanov,* 175 F. Supp. 2d 367 - 2001.

14. A third and final threshold requirement of civil claims filed under the CFAA is that a

plaintiff plead and prove at least $5,000 in "loss," or,  "(A) causes loss to one or more others of a

value aggregating $ 1,000 or more during any one year period." The CFAA defines "loss" to

include "any reasonable cost to any victim, including the cost of responding to an offense,

conducting a damage assessment, and restoring the data, program, system, or information to its

condition prior to the offense, and any revenue lost, cost incurred, or other consequential

damages incurred because of interruption of service. See CFAA §(a)(5)(B)(1); CFAA §(e)(11).

15. The various civil causes of action contemplated by the CFAA can be grouped into three

prominent categories: (1) using unauthorized access to fraudulently acquire valuable information

from a computer; (2) causing damage through the unauthorized transmission of computer

passwords; and (3) causing unauthorized damage to computer data or causing damage to

computer data through unauthorized access. Lack of authorization is a common element of each.

See Nick Akerman & Patricia Finnegan, *Civil Relief Under* CFAA, NAT'L. L. J., Dec. 24-31, 2001,

at A19; CFAA at gg (a)(4); (a)(5)(A). In Register.com, Inc. v. Verio, Inc., the defendant used

several robotic devices to download customer information from a competing domain name

registry's web site. The defendant used the data to solicit customers in direct competition with the

plaintiff-registry. Importantly, the plaintiff's customer data was publicly available from the

plaintiff's website. Nevertheless, the court concluded that the defendant's actions violated section

1030(a)(2)(C) of the CFAA. See CFAA at gg (a)(4); (a)(5)(A).27;126 F.Supp.2d 238, 243, 253

(enjoining defendant's actions) (S.D.N.Y. 2000); Int *7.* Airport Centers, LLC v. Citrin, *440 F.3d*

*418 (7th Cir. 2006);* see also Four Seasons Hotels and Resorts, B.V. *v.* Consocio Barr*, 267 F.*

*Supp. 2d 1268, 1322-23 (S.D. Fla. 2003);* CFAA at §1030(a)(4) (a violation occurs where a person

"accesses a protected computer without authorization, or exceeds authorized access").

16. Several courts have alternatively tied authorization to employee misconduct. For example, in

*Shurgard Storage Centers* v. *Safeguard Self Storage,* 119 F. Supp. 2d 1121 (WD), the court, noting

that "the authorization for [the plaintiff's] . . . employees ended when the employees began acting

as agents for the defendants," concluded that the employees "lost their authorization and were

'without authorization' when they allegedly obtained and sent the proprietary information to the

defendant via e-mail." Thus, under *Shurgard,* an employee is seemingly without authorization for

purposes of the CFAA whenever the employee uses a computer for any reason that is against an

employer's interests. *See id.* at 1124—25.

17. Furthermore, in some civil cases courts have held that, where a contract regulates an

individual's access to a computer, any actions in breach of the contract constitute unauthorized

access for purposes of the CFAA. For example, in *America Online* v. *LCGM, Inc.*, a spammer

purchased an AOL e-mail account to collect the addresses of AOL users. AOL's Terms of

Service expressly prohibited this kind of activity. The court pithily reasoned that "Defendant's

actions violated AOL's Terms of Service, and as such was [sic.] unauthorized." 46 F. Supp. 2d

444, 448 (E.D. Va. 1998).

STATEMENT OF FACTS

18. Plaintiff started her advocacy with members of Local 32B&J in 1994. She attended members' arbitration when they were charged with misconduct. In 2003 Plaintiff met David Pakter, a teacher in the Brooklyn rubber room. With David helped Plaintiff go into the rubber room 2-3 times every week so that she could start talking with the re-assigned teachers. Plaintiff was the only person who visited the rubber room, so the teachers and other re-assigned Department employees wanted to talk with her. She started writing down everything, and then was invited to observe the "teacher trials", or 3020-a arbitration, which she continues to do today but now works on the 3020-a cases as a paralegal assistant. Plaintiff stopped working for the UFT in 2010, when the large "official" rubber rooms closed, and Plaintiff started her own consulting business as a non-lawyer advocate.

19. Defendant Glass and Plaintiff worked together on 3020-a hearings starting in 2011 and ending in 2013. In 2011, Defendant Glass asked Plaintiff to assist him with a 3020-a of teacher Christine Rubino had been charged for putting a comment on her facebook page which sounded like she wanted her students to drown. Plaintiff sat at the arbitration table with Defendant Glass throughout the hearing as his assistant. The Respondent was terminated. The closing arguments transcript is attached, with the cases the Department used to prove their case against Ms. Rubino, namely that the Department would not allow a teacher employed by them to misuse their online presence to the detriment of the Department. This type of inappropriate use of the computer is what Defendants Portelos and Celli are doing currently, without any consequences from the Department.

13. In 2012, Defendant Glass asked Plaintiff to give him and Jordan Harlow 3020-a cases so that Plaintiff could train Defendant Harlow in the procedures used at these hearings. Plaintiff agreed, and gave Glass/Harlow five (5) cases to try in 2012-2014. Plaintiff worked on these cases as

Harlow's paralegal. The first three clients were terminated due to Harlow's incompetence, and

the fact that Harlow would not listen to any suggestions given to him by Plaintiff. Client #4,

B.K., was called into Defendant's office in or about February 2014 and told by Defendant Glass

and Defendant Harlow to resign, but not to tell Plaintiff. B.K. did tell Plaintiff. Plaintiff was

never paid for her work on this case ($2000). Glass and Harlow then told client #5 to resign or

take a deal, and he took a very long suspension and became an ATR. Defendants Glass and

Harlow told K.C. not to tell Plaintiff. He did, in December 2014. Plaintiff was never paid for her

work on that case ($2000).

14. In 2014 Defendant Francesco Portelos went through a 3020-a with more than 38 charges

against him. Arbitrator Felice Busto made the decision not to terminate him, but give him a fine

of $10,000. Here are the sustained charges for which Arbitrator Felice Busto found Francesco

guilty, on pp.7-13 of the Opinion and Award :

SPECIFICATION 6:
During the 2011-2012 school year, Respondent disclosed confidential Department information, including, but not limited to, witness statements, on a non-Department website, including, but not limited to, protectportelos.org.

SPECIFICATION 8:
During the 2011-2012 school year, Respondent inappropriately accessed and/or retrieved Department information, including, but not limited to, a Department email account and/or email messages of another Department employee.

SPECIFICATION 9:
During the 2011-2012 school year, Respondent inappropriately accessed a Department email account and/or email messages of another Department employee.

SPECIFICATION 25:
On or about January 28, 2012, Respondent, without consulting, notifying, and/or seeking authorization from Principal Hill or the I.S 49 administration, accessed the school website, www.Dreyfus49.com, as a site administrator and manipulated the settings to revoke the administrative rights and/or privileges of all individuals previously granted such administrative access.

SPECIFICATION 28:

On or about February 2012, Respondent refused to transfer control and/or ownership of the school website, www.Dreyfus49.com, to Principal Hill, I.S. 49, and/or the Department after agreeing to do so at a meeting with Principal Hill and Superintendent Erminia Claudio.

SPECIFICATION 29:
On or about November 2012, Respondent, without consulting, notifying, and/or seeking approval from Principal Hill or the I.S 49 administration, altered the website www.welearnandqrowtoqether.com, which Respondent had created for the school with Principal Hill's approval, to automatically transfer visitors to his alternative website, https://sites.qooqle.com/site/occupywarrenstreet/, which contained derogatory information about I.S. 49, Principal Hill, and/or the Department.

SPECIFICATION 31:
During the 2012-2013 school year, Respondent, without consulting, notifying, and/or seeking approval from Principal Hill and/or the Department, altered the school website, www.Dreyfus49.com, to automatically redirect visitors to his website, protectportelos.org, which chronicled his issues with various groups including Principal Hill, I.S. 49, and the Department.

SPECIFICATION 33:
During the 2011-2012 school year, Respondent recorded a video in a school facility, namely, I.S. 49, of a student during school hours, without permission or authority.

SPECIFICATION 34:
On or about December 12, 2012, Respondent notified I.S. 49 Superintendent Erminia Claudio that he showed the video referenced in Specification 33 to parents, without permission or authority.

SPECIFICATION 36:
On or about and in the month of September 2012, Respondent:
A. Sent an email message to a parent without permission or authority stating, in sum and substance, that the teacher who sent their son to summer school was not certified to teach and that this message identified the teacher and indicated that her teaching certification had expired.

B. Failed to notify and/or confirm with I.S. 49 administration that the teacher referenced above lacked certification prior to contacting the parent.

SPECIFICATION 38:
By committing one, some, or all of the actions described in the above Specifications, Respondent's actions:
A. Had a disruptive and/or negative impact on students, staff, and/or administration at I.S. 49 and the Department.
B. Caused negative publicity, ridicule, and notoriety to I.S. 49 and the Department."

Any one of these charges were enough to terminate Portelos, but Arbitrator Felice Busto did not

fire him. Portelos did not appeal the decision, but retained Bryan Glass to sue his principal, the
Superintendent, and the Department of Education for charging him in the first place. He believed
it was his turn to get even. Portelos went postal in his attack. See Portelos v NYC Dep't of Educ.,
et al, U.S.D.C. for the Eastern District, 12-cv-03141-LDH-VMS.

15. Portelos, when he believes that someone has not treated him correctly, goes into attack mode.
He wants any and all opponents to his greatness to be harmed, and taught a lesson. The last straw
for him as far as Plaintiff was concerned was the meeting Portelos had with Randi Weingarten in
August, 2015. Before going to this meeting Portelos told everyone that he was going to be hired
to work at the UFT (just like Plaintiff was in 2007). Randi Weingarten did not hire him. Portelos
was embarrassed, which increased his rage, to get even with those more fortunate than he. On
September 20, 2015, Portelos set up a meeting in Queens with almost 50 disgruntled UFT
members (all of whom would have been people who could use Plaintiff's help), and had as a
speaker Jim Callaghan, a fired former employee of the UFT who despised Plaintiff because she
had been hired to work on the rubber rooms and he wasn't, he remained a reporter for the UFT
newspaper. Callaghan resented Plaintiff, and made fun of her visits to the rubber rooms because,
he told her, "these members are all guilty". Portelos created a video of Mr. Callaghan's speech,
wherein Callaghan told the crowd that Plaintiff was a homophobe, but Randi hired her anyway.
Plaintiff received a copy of the video, and called Portelos to ask him what happened, and to take
the video off of the internet. Portelos hung up on Plaintiff, refused to take the video down even
though he knew that Plaintiff was not a homophobe. Portelos and Plaintiff never spoke to each
other again. But now Plaintiff was The Enemy, and Portelos started his malicious campaign to
end Plaintiff's advocacy forever. If he could not be famous as a UFT Special Representative,

Plaintif must be the reason, and he would "get" her for preventing him from getting his dream job.

16. At the same time, Defendant Lucio Celli received a U-rating from his Supervisors, and started sending rude and insulting emails to 50-70 people at one time, spreading lies about his administrators. He sued them all in June 2015, in the Eastern District, 15-cv-03679-BMC-LB. Defendant Celli is not able to handle challenges to anything he does, and saw in Defendant Portelos a kindred spirit as Portelos enacted a "get even" program and strategy.

17. From September 2015 to the present, the individual Defendants set up a scheme to deny Plaintiff her right to earn money as a non-lawyer advocate by characterizing her as a criminal, fabricating laws that they claimed she was breaking, and hacking into her website in order to enrich themselves. Defendant the New York City Department of Education was aware of these malicious acts yet did nothing to prevent, block, or stop their substitute employees Portelos and Celli even though both men violated the mandate of the Department to be role models for their students.

18. Specifically, the plan created by Defendant Portelos worked as follows with his Assistant, Defendant Celli: Plan A was to stop Plaintiff's business and prevent her from making any income. An educator would ask for Plaintiff's help in editing a lawsuit, petition, EEOC complaint, or whatever, and after Plaintiff worked on the documents editing/writing for free, the educator would send Plaintiff money as a "thank you", despite the fact that Plaintiff never asked for any payment. A few days after Plaintiff received the money, the educator would demand that Plaintiff give it back. If Plaintiff did not give the money back, the educator called Plaintiff a thief, liar, and criminal. At no time did Plaintiff demand money nor did she ever call herself an attorney. She gave her opinion.

Plan B: knowing that Plaintiff was very successful as an assistant to Attorneys who work on 3020-a arbitration for teachers, individual Defendants decided to broadcast a "fact" that they made up, namely that Plaintiff was practicing law without a license and must be criminally prosecuted for working at the table in 3020-a cases, an absolute falsehood. The individual Defendants encouraged anyone around the United States to extort money from Plaintiff citing a "pending prosecution" if she did not pay up, or do whatever favors were requested for working on 3020-a arbitration. In New York State there is no prohibition for non-lawyer representation in arbitration.

19.  Portelos then put in place his scheme to deny Plaintiff her business and her advocacy work. He and Celli sent emails out to all who would listen, on his Facebook page, his website, and other social media from November 2015 until the present, saying:

"…you stopped helping me directly with my lawsuit. But, you continued to help me in PERB. You know me, I don't really think when I'm upset……(Celli, November 9, 2015).

Where is my money? You took and did not render services. I have many damaging recordings…" (Celli, December 30, 2015)

"We need to teach Betsy a lesson now….(Celli, January, 2016);

"Yeah, this wont go well…With every UFT member and parent who asks me "What about Betsy?" and I respond "There are better people to use than Betsy." I have some solace knowing that's money out of her pocket. A lot of money." (Portelos, January 20, 2016)

20. Friends of Plaintiff were attacked as well. Laurie Luft, a teacher and close friend of Plaintiff, came under attack on January 24, 2016, after she defended Plaintiff. Portelos, in retaliation,

revealed that she was on a medical sabbatical to restore her health to all on Laurie's ATR
Support Facebook page members. Then he sent this email out:

"Many are reporting the ill politics in Laurie's group. It's more about Laurie than it is about ATR
issues. Good job Betsy. How's business?" (Portelos, January 24, 2016)

21. Celli, on February 27, 2016:

"YOU, Betsy Combier, are an evil cunt……I am glad I recorded you being a liar and a wretched
human being."

To Laurie Luft, Francesco Portelos, Randi Weingarten, Attorney Steve Morelli, Jonathan
Hinesley, Claudia Giordano and Lydia Howrilka:

"Betsy threatened my lawsuit….You are only a chip in Betsy's evil plan……you got my email
from evil Combier to harass me…I only called Betsy evil and sick…"

In March 2016 Celli sent emails to a mass group numbering about 50 addresses for each email,
including Preet Bharara, Cy Vance, the Bronx DA, PERB, all the newspaper reporters, everyone
who works at the UFT and the Department of Education, saying that Plaintiff went behind
teachers' backs and spoke with Courtenaye Jackson -Chase, General Counsel of the NYC
Department of Education to harm people, and she must be stopped. This was a lie.

"Ms. Combier told me the story of how she was hired at the UFT – not a plausible story to me.
Most interesting fact told by Ms. Combier, the UFT made backdoor phone calls to agencies, like
PERB, while she worked for the Union – ex parte conversions…..Ms. Combier is working with
my lawyer and helped my lawyer to lie to me…..Ms. Combier informed me that she records
conversations as well – she attends many 3020-a hearings. Somehow or someway we have to

force the truth out." (Celli, March 16, 2016, from his Department email address "Celli Lucio

(08X519)"LCelli@schools.nyc.gov)

These emails created a very difficult time for Plaintiff at 3020-a hearings, where arbitrators were

informed that she taped secretly, which is absolutely untrue. Plaintiff has never taped anyone

secretly at any hearing, anywhere. Plaintiff also never said anything about backdoor calls to

PERB. Celli knew that his statements were lies, but he is empowered by Portelos as well as by

the support Portelos receives from Defendants Glass and Harlow.

22. In August 2016, Plaintiff saw that an entire section of her blog NYC Rubber Room Reporter,

titled "3020-a Arbitration Newswire" was missing. Everything, all the articles under that title as

well as the picture of UFT General Counsel Adam Ross, UFT President Michael Mulgrew, NYC

Department of Education Carmen Farina, and former General Counsel Courtenaye Jackson

Chase, as well as the video obtained through FOIL by Plaintiff of a meeting held at Education

headquarters Feb. 27, 2015, was gone. The picture and video appeared on Defendant Portelos'

website "UFT Solidarity" under the toolbox link was part of the stolen/deleted material taken

from Plaintiff's blog post. Portelos had created the "UFT Solidarity 3020-a Guide" and posted it

on September 30, 2016, using Plaintiff's material which he had deleted from her blog. At the end

of this Guide Portelos advised all readers to hire Attorney Bryan Glass for the 3020-a, and this

was starred: * *"do not get help from someone without a law degree".* On June 10, 2016, Glass

wrote "Beware of snake oil salesmen", which refers to Plaintiff.

22. Defendants Portelos, Celli, Glass and Harlow were so focused on interfering with Plaintiff's

life and ending her career as a teacher advocate that they created a poster of her which was sent

to her on October 11, 2016 by a former client of hers and Bryan Glass, Jim Geist, threatening her

with  imprisonment for putting his social security number on her website, Parentadvocates.org.

This threat was based upon an outrageous lie. Indeed, it was Bryan Glass and Jordan Harlow who put Geist's Social Security number into the online public data of the New York State Supreme Court at 60 Center Street in Geist's Appeal of his 3020-a Arbitration decision which terminated his employment. This was an error made by Glass and Harlow, not Plaintiff. Geist's SS# is not on Plaintiff's website. Geist told Plaintiff that he would be filing police charges against her, and "joining the lawsuit". Plaintiff sent the papers filed by Glass and Harlow to Geist, but he did not stop his harassment. With the support of the individual Defendants in this case, on September 21, 2017 Geist went to the West Milford New Jersey police Department and filed a police complaint that was based upon his lie, that his social security number was on Plaintiff's website. Geist's social security number is not on Parentadvocates.org, therefore Geist, with the support of Defendants Glass, Harlow, and Portelos, made a false statement to the New Jersey Police Department. Plaintiff received a threatening email from police officer Bruce Lederman at 2:16AM on September 22, 2017.

23. The poster created by Defendant Portelos sent to Plaintiff via email from former Glass/Harlow client James Geist threatened Plaintiff that he would report her for crimes to the District Attorney unless she took down her post about him. Geist sent her the poster created by Portelos, which was to have people sign up to get all the money back that had been paid to Plaintiff over the years. This poster is available online at: www.tinyurl/BetsyCombier, and https://docs.google.com/forms/d/e/1FAIpQLSf_1coyF9VLCV3i5HLZFVYk25kWHTreGtc0aD CKyrV71nGA4w/viewform

This poster which was created by Defendant Portelos, and showed Plaintiff's face from the TV Show "Lawline", which Bryan Glass had suggested she be on camera with him, and the title "Have You Ever Paid For Legal Advice/Work To Betsy Combier?" And, if so, then you must

get your money back because Combier is a thief and a pretender. The date of creation of this poster is unknown.

24. On October 19, 2016, Portelos sent out an email across the country stating:

"Friends and Colleagues, please be careful. Unfortunately, so called advocate Betsy Combier lost another case where she allegedly provided illegal legal consultation for a New York City UFT member in a 3020-a hearing, something she does not share on her site. Just be vigilant.

Apparently, others have been warning about this for some time. and if you have been burned, join the others in the complaint. We have enough trouble with our employer and union. We don't need another obstacle when it comes to surviving. www.tinyurl.comBetsyCombier"

Portelos attached the poster saying that Plaintiff stole money.

But that's not all. Portelos also attached a blogspot called nycrubberroomreportercom.blogspot.com, saying :

"Has Elizabeth Betsy Combier lost her attempt to grab money from a New York City Church? It seems that Judge O. Peter Sherwood has seen through….."

This statement refers to the theft by Plaintiff's church, Madison Avenue Presbyterian,  of the estate and ashes of Plaintiff's mother after the death of her mother on March 15 1998. Plaintiff tried to get the estate back, and suffered heart failure on July 22, 2006. Portelos and Celli used the teacher emails gathered from various listervs for teachers in New York City and Los Angeles, California, to harm Plaintiff both in New York City as well as outside New York City.

This allusion to her stealing from her church – in addition to her stealing from all her clients, was extremely upsetting to Plaintiff who in January 2017  was hospitalized and had cancer surgery.

24

This blog, NYC Rubber Room (nycrubberroom.com) was never created or worked on by Plaintiff, but Portelos posted articles himself, without Plaintiff's knowledge. He altered posts with his own material, and then put as the owner of the blog Plaintiff's Foundation, the E-Accountability Foundation, with her home address and telephone number. Plaintiff cannot do anything about this blog as she is not an administrator, and does not know Word press. In March 2017 Plaintiff was threatened with a federal lawsuit if she did not remove a picture on this blog. The photographer, William Farrington, claimed that Plaintiff owed him money for posting the photo, but Plaintiff did not do that and could not take down any photo on this blog, because she is not the one administering it, and has no idea how to do Word Press. She received a proposed lawsuit for supposedly writing this fake blog and the Attorney, Michael Higbee, in California, told Plaintiff that they were going to sue Plaintiff for $150,000 in damages. Plaintiff went to WHO IS? And found out that, upon information and belief, Defendant Portelos had put Plaintiff's name, Foundation, Foundation address and her home telephone number as the buyer of the domain "nycrubberroom.com" from a re-seller located in Nevada.

25. On September 21, 2017, the individual Defendants supported Jim Geist as he made a false statement to the West Milford New Jersey Police Department that Plaintiff had his Social Security number on her website Parentadvocates.org, in pursuing the baseless attacks and harassment set up in 2015 and continuing.

26. On December 4, 2017 Defendant Portelos posted on his "UFT Solidarity" that Plaintiff, an "alleged" parent advocate, was being investigated by the Manhattan District Attorney for her crimes. This statement is an absolute lie, posted with the sole intent to harm Plaintiff's very successful parent advocacy for almost 20 years.

27. Defendants Portelos and Celli are teachers at the New York City Department of Education. One of the policies of the Department is that no employee can send out emails during the school day using their DOE email and/or the DOE computers unless under unusual circumstances. Yet the New York City Department of Education has ignored the extremely inappropriate mass emails from Francesco Portelos and Lucio Celli during the school day. Thus, the NYC DOE allows Defendants Portelos and Celli to defame, libel, and scar Plaintiff without any repercussions and is complicit in the schemes described herein. This is a pattern and practice for Defendants Portelos and Celli, who send out emails which are racist, degrading and insulting, without any facts upon which to base their claims. Plaintiff's invocation of the equitable powers of this Court is just and proper based upon a pattern, practice, custom and policy of bad faith, harassment, defamation and unlawful use of the internet to further a corrupt scheme created and pursued by Defendants against Plaintiff's person and property.


<u>FIRST CAUSE OF ACTION</u>
Violations of 42 U.S.C. 1983; C.F.A.A. 18 U.S.C. §1030 – computer/internet fraud affecting
interstate commerce
(As against all Defendants)

28. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 27 of this complaint, and incorporates the same by reference, as though fully set forth herein.

29. In abusing their official and individual duties as role models for students at the Department on how to use social media and have respectful exchanges on the internet, as described above, as well as for hacking into Plaintiff's blog NYC Rubber Room Reporter, deleting the Section "3020-a Arbitration Newswire", the basis for Plaintiff's advocacy, and for placing the video and information from the February 24, 2015 Department meeting stolen from (and deleted from) Plaintiff's blog, Defendants Celli and Portelos violated the terms of service stated clearly on

Plaintiff's blog, and were malicious and focused on destroying proprietary information belonging to Plaintiff in order to enrich themselves with the support of Defendants Glass and Harlow.

30. Defendants Glass, Harlow, and the New York City Department of Education, had and have the authority and capability to stop Defendants' actions described herein, but did not do so.

31. As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, lost earnings, and other pecuniary loss.

32. Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, defendants (a) acted with the intent to injure, vex, annoy and harass Plaintiff, (b) subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and (c) intentionally misrepresented and concealed material facts known to the defendants with the intention on the part of the defendants of thereby depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury. As a result of the foregoing, plaintiff is entitled to exemplary and punitive damages against Defendants.

## SECOND CAUSE OF ACTION
### False Light Invasion of Privacy
### (As Against All Defendants)

33. Plaintiff repeats and realleges each and every allegation in Paragraphs 1 through 32 inclusive of this Complaint and incorporates the same by reference, as though fully set forth herein.

34. Defendants' partnership of harm declaring, without any fact or truth, that Plaintiff was a thief and undeserving of helping any teacher, anywhere, as well as supposedly "stealing" from her church, was highly offensive and objectionable, judged by a reasonable person standard.

35. By consistently and relentlessly painting Plaintiff as a liar, as dishonest, and as self-absorbed,

27

Defendants purposefully and with malice placed Plaintiff in a highly offensive false light.

36. Defendants intended to paint Plaintiff as the perpetrator of fraudulent allegations to gain money and prestige at Plaintiff's expense, and under the guise of advocating for Plaintiff's "victims", hacked into her websites and blogs and, upon information and belief, Plaintiff's emails, to secure information to be used against Plaintiff and for Defendants' financial gain.

37. As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, expense incurred in defense and her work, lost earnings, and other pecuniary loss exceeding $15,000.

38. Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, defendants (a) acted with the intent to injure, vex, annoy and harass plaintiff, (b) subjected plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and acted with malice, (c) intentionally misrepresented and concealed material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury.

39. As a result of the foregoing, Plaintiff is entitled to exemplary and punitive damages against Defendants.

THIRD CAUSE OF ACTION
Unlawful Access To Stored Communications, Civil Action
(18 U.S.C. §2707 as against Individual Defendants)

40. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 39, inclusive of this Complaint and incorporates the same by reference, as though fully set forth herein.

41. Individual Defendants unlawfully and maliciously hacked into Plaintiff's blogs, websites, and other communications in order to harm her business and person.

42. Relief requested:

**(1)** such preliminary and other equitable or declaratory relief as may be appropriate;
**(2)** damages under subsection (c); and
**(3)** a reasonable attorney's fee and other litigation costs reasonably incurred.

**(c)DAMAGES.—**
The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

FOURTH CAUSE OF ACTION
U.S. Constitution - First Amendment (Freedom of Speech and Freedom of Press Clauses)

43. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 42, inclusive of this Complaint and incorporates the same by reference, as though fully set forth herein.

44. The Free Speech and Free Press Clauses of the First Amendment to the U.S. Constitution provide: "Congress shall make no law . . . abridging the freedom of speech, or of the press."

45. The actions cited in this complaint are based upon a scheme to prevent Plaintiff from her lawful communications on her websites and blogs by maintaining the lie that she cannot advocate for teachers and charge for her services.

46. The Defendants maliciously attempt, by the actions such as hacking into her blogs and websites, to restrict her speech and online posting in order to destroy her business and end her ability to pursue her business, in direct violation of the First Amendment rights due to Plaintiff under this clause.

FIFTH CAUSE OF ACTION
Violation of the U.S. Constitution, Fifth Amendment

47. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 46, inclusive

of this Complaint and incorporates the same by reference, as though fully set forth herein.

48. The Fifth Amendment says that :

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

49. Individual Defendants Portelos and Celli created out of thin air a crime, the unlawful practice of law for assisting teachers and their lawyers at arbitration, and used this false crime as the basis of a poster with Plaintiff's face from a TV Show with Defendant Glass named "Lawline" to interfere and maliciously destroy Plaintiff's business and career as a teacher and parent advocate.

50. Defendants placed the poster convicting Plaintiff of the crime onto Google, without Plaintiff having any access to complain or protest before the poster became public and subjected Plaintiff to national and international rebuke and disdain.

51. Defendants use the false criminality they say Plaintiff was convicted of to destroy her business and reputation and to gain benefits for which Defendants are not due.

52. Plaintiff requests a declaratory judgment and injunction whereby Defendants Portelos and Celli are prohibited from writing about or mentioning Plaintiff in any post, website, blog or email, as well as any other punitive relief a jury and/or this Court believes is just and fair under the circumstances cited herein.

<u>SIXTH CAUSE OF ACTION</u><br>Violation of the U.S. Constitution – Fourteenth Amendment

(Due Process Clause)

53. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 52, inclusive of this Complaint and incorporates the same by reference, as though fully set forth herein.

54. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

55. Defendants hacked into Plaintiff's blogs and websites, created a poster citing a fact that she was a thief, criminal and "evil fucking cunt" without any justification whatsoever.

56. Individual Defendants communicated false statements via their websites and email listservs by means of their employer's and supervisors' negligence in monitoring/stopping/preventing the use of educators' email addresses for the purpose of fraud and destruction of Plaintiff's rights to life, liberty and property.

57. Plaintiff requests monetary relief for the destruction caused to her life and property, an amount to be decided at trial.

<u>SEVENTH CAUSE OF ACTION</u>
Defamation and Libel per se
(As Against All Defendants)

58. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 57, inclusive of this Complaint and incorporates the same by reference, as though fully set forth herein.

59. The tweets, emails, website posts and blog posts about Plaintiff, read by an audience numbering in the thousands, were deliberately, maliciously and knowingly false and defamatory, and had a natural tendency to injure the Plaintiff's reputation. Plaintiff is informed

31

and believes and based thereon alleges that even though Plaintiff is not a "public official" (and

thus a showing of "actual malice" is not required by the first Amendment), Defendants Portelos

and Celli did make the statements mentioned herein either knowing they were false or in reckless

disregard of the truth and with actual malice, hatred and ill will.

60. Defendants ignored the hacking into her blog and deletion of information on 3020-a

arbitration in New York City to obtain financial gain and profit from Plaintiff's loss.

61. As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has

suffered general and special damages including, without limitation, harm to Plaintiff's

reputation, emotional distress, expense incurred in defense of her actual performance as an

advocate, lost earnings, and other pecuniary loss.

62. Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct

alleged herein, Defendants (a) acted with the intent to injure, vex, annoy and harass plaintiff, (b)

subjected plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, and (c)

intentionally misrepresented and concealed material facts known to the Defendants with the

intention on the part of the Defendants of thereby depriving Plaintiff of her legal

rights and otherwise cause Plaintiff injury. As a result of the foregoing, Plaintiff is entitled to

exemplary and punitive damages against Defendants.


### EIGHTH CAUSE OF ACTION
Intentional infliction of Emotional Distress
(As Against All Defendants)

63. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 62, inclusive

of this complaint and incorporates the same by reference, as though fully set forth herein.

64. Defendants' intentional and/or reckless campaign of defamatory harassment against Plaintiff

and intentional and/or reckless disregard for the truth or facts were beyond the bounds of decency and is therefore extreme and outrageous conduct.

65. As a direct and proximate result of the Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including, without limitation, harm to Plaintiff's reputation, emotional distress, expense incurred in defense and repair of her credit rating, lost earnings, and other pecuniary loss.

66. Plaintiff is informed and believes and based thereon alleges that, in engaging in the conduct alleged herein, defendants (a) acted with the intent to injure, vex, annoy and harass Plaintiff, (b) subjected plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, and (c) intentionally misrepresented and concealed material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of her legal rights and otherwise cause Plaintiff injury. As a result of the foregoing, Plaintiff is entitled to exemplary and punitive damages against defendants.


### NINTH CAUSE OF ACTION
Negligent Supervision
(As Against Glass, Department)

67. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 48, inclusive of this complaint and incorporates the same by reference, as though fully set forth herein.

68. Plaintiff informed and believes and based thereon alleges that Defendants the Department and Glass did not exercise their supervisory authority over Portelos, Celli and Harlow while engaged in the course and scope of their employment during business hours and after.

69. Defendants Department and Glass were deliberately negligent in their supervision in order to gain financially from the actions of Harlow, Portelos and Celli.

70. Thus vicarious liability for each and every cause of action listed herein may be imposed

Defendants Glass and the Department. Glass and the Department are, and must be, held vicariously liable for the misconduct and criminal acts of the Defendants as cited herein.

71. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiff has suffered general and special damages including harm to Plaintiff's business and reputation, emotional distress, lost earnings, and pecuniary loss.

TENTH CAUSE OF ACTION
Violation/Interference with Constitutionally Protected
Rights  42 U.S.C §1983 et seq

72. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 71, inclusive of this complaint and incorporates the same by reference, as though fully set forth herein.

73. Defendants' infringement upon and violation of Plaintiff's rights protected under the statutes listed above was and is intended to harm Plaintiff as an advocate for teachers, and to place a chilling effect upon the exercise of such rights by Plaintiff.

74. Defendants' conduct and actions are intentional, malicious, taken with deliberate indifference and or reckless disregard for the natural and probable consequences.

75. As a direct result of Defendants actions described herein, Plaintiff has suffered and continues to suffer trauma, emotional distress, mental anguish, loss of income, and loss of her health.

76. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages.

ELEVENTH CAUSE OF ACTION
42 U.S.C. §1983 – STATE AND MUNICIPAL VIOLATIONS;
Deprivation of Rights Under Color of Law

77. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 76, inclusive

of this complaint and incorporates the same by reference, as though fully set forth herein.

78. It can be said that to condone lies, false documentation, and the acts cited herein is contrary to Municipal Law and Public Officers Law.

79. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in an amount to be determined at trial as well as punitive damages and costs.

**TWELFTH CAUSE OF ACTION**
Injurious Falsehood, Libel, Defamatory Injury to Reputation,
Tortious Interference With Business Prospects

80. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 79, inclusive of this complaint and incorporates the same by reference, as though fully set forth herein.

81.Defendants deliberately and with malice created a scheme where Plaintiff became the enemy of teachers in order for Defendants to stop Plaintiff from working as an advocate.

82. As a result of the Defendants' crusade to maliciously harm Plaintiff, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and is entitled to damages sustained to date and continuing in an amount to be determined at trial as well as punitive damages and costs.

**DEMAND FOR JURY TRIAL**

PLAINTIFF hereby demands a jury trial for all causes of action and issues which may be determined by jury under federal and/or New York State law.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, on

each and every cause of action as follows:

1.    For general damages according to proof at trial by a jury.

2.    Special damages according to proof at trial;

3.    Award of exemplary damages;

4.    Punitive damages;

5.    Declaratory judgment;

6.    Injunctive relief;

7.    For such other and further relief as the Court deems just and proper.

Dated: December 12, 2017

By: _____

Elizabeth Betsy Combier
Plaintiff Pro Se
315 East 65th Street, 4C
New York, N.Y. 10065

CC via ECF (courtesy of Attorney Giovanetti ngiovana@law.nyc.gov):
Francesco Portelos    Mrportelos@gmail.com
Attorney Bruce Young    bruceayoung181@gmail.com

CC via First Class Mail:

Lucio Celli
2743 Seymour Avenue
Bronx, NY 10469