UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————x

ELIZABETH "BETSY" COMBIER,

               Plaintiff      DOCKET NO. 17-cv-02239 (MKB)(RLM)

    -against-

FRANCESCO PORTELOS, LUCIO CELLI,
BRYAN GLASS, ESQ., JORDAN HARLOW, ESQ.,
NEW YORK CITY DEPARTMENT OF
EDUCATION, CARMEN FARINA, CHANCELLOR
OF THE NEW YORK CITY DEPARTMENT OF
EDUCATION, all sued individually and officially,



               Defendants

————————————————————x

# PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

<div align="center">

**Elizabeth Betsy Combier**
**Plaintiff Pro Se**
**315 East 65th Street, 4C**
**New York, N.Y. 10065**
**917-596-1762**
**Betsy.combier@gmail.com**

</div>

1

PRELIMINARY STATEMENT

Plaintiff Pro Se Elizabeth Combier (henceforth "Plaintiff") respectfully submits to this Court on

the scheduled date set by Judge Margo K Brodie on February 9, 2018 (Docket #58) this

Opposition to Defendants' Motion To Dismiss as well as her Opposition to the Motion For

Sanctions filed by Defendants Bryan Glass and Jordan Harlow and the many Motions and

Demands submitted by Defendant Lucio Celli. This Opposition as well as all other documents in

the Exhibits are being submitted by personal delivery to the Pro Se Office of the Eastern District

for all Defendants except Lucio Celli, who is sent a copy of all papers by FEDEX.

This is a civil action seeking declaratory and injunctive relief, monetary relief, including past

and on-going economic loss, compensatory and punitive damages, costs and fees for violations

of Constitutionally protected rights under the First, Fifth, Fourteenth Amendments, the Computer

Fraud and Abuse Act after Defendants Francesco Portelos ("Portelos") and Lucio Celli, ("Celli")

both public employees working as teachers of the New York City Department of Education

throughout the time charged in Plaintiff's complaint, openly and with malice defamed Plaintiff

and stated on the internet that she was a criminal who was committing crimes against the State of

New York by giving "legal advice" and "writing legal papers" as an attorney without going to

law school. Portelos' Attorneys Bryan Glass and Jordan Harlow did nothing to stop Portelos

from filing the false criminal complaints and posting the poster of Plaintiff still up on the

internet. Glass and Harlow became state actors by profiting off of Portelos' and Celli's schemes

and thus acting without ethics. The Bar has a problem with both of them.

The New York City Department of Education, also a Defendant, has made the teacher discipline

procedure an un-constitutional mess, with a random and arbitrary process set up where any

teacher can be charged by anyone, and tenure law is violated. All NYC DOE Employees not

2

terminated at 3020-a become Absent Teacher reserve or ATRs. Both Portelos and Celli are

ATRs, and are angry, bitter men. Even teachers tenured for 20-30 years become ATR substitute

teachers, who have virtually no rights, no chapter, no chapter leader, and travel from school to

school. These employees with tenure are furious, yet their collective anger did not have any

voice until Portelos gave them the right to scream and yell on the internet, anything anyone

wanted, as long as Plaintiff was called a liar, fake Attorney, evil, and worse. The degrading posts

about NYC DOE employees on "Don't Tread On Me" and Portelos' "Administrators in Need of

Improvement" are shocking, but all posts are anonymous so no one is held accountable. The

NYC DOE does not hold people accountable for anything, and this, with the anger and

frustration of the nomad ATRS, has created the perfect storm of slander and libel against

Plaintiff seen in the EXHIBITS attached to this Opposition. The NYC DOE policy of creating

the group known as ATRS  is very much a mess, and Portelos is picking up the pieces.

In mobbing-prone organizations, which the NYC DOE is currently described as, the control of

information by the core mobbing group is cenral to the creation of an "in" and an "out" group.

Ganging up and proffering multiple accusations against a target or targets can become a rapidly

escalating process and, when it occurs, should function as a red light and an indicator of a need

to slow down and examine the larger context.false statements should be challenged immediately

and not allowed to gather truth through time. The current strategies at the NYC DOE are not

prepared to deal with mobbing. The failure to end bullying, and workplace harassment creates

the breeding ground for mobbing and a failure to provide a safe and positive environment. This

is what the NYC DOE needs to fix, but have not started.

## STATEMENT OF FACTS

Defendants' libel per se and tortious interference with business and commerce is based upon a scheme which involved unauthorized access and hacking into Plaintiff's protected computer used in and affecting interstate commerce to enrich themselves and to give themselves unearned profits and/or renown. Defendants, except for the NYC DOE, with flagrant disregard for Plaintiff's Constitutionally protected rights, joined together and wantonly, recklessly, maliciously, knowingly and purposefully, with malice and without authorization, acting *ultra vires* under a ministerial cloak and in conspiracy with each other under color of state law as well as under Federal Statutes, have deprived Plaintiff of her protected rights by pursuing internet posters, statements and letters on social media saying she was a criminal, thief, liar and evil fucking cunt, and by hacking into her computer in order to deny Plaintiff her right to earn money as an advocate/paralegal. Their stated goal was to individually and officially profit off of her loss of income and good character. (See EXHIBITS A, B, C, D, E). Portelos and Celli never participate in 3020-a hearings, so the enterprise is based on the goal of getting Plaintiff, who is not an attorney and therefore could never compete with Glass or Harlow, defamed enough that Glass is the only "teacher's advocate" in the large city of New York. Glass and Harlow do not like Plaintiff's advocacy because she is taking clients away from them, very simply because she has a dedicated group of lawyers who she works with, and a practice of volunteering her time. But the scheme to end her business by mobbing her has harmed Plaintiff nonetheless. See EXHIBITS A, B.

Starting in 2003 Plaintiff went into the NYC "rubber rooms" and attended 3020-a hearings as an observer (until she started working with Attorneys on 3020-a in 2011). She studied the rules, arbitrator decisions, and arbitrators. In 2007 Randi Weingarten, President of the United

Federation of Teachers, (UFT), hired her to be a Special Representative at the UFT for the UFT members in the rubber rooms. Plaintiff met Celli in the Bronx rubber room at 501 Cortlandt Street. When the large warehouses were closed in 2010 due to Plaintiff's efforts and her media connections, Plaintiff stated working independently as a consultant and then as a paralegal in 3020-a hearings.

In 2002 Plaintiff started her Foundation "The E-Accountability Foundation" and then the website "Parentadvocates.org". In 2007 Plaintiff started her blogs, "NYC Rubber Room Reporter", "New York Court Corruption", and others.

Plaintiff never, at any time, told anyone that she was an attorney, or that she gave legal advice. She gives her opinion. This non-attorney status is clearly stated on Plaintiff's blogs. There is no confusion or doubt in anyone's mind. Portelos lied about the status of Plaintiff in order to subject Plaintiff to a series of abusive and humiliating behaviors designed to cast her in a negative light, destabilize her, create suspicion about her worth to the community, etc. This is called mobbing, and Glass and Harlow were the beneficiaries. Portelos is not trying to be a participant in 3020-a, he is not in competition with Plaintiff for clients, he wants Glass and Harlow to get all the teachers in New York City under the umbrella of UFT Solidarity. Unfortunately they are failing, because Glass and Harlow are unprofessional and not very good or dedicated to helping teachers at all.

Portelos came into a 3020-a hearing in 2012 for a tenured teacher charged with misconduct, and Plaintiff met him for the first time. He was also very outspoken about how bad the NYC DOE treated its' teachers, and Plaintiff and Portelos became partners in 'making right' all the wrongs. In 2013 Attorney Bryan Glass asked Plaintiff if she would assist his Associate in doing 3020-a hearings. She said yes, and referred 5 charged teachers to Harlow and Glass. She tried to assist in

the hearings, but three of these teachers went to a full hearing, and Harlow, not really trying to defend any of them, got them all terminated. Two of the original 5 were told by Glass that they would be terminated, and they should resign or make a deal...but DON'T tell Plaintiff. Both did anyway, and Plaintiff was very shocked to be undermined in such a way. She did not work with Glass or Harlow since that time. Plaintiff continued to work on her writing, Special Education hearings, and 3020-a arbitration with various attorneys. When Portelos was charged with misconduct, Plaintiff attended his hearing in 2014. Portelos was found guilty of many charges of harassment and misconduct, especially harassment, and he became even more angry. His misconduct was extensive, including harassing the wife of the chapter leader at another school. Portelos has started writing about Plaintiff as Combier-Kapel, which is significant because now he will be going after her family.

In August 2015, Portelos decide he would start a teacher caucus within the UFT called "UFT Solidarity". Under this umbrella he started a non-UFT website which gave members a new look at what to do if charged, how to write a rebuttal letter, and many other great resources. He was doing well, getting support from a varied audience, and giving good advice. Then, he started running for UFT President to unseat Mike Mulgrew. He became very excited about a lunch held in August 2015 with Randi Weingarten. He told everyone he knew that Randi would be hiring him to work at the UFT. She did not hire him. She called Plaintiff a few days later to tell her that she would not be hiring him.

On September 20, 2015, two weeks later, Portelos invited 50 unhappy teachers to a meeting to find out what could be done, and to talk about his platform. He invited Jim Callaghan to this meeting to speak about how bad the UFT was, and how Portelos should be President. He lost badly in the election

Without any warning to Plaintiff, Jim Callaghan, who was very angry at Plaintiff for doing a "great" job while at the UFT, while he had been fired, decided to attack Plaintiff and say that Randi Weingarten called Plaintiff a homophobe and thus by hiring her violated UFT policies. Plaintiff heard about this a few days later, when Celli, a gay man himself, sent her a video of Callaghan's talk. She was shocked. She called Portelos and told him to take her out of the video, and why would he do such a thing? Portelos told her to shut up, she thought everything was about her, and he would not take the video down. Plaintiff refers this Court to the decision of the Judge in Portelos' Federal First Amendment rights case, where the judge wrote he was angry that the UFT did not treat him right, he took it personally, and was fighting back. He has no First Amendment right to conclude as fact that Plaintiff is a liar and a criminal. He was acting under color of law in his attacks of Plaintiff.

Plaintiff and Portelos have not spoken since. Plaintiff tried everything to get Portelos to stop lying about her, but Portelos became steadily more belligerent. See the Exhibits in EXHIBIT A. Anyone who had a good word to say about Plaintiff would be attacked by Portelos.

From 2015 to the present, Portelos has been obsessed with getting Plaintiff's name and character defamed. His goal is to give all the teachers to Glass and Harlow as the "Teacher's Attorney".Portelos wants to be Plaintiff. His jealousy, malice, and vindictiveness can be seen in the EXBITS A,B.

Celli is a gay man who is mentally unstable. Since 2015 he has been sending out emails to 120-200 people at one time, calling many of them m-f, and telling everyone that he is HIV+. See EX. B, where a few of his emails (I have about 131 of these ) can be seen. Celli cannot handle any form of authority, nor does he have any perception of truth, good people, or doing what is right. He has no social conscience. His comments on social media are vulgar, belligerent and

frighteningly inappropriate for any public school teacher. He is also coloring his speech because without any due process, and with malice, he has called Plaintiff a criminal for more than two years. He made that conclusion without Plaintiff being given any due process rights, just like Portelos did. But Portelos' plan to rid NYC of Plaintiff and her advocacy could not have started unless he found someone like Celli, who never heard a lie he could not – or would not – tell. (See EXHIBIT B, Lucio Celli transcript November 2 Grievance: Celli taped himself swearing he was not taping the grievance hearing. In 2014 Celli started harassing political leaders with vulgar posts about people he does not like for one reason or another. He uses vulgar language to make his points, and is not rational enough to realize no one reads his posts because they are so badly written.

In 2015 he asked Plaintiff if she would edit a PERB complaint for him, and she said of course, because she wanted to help him. She volunteered, and met with Celli at the diner across the street from her apartment where she usually met teachers to talk or go over papers. He sent her the PERB complaint already written and she edited it. She also met with him countless times at the diner, along with other people who just wanted to volunteer their time.

Suddenly Celli sent Plaintiff a check for $1000 with a thank you for giving her time. Plaintiff thanked him for giving her the re-imbursement. Then, another person who was part of Portelos' group, Jonathan Hinesley, asked to meet with Plaintiff about his charges, and she agreed to meet at the diner. He bought her a tuna sandwich, she spoke with him as a non-attorney for about 3 hours on the subject of 3020-a hearings. He sent her a check for her time for $500. Plaintiff thanked him.

Then the scheme became clear. Without any warning whatsoever, both Jonathan Hinesley and Lucio Celli demanded their money back because Plaintiff actually did nothing. They pretended

that Plaintiff had demanded money, and that she never did anything for the money. Plaintiff told both men that she volunteered, and they gave her a gift so that she could help other teachers, and she had already allotted the money to teachers who needed money, and she wanted to help others but she was called a liar and a thief. Celli went further, adding "Evil bitch, f..king c..nt, and the such. Plaintiff was very horrified.

In October 2016 Jim Geist, one of the 5 clients Plaintiff worked as a paralegal with Harlow on his 3020-a, sent Plaintiff an email saying that if she did not take down his social security number off of her website Parentadvocates.org he would join the lawsuit being filed against her by Portelos. He sent Plaintiff the poster cited above, asking people to sign up if they asked Betsy Combier for legal advice. This is the first time that Plaintiff had received this poster. However, Jim Geist's social security number was not posted in the Marc Winters' decision to fire him which was on Plaintiff's website Parentadvocates.org. Plaintiff had whited it out. But Jordan Harlow had not taken the SS# out when he filed an Appeal for Jim Geist in the Supreme Court. Neither Harlow nor Glass have ever removed the SS# (654135/2013). The West Milford Police, namely Officer Bruce Lederman, sent Plaintiff the police complaint, but Plaintiff asked for an Investigation, and IA found that there was "no incident". Portelos put Geist up to this attack on Plaintiff, and it can be a misdemeanor in New Jersey to file a false police report. Plaintiff is looking into this.

It is exceedingly clear from the exhibits attached that Plaintiff has been mobbed, cyberbullied and defamed by Portelos, and his sidekick Celli, with the beneficiaries being Glass and Harlow. This type of activity actually violates the NYC DOE cyberbullying policy, but no one at the Department really cares.

In July, Portelos hacked into the back end of Plaintiff's blog Section called the 3020-a Arbitration newswire. He removed all the articles, everything. Plaintiff added most of the articles back within a week. In September 2016 Portelos purchased nycrubberroomreporter.com, and linked his website "UFT Solidarity 3020-a Hearing Guide " to it, so when people think they are clicking into Plaintiff's blog they are not, they get Portelos' UFT Solidarity page on 3020-a hearings instead.

The mobbing has been set up so that Plaintiff becomes the subject of ridicule. The active members, including Portelos and Celli, work daily – sometimes hourly (see the documents in EXHIBITS A, B) – to defame, libel and silence Plaintiff. They have been successful in promoting their scheme to have Plaintiff labelled a criminal and a liar because the Department of Education has no way to stop them. Prohibitions to cyberbullying are not enforced, and the NYC DOE has no institutionalized way to protect anyone. Protection from harm comes on a random, individual basis.

The New York City Department of Education (NYC DOE) Administrator of discipline is, actually, the Chancellor herself, Carmen Farina. The proof of this is the video and transcript in the post on Plaintiff's blog NYC Rubber Room reporter called :

**The 3020-a Arbitration Newswire: Digging Up The Garbage On the UFT/DOE Partnership of Harm For Charged DOE Employees** .
http://nycrubberroomreporter.blogspot.com/2016/05/the-3020-arbitration-newswire-digging_28.html .

Indeed, this is the article that Francesco stole after he hacked into Plaintiff's blog. In this post Chancellor Carmen farina talks about the NYC DOE teacher discipline policies at 3020-a, and calls the people who work on these hearings – the Arbitrators, NYSUT and DOE Attorneys - Her "army".

Only she does not enforce either the way it works or the penalties given, and the penalty given to Francesco Portelos was for misconduct that he is still doing, but on a much larger scale. He ignored the Arbitrator's warning that he had to stop (see EX. A)

Also, there is no Executive Session in New York City, and no vote on probable cause. Any principal or Superintendent can point a finger at any employee and say that the person is incompetent or guilty of misconduct, and in they go to a 3020-a hearing.

Teachers in New York City are fearful every day they walk into a school, and many simply resign. The discipline process has nothing to do with guilt or inefficiency or children, and everything to do with jealousy, retaliation, and school budget. ATRs, generally senior teachers, are sitting ducks to be terminated because they have reached a high salary and no one wants to burden the budget with these salaries.

The anger and frustration of ATRS will not be going away any time soon. But something must be done because the DOE is leaving themselves open to lawsuits and bad performance. How can a student learn or a teacher teach when fear is the guiding light?

See Plaintiff's blog posts as an example of the failures of the DOE to be efficient and stable with uniform policies. Also see EX. A, B, for how Portelos and Celli have been able to manipulate truth on the internet. They are not role models for any students.

## STANDARD OF REVIEW

### A.    On a Motion to Dismiss

On any motion to dismiss, the pleadings are to be given a liberal construction, facts alleged by plaintiff are to be accepted as true, and plaintiff is to be given the benefit of every favorable inference. *Arnay Industries, Inc. Retirement Trust v. Brown, Raysman, Millstein, Felder &*

11

*Steiner, L.L.P.,* 96 N.Y. 2d 300, 303, 751 N.E. 2d 936, 938, 727 N.Y.S.2d 688, 690 (2nd Dept.

2001), quoting from *Leon v. Martinez,* 84 N.Y.2d 83, 87-88, 614 N.Y.S.2d 972, 638 N.E.2d 511

(2nd Dept. 1994); see also *InKine Pharmaceutical Co., v. Coleman,* 759 N.Y.S.2d 62A.D. (1st

Dept. 2003) *and Ehlinger v. Ruberti, Girvin & Ferlazzo,* P.C., 758 N.Y.S. 2d 195A.D. (3rd Dept.

2003) (both overturning a lower court's dismissal of an attorney malpractice claim).

"[T]he sole criterion [on a motion to dismiss for failure to state a cause of action] is whether

the pleading states a cause of action, and if from its four corners factual allegations are

discerned which taken together manifest any cause of action cognizable at law a motion for

dismissal will fail." *Guggenheimer v. Ginzburg,* 43 N.Y. 2d 268, 274-75, 401 N.Y.S 2d

182, 372 N.E.2d 17 (2nd Dept. 1977).   This indicates that even if the lower court did not like

Plaintiff's particular theory of the case, it should not have dismissed the claims as long as

the evidence proffered supported a cause of action.   See also *Polonetsky v. Better Homes

Depot, Inc.,* 97 N.Y. 2d 46, 54, 760 N.E.2d 1274, 1278, 735 N.Y.S.2d 479, 483 (2nd Dept.

2001); *Vorel v. NBA Properties, Inc.,* 285, A.D.2d 641, 641-42, 728 N.Y.S.2d 397 98 (2d

Dept. 2001) ("On a motion to dismiss pursuant to *CPLR 3211,* a court must accept the facts

as alleged in the complaint as true, and accord the plaintiff the benefit of every favorable

inference.   '[T]he criterion is whether the proponent of the pleading has a cause of action,

not whether he [or she] has stated one.' Moreover, a court may freely consider evidentiary

material submitted on the motion to remedy any defects in the complaint." [Citations

omitted.])

On a motion to dismiss pursuant to *CPLR 3211,* every favorable inference must be afforded

the challenged pleading *(Held v. Kaufman,* 91 NY2d 425, 694 N.E.2d 430, 671 N.Y.S.2d

429 [2nd Dept. 1998]; *Matter of Schwartz,* 44 AD3d 779, 843 N.Y.S.2d 403 (2d Dept.

2007]). *"On a motion to dismiss a complaint for failure to state a cause of action, the complaint is to be construed in light most favorable to the plaintiff (Cohn v. Lionel Corp., 21 NY2d 559, 236 N.E.2d 634, 289 N.Y.S.2d 404), and deemed to allege whatever can be implied from its statement by fair intendment" (Howard Stores Corp v. Ope, I N.Y.2d 110, 134 N.E.2d 63, 150 N.Y.S.2d 792)" (Matter of Carvel,* NYLJ, Nov., 24, 1995, at 33 [Sur Ct, Westchester County]). In addition, on a motion to dismiss for failure to state a cause of action, all the allegations contained in the pleading must be assumed true, and the court must determine whether the alleged facts fit within any cognizable legal theory *(Morone v. Morone,* 50 NY2d 481, 413 N.E.2d 1154, 429 N.Y.S.2d 592 [2nd Dept. 1980]).

The CFAA contains a broad definition of the phrase "protected computer." A "protected computer" is defined in §1030(e)(2)(B) to include a computer that is "used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." As the U.S. Court of Appeals for the Second Circuit observed in a 2015 opinion, this definition of a "protected computer" thus includes "effectively all computers with Internet access." *United States v. Valle,* 807 F.3d 508, 528 (2d Cir. 2015). Ambiguity in the CFAA further expands its reach. For example, the phrases "without authorization" or "exceed[ing] authorized access" are not specifically defined, which has resulted in a significant amount of litigation. The 2011 prosecution of so-called "hacktivist" Aaron Swartz became something of a cause célèbre, partly because Swartz unfortunately committed suicide while under indictment, but also because of the government's expansive reading of the "exceed[ing] authorized access" language.

Swartz was indicted in Massachusetts pursuant to the CFAA for allegedly accessing MIT's computer network to download thousands of academic journals from digital library JSTOR, apparently to make the journals publicly available for free. *United States v. Swartz*, 11 CR 10260 (D. Ma. filed July 14, 2011). Some perceived Swartz as a victim of over-criminalization because his indictment partly relied on JSTOR's terms of service (i.e., website terms we all routinely accept without reading) to argue that Swartz's downloads exceeded authorization. Some legislators subsequently proposed amending the CFAA via "Aaron's Law" to ensure that such standard computer activity cannot form the basis of criminal charges.

In short, the CFAA as currently defined potentially makes it a crime to obtain information without authorization from almost any electronic device anywhere in the world, with the bar for "exceeding authorization" set very low. The net effect of these definitions is reflected in a recent opinion from the Eastern District of New York.

'U.S. v. Gasperini' (The Global Reach of the U.S. Computer Intrusion Law, By Nicholas M. De Feis and Philip C. Patterson , New York Law Journal July 24, 2017)

In August 2015, Fabio Gasperini was charged in the Eastern District of New York with CFAA, wire fraud and money laundering violations. *United States v. Gasperini*, No. 16 CR 441 (E.D.N.Y.). He was arrested in Amsterdam and extradited to the United States. Gasperini is accused of using a "botnet" to perpetrate a "click fraud." A botnet is created when a programmer uses malware to secretly infect and control multiple computers. See, e.g., Nicholas M. De Feis and Philip C. Patterson, "'Botnets' and the Battle Against Cybercrime," N.Y.L.J., April 30, 2015. The programmer can use the resulting network for various purposes, such as sending spam or carrying out denial of service attacks (directing so much Internet traffic to a website at the same time that it crashes). Gasperini was allegedly hired by advertising firms that paid him based on

14

the amount of traffic he drummed up for certain websites. The government alleges that he used a botnet he created to generate fake traffic to those sites, resulting in overpayments for his services.

Click frauds unfortunately are increasingly common, but the case against Gasperini reveals the expansive reach of the CFAA, both as to its jurisdiction and its definitions. According to filings by his counsel, Gasperini is an Italian citizen who has never set foot in America. He was apparently in Rome throughout the duration of the alleged scheme. Moreover, the advertising firms he allegedly defrauded are Italian. In addition, the majority of the servers Gasperini allegedly infected were located overseas. Although the government asserts that his malware was found on U.S. servers, Gasperini apparently never actually "took" anything off the servers—at least in the traditional sense of the word. Instead, he is essentially accused of gathering information that helped him carry out his scheme.

Gasperini moved to dismiss the indictment. For the CFAA charges, he argued a failure to plead the elements plus a due process violation. He also argued that the wire fraud charges cannot apply extraterritorially. The government responded by asserting, among other things, that Gasperini used servers leased in the United States to further his scheme, and that the scheme included clicks on advertisements by U.S. firms. The government also asserted that he used a U.S. online payment firm to launder the proceeds. The government added that it expects to prove that a piece of Gasperini's malware that helped facilitate the scheme was present on over 800 servers in the United States, including more than 100 in the Eastern District of New York. Judge Nicholas Garaufis denied Gasperini's motion, noting that what Gasperini was really arguing was failure of proof. Garaufis concluded that the indictment sufficiently pleaded CFAA violations, and that a failure to actually prove such violations must be left for trial. Garaufis, after

an extensive analysis, also held that the charges do not violate due process or the prohibition on extraterritorial application of U.S. laws. Garaufis did, however, grant a portion of Gasperini's motion seeking a bill of particulars. Specifically, Gasperini was entitled to greater detail on how he purportedly "obtained" information from a computer as required by §1030(a). Garaufis, noting the government's acknowledgment that this is a "cutting-edge" case, expressed concerns that Gasperini thus could not look to other prosecutions for guidance on how the government might seek to satisfy the "obtain" element of the CFAA charges.

The government subsequently produced a bill of particulars, which identified highly technical material as the information "obtained" from a computer. The information obtained included, among other things, IP addresses, usernames, ports available for networking, and information about computer settings and vulnerabilities. This information allegedly helped reveal to Gasperini what networking avenues were available to carry out the scheme.

Gasperini filed a second motion to dismiss again arguing, among other things, that the government failed to identify what information was "obtained" in violation of the CFAA. The government filed its opposition and Judge Garaufis denied the motion during a July 6, 2017 status conference.

One provision of the CFAA prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer." The jurisdictional element of the CFAA is satisfied by virtue of the requirement that any violation of the Act concern a "protected computer," defined as a computer "used in interstate or foreign commerce or communication." 18 U.S.C. § 1030(a)(2)(C) defines the term "protected computer" to mean a computer "exclusively for the use of a financial institution or the United States Government . . . or . . . [a computer] which is used in or affecting

interstate or foreign commerce or communication . . . ." 18 U.S.C. § 1030(e)(2). The term

"exceeds authorized access" means "to access a computer with authorization and to use such

access to obtain or alter information in the computer that the accesser is not entitled so to obtain

or alter." 18 U.S.C. § 1030(e)(6). This requirement is easily satisfied, as under this definition

"virtually any computer that sends e-mail in the course of its business is a 'protected

computer.'"(see Nick Akerman, *CFAA Resembles RICO*, Nat'l L.J., Aug. 2005, at 13). The

CFAA's jurisdictional requirements are met where the targeted computer regularly transmits

interstate e-mails, regardless of the defendant's physical location while committing his culpable

acts. (U.S. v. Ivanov, 175 F.Supp.2d 367, 368-69 (D. Conn 2001)). "[T]he concept of 'exceeds

authorized access' may include exceeding the purposes for which access is 'authorized'" in a

case where the information was used in furtherance of the commission of a separate crime.);

United States v. Nosal, 676 F.3d 854, 863-64 (9th Cir. 2012). ("[W]e hold that the phrase

'exceeds authorized access' in the CFAA does not extend to violations of use restrictions[;]" the

term is "limited to violations of restrictions on access to information, and not restrictions on its

use.") (emphasis in original). The D.C. Circuit has not ruled on the issue; the district courts in

this circuit that have addressed the matter have followed the narrower interpretation adopted by

the Ninth Circuit. See, e.g., Roe v. Bernabei & Wachtel PLLC, 85 F. Supp. 3d 89, 103 (D.D.C.

2015) ("[T]he plain meaning of the statute . . . speaks only of authorized 'access' to data and not

of use."); Lewis–Burke Assocs. LLC v. Widder, 725 F. Supp. 2d 187, 194 (D.D.C. 2010)

("'Exceeds authorized access' should not be confused with exceeds authorized use.")

Defamation

A person who is defamed can sue the person who said or wrote the defamatory statements. However, in general, defamation law is designed with First Amendment rights and the importance of free speech and political or social disagreement in mind. Not every insult or false statement is actionable.

Each state has its own defamation laws. In general, a plaintiff suing for defamation will have to show the statement was published, false, harmful to him or her, and not privileged. "Publication" can mean that words were spoken to another person, written words were transmitted to someone else, or that pictures or gestures were shared with another person. A private entry in a journal is not considered published.

The statement must be false to be considered defamation. Truth is a sound defense to defamation. An unflattering opinion will not be considered defamation because it is not true or false from an objective standpoint. Thus, for example, an opinion on an online review site that a restaurant's food is "boring" or "pedestrian" without any false statements of fact to support it is not defamation. However, if the writer of the review lied in saying that there were bits of glass in her food, the review would be actionable as defamation.

The statement must cause actual harm, not just hurt feelings. If you are suing for defamation, you will have to be prepared to show how the defamatory statement hurt your reputation. Portelos and Celli both used extreme words such as "criminal" "evil bitch" and other words which are not protected opinion, but a conclusion. It does not matter what a reasonable person would have

published, but rather whether you knew the information was false or had serious doubts about whether what you were saying was true.

Negligence Theory

Negligence is the basis of most personal injury lawsuits. In all states, people are required to conduct themselves according to the prevailing standards of behavior for that state to avoid unreasonable risks of harm to others. If a person violates the standards of his or her state and injures someone, he or she may need to compensate the victim for any losses. On rare occasions, a theory of negligence requires a person not to act.

A plaintiff suing on the basis of negligence will have to show the defendant's duty of care to the plaintiff, the defendant's breach of duty, actual and proximate causation linking the breach to the harm, and actual losses or damages. "Proximate causation" means that an event has a causal connection to the losses that the law recognizes. An event that is too remote from the harm may not be recognized as a proximate cause.

In ordinary negligence cases, a personal injury plaintiff must prove negligence. He or she will have to show that the defendant's conduct fell below the applicable standard of care and that these actions were the actual and proximate cause of his or her harm. A standard of care is the extent to which a reasonable person would have been prudent in the same set of circumstances that caused the injury. However, in many states, when a defendant violates a safety statute, regulation, or municipal ordinance, and someone else is hurt as a result, an inference of negligence is raised.

The doctrine that permits this inference is "negligence per se," and the doctrine can make it easier for the victim to recover damages. Its application varies from state to state. The key element of any traditional negligence per se action is that the jury no longer has to consider whether the defendant's actions were reasonable or not. The defendant's actions are assumed to be unreasonable if the conduct violates an applicable rule, regulation, or statute.

The following should be true: the defendant violated a regulation or law enacted for safety reasons, that the plaintiff belongs to the class that was intended to be protected by the safety regulation or law, and that the violation caused the injury to the plaintiff. The law must be intended to protect the class to which the plaintiff belongs, and it must be intended to guard against the particular type of harm suffered by the plaintiff.

In ordinary **negligence** cases, a personal injury plaintiff must prove negligence. He or she will have to show that the defendant's conduct fell below the applicable standard of care and that these actions were the actual and proximate cause of his or her harm. A standard of care is the extent to which a reasonable person would have been prudent in the same set of circumstances that caused the injury. However, in many states, when a defendant violates a safety statute, regulation, or municipal ordinance, and someone else is hurt as a result, an inference of negligence is raised.

The NYC DOE is notoriously unsafe for anyone, at any speed. Teacher discipline is random and arbitrary. No one is safe. Plaintiff is a parent to four daughters who went through the DOE, and although they are now graduated, the standard of care remains that the DOE expects their teachers to be role models for their students. Plaintiff represents children with special needs in Impartial Hearings, and she is also a taxpayer. She needs to know that her tax dollars are being

carefully spent and saved. Inside the DOE, this is not happening. Teachers are angry, and as can be seen here, bitter with frustration for random and arbitrary rulings inside the procedures used at grievances and 3020-a. The NYC DOE created Lucio Celli and Francesco Portelos, yet cannot – or will not - stop them from their destructive ways.

State Actor

42 U.S.C. § 1983, creates a federal remedy for violations of constitutional rights by what are called "state actors." See *West v. Atkins,* 487 U.S. 42, 49-50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). (The fact that some of a hospital's revenues are siphoned off to the state university does not make them a state actor.) *Babchuk v. Indiana University Health, Inc.,* 809 F. 3d 966 (7th Cir. 2016). An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); *see also Dang Vang v. Vang Xiong X. Toyed,* 944 F.2d 476, 479 (9th Cir.1991) ("'[I]t is firmly established that a defendant in a § 1983 suit acts under color of state law *when he abuses the position given to him by the state.*'" (quoting *West,* 487 U.S. at 49-50, 108 S.Ct. 2250)). This test is generally satisfied when a state employee, like a deputy district attorney, wrongs someone "while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50, 108 S.Ct. 2250. But "§ 1983 does not federalize all torts or other deprivations of rights committed by a person who is a law enforcement officer or other government agent." *Myers v. Bowman,* 713 F.3d 1319, 1329 (11th Cir.2013) (citation omitted) (internal quotation marks omitted); *see also Van Ort v. Estate of Stanewich,* 92 F.3d 831, 838 (9th Cir.1996). Particularly when the state employee is off duty, whether he or she "is acting under color of state law turns on the nature and circumstances of the [employee's] ... conduct and the relationship of

that conduct to the performance of his official duties." *Anderson,* 451 F.3d at 1068 (citation omitted) (internal quotation marks omitted). *Naffe v. Frey,* 789 F. 3d 1030 (9th Cir. 2015). To establish a § 1983 claim, [plaintiff]s must show that they have been deprived of a constitutional right by a person acting under color of state law. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 942, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). A private party is considered a state actor if the alleged deprivation was "caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the state or by a person for whom the [s]tate is responsible." Id. at 937, 102 S.Ct. 2744. A state's "[m]ere approval of or acquiescence in the initiatives of a private party" does not amount to state action. *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). *Sabri v. Whittier Alliance,* 833 F. 3d 995 (8th Cir. 2016). A "state action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (internal quotation marks and citation omitted). *Bourne Valley Court Trust v. Wells Fargo Bank, NA,* 832 F. 3d 1154 (9th Cir. 2016). To succeed on [a] § 1983 claim, plaintiffs must prove (1) the deprivation of a right secured by the Constitution or federal law and (2) that defendants were acting under color of state law. *Armato v. Grounds,* 766 F.3d 713, 719-20 (7th Cir. 2014) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). For a private actor to act under color of state law he must have "had a 'meeting of the minds' and thus reached an understanding" with a state actor to deny plaintiffs a constitutional right. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Hanania v. Loren-Maltese,* 212 F.3d 353, 356 (7th Cir. 2000)

(requiring a showing of "a concerted effort between" a private actor and state actor and that a state actor and private actor "reached an understanding to deprive the plaintiff of her constitutional rights"); *Cunningham v. Southlake Ctr. for Mental Health, Inc.,* 924 F.2d 106, 107 (7th Cir. 1991) ("A requirement of the joint action charge ... is that both public and private actors share a common, unconstitutional goal."). Because § 1983 allows a private actor to be sued as if it were the state and makes state actors potentially liable as well, the state actor must share the private actor's unconstitutional goal in order for a state actor to be acting under color of state law. In other words, "[a] private actor ... cannot unilaterally convert a state actor's legitimate activity into an illegal act, conferring both constitutional accountability on itself and liability on the state." *Cunningham,* 924 F.2d at 108. *Wilson v. Warren County, Illinois,* 830 F. 3d 464 (7th Cir. 2016).

A state actor charged under § 1983 with violating a plaintiff's constitutional rights is entitled to have the action dismissed on the basis of qualified immunity if at the time of the challenged conduct there was no "clearly established law" that such conduct constituted a constitutional violation. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This is so even if the court would conclude that, under law at the later time of the court's ruling, the defendant's conduct would be found to violate the Constitution. *Id.* at 818-19, 102 S.Ct. 2727. This rule is based on the proposition that public officers should freely act in pursuance of their duties without fear of being held liable for damages under constitutional standards of which they have no notice because the standards were not yet developed at the time of their conduct. *See Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011). [T]he need for "clearly established" law is satisfied if the law on the subject was defined at the time with reasonable clarity or clearly foreshadowed in rulings of the Supreme Court or the Second Circuit, so that the defendant should have understood that her conduct was unlawful. *See Looney v. Black,* 702 F.3d

701, 706 (2d Cir.2012); *Varrone v. Bilotti,* 123 F.3d 75, 79 (2d Cir.1997). *Lynch v. Ackley*, 811 F. 3d 569 (2nd Cir. 2016).

"Private individuals generally are not considered to act under color of law," *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005), but "private action may be deemed state action when the defendant's conduct is 'fairly attributable to the State,'" *Priester v. Lowndes County,* 354 F.3d 414, 423 (5th Cir. 2004) (quoting *Bass v. Parkwood Hosp.,* 180 F.3d 234, 241 (5th Cir. 1999)). To establish fair attribution, the plaintiff must show: (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor. *Id.* (citing *Daniel v. Ferguson,* 839 F.2d 1124, 1130 (5th Cir. 1988)). One way a private citizen may be a state actor is if she "is involved in a conspiracy or participates in joint activity with state actors." *Ballard,* 413 F.3d at 518 (citing *Adickes,* 398 U.S. at 150-52). (Evidence that a private citizen reported criminal activity or signed a criminal complaint does not suffice to show state action on the part of the complainant in a false arrest case.) *Moody v. Farrell*, (5th Cir. 2017). The Sixth Circuit has identified three tests to resolve the state-actor inquiry: the public-function test, the state-compulsion test, and the nexus test. *Ellison v. Garbarino,* 48 F.3d 192, 195 (6th Cir.1995). The parties agree that this case implicates the public-function test, which "requires that the private [individual] exercise powers which are traditionally exclusively reserved to the state." *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992). The Sixth Circuit has interpreted this test narrowly; rarely ha[s the court] attributed private conduct to the state. *Chapman v. Higbee Co.,* 319 F.3d 825, 833-34 (6th Cir.2003). (A psychiatrist acted under color of state law because she performed a public function by evaluating an individual in the state's custody. The district court erred in reaching a different conclusion.) *Carl v. Muskegon County,* 763

24

3d 592 (6th Cir. 2014).A private person acts under color of state law when she is a "willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). This requires "evidence of a *concerted effort* between a state actor and that individual." *Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998) (citing *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The plaintiff must identify a sufficient nexus between the state and the private actor to support a finding that the deprivation committed by the private actor is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). *LP v. Marian Catholic High School, ibid.* Title 42 U.S.C. § 1983 . . . authorizes suits to enforce individual rights under federal statutes as well as the Constitution. *Maine v. Thiboutot,* 448 U.S. 1, 4 (1980). Nonetheless, "§ 1983 does not provide an avenue for relief every time a state actor violates a federal law." *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 119 (2005). Rather, "to sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs." *Id.* at 120 (citing *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002)). *D. O. v. Glisson,*847 F. 3d 374 (6th Cir. 2017)."Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,*424 U.S. 319, 332 (1976).

In a procedural-due-process claim, "the deprivation of property by state action is not itself unconstitutional; 'what is unconstitutional is the deprivation of such an interest *without due process of law.*'" *Christophel v. Kukulinsky,* 61 F.3d 479, 485 (6th Cir. 1995) (quoting *Zinermon,* 494 U.S. at 125). In order to determine whether a due-process violation has occurred, we must first ask whether the plaintiffs-appellees were deprived of a constitutionally protected property right; if they

were, we must then ask if the process provided was constitutionally adequate. *Ibid.Kaminski v. Coulter*, (6th Cir. 2017).In procedural-due-process cases, however, there is also a preliminary inquiry: Does the state action involve the kind of individualized determination that triggers due-process protections in the first place? The Supreme Court has made clear that "[t]he Constitution does not require all public acts to be done in town meeting or an assembly of the whole. . . . [Individuals'] rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." *Bi-Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445 (1915). Only where "[a] relatively small number of persons [are] concerned, who [are] exceptionally affected, in each case upon individual grounds" has the Supreme Court held that a right to a hearing is due. *Id.* at 446. *Kaminski v. Coulter, ibid.* The "general rule" is that a state actor is not liable under the Due Process Clause "for its omissions." *Munger v. City of Glasgow Police Dep't,* 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this general rule: "(1) when a 'special relationship' exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger' (the state-created danger exception)." *Patel v. Kent Sch. Dist,* 648 F.3d 965, 971-72 (9th Cir.2001) (citations omitted). We are concerned here with the state-created danger exception. *Pauluk v. Savage*, 836 F. 3d 1117 (9th Cir. 2016).The exception is based in part on *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), in which the mother of a child who was beaten and permanently injured by his father brought suit against social workers and other local officials who had permitted the child to remain with his father despite receiving complaints about abuse. The Supreme Court held that the state had no freestanding constitutional obligation to protect the child from his abusive father. According to the Court, "the

harms [the child] suffered occurred not while he was in the State's custody, but while he was in

the custody of his natural father" and the state "played no part in the[] creation" of the dangers the

child    faced. *Id.* at    201,    109    S.Ct.    998. *Pauluk    v.    Savage,    ibid.*

Relying on this language, the Ninth Circuit and a majority of other circuits have held that a state

actor can be held liable when that state actor did "play a part" in the creation of a

danger. *See Gormley v. Wood-El,* 218 N.J. 72, 93 A.3d 344, 360 (2014) ("Most federal circuit

courts now recognize the state-created-danger doctrine as a basis for a substantive-due-process

violation." (citing *Sanford v. Stiles,* 456 F.3d 298, 304 (3d Cir.2006))); *see also L.W. v. Grubbs

(Grubbs I),*974 F.2d 119, 122 (9th Cir. 1992). Under the state-created danger doctrine, a state actor

can be held liable for failing to protect a person's interest in his personal security or bodily integrity

when the state actor affirmatively and with deliberate indifference placed that person in danger.

The doctrine holds state actors liable "for their roles in creating or exposing individuals to danger

they otherwise would not have faced." *Kennedy,* 439 F.3d at 1062. *Pauluk v. Savage, ibid.*

The Ninth Circuit first recognized the state-created danger doctrine in *Wood v. Ostrander,* 879

F.2d 583 (9th Cir.1989), in which a police officer pulled over a car in the early morning. After

arresting the driver, the officer left the female passenger alone in a high crime area at 2:30 a.m.

The passenger was subsequently attacked and raped. We held that the officer could be held liable

under § 1983 for the attack and rape because, according to the plaintiff's evidence, the officer

"affirmatively place[d] her in danger and then abandon[ed] her." *Id.* at 596. Since *Wood,* we have

repeatedly analyzed various constitutional allegations premised on the state-created danger

doctrine. *See, e.g., Campbell v. Wash. Dept. of Soc. Servs.,* 671 F.3d 837 (9th Cir.2011); *Patel,* 648

F.3d 965; *Johnson v. City of Seattle,* 474 F.3d 634 (9th Cir.2007); *Kennedy,* 439 F.3d at

1062; *Lawrence v. United States,* 340 F.3d 952 (9th Cir.2003); *Munger v. City of Glasgow Police*

27

*Dep't,* 227 F.3d 1082 (9th Cir.2000); *Huffman v. County of Los Angeles,* 147 F.3d 1054 (9th Cir.1998); *Penilla v. City of Huntington Park,* 115 F.3d 707 (9th Cir. 1997); *Grubbs I,* 974 F.2d 19; *Wood,* 879 F.2d 583. *Pauluk v. Savage, ibid.* In *Dahn v. Amedei,* plaintiff's § 1983 claim alleges that Colorado caseworkers violated his Fourteenth Amendment due-process right "not to be deprived of his liberty without due process of law, which encompassed his right to be reasonably safe from harm in foster care." "The Due Process Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law.'" *Schwartz,* 702 F.3d at 579 (quoting U.S. Const. amend. XIV) (alterations in original). "Section 1983 provides a private cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Id.* (quoting 42 U.S.C. § 1983). Though state actors generally aren't liable for private acts of violence, an exception exists when the state has a special relationship with the injured person. *See DeShaney,* 489 U.S. at 198-200. *Dahn v. Amedei,* (10th Cir. 2017).Due-process claims built on the special-relationship doctrine have four elements. First, the plaintiff must demonstrate the existence of a special relationship, meaning that the plaintiff completely depended on the state to satisfy basic human needs. *DeAnzona v. City & Cty. of Denver,* 222 F.3d 1229, 1234 (10th Cir. 2000). Second, the plaintiff must show that the defendant knew that the plaintiff was in danger or failed to exercise professional judgment regarding that danger. *Schwartz,* 702 F.3d at 583. Third, the plaintiff must show that the defendant's conduct caused the plaintiff's injuries. *Id.* And finally, fourth, the defendant's actions must shock the conscience. *Id. Dahn v. Amedei, ibid.* The existence of the special relationship is the pivotal issue: if none exists, a state cannot be held liable for a person's injuries at the hands of a private third party as opposed to a state actor. "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual . . .

." *Uhlrig v. Harder,* 64 F.3d 567, 572 (10th Cir. 1995). "Generally, the scope of this relationship has turned on the dependent and involuntary nature of the custodial relationship between the individual and the State." *Schwartz,* 702 F.3d at 580. Plaintiffs must show that the state has restrained them against their will, because "if there is no custodial relationship there can be no constitutional duty." *DeAnzona,* 222 F.3d at 1234. And the state has a special custodial relationship only with "individuals [who] depend *completely* on the state to satisfy their basic human needs." *Maldonado v. Josey,* 975 F.2d 727, 733 (10th Cir. 1992) (emphasis added). *Dahn v. Amedei, ibid.*

In the case presented here both Bryan Glass and Jordan Harlow are state actors, as they knowingly collaborated with Portelos to create a teacher advocacy which had no one else doing anything similar. They colored their actions with their close partnership with Portelos, to the detriment of the health, safety and welfare of the Plaintiff. In fact, their so-called "Settlement" with Plaintiff is no more than an effort to put a prior restraint on Plaintiff's speech. Harlow and Glass wanted Plaintiff to never write about them again, and if she did, they would get $1500 for each post. This is the definition of prior restraint. Both Glass and Harlow do not want Plaintiff to say her opinions, just like Portelos and Celli do not want her to say what she believes. This is the key point that this case is all about. Glass and Harlow told Luthmann that Plaintiff defamed them. Really? He called Plaintiff after sending the proposed agreement (see EX. C) and told her that they really wanted to shut her up, and he was going to keep them both in the Complaint because they wanted to silence her in the future. He went into how Plaintiff's First Amendment rights would be violated if she signed the agreement. Plaintiff asked him to please serve them the papers the right way, but he said nothing, and she fired him in August, a month later. Plaintiff did not know about Attorney Luthmann's crimes for which he was put into jail. It is ironic that Portelos and Celli are using

29

Luthmann's criminal activity to smear her name. But Plaintiff had no knowledge of any of this.

Opposition to Francesco Portelos' Motion To Dismiss

Portelos knew very well that Plaintiff was not an attorney, and simply a person with many (presently 14) years as a teacher advocate helping teachers mostly, if not always for free except when she worked under an Attorney on a case. He wants Plaintiff to never have his name pass her lips, and that she never write about him. This is not going to happen because I have the first amendment right to say my opinion on my social media.

Portelos made a mistake when he hacked into Plaintiff's website, and when he created the poster saying Plaintiff was practicing law without a license. He made these conclusions of fact, and not his opinion. As discussed earlier, telling the public that a person is a criminal as opposed to saying "I don't like her work" or "I don't believe she is any good" could be a misdemeanor. Indeed, Portelos was arrested and placed into a holding cell for a satirical post wherein he told teachers supposedly how to hack into the NYC DOE website of payroll, and increasetheir salary. Portelos knew very well that she is hired to work with attorneys as a paralegal by teachers going through 3020-a hearings. He knew that Plaintiff was the paralegal in several cases with his own attorney, Bryan Glass and his associate, Jordan Harlow. Portelos made his libelous claim despite the fact that he knew it was false in order to take any money that Plaintiff earned, away from her. This was part of his scheme. EXHIBIT A has the proof of Plaintiff's claim. Plaintiff never stole any money from anyone at any time, and Portelos never gave her any money to steal. Indeed, he has no standing to make any claim of Plaintiff being a "criminal" and cannot represent others. Who is he speaking for? He is speaking for, and representing, Lucio Celli. He has no standing to do that. He lost the UFT election very badly. His blogs and websites have almost all anonymous comments, so it may be that he is making the comments.

30

Portelos does not, surprisingly, deny that he hacked into Plaintiff's blog and took an entire section for his own website. He states that he went to Plaintiff's blog and saw the section "The 3020-a Arbitration Newswire" there, so it was never missing or Plaintiff put it back. He is right that Plaintiff re-created it. But now Portelos has "nycrubberroomreporter" going to HIS UFT Solidarity website, where the material that he stole from Plaintiff's blog is placed. All Portelos had to do to make this right would be to place the 3020-a panel on February 24, 2015 on his webpages with the note that it came from the blog and website (Parentadvocates.org) of Plaintiff. Why he stole an entire Section of Plaintiff's blog makes no sense.

In EXHIBIT A, Plaintiff has extensive documentation proving that Portelos wanted her to stop her work, made a poster CONCLUDING she was a criminal and practicing law without a license, and acted with malicious intent to destroy Plaintiff's consulting business, life and character. He has no standing to say Plaintiff is a criminal without due process of law.

As far as sanctions, I request that the Judge not grant any sanctions because I tried for two years to stop Portelos from continuing to lie about me, and he is adamant that he will continue, no matter what happens. In good faith I filed this lawsuit because I believe there is no other way to deal with his arrogant and insulting personality.

Portelos' Motion To Dismiss and request for sanctions must be denied in it's entirety and this Court should proceed with discovery..

Lucio Celli's Motion To Dismiss, Defensives, Counter Claim, Fraud

Celli, showing by his actions a paranoia and mental instability which should have been (but was not) addressed by the Superintendent and/or Principal of his school, sent more than 131emails to more than 100 elected and non-elected politicians in New York City and Washington D.C. libeling and lying about Plaintiff. He also begged Judge Cogan, in the Eastern District Federal

31

Court, see (1:15-cv-03679-BMC-LB Celli v. Cole et al) to go after Plaintiff, even though she was not named or served in his lawsuit nor did she ever become a state actor or anyone with anything to do with Celli's "U" (unsatisfactory) rating.

Celli cannot deny that he has spent years defaming Plaintiff's character, life, body parts, and her work. He is a key participant in the scheme to prove that Plaintiff is a liar, cheats teachers and is a criminal. He desperately wants Portelos to like him, and will do anything to make that happen. I never harassed Mavis Shein the day her mother died. See Mavis thanking me in EX. B for calling her to say how sorry I was to hear about her mother's illness. His justification for her being an Attorney is that he wrote "paralegal" on the check her sent her after Plaintiff volunteered her time to help in by editing a badly written PERB complaint. She also spent hours talking on the telephone, and meeting with Celli in the diner across the street from where she lives. She never asked for money and never told Celli she was an attorney.

I attest that every wrong that Lucio Celli says that I have done is completely untrue. He has no concept of truth.

The fact of the matter is that Celli sent more than 131 emails out over the past three years, wherein he says (in 2015, 2016 and 2017) that he is HIV+; that everyone he talks to knows Ms Combier therefore she is the reason he lost his PERB complaint; and he begs the elected officials to go after Plaintiff and NYSUT's Cathy Battle, the ALJ, Courtenaye Jackson-Chase, and everyone else.

Plaintiff has an Affidavit in EXHIBIT B, as does her husband. Everything that Celli accuses her of is false, except that Plaintiff did ask for and did receive help from Courtenaye Jackson-Chase in two cases, one the case of Yolanda Walker, and the other the case of Joan Klinsberg – actually a friend of Celli. The email from Courtenaye telling Celli that she never helped any individual at

3020-a is simply untrue. But her email convinced Celli and Portelos that Plaintiff was a liar, and thus harmed Plaintiff.

Plaintiff never told Attorney Jonathan Tand to put his HIV+ status into the Complaint in this Court before Judge Cogan.

Plaintiff never wrote his complaint for him, please see the EEOC papers in EXHIBIT B signed by Attorney HARTT, his attorney.

Plaintiff never spoke with the ALJ of Celli's Grievance. See in EX, B the transcript of Lucio's November 2 grievance, where he tapes himself telling the AJ that he is not taping.

Celli's Counterclaims make no sense. I cannot understand what they are, except that Federal cases are public, unless documents are sealed. I honestly am at a loss to know how to answer his Counterclaims.

I affirm here that I sent Celli the letter requesting that you, Judge Brodie seal the documents #44-#48 on the docket. I sent the letter on January 8, 2018. A month later, the documents remained on the docket. Unsealed. He is in contempt of court. Celli will never seal the documents, not only because he is pro se and cannot do it, but also because he does not obey Judges. Please see his own Federal case before Cogan. See also Ex, B for all of his emails, his writing the Judge (Cogan) begging him to investigate me for giving his principal his U rating.

I request once again that the documents in #44-#48 which mention my body and my husband's place of work as well as his name be sealed, as well as any future papers of Celli which mention either of these two subjects.

Defendant Bryan Glass' Motion To Dismiss

Defendants Bryan Glass ("Glass") joined in the scheme to destroy Plaintiff's independent paralegal/ teacher and parent consulting business by maligning her name to any teacher who

asked for his advice, and then posting on his website "The Teacher's Lawyer" that people should beware of "snake oil salesmen" (Plaintiff) who attempt to help teachers at 3020-a teacher trials. He wants to gain the dominance of the teachers' respect and get the work without Plaintiff continuing to be paid as a paralegal with other attorneys. They – Glass and Harlow – want to gain economic rewards they are not entitled to receive. He did not tell his client Portelos to stop filing false police reports against Plaintiff, which the Bar Association says is a violation of Attorney ethics. Instead, he supported Portelos in every meeting with teachers, and gladly became the hero for teachers allegedly "ruined" by Plaintiff. He wanted to file a class action lawsuit in February 2018 and is, indeed, about to file it, without any intervention – or comments – by Plaintiff, challenging him and interfering with his potential windfall. See EXHIBIT C for the documents proving he was very much a participant in the slamming and defamation of Plaintiff. Even more shocking is the fact that he filed frivolous cases for Portelos, saying that Portelos had a First Amendment Right to protected speech at the School Leadership Team (SLT). Glass lost the cases filed for Portelos in this Court.

Plaintiff believes that Glass' close working relationship with Portelos, and that fact that Glass is key to Portelos' scheme to defame Plaintiff, that Glass is a State Actor in these circumstances. Plaintiff requests time to oppose sanctions, which for her would be very serious. Jordan Harlow Motion To Dismiss

Jordan Harlow ("Harlow") has also an ethics issue when he threw the documents into the face of his client, V.B., who was undergoing a 3020-a hearing, after she fired him and after he saw his client talking with Plaintiff, who was at the hearing location on another case. After Harlow ran out the door, the Arbitrator would not give V.B a chance to act as her own representative, and V.B was terminated. The blow up by Harlow was the reason for her termination, and the

argument started over Harlow telling V.B. she should never speak with Plaintiff. Plaintiff and Harlow worked together in 2013-2014, and Plaintiff is listed as Harlow's paralegal on the title page of the decision by Marc Winters in the case of Jim Geist. That he, Jordan Harlow, would sit back and allow Portelos to claim that Plaintiff is a criminal and sits at 100 Gold Street trying to grab new clients is irrational and absurd. Plaintiff does not go to 100 Gold unless she has a hearing in which she is the paralegal. She currently works with two attorneys in these 3020-a hearings.

Portelos went so far as to file complaints with the Attorney General's Office as well as the District Attorney's office, hoping that Plaintiff would be held to be criminally liable and given punishment by the State and thus out of his way so that he could supposedly "help" teachers. He hacked into Plaintiff's blog in July 2016 and removed an entire section on the 3020-a procedures of the NYC DOE;  in September he linked the site "nycrubberroomreporter" – a copyright infringement which will be addressed in another Court, to his page about 3020-a hearings on his page "UFT Solidarity"; he deliberately and maliciously lied about Plaintiff, filed false criminal charges against Plaintiff with the intent to harm her personally and professionally, and then encouraged the defamation of Plaintiff by attacking her friends as well as anyone who supports her, so that he friends would be fearful of standing up to Portelos' lies.

In New York State it is a crime to file false criminal charges against anyone, knowing that the charge is false. It can be charged as either a misdemeanor (most common) or felony in New York State. The statutes can be found in New York Penal Code Sections 240.50, 240.55 and 240.60. Typically, it is a Class A misdemeanor, which carries a maximum penalty of up to a year in jail and/or up to a $1,000 fine. However, it can be felony in limited circumstances (e.g., a person has prior convictions for making a false police report). A person can be arrested and prosecuted for

filing a false report. Additionally, depending on the circumstances, the falsely accused may have

a cause of action against the person for defamation (libel and/or slander) and negligent or

intentional infliction of emotional distress.

Instead of just giving his opinion about Plaintiff he posted the FACT that she was a criminal

ands then asked for people to give him proof, even though he knew Plaintiff never said to anyone

at anytime that she was an attorney or that she gave  legal advice. Portelos created a poster with

Plaintiff's face at the top, and the heading "HAVE YOU EVER PAID FOR LEGAL

ADVICE/WORK TO BETSY COMBIER",  with the subheading "it is believed that one Betsy

Combier has crossed over from advocate to attorney/paralegal for hire. There are many activists

who help others in need however, Betsy Combier has allegedly made it into a "for profit" career

charging thousands of dollars for representation without a license. Please share your experience

below as a complaint is being filed." Portelos' Libel Per Se left him unprotected from charges,

and for this reason he is a Defendant in this lawsuit. See the papers in Exhibit A. His malicious

intent and his lies are shown in these documents.


## STATEMENT OF FACTS

Plaintiff Pro Se Elizabeth Betsy Combier (hereinafter referred to as "Plaintiff") was born in New

York City. Her father was Assistant Attorney General of New York for 25+ years under AG

Louis Lefkowitz. He mother was a producer of Broadway shows. Plaintiff is a private citizen

who has worked since 1998 as an independent non-attorney and a parent advocate, paralegal and

consultant for educators and Attorneys. She started her advocacy when her four daughters started

her education in New York City public schools in 1997, and her youngest daughter attended PS 6

where the Principal was Carmen Farina, the current Chancellor and one of the Defendants named

in this action.

Starting in 2003 Plaintiff started studying and attending 3020-a trials (first, from 2003-2011 as an observer if the 3020-a was designated an open hearing, then as an assistant/paralegal 2011-present) and has studied the teacher tenure trial known as "3020-a" Arbitration, in New York State and New York City during all those years up to the present time. She was the only person who listened to teachers and spent time trying to figure out what a teacher should do, so educators started calling her and asking to meet with her to discuss their cases. Plaintiff gathered together other researchers who were current and former teachers, to meet at the diner across the street from where she lives to discuss current goals and future outcomes.

Plaintiff first met Randi Weingarten, former President of the United Federation of Teachers, in 1999 at an event at her daughter's school. In 2006 Randi asked Plaintiff to assist her with a New York City Council meeting on whistleblower protections for teachers. After assisting with this, Randi asked Plaintiff to work for the UFT, and Plaintiff agreed, if it was only part-time. In this 14-hour position as a Special Representative charged with talking with educators in the Rubber Rooms throughout NYC, Plaintiff could also continue to research and attend any 3020-a hearing she was asked to attend.

In 2007 Plaintiff met Defendant Lucio Celli, re-assigned to a rubber room in the Bronx. She visited the Bronx re-assignment room about once a week for three years, and became familiar with the teachers there. Lucio had no friends, but Plaintiff always made time to sit with him to discuss the Department of Education.

At no time has Plaintiff ever claimed she was an attorney, nor has she ever claimed that her opinion is "legal advice"

In fact, Portelos used to refer to Plaintiff's blog:

The Special Commissioner of Investigation's Hand is in the Pocket of the Chancellor
BY FRANCESCO PORTELOSSEPTEMBER 26, 2013UNCATEGORIZED

http://educatorfightsback.org/the-special-commissioner-of-investigations-hand-is-in-the-pocket-

of-the-chancellor/

Let's just look at this analogy here. One SCI investigator once said to me "You are
always using analogies. It's probably because you are a teacher."
Imagine you owned a house and you needed an inspector to check on some violations.
You call **Jim Bob Inspection** and pay Jim Bob to come and investigate for any
violations or issues. He investigates and you cut him a check. Once he leaves he sends
you a report with his findings and on top of that calls the Department of Buildings
who then fines you. Yes, you paid Jim Bob and yes he investigated, but in the end he
found that**you** had violations. Not a likely story?
Did you follow that analogy? How impartial is impartial? So is the commissioner's
hand in the pocket of the chancellor? Not physically, but it appears Chief Financial
Officer Michael Tragale cuts them a check.
Also check out Betsy Combier's coverage here: Two Reports, "Investigating The

Investigators", and 'The Gill Commission Report' (1990) Dont Improve New York

City Public Schools

The scheme created by Portelos needed a key player to lie for him about Plaintiff and this player

is Lucio Celli. He also needed to direct the money he wanted to take from Plaintiff towards his

lawyer of choice, Bryan Glass and Jordan Harlow. The New York City Department of Education

has no internal structure to discipline cyberbullies, and negligently overlooked the harm that

Portelos created in his mobbing scheme. The NYC DOE knew exactly what Portelos was

capable of, as Carmen Farina's "army" had warned him of consequences if he continued the

harassment he was charged with in his 3020-a hearing. He continued to do what he was warned

against doing, but the Department has continued to pay him his salary.

CONCLUSION

Plaintiff respectfully asks this Court to Dismiss all the Motions and Defensives, All Counterclaims, and requests for Sanctions after reviewing the EXHIBITs attached, seal the documents of Lucio Celli on the public docket, and give her all the relief that this Court believes is fair and just under the circumstances.

Dated March 13, 2018

Elizabeth Betsy Combier

# EXHIBIT A

# Opposition To Motion To Dismiss By Francesco Portelos

# THURSDAY around 8pmEST - HuffPost Live Interview!

Inbox x



**Mr. Portelos <mrportelos@gmail.com>**                                                    11/7/12

to Nancy, me, Athina, James


Nancy,
    Are we still on for video interview? Today is 196 days since I was removed and have no charges against me. Barely any work and lots of cover-up to say the least.

Betsy Combier who runs http://nycrubberroomreporter.blogspot.com/ has a wealth of information. She has been involved in this for years and is working on some cases right now.

-Francesco Portelos
mrportelos@gmail.com
protectportelos.org
Parent
Educator
UFT Chapter Leader IS 49
"In the end, we will remember not the words of our enemies, but the silence of our friends."
-Martin Luther King Jr.

*September 15, 2010*

## ...If You Knew Betsy...



They say that there is an exception to every rule- and when it comes to the Useless UFT, that exception comes in the form of a beautiful, green eyed blonde, an unconventional, bright and passionate woman named Betsy Combier.

The first time that I met Ms.Combier was almost three years ago. She walked into our Rubber Room wearing an embroidered suede jacket and up to the knee high heeled boots. Unlike most of the women who work for the UFT, Betsy exuded a refreshing warmth and feminine quality. In a sweet and soft voice, Betsy introduced herself as someone who would be coming once a week to assist reassigned teachers with any problems or questions they may have. She greeted some of the teachers that she already knew and then proceeded to personally introduce herself to each and every new face. As she approached where I was sitting, one of the teachers quickly whispered,"Don't trust her." "Why?", I asked. That teacher put her head down as Ms. Combier greeted me. Although her warmth and openness was indeed refreshing, I cautiously welcomed her into my space. She handed me her card and told me to call her anytime I needed to talk. Soon after meeting her, I learned that Betsy had several blogs and was involved in advocating for the rights of students, parents and teachers. Having been a PTA president and raising four daughters in the Public school system, Betsy knew the system from many angles. She attended PEP meetings where she spoke out for the rights of the RR teachers, questioned the inflated power of the principals, the agenda, our Mayor and the unqualified Chancellor-without-a-contract.

The following week, Ms. Combier entered our RR wearing a flouncy skirt and carrying a fringed handbag. I could hear her in the hallway making small talk with the horrible Mr. Warden before entering the RR as scheduled. Two of the teachers immediately grabbed her ear, taking her to the private "staircase" in the hallway to talk.
Besides providing answers, listening to the teachers and following up on all inquiries, the difference between Betsy Combier and the rest of the UFT Reps was that Betsy came with no agenda. Having been hired only part time by Randi Weingarten to support the reassigned teachers in the RR, Betsy gave her support in the only way that she knew how...FULL time. Here is a

woman who does not drive or ride the subway, but somehow managed to spend everyday, yes, EVERYDAY of the week visiting a different RR facility throughout the city or talking with distraught members of the TRCs. On a salary that barely covered her expenses, Ms. Combier never missed an opportunity to talk to, advise, assist and console hundreds of reassigned teachers over a seven year period. Unlike the other unapproachable, angry and aloof Useless UFT Reps (they know who they are) who shamelessly looked at their watches, worried about the running meter, came empty handed and stayed only long enough to say that they 'showed up', Betsy genuinely wanted to be there. Betsy sat amongst the teachers, never looking at the time, never making excuses. If for some unavoidable reason, she'd be late, Betsy would call one of us on our personal cell phones to let us know. If that wasn't enough, Reassigned teachers called Betsy early in the morning and all hours of the night when sleeping seemed like an impossible feat. Betsy knew the teachers. She knew their pain and hurt. She felt their frustration. She guided and empowered them to help themselves. Singlehandedly, Ms. Combier made up for the shortcomings and absence of all of the UFT reps that I have ever met. Those who allowed themselves to know her, loved her and still do. Those who doubted her sincerity were obviously afraid of her unconventional warmth and wisdom; do you blame them after the way they the UFT treats them?? However, those who didn't know her, missed out on her natural gift for being a true PEOPLE advocate and great friend.

One would think that by the way I have described Mrs. Combier, the UFT would recognize and value her for the rare GEM that she is.
Why then is Ms. Combier no longer employed by the UFT? Shockingly, the only thank you that Ms. Combier received for seven years of dedicated service to the UFT was a Pink slip on July 7, 2010. She was told by UFT Co-Staff Director Ellie Engler that the UFT no longer needed her service since the Rubber Rooms were to be closed. Ellie Engler is the very same person who did everything in her power to make Betsy's life at the UFT as difficult and uncomfortable as possible.

In 2009, Ms. Engler told Betsy to pack up her office at 52 Broadway because it was needed by the UFT for someone else. She promised to provide her with boxes and an alternative office location by the next day. At 6PM on the following day, there were still no boxes and nowhere to move them to. She was told to contact David Hickey, but received no response to her messages. After filling up several black trash bags with her papers and files, Betsy removed most of her things with the help of a teacher friend. After several months of working without an office, the Queens TRC liason asked Leroy Barr for an explanation. Several UFT members wanted to meet with Betsy, but without an office, this was impossible. After walking around the 16th floor, Mr. Barr located the telephone that had Betsy's number hooked up to a remote desk somewhere on the other side of the building. This, he told her, would be her new "office". Betsy's only request was that her files from her old office be safely moved to her new location. However, most of the files from her old office were never found.
The harassment continued after the Christmas break when Betsy returned to find that her cubicle had been moved by Ellie Engler and that her computer and telephone had disappeared. After scavenging for her things, Betsy's telephone was eventually found on the 11th floor.

After Betsy made several requests to Ms. Engler for her newly printed UFT business cards, Ms. Engler asked that Betsy take down the posts on her blog, NYC Rubber Room Reporter that contained Theresa Europe's name. (Theresa Europe is in charge of the DOE attorneys in The "Gotcha Squad") Betsy refused Ms. Engler's request and in turn, never received her cards. In addition, Adam Ross, the Attorney for Mike Mulgrew, told Betsy that she is to refrain from filing any FOIL (Freedom of Information requests) of anyone who is employed by the NYCDOE. Because Ms. Combier refused to heed these requests, she was fired. (Yet in her agreement it says she is hired to help any member in the TRC or elsewhere who needs help, and continue to write and advocate for people she assisted before she worked for the UFT) Ms. Combier may have been fired by the UFT, but she has not stopped working on behalf of the UFT's teachers who are still very much in need of her valuable knowledge and assistance.

Now, Betsy is pursuing her advocacy outside of the UFT from her office at home. Her email is

betsy.combier@gmail.com. I know she will be there for you, me, and anyone who needs help. **Shame on the UFT for firing one of our most dedicated and productive representatives.**



UFT President Mike Mulgrew
& UFT Co-Staff Director Ellie Engler

**Are you reading this, Mr. Mulgrew, Ms. Engler and Mr. Hickey?**
Posted by FidgetyTeach at 10:40 PM
Labels: betsy combier, Ellie Engler, mike mulgrew, NYCDOE, rubber rooms, teachers,UFT

# 13 comments:



**Chaz said...**
I could not of said it better myself. Betsy Combier is one of the heroes.

September 16, 2010 at 5:58 PM



**Fidgety said...**
Thank you Chaz. Betsy is definitely an "Unsung Hero" in the eyes and hearts of many teachers....The Union Leader's failure to recognize this is a great loss to all of its' members.

September 16, 2010 at 6:33 PM

**Polo Colon said...**
Betsy has withstood the most undeserved asinine insults from both UFT and DOE detractors who hate her for exposing their collusion.

I have been a victim of both the UFT and DOE's legal scams! Only NYS Education Law (even with its flaws), the Constitution and Betsy Combier helped to defend me against the devious onslaught of their not-so-secret partnership!

Shame on all those clowns and monkeys who tried to destroy Betsy for being the best!

September 16, 2010 at 10:14 PM

**DAVID PAKTER said...**

---

**Re the following Quote:**

---

**"Betsy is definitely an "Unsung Hero" in the eyes and hearts of many teachers....The Union Leader's failure to recognize this is a great loss to all of its' members".**

---

**Please-Let us just tell it like it is, as the legendary Gil Nobel of ABC News would always say.**

**The so-called Union Leader and his legions of lackeys do not "fail to recognize" anything.**

**It is precisely because they do recognize that Betsy Combier is a natural born Hero and take charge Leader that the UFT felt they had to push her out of the UFT and ASAP.**

**And on the contrary, she is not at all an "Unsung Hero" in the eyes and hearts of NYC Educators.**

**Ms. Combier's sterling reputation for integrity, razor sharp intelligence and plain old fashioned guts, made it mandatory in the sick minds of the UFT power brokers that they must "disappear" Betsy Combier just as fast as they could from 52 Broadway.**

**Corruption and party politics do not thrive well when someone is around shining the cold light of truth and honesty on the scene.**

**Strange that I have never noticed anyone observe that the NYC DOE's charlatan of a Chancellor's business card carries the same number for the building address as the UFT- the number " 52 ".**

**How strange is that?**

**Or maybe given what we have seen happen to New York City's dedicated Teachers during the past ten years, (and growing worse)- the coincidence of both the DOE and the UFT being located at Headquarters with the number 52 is more than mere coincidence.**

**CONTINUED BELOW**

---

**September 17, 2010 at 3:39 AM**

**DAVID PAKTER said...**

---

**PAKTER COMMENT CONTINUED BELOW**

**I never had much patience with the practice of trying to make nice with people who are ethics and morals challenged.**

**The forces at the UFT who decided to fire Ms. Combier have a lot in common with the agenda driven creeps at the forefront of the school Charterization movement as well as the DOE.**

**That agenda is to look out for "Number One" and keep the good life and the perks rolling on as**

far as the eye can see.

The "cannibals" running the Charter movement could not care less about the children of NYC.

And the opportunists who have managed to hijack control of a once great and proud Labor Union called the United Federation of Teachers could not care less, deep down, for the present Hell that UFT members must work and teach in on a daily basis.

Even those Teachers who have not been ATR'd into oblivion and are fortunate to have their own classroom must suffer the humiliation of going to a job each day where one always runs the risk of instant and Hellish payback and punishment if they dare to speak up and speak out to protect themselves and their own and their students' rights.

Betsy Combier was and will always remain a human being who is not afraid to carry a target on her back.

CONTINUED BELOW
_____ -

September 17, 2010 at 3:42 AM


DAVID PAKTER said...
_____

PAKTER COMMENT CONTINUED BELOW
_____

Betsy Combier possesses real backbone, true grit and true moral courage- things they do not teach the newbies in Joel Klein, Esq.'s hypocritical so-called "Leadership" Academy.

There the "learning" is about how to intimidate, threaten and Railroad innocent teachers out of the system and out of their careers and their livelihood. That is "Introductory Education Course 101".

Are dues paying NYC UFT Member Teachers getting proper employment protection, these days vis a vis the NYC DOE and ethics challenged Joel Klein ?

Please- don't make me laugh.

Betsy Combier put her personal economic security on the line to do the right thing and stand up and protect the Rights of any and every Teacher who came to her for help.

But that put her squarely at odds with the agendas of two powerful forces whose headquarters are not located that far apart.

"52" this, "52 that". You say potato- I'll say tomato.

What's the difference between them. Let's wake up and smell the coffee and call the whole thing off.

A pox on both their houses.

And a woman who was the best friend NYC Teachers ever had was very ill treated by people

who never learned that there is such a thing as the word "Decency".

September 17, 2010 at 3:51 AM

**Anonymous said...**
I am an NYC teacher who has never met Betsy Combier and know of her amazing work only through teacher blogs. Her heroism comes through every time. If there is ANY way we, the union members, can help her now, please let us know. If she needs economic assistance (due to bogus firing), I will personally contribute and fund-raise for her! We heart Betsy!

September 18, 2010 at 1:11 PM

**Anonymous said...**
I have witnessed the decline of humanity in this NYCDOE Camp. I have been a victim of an abusive principal who still reigns despite legal and ethical breaches/violations. He is still in command of a sinking ship whose stories fall under BIZZARE,TRAGIC, AND ALL TOO TYPICAL.
KUDOS TO BETSY who I personally met and can say has provided more support than the UFT and DOE combined.

September 19, 2010 at 10:54 AM



**Fidgety said...**
Yes David, you are right. The UFT doesn't fail to see anything. The only thing they see when they look at Betsy Combier is a smart, strong, independent woman who puts all of their useless UFT asses to shame. There is no place for truth and honesty in the UFT.

September 19, 2010 at 8:52 PM



**Rich said...**
Hi, I'm doing research on a screenplay that takes place in a Rubber Room and I'm interested in speaking to someone who spent time in one as either a teacher, administrator or security guard . If you are interested please e mail me at rich@attentionfilms.com

October 28, 2010 at 2:17 PM



**Rich said...**
Hi, I'm doing research on a screenplay that takes place in a Rubber Room and I'm interested in speaking to someone who spent time in one as either a teacher, administrator or security guard . If you are interested please e mail me at richmurrayfilm@gmail.com

October 28, 2010 at 2:17 PM

**Pissed Off said...**

You did a great job on Blogtalk radio. It must have been hard but good to get your voice heard. Good luck. I am on your side.

November 2, 2010 at 8:42 PM



**pm said...**

Betsy thank you for the wonderful help.You are an amazing woman and have opened my eyes about the sham UFT an all the LOSERS acting like they care about us.

January 13, 2014 at 9:38 PM

**Susan Lupi Rau**                                                6:33am Nov 6

My opinion. I doubt Laurie Kessler Luft and Betsy are in cahoots so Betsy can profit from
our misery. This is pure utter nonsense.

Original Post

**Francesco Portelos**                                           6:29am Nov 6

Good morning fellow ATRs. Some of you might have been seeing glimpses of feuding lately and
maybe you are not sure where it is coming from. You need to understand that the only reason this
group exists is because our union sold us out now and years ago. Randi Weingarten as President of
the UFT helped in pushing a horrific contract and agreeing to the creating of the ATR pool. A pool
where experienced educators and activists have been thrown into. Betsy Combier, an activist, but
non educator, not UFT member, non ATR has been in this group stirring up issues. She recently
wrote this to us:

"Despite everything that occurred, I believe that Randi is a brilliant person who cares deeply about
human rights, fights discrimination, and I hold her in the highest regard. She changed the course of
my life. I will always treasure her for that."

I am writing this as someone who spends my day trying to defend ATRs and other UFT members.
This Betsy-Randi connection is of concern to me. She benefits financially by being hired when we
are attacked. I think the membership of this group falls on the decision of one person even though
there are three admin that screen requests. Laurie Kessler Luft is close friends with Betsy.

What is the solution here? The infighting is not a coincidence, but rather a strategic hit to me, UFT
Solidarity and our campaign. Who is behind it and what is the incentive? The more you know...


**Francesco Portelos <mrportelos@gmail.com>**                    11/
                                                                 18/
                                                                 15

to me

Francesco Portelos has left a new comment on your post "Francesco Portelos and NY State Tenure Law":

Hopefully everyone can see through your lie filled rants. I know most do. Did you tell everyone how
Randi Weingarten gave you her cell number before you launched your smear campaign?


**Francesco Portelos <mrportelos@gmail.com>**                    12/
                                                                 7/1
                                                                 5

to Randi, me

That's the question we have been asking. After now being sent audio recordings of
Betsy boasting of receiving calls from Randi, right before the attacks began, we feel that
there is a strong connection.

Betsy, the libelous posts written about me and members of UFT Solidarity should be taken down. From Rubber Room Reporter, Parent Advocate and LinkedIn etc.

Members you email and Facebook message screenshot and send us your rants. I'm not giving you a deadline, but the sooner the better. Also never speak of us again.
Thanks

**Francesco A. Portelos**

Educator
www.EducatorFightsBack.org

UFT Presidential Candidate 2016
www.UFT2016.com

UFT Solidarity Caucus
www.UFTsolidarity.org

Don't Tread on Educators
www.DTOE.org

ATR Alliance
www.atralliance.org

www.mrportelos.com

**Randi Weingarten, Office of the President <rweingar@aft.org>**          12/8/15

to Tear, Barbara, Mark, David, Francesco, me

I am not involved in any "attacks" ...

Francesco, just like I had lunch with you 2 summers ago, I had a long call with Betsy on Columbus Day weekend.

Betsy did good work for the members when she worked for me while I was UFT President.  I reaffirmed that in the conversation I had with her.

I ask both of you to please keep me and the national union out of this back and forth you are having with each other... We have to much to do fighting for the dignity and respect of our members and the students and communities we serve.

Thank you.

Randi

On Dec 18, 2015 8:56 AM, "Randi Weingarten, Office of the President" <rweingar@aft.org> wrote:
Francesco- I always try to respond. Given the election period, I can't get involved. It will not matter what I say or do-look at the assumptions you have made. Michael has been elected in his own right as UFT President and he makes his own decisions. And  I think he has done a great job as President.

I thought Betsy did a good job.  Why don't you tell her what you wrote me.Again I can't be that intermediary during election periods.

Have a happy holiday.

Randi

Sent from my iPhone

On Dec 18, 2015, at 7:16 AM, Francesco Portelos <mrportelos@gmail.com> wrote:

Randi,

   I want involving the national union. Simply trying to see if the timing of your talks and her attacks were more than a coincidence. Around this same time, Michael Mulgrew, a person you chose as your replacement, requested that I be investigated. The first UFT investigation anyone has ever heard of.

It's best if Betsy ignore that I and Solidarity exist and we'll do the same. If she did good work, then I don't know why Michael Mulgrew fired her. In fact, I told her that if I won, I would bring her back to the UFT to contribute get great work. A bridge she is burning.

Betsy should remove her defamatory and libelous posts and in turn when countless members ask us for representation, we won't say "Don't go to Betsy." and instead mention that she is a good advocate.

It's really a win - win.

I'm not going anywhere, so it's best we all get along.

Happy holidays.

Francesco A. Portelos
Educator
www.EducatorFightsBack.org

UFT Presidential Candidate 2016
www.UFT2016.com

UFT Solidarity Caucus
www.UFTsolidarity.org

Don't Tread on Educators
www.DTOE.org

ATR Alliance
www.atralliance.org

www.mrportelos.com

"The foundation of every state is the education of its youth." -

Greek Philosopher Diogenes


On Dec 8, 2015 7:25 AM, "Randi Weingarten, Office of the President" <rweingar@aft.org> wrote:
I am not involved in any "attacks" ...

Francesco, just like I had lunch with you 2 summers ago, I had a long call with Betsy on Columbus Day weekend.

Betsy did good work for the members when she worked for me while I was UFT President.  I reaffirmed that in the conversation I had with her.

I ask both of you to please keep me and the national union out of this back and forth you are having with each other... We have to much to do fighting for the dignity and respect of our members and the students and communities we serve.

Thank you.

Randi

Francesco-Facebook-feedback-likeds.jpg

 **Joann Marotta Nellis** Hmm. You're getting harassed meanwhile bad admins continue to inflict their damage. Hmm
Like · Reply ·  2 · 6 hrs

>  **Carol Phillips-Khan** All that I read; it's just so disgusting. Not only are we humans; we are educators AKA big mommies and daddies to our nations kids! Oh wait I'm forgetting ....someone's always being violated or spat on    my oh my ; explains everything.
> Like · Reply · 6 hrs

> Write a reply...    ☺ ◉ GIF 🗔

 **Francesco Portelos** According to the audio here she was getting calls from Randi Weingarten while I was running for president against Randi's appointee Michael Mulgrew.
Educatorfightsback.org/Betsycombier

 **Should NY Teachers Use Betsy Combier as an Advocate?**

In the education activist arena there are personality...
EDUCATORFIGHTSBACK.ORG

Like · Reply · 6 hrs

 **Miriam Frank** what winston churchill said
Like · Reply · 6 hrs

 **Cecilia T. Miller** I am so glad I am getting out if education. I was placed at a school for my last year. I refused to interview. Why? My former principal would retaliate. She already went after me through the evaluation process. She thought if I was gone, her troubles w... See More
Like · Reply · 5 hrs



Like · Reply · 👍 2 · 6 hrs

 **Thomas Stoppini** See. Lol. And i use that quote in a Jackson lesson. Damn
Like · Reply · 👍😆 3 · 6 hrs

 Thomas Stoppini replied · 2 Replies · 2 hrs

 **Carol Phillips-Khan** I love Churchill's quote! Now I can breath Better!😄
Like · Reply · 6 hrs

 Arjun Janah replied · 3 Replies · 44 mins

 **Mike Selk** And when do you file your harassment lawsuit against the DoE?
Like · Reply · 6 hrs

 **Phlun Phun** I thought Betsy Combier was a good guy.
Like · Reply · 6 hrs

 **Francesco Portelos** Phlun Phun, see below that Betsy's knowledge clouded by her greed to profit. The suit is all about money and alleged losses in clients.
Like · Reply · 👍 2 · 6 hrs

 Write a reply...                   

 **Cecilia T. Miller** Geesh....does this woman not have a life? Is her goal to continue looking like an idiot? I would hope someone would tell her to stop. Of course, someone may be pulling her strings.
Like · Reply · 👍 1 · 6 hrs

 **Joann Marotta Nellis** Hmm. You're getting harassed meanwhile bad admins continue to inflict their damage. Hmm

# Have You Ever Paid for Legal Advice/Work to Betsy Combier?

It is believed that one Betsy Combier has crossed over from advocate to attorney/paralegal for hire. There are many activists who help others in need however, Betsy Combier has allegedly made it into a "for profit" career charging thousands of dollars for representation without a license. Please share your experience below as a complaint is being filed.

* Required



**First Name** *

**Last Name** *

**Enter your email address** *

**Confirm your email address** *

**Phone number**

Please check the type of service Betsy Combier has provided to you *

Have You Ever Paid for Legal Advice/Work to Betsy Combier?

☐ Verbal legal advice

☐ Written legal advice

☐ Actual representation at a legal proceeding

**Did you pay Betsy Combier for any of the services above? ***

○ Yes

○ No

**Description of interaction, advice and/or work provided. ***

Submit

*Never submit passwords through Google Forms.*



NYC TENURED TEACHER
3020-A HEARING GUIDE
UFTSOLIDARITY.ORG/3020-A

can appeal to your local Supreme Court and file an **Article 75.** You only have ten calendar days to do so from the date your attorney receives the decision. At this point, NYSUT may file an Article 75 for you or you may retain a private lawyer.

READ http://www.newyorkcplr.com/article-75.php

If you need to contact a private lawyer, we recommend

Bryan D. Glass, Esq. – GHNYLaw.com

or

Maria Chikedantz, Esq. – mmsjlaw.com

*Please be careful not to pay for anyone to help you who does not hold a license to practice law in NYS.*

If you have time, watch this video below we obtained of the DOE and UFT discussing expediting this entire process above.



HOME   ABOUT   MEMBERSHIP   MEMBER TOOLBOX   UFT ELECTIONS 2016   DONATE OR BUY A SHIRT   GET CONNECTED



**UFT Solidarity is building a *stronger* union.**

**"Together we can improve education by improving our profession."**

UFTSolidarity.org



# 3020-A HEARING GUIDE

<u>Were you charged, or do you feel you will be charged, with a 3020-a hearing? Now what?</u>

This guide will cover almost everything from start to finish, including an appeal. Read through it several times if you have to.

### First, a 3020-a Word Wall

<u>Specifications</u>: charges brought against a tenured pedagogue. Sometimes the words "*charges*" and "*specifications*" are interchangeable.

<u>Arbitrator</u>: the hearing officer that facilitates the 3020-a hearing. Both the words "*hearing officer*" and "*arbitrator*" are interchangeable.

<u>Respondent</u>: The tenure educator that is responding to the charges.

<u>Complainant</u>: The ones who brought the charges. Also sometimes referred to as "the Department."

<u>Counsel:</u> The attorney or lawyer. All three words "counsel," "attorney" and "lawyer" are interchangeable.

### <u>The Law</u>

New York State Education Law 3020-a states that a school district cannot terminate a tenured teacher without a hearing. This is great for those amazing educators, who want to continue taking part in educating students, but have come under ***warrantless*** attacks from administrators, fellow colleagues, students or parents. The key word in that sentence is "warrantless." This guide is <u>not intended</u> to help anyone, who should not be working as an educator, escape proper adjudication. This guide is also

Case 1:17-cv-02239-KAM-RLM     Document 67     Filed 03/13/18     Page 60 of 359 PageID #: 547

This is a variation of what the charges will look like:

---

**The University of the State of New York**
The State Education Department
Teacher Tenure Hearing Unit
EBA Room 981
Albany, New York 12234

Ph: (518) 474-3021
Fax: (518) 402-5940

(08/12)

**Education Law §3020-a Charge Transmittal Form**

| Instructions: | The District Clerk or the Secretary of the Board of Education must file this form via fax or mail with the Education Department when the Board of Education has found that there is probable cause to bring charges against a tenured educator. A copy of the Notice of Probable Cause and the Charges voted on by the Board must be transmitted with this form. |
|---|---|

**Tenured Employee Information**

| Name | ███████████ | SSN | ███████ |
|---|---|---|---|
| Address | ███████ | DOB | ███████ |
| Address | ███████ | | |
| City, State, Zip | ███████ | | |

**School District Information**

| District Name | █████████████ | | |
|---|---|---|---|
| Address | ███████ | Phone 1 | |
| Address | | Phone 2 | |
| City, State, Zip | ███████ | Fax | |

---

Download (PDF, 1.07MB)

## After getting served the charges (specifications)

1. Contact your local union office. They will fill out the proper paperwork to appoint you a free attorney from the New York State United Teachers (NYSUT) and request a hearing. Remember, it's not automatic that you have a hearing. If the school district doesn't receive notice that you are requesting a hearing within 10 days, then you might automatically be fined, suspended or terminated, depending on what discipline they are seeking. DON'T DELAY! [You can also hire a private attorney or defend yourself (pro se)]

2. Obtain a full copy of your personnel file. According to Article 21 of the UFT contract, they should abide without undue delay. Either sit and review and make copies, or get a copy of the entire file. If you are denied, speak to your attorney, or file a grievance. See also uftsolidarity.org/toolbox on how to file a grievance.

3. Go through your file. Anything three years or older, that's derogatory, should be removed. That's also in Article 21.

**Odalis Santana** Go get 'em, Francesco!!!
Like · Reply · 3 · October 30 at 9:19am



**Sonia Algarin** Whoop ass lol!
Like · Reply · 1 · October 30 at 9:51am



**Latica Greer** Open up a can... LI
Like · Reply · October 30 at 10:55am



**Amira Chantel Beatty** Gettum! !!
Like · Reply · October 30 at 11:07am



**Dennis Dalessandro** The last line is the key. It's what needs to be focused on.

It is the job of an administrator to support a teacher they find to be ineffective....See More
Like · Reply · 3 · October 30 at 11:18am



Dennis Dalessandro replied · 1 Reply



**Laurie Kessler Luft** This letter to administrators concerns me because of the possible further abuse that may be inflicted on the teacher who it is intended to protect. Who will be accountable in case that happens?
Like · Reply · 1 · October 30 at 6:14pm · Edited



**Betsy Combier** I have been told that teachers are being targeted after their name is associated with DTOE or UFT Solidarity. Laurie's concern is valid.
Like · Reply · 1 · 9 hrs



**Laurie Kessler Luft** Oh no, that's not good! Seriously?
Like · Reply · 2 · 6 hrs



**Claudia Giordano Lasky** Francesco Portelos
Like · Reply · 1 hr



**Francesco Portelos** Betsy Combier that's not true. I'm sorry that our free advocacy work has hindered your money making advocacy work, but don't spread lies.
Like · Reply · 1 · 1 hr



**Francesco Portelos** Laurie Kessler Luft our emails help people.
Like · Reply · 1 · 1 hr



Like · Reply · 3 · October 30 at 11:18am



Dennis Dalessandro replied · 1 Reply



**Laurie Kessler Luft** This letter to administrators concerns me because of the possible further abuse that may be inflicted on the teacher who it is intended to protect. Who will be accountable in case that happens?
Like · Reply · 1 · October 30 at 6:14pm · Edited



**Betsy Combier** I have been told that teachers are being targeted after their name is associated with DTOE or UFT Solidarity. Laurie's concern is valid.
Like · Reply · 1 · 9 hrs



**Laurie Kessler Luft** Oh no, that's not good! Seriously?
Like · Reply · 2 · 6 hrs



**Claudia Giordano Lasky** Francesco Portelos
Like · Reply · 1 hr



**Francesco Portelos** Betsy Combier that's not true. I'm sorry that our free advocacy work has hindered your money making advocacy work, but don't spread lies.
Like · Reply · 1 · 1 hr



**Francesco Portelos** Laurie Kessler Luft our emails help people.
Like · Reply · 1 · 1 hr



**Francesco Portelos** Betsy, did your sources happen to hear the same about other groups? ATR Alliance? ATR Facebook Support?
Like · Reply · 1 · 1 hr



**Betsy Combier** I have given my advocacy work away for 12 years, Francesco. You conveniently forget.
Like · Reply · 1 · 1 hr



**Francesco Portelos** What I know Betsy is that people have been telling me that you have been badmouthing me.
Like · Reply · 1 · 1 hr



**Francesco Portelos** Keep my name out of your mouth please.
Like · Reply · 1 hr



**Francesco Portelos** Let's be honest...You do charge money for representation though. That is fine. However if we win and build a stronger union, I think you are afraid you will get less work and thus you are sabotaging us.
Like · Reply · 59 mins

**Francesco Portelos** Betsy, did your sources happen to hear the same about other groups? ATR Alliance? ATR Facebook Support?
Like · Reply · 1 · 1 hr



**Betsy Combier** I have given my advocacy work away for 12 years, Francesco. You conveniently forget.
Like · Reply · 1 · 1 hr



**Francesco Portelos** What I know Betsy is that people have been telling me that you have been badmouthing me.
Like · Reply · 1 · 59 mins



**Francesco Portelos** Keep my name out of your mouth please.
Like · Reply · 59 mins



**Francesco Portelos** Let's be honest...You do charge money for representation though. That is fine. However if we win and build a stronger union, I think you are afraid you will get less work and thus you are sabotaging us.
Like · Reply · 58 mins



**Dennis Dalessandro** We all need advocates from time to time. I only hope my advocate has noble intentions when it's my time of need.
Like · Reply · 47 mins



**Jennifer Eileen** I don't want this group to turn into one where I don't know who the players are or what their hidden intentions are... Otherwise I'm just better off on my own! Some of these posts are just adding to my current stress
Like · Reply · 1 · 31 mins



**Francesco Portelos** Think about how this post is 4 days old and Betsy decided to just throw that comment out to scare people. Not coincidence.
Like · Reply · 26 mins

**Odalis Santana** Go get 'em, Francesco!!!
Like · Reply · 3 · October 30 at 9:19am



**Sonia Algarin** Whoop ass lol!
Like · Reply · 1 · October 30 at 9:51am



**Latica Greer** Open up a can... Ll
Like · Reply · October 30 at 10:55am



**Amira Chantel Beatty** Gettum! !!
Like · Reply · October 30 at 11:07am



**Dennis Dalessandro** The last line is the key. It's what needs to be focused on.

It is the job of an administrator to support a teacher they find to be ineffective....See More

Like · Reply · 49 mins



**Jennifer Eileen** I don't want this group to turn into one where I don't know who the players are or what their hidden intentions are... Otherwise I'm just better off on my own! Some of these posts are just adding to my current stress

Like · Reply · 1 · 33 mins



**Francesco Portelos** Think about how this post is 4 days old and Betsy decided to just throw that comment out to scare people. Not coincidence.

Like · Reply · 28 mins



Laurie Kessler Luft replied · 1 Reply



**Laurie Kessler Luft** Betsy Combier, please do not lower yourself to answering Francesco. The only one who is doing any badmouthing is you Francesco Portelos! This is a support page and my concerns are valid. Do you get permission from the teachers whom you are supposedly defending to write letters to their principals?

Like · Reply · 28 mins



**Laurie Kessler Luft** Betsy Combier has devoted her own time and energy into helping teachers. Obviously there is a need when her phone rings at 3am and a teacher is crying on the other end.

Like · Reply · 25 mins



**Claudia Giordano Lasky** Who is making claims and where is the proof

Like · Reply · 24 mins



**Laurie Kessler Luft** Jennifer Eileen, this page is a support group for ATRs. I think everyone should be concerned when principals are receiving emails from Portelos that could possibly backfire on them.

Like · Reply · 23 mins



**Jennifer Eileen** I agree! That's where my concern stems from. This letter is not likely to sway the principal at all. I know the situation and that several people have already tried to assist. Now that this letter is out there what protection will be teacher have one the administration retaliates further??

Like · Reply · Just now



Write a reply...



**Dennis Dalessandro** We all need advocates from time to time. I only hope my advocate has noble intentions when it's my time of need.
Like · Reply · 48 mins



**Jennifer Eileen** I don't want this group to turn into one where I don't know who the players are or what their hidden intentions are... Otherwise I'm just better off on my own! Some of these posts are just adding to my current stress
Like · Reply · 1 · 32 mins



**Francesco Portelos** Think about how this post is 4 days old and Betsy decided to just throw that comment out to scare people. Not coincidence.
Like · Reply ·

**Francesco Portelos** Betsy Combier that's not true. I'm sorry that our free advocacy work has hindered your money making advocacy work, but don't spread lies.
Like · Reply · 1 · 1 hr



**Francesco Portelos** Laurie Kessler Luft our emails help people.
Like · Reply · 1 · 1 hr



**Francesco Portelos** Betsy, did your sources happen to hear the same about other groups? ATR Alliance? ATR Facebook Support?
Like · Reply · 1 · 1 hr



**Betsy Combier** I have given my advocacy work away for 12 years, Francesco. You conveniently forget.
Like · Reply · 1 · 1 hr



**Francesco Portelos** What I know Betsy is that people have been telling me that you have been badmouthing me.
Like · Reply · 1 · 1 hr



**Francesco Portelos** Keep my name out of your mouth please.
Like · Reply · 1 hr



**Francesco Portelos** Let's be honest...You do charge money for representation though. That is fine. However if we win and build a stronger union, I think you are afraid you will get less work and thus you are sabotaging us.
Like · Reply · 1 hr



**Dennis Dalessandro** We all need advocates from time to time. I only hope my advocate has noble intentions when it's my time of need.



**Laurie Kessler Luft** Never once has Francesco Portelos said he is sorry or admittied that he was wrong. There is just no room for that in his huge egotistical mind. He is a teacher running for UFT President. A leader should not be publicly attacking anyone.
Like · Reply · 21 mins



**Francesco Portelos** Laurie Kessler Luft When you and I communicate, when I communicate or write with countless members via phone, email etc, when I am out handing out flyers or sending these "backfiring" emails, do you know what I am not doing? Being a father and a husband! Don't tell me about devoting time. You are safely out of the system. When were you in a classroom last? Had you been in one now and under attack I would have still helped you via any means necessary.
Like · Reply · 20 mins



**Dennis Dalessandro** Me thinks it's time for a deep breath. Are we not rowing the same boat?

It's easy for us to attack each other. Pretty sure that only hurts us........See More
Like · Reply · 1 · 19 mins



**Laurie Kessler Luft** You have no idea what my status is and as a leader it is not your business to make it public. Now you are publicly attacking me.
Like · Reply · 18 mins



**Francesco Portelos** From:
Date: Tue, Sep 1, 2015 at 11:19 AM
Subject: Fwd: Greetings...See More
Like · Reply · 1 · 18 mins



**Francesco Portelos** Good night
Like · Reply · 18 mins



**Laurie Kessler Luft** yes that is how you end all conversations- however and whenever you feel like it.
Like · Reply · 18 mins



**Dennis Dalessandro** Again. ... This is laughable to those that we philosophically oppose.... get it together people. We are not helping ourselves. Quite the opposite
Like · Reply · 14 mins



**Laurie Kessler Luft** Now let's read this thread over. Who has done all of the attacking here?
Like · Reply · 13 mins



**Laurie Kessler Luft** I should not have to defend my status to someone whose goal is to be president of the UFT. I have a lawyer who is working as we speak to bring justice to the corruption that I have endured. Like everyone here, I am an ATR through no fault of my own.

Like · **Reply** · 11 mins



**Laurie Kessler Luft** Have you noticed that Francesco Portelos goes into attack mode anytime someone questions his actions?

Like · **Reply** · 9 mins



Write a comment...

http://educatorfightsback.org/betsycombier/

# Should NY Teachers Use Betsy Combier as an Advocate?

BY <u>FRANCESCO PORTELOS</u><u>DECEMBER 12, 2017</u><u>UNCATEGORIZED</u>

There is always room for more advocates, especially in the education activist arena. I can't see a point where anyone would say "**No thanks. We have enough.**" to someone who wants to help teachers, parents and students. Having said that, there are issues. There are personality conflicts I the activist arena and, unfortunately, there is **greed**. Enter Elizabeth "Betsy Combier" Kapel stage left. I can't tell you who to speak with or use if you need support in education matters, but just be careful and vigilant in doing work with Betsy Combier.  Do your research and demand she give you her success record as she might tell you she never lost a case. If she does, then she's lying to you.



Betsy Combier Elizabeth Kapel advocate

In 2012, I unknowingly entered the education activist arena after calling out serious misconduct at my former school, Berta Dreyfus IS 49, Staten Island. I met Elizabeth Betsy Combier through that activism in 2012, after I was retaliated for exposing that Principal Linda Hill engaged in financial misconduct, as well as other violations. As time progressed Betsy Combier and I exchanged information to assist educators with issues that arose at their workplace.

As I realized the situation at my former school was not unique, and the system was running rampant with corruption and misconduct, I created activist groups such as <u>Don't Tread on Educators (DTOE.org)</u> and <u>UFT Solidarity (uftsolidarity.org)</u>, a political caucus

within the United Federation of Teachers union. I added Elizabeth Betsy Combier to certain activist email lists that educators would use to ask questions pertaining to union contract issues, workplace bullying, and expose misconduct in the NYCDOE.

At some later point, it became apparent that Betsy Combier would use her access to these email lists to poach for clients as we found out she was charging educators for her assistance, while the education activist groups I was involved with <u>did not charge</u>. We also found that she would sit in the waiting room of the NYCDOE Office of Labor Relations to also poach for clients going to hearings and believe she engages in this practice to this very day at 100 Gold St. NY, NY. Although she sometimes provides free legal and advocacy advice, Betsy Combier's advocacy is a **for-profit business**.  Everyone has a right to make money,  but Betsy Combier believes that the *free* support our groups and I were giving to NYCDOE educators was hindering her "**for-profit**" business. She saw it as a competition and not as a collaboration. At this point, and shortly after I began my campaign for UFT President, she initiated a slander campaign against me and our group members. She boasted about receiving calls from former UFT President Randi Weingarten (listen to audio below) and she used scare tactics to tell people that anyone that deals with us will be charged and terminated. She engaged in this behavior on Facebook, as well as her two blogs.

I began to be notified that she was contacting everyone I was associated with on social media. I was sent messages like this:

> I think she is an ego maniac and is pissed that you are stealing her thunder
>
> She wanted me to turn on you

Betsy Combier Facebook Message 2

At this point I removed Elizabeth Betsy Combier from the email lists and tried to disconnect from her as much as possible. She then went through my entire Facebook friends list and attacked our "mutual" friends to dissuade them from having any connection to me. Most of them chose to continue to work with me and our advocacy.

Some even recorded her bizarre behavior that was fueled by her apparent ego and greed. She did not just attack me and our groups, but had attacked other groups such as MORE Caucus in 2013 and even went after any attorney that did work for defending teachers. We have at least 7 counted. Click below to play bizarre rant from Betsy Combier.

We began hearing from many educators that Betsy Combier was allegedly illegally charging NYCDOE employees for legal advice and legal paperwork preparation. She charged as much as $3,000 to represent and write legal papers. She did this under the guise that she is a paralegal, but in the state of New York a paralegal must work under an attorney. Believing that not only was this illegal, as she did not have a license to practice law, but also counterproductive, as her clients were being terminated and/or fined, we published this link on social media: **www.tinyurl.com/betsycombier.** The link is for an online form for anyone who wants to share that they paid for legal services to Betsy Combier. After receiving information and evidence pertaining to these activities, myself and others created letters that we sent to NY Attorney General Eric Schneiderman's office, as well as Manhattan County District Attorney Cy Vance's office. These complaints were submitted in February 2017. In close proximity to these complaints being received by those offices, Betsy Combier initiated a frivolous lawsuit against us. She filed it using Staten Island Attorney Richard Luthmann, but at a later point he dropped her as a client. We believe the complaint is in retaliation for exposing her questionable activities. We believe she continues to engage in these activities to this very day, including being allowed to solicit work by sitting in the NYC DOE Office of Labor Relations.

**EMAIL FROM BETSY REGARDING HER CHARGING FOR WRITING APPEALS FOR A TEACHER:**

*From: Betsy Combier <betsy.combier@gmail.com>*
*Date: Tue, Dec 11, 2012 at 1:29 AM*
*Subject: Re: 'Messenger of God' Teacher Canned For Religious Rant, Records Show – DNAinfo.com*

*Pat asked me to write an appeal for her, so I agreed, and I **charge** for that. She picked up the appeal after asking me to sit in her car and sign a receipt of money then started hitting me.*
*I got out, and thought that if she wanted the docs that badly, she could have them!!!*
*Betsy*

A member recently sent this in regard to her continuous work solicitation on DOE property:

# Besty  Combier was here wanted to give me advice told here to take a walk

Betsy Combier work solicitation at 100 Gold St.

——————————————-

From: **Betsy Combier** <betsy.combier@gmail.com>
Date: Mon, Jan 20, 2014 at 1:22 PM
Subject: Re: your 3020-a
To: Francesco Portelos <fportelos@gmail.com>, Betsy Combier <betsy.combier@gmail.com>

Francesco, what is this stuff about DOEnuts working for you to provide a new service for teachers? Are we going to be in **competition**, when I send out my press release about ADVOCATZ? I don't want to compete with you, but I certainly wish you all the best and all help is welcomed at all times, just curious about your new partnership with DOEnuts!!

As a paralegal and plaintiff, here are two lawyers Betsy Combier worked with:

About 1,800 results (0.27 seconds)



Newsday

**Steven Morelli** Believed to Have Stolen from Four Clients, Turns into ...
JDJournal.com - Apr 17, 2017
When one of the clients asked about the money, **Morelli** stated, "The check was probably lost in the mail." A client finally went to the police on December 29, 2015, prompting an investigation into the **attorney**. **Morelli's** scheme was to "receive settlement in regards to these lawsuits, the money would be ...
Garden City **lawyer** pleads guilty to stealing over $785G from clients
Newsday - Apr 17, 2017
**View all**



Former Garden City **attorney** sentenced to prison for stealing
Newsday - Aug 2, 2017
A disbarred Garden City civil rights **lawyer** who stole about $800,000 from his clients told a judge on Wednesday he'd disgraced himself and was ready for punishment. "I spent my whole life helping people . . . I destroyed all that," **Steven Morelli**, 61, said at his Nassau County Court sentencing as his family ...
**Attorney** sentenced for stealing $785K from clients
Long Island Business News - Aug 2, 2017
**View all**



**Lawyer Steven Morelli** arrested in more thefts, cops say
Newsday - May 17, 2016
A Garden City **attorney** already accused of stealing nearly $200,000 in settlement checks meant for four of his clients has been charged with stealing an additional $550,000 from another 13 clients, Nassau County police said Tuesday. **Steven Morelli**, 59, of Manhattan, was rearrested at 7 a.m. Tuesday and ...
Nassau **Attorney** Charged With Stealing From 13 More Clients: Cops
Patch.com - May 17, 2016
**View all**

and

About 241 results (0.25 seconds)



**Lawyer Richard Luthmann** charged in kidnapping, fraud, extortion ...
SILive.com - Dec 15, 2017
STATEN ISLAND, N.Y. – Flamboyant **lawyer Richard Luthmann** may fancy himself a
champion of the little guy, but federal prosecutors say he is little more than a "violent
criminal and fraudster" who, along with accomplices, bilked customers in a scrap-
metal business they had formed, had a victim ...

New York **Lawyer Richard Luthmann** Arrested for Kidnapping
JDJournal.com - Dec 15, 2017
NYC **Lawyer** Charged In Kidnapping, Fraud Scheme
Patch.com - Dec 15, 2017
Staten Island 'Trial-by-Combat' **Attorney** Charged With Fraud ...
Law.com - Dec 15, 2017
Controversial **lawyer** arrested for kidnapping, extortion
Local Source - New York Post - Dec 15, 2017
NY **Attorney** Arrested on Federal Extortion, Kidnapping Charges
Local Source - NBC New York - Dec 15, 2017

      

New York Post    NBC New York    Patch.com    Law.com

**View all**



**Unsealed court docs: Luthmann's** alleged death threats, 'La Cosa ...
SILive.com - 2 hours ago
STATEN ISLAND, N.Y. — Flamboyant **lawyer Richard Luthmann** may fancy himself a
champion of the little guy, but federal prosecutors say he is little more than a "violent
criminal and fraudster" who, along with accomplices, bilked customers in a scrap-
metal business they had formed, had a victim ...



**Staten Island Attorney** Arrested On Kidnapping, Conspiracy Charges
Global News Network - 10 hours ago
Politically connected Staten Island **lawyer Richard Luthmann** appeared in federal
court in Brooklyn on Friday, this time as a criminal defendant. The 38-year-old and

Again, I can't tell you what to do or who to speak with. All I can do here is share
experiences and let you make an informative decision. Hopefully, you are not in a
position to need to use anyone.

10/10/2016                    Have You Ever Paid for Legal Advice/Work to Betsy Combier?

# Have You Ever Paid for Legal Advice/Work to Betsy Combier?

It is believed that one Betsy Combier has crossed over from advocate to attorney/paralegal for hire. There are many activists who help others in need however, Betsy Combier has allegedly made it into a "for profit" career charging thousands of dollars for representation without a license. Please share your experience below as a complaint is being filed.

* Required



**First Name \***


**Last Name \***


**Enter your email address \***


**Confirm your email address \***


**Phone number**


Please check the type of service Betsy Combier has provided to you. *

Have You Ever Paid for Legal Advice/Work to Betsy Combier?

☐ Verbal legal advice

☐ Written legal advice

☐ Actual representation at a legal proceeding

**Did you pay Betsy Combier for any of the services above? ***

☐ Yes

☐ No

**Description of interaction, advice and/or work provided. ***

[ Submit ]

*Never submit passwords through Google Forms.*

 **Francesco Portelos** ...and if you have been burned, join the others in the complaint. We have enough trouble with our employer and union. We don't need another obstacle when it comes to surviving. www.tinyurl.com/BetsyCombier

 **Have You Ever Paid for Legal Advice/Work to Betsy Combier?**

DOCS.GOOGLE.COM

Like · Reply · 🖤 3 · October 19 at 7:15pm

 **Jim Geist** Don't forget ParentsAdvocates.org....another site to bash teachers.
Like · Reply · October 19 at 9:36pm

## POSTS

 **Francesco Portelos**
1 hr · New York · 👥

Friends and colleagues, please be careful. Unfortunately, so called advocate Betsy Combier lost another case where she allegedly provided illegal legal consultation for a New York City UFT member in a 3020-a hearing. Something she never shares on her site. Just be vigilant. Apparently o... See More

**Is Betsy Combier stealing your money?**
Has Elizabeth "Betsy" Combier lost her attemp...
nycrubberroomreportercom.blogspot.com

 1                                1 Comment

**10/13/16**

**Francesco Portelos**

3 hrs ·
Hootsuite
Some UFT NYC Public Schools members are paying Betsy Combier for legal counsel when she has no licence to practice law. Tinyurl.com/BetsyCombier
Like
Comment
Share
7 Nancy Zazulka and 6 others
1 share

**Comments**

Leigh Helena Louise How did that happen?
Like · Reply · 3 hrs

Francesco Portelos She tells them to pay her to file legal papers and act as a "paralegal."
Like · Reply · 3 hrs

Danielle Kushner But I thought this was already exposed, why again? She is not a paralegal unless she is working with a layer
Like · Reply · 3 hrs

Francesco Portelos She continues to charge. Some have paid her $3,000 in addition to $10,000 for a lawyer for a 3020-a
Like · Reply · 2 hrs

View 2 more comments

Bliss-Ann Herlihy There's no end.
Like · Reply · 2 hrs

Despena Vasiadis Kiladitis We will talk about this on Saturday
Like · Reply · 1 · 2 hrs

Tom Filoramo Aside from that imo she is mentally unstable. I would not advise anyone go to her for assistance.
Like · Reply · 2 hrs


Francesco Portelos Greed is one of her worst qualities. She's had it out for me and Solidarity because we provide FREE help that takes illegal business from her here uftsolidarity.org/toolbox
Like · Reply · 2 hrs · Edited

Write a comment...

**10/14/16**

**Francesco Portelos shared Teacher's Lawyer Bryan Glass - GHNY Law's post.**

13 hrs ·

If you need real legal counsel, go with someone who actually went to law school. Careful of snake oil salesmen.

Teacher's Lawyer Bryan Glass - GHNY Law
18 hrs ·

Share with colleagues in need. We also address many other workplace issues. Having a lawyer in your corner can help.

Teacher's Lawyer helps another teacher get their job back
Middle school gossip should not be permitted to ruin a 13 year stellar career. In a 3020-a hearing, an arbitrator terminated a 13 year p... stellar career. In a 3020-a hearing, an arbitrator terminated a 13 year physical education teacher, despite the DOE's poor evidence. The teacher retained our firm and we filed an Article 75 to vacate his termination. Justice was delayed, but finally served.  Our firm was able to argue for the teacher and the Supreme Court of New York County reversed the arbitrator's decision. Bryan D. Glass, Esq. and Jordan F. Harlow. Esq.

The court's decision states:
**"Based on all the circumstances of the case, including the lack of any prior allegations of misconduct against petitioner during 13 years of service and the fact that the misconduct does not violate any specific rule or regulation, we find the penalty of termination sufficiently disproportionate to the offenses to shock the conscience (see Lackow v Department of Educ. [or "Board"] of City of N.Y., 51 AD3d 563, 569 [1st Dept 2008])."**

If you, or someone you know, was terminated or fined, or is need of representation at a 3020-a hearing, please fill out the form on our website www.ghnylaw.com
teacherslawyer.blogspot.com|By Front Desk
*Providing quality legal counsel for a fraction of the cost.*

Peter Zucker     **Peter Zucker**        7:59pm Sep 24

But Mavis where was your outrage when <u>Francesco</u> was harrassing <u>Laurie</u>. When he was egging on <u>Lucio</u> into call Betsy a c\*\*t? When was continuously harassing Jia Lee? The harassment of Amy Arundell? Where was your outrage?

Comment History

    **Mike Schwartz**        7:59pm Sep 24

    getting off , I have a life !!

    **Mike Schwartz**        8:00pm Sep 24

    You're a moron, lying bully who deleted her posts..

    **Lucio Celli**        8:01pm Sep 24

    <u>Mike Schwartz</u> she could handle her own ... Why are you being so mean to her? I thought it was wrong to insult people mental health issues

    **Lucio Celli**        8:02pm Sep 24

    Either everyone has that right or no one .... I see what side you're on

    **Peter Zucker**        8:02pm Sep 24

    But Mavis where was your outrage when <u>Francesco</u> was harrassing <u>Laurie</u>. When he was egging on <u>Lucio</u> into call Betsy a c\*\*t? When was continuously harassing Jia Lee? The harassment of Amy Arundell? Where was your outrage?

Case 1:17-cv-02239-KAM-RLM    Document 67    Filed 03/13/18    Page 80 of 359 PageID #: 567

 Gmail

Betsy Combier <betsy.combier@gmail.com>

---

# [Fed Up & Pissed Off Retired UFT Teachers] Good Evening all..I'd like to address some very...
4 messages

---

**Mavis Shein** <notification+zzd=zriz@facebookmail.com>        Tue, Sep 20, 2016 at 10:43 PM
Reply-To: Reply to Comment <g+418t6kk4000000lokov100hqcsjq2uu6000zg4sn6i0k3ai46@groups.facebook.com>
To: Fed Up & Pissed Off Retired UFT Teachers <1562806597298532@groups.facebook.com>

 Facebook

Mavis Shein posted in Fed Up & Pissed Off Retired UFT Teachers.

 **Mavis Shein**
September 20 at 10:43pm

Good Evening all..I'd like to address some very virulent and hateful posts aimed at me the other day in this forum. It is my understanding that this is a forum in which people can engage in discourse related to retirement and related issues. A member by the name of Fred Golub took it upon himself to reply to a newer member in a rather demeaning, misogynistic manner by telling her to "quit her bitching and relax".. When I replied in a rather harmless manner I was met with quite the display of small penis anger. Information was posted about me on this forum regarding Teacher Evaluations from 2009 which were published as we all know in Newsday following a lawsuit presented by the news stations here in New York demanding that information be made public. It has been proven that the data collected in that manner during those years with their 'value-added' data was extremely flawed and was even proven so in a Federal Court under a lawsuit filed by a teacher in the Great Neck School System. In addition to that information Mr. Golub also claimed that I had many lawyers defending me and that I was declared an 'incompetent' teacher. I'm afraid you got the wrong information from your friend BC (friend of yours?)..who is a member of this group although never having been employed by the NYCDOE and remains a member just to garner information to feed her hate frenzy for Mr. P.. I'm sure BC is the one that 'hooked' you up with those postings. As I fathom you're too dumb to even figure that out for yourself.
In fact I was not found to be incompetent but was the target of a virulent tyrant of a principal at my school who decided that he would 'get rid of any senior teachers he could to increase his budget'...his words, not mine. Yes, so after 30 years as a NYC educator here in Queens, NY..I was.along with many others, railroaded out of my job as an ELA teacher at 217. I had spent 15 years at that school teaching many students who had little to no language skills and was always successfully rated by all my administrators throughout that time. I worked on Writing Curriculum and volunteered my time after school hours to assist students. I was well liked within the staff and by the former superintendent of District 28 who was my principal at 217 for many years..Ms. Jeannette Reed. I will not submit a

Case 1:17-cv-02239-KAM-RLM   Document 67   Filed 03/13/18   Page 81 of 359 PageID #: 568

resume here to prove anything about my career and who I was as a teacher in District 28..however..I did teacher full time classroom elementary grades as well as special education for the 15 years prior to my time at 217. It was with great sorrow and heartache that I found myself one of the targeted teachers that the Principal deemed 'unworthy' to grace his school or his '217 family' as he put it on many occasions. A victim of discrimination and workplace abuse. I dedicated my life to my job, which was not just a job to me. I was a proactive teacher and was always concerned not only with my students' academic achievement but with their emotional well being as well. So to the hater by the name of Fred Golub..you can really kiss my ass. You are such a pussy coward..a stinking little coward and truly a little bitch of a man. I don't need to be in this group. I offered advice and council to a new member in here in an empathetic manner. You on the other hand Golub ahole are a pathetic nasty piece of sh*t who probably keeps a big stash of Viagra in his bedside table..It's easy to see what kind of person you are...nasty, foul mouthed, bad tempered, egotistical ahole. So you can do the old ES&D Golub..and oh yeah...I'm sure you do talk to your wife like that..how could you not?. To everyone else that might be reading this Peace Out..and enjoy your retirements. Oh and Golub (ugh that name is so ugly) if you plan on responding or posting anything else about me, it won't matter because I won't be seeing it. P>S> you're probably too stupid to know this..but your name is a Yiddish variation of GOLEM..which in Jewish folklore was a dumb monstrous creature..WHICH fits you amazingly well. :-) shalom ahole

👍 **Like**     💬 **Comment**     ➔ **Share**

**View on Facebook**     **Edit Email Settings**

Reply to this email to comment on this post.

This message was sent to betsy.combier@gmail.com. If you don't want to receive these emails from Facebook in the future, please unsubscribe.
Facebook, Inc., Attention: Community Support, Menlo Park, CA 94025

---

**Francesco Portelos** <notification+zzd=zriz@facebookmail.com>      Thu, Sep 22, 2016 at 9:03 PM
Reply-To: Reply to Comment <g+403o97vf000000lokov100hqcsjq2uu6000zg4sn6i0k3ak46@groups.facebook.com>
To: Fed Up & Pissed Off Retired UFT Teachers <1562806597298532@groups.facebook.com>

Francesco Portelos commented on Mavis Shein's post in Fed Up & Pissed Off Retired UFT Teachers.

Francesco Portelos    **Francesco Portelos**                8:48pm Sep 22
              Mike, I messaged you.

Comment History

       **Francesco Portelos**               8:50pm Sep 22
       And Peter coming out of left field pulling me into this?

Francesco
Portelos

**Mike Schwartz**                                                        8:56pm Sep 22

Mr. Portelos, I don't know who you are cause I just joined this group but obviously the administrator is a fan of Mavis Shein and didn't take appropriate action when publicly humiliating Laurie B. Kessler Luft on this public site and another winner Claudia Goirdano Lasky using the F word several times, NOTHING was done about that !!!

**Peter Zucker**                                                        8:59pm Sep 22

Mike Schwartz give Porteloa a WIDE berth. Don't share ANY personal information with him, don't take his word at anything. Be careful. Very careful.

**Mike Schwartz**                                                        9:00pm Sep 22

Understood !!

**Heather Rey**                                                        9:02pm Sep 22

Francesco Portelos why must you rip Betsy Combier apart? How is she related to this? I don't think your comments are appropriate to this thread.

View All Comments

Original Post

**Mavis Shein**                                                        10:43pm Sep 20

Good Evening all..I'd like to address some very virulent and hateful posts aimed at me the other day in this forum. It is my understanding that this is a forum in which people can engage in discourse related to retirement and related issues. A member by the name of Fred Golub took it upon himself to reply to a newer member in a rather demeaning, misogynistic manner by telling her to "quit her bitching and relax".. When I replied in a rather harmless manner I was met with quite the display of small penis anger. Information was posted about me on this forum regarding Teacher Evaluations from 2009 which were published as we all know in Newsday following a lawsuit presented by the news stations here in New York demanding that information be made public. It has been proven that the data collected in that manner during those years with their 'value-added' data was extremely flawed and was even proven so in a Federal Court under a lawsuit filed by a teacher in the Great Neck School System. In addition to that information Mr. Golub also claimed that I had many lawyers defending me and that I was declared an 'incompetent' teacher. I'm afraid you got the wrong information from your friend BC (friend of yours?)..who is a member of this group although never having been employed by the NYCDOE and remains a member just to garner information to feed her hate frenzy for Mr. P.. I'm sure BC is the one that 'hooked' you up with those postings. As I fathom you're too dumb to even figure that out for yourself.

In fact I was not found to be incompetent but was the target of a virulent tyrant of a principal at my school who decided that he would 'get rid of any senior teachers he could to increase his budget'...his words, not mine. Yes, so after 30 years as a NYC educator here in Queens, NY..I was.along with many others, railroaded out of my job as an ELA teacher at 217. I had spent 15 years at that school teaching many students who had little to no language skills and was always successfully aided by all my administrators throughout that time. I worked on Writing Curriculum and volunteered my time after school hours to assist students. I was well liked within the staff and by the former superintendent of District 28 who was my principal at 217 for many years..Ms. Jeannette Reed. I will not submit a resume here to prove anything about my career and who I was as a teacher in District 28..however..I did teach full time classroom elementary grades as well as special education for the 15 years prior to my time at 217. It was with great sorrow and heartache that I found myself one of the targeted teachers that the Principal deemed 'unworthy' to grace his school or his '217 family' as he put it on many occasions. A victim of discrimination and workplace abuse. I dedicated my life to my job, which was not just a job to me. I was a proactive teacher and was always concerned not only with my students' academic achievement but with

their emotional well being as well. So to the hater by the name of Fred Golub..you can really kiss my ass. You are such a coward =.a stinking little coward and truly a little bitch of a man. I don't need to be in this group. I offered advice and council to a new member in here in an empathetic manner. You on the other hand Golub ahole are a pathetic nasty piece of sh*t who probably keeps a big stash of Viagra in his bedside table..It's easy to see what kind of person you are...nasty, foul mouthed, bad tempered, egotistical ahole. So you can do the old ES&D Golub..and oh yeah...I'm sure you do talk to your wife like that..how could you not?. To everyone else that might be reading this Peace Out..and enjoy your retirements. Oh and Golub (ugh that name is so ugly) if you plan on responding or posting anything else about me, it won't matter because I won't be seeing it. P>S> you're probably too stupid to know this..but your name is a Yiddish variation of GOLEM..which in Jewish folklore was a dumb monstrous creature..WHICH fits you amazingly well. :-) shalom ahole

View Post on Facebook · Edit Email Settings · Reply to this email to add a comment.

---

**Peter Zucker** <notification+zzd=zriz@facebookmail.com>        Thu, Sep 22, 2016 at 9:04 PM
Reply-To: Reply to Comment <g+403o97vf000000lokov100hqcsjq2uu6000zg4sn6i0k3ak46@groups.facebook.com>
To: Fed Up & Pissed Off Retired UFT Teachers <1562806597298532@groups.facebook.com>

Peter Zucker commented on Mavis Shein's post in Fed Up & Pissed Off Retired UFT Teachers.

 **Peter Zucker**           8:50pm Sep 22
Watch it Mike he just might show up at your house.

Comment History

 **Mike Schwartz**        8:56pm Sep 22
Mr. Portelos, I don't know who you are cause I just joined this group but obviously the administrator is a fan of Mavis Shein and didn't take appropriate action when publicly humiliating Laurie B. Kessler Luft on this public site and another winner Claudia Goirdano Lasky using the F word several times, NOTHING was done about that !!!

 **Peter Zucker**        8:59pm Sep 22
Mike Schwartz give Porteloa a WIDE berth. Don't share ANY personal information with him, don't take his word at anything. Be careful. Very careful.

 **Mike Schwartz**        9:00pm Sep 22
Understood !!

 **Heather Rey**        9:02pm Sep 22
Francesco Portelos why must you rip Betsy Combier apart? How is she related to this? I don't think your comments are appropriate to this thread.

 **Francesco Portelos**        9:03pm Sep 22
Mike, I messaged you.

View All Comments

Original Post

 **Mavis Shein**        10:43pm Sep 20
Good Evening all..I'd like to address some very virulent and hateful posts aimed at me the other day in this forum. It is my understanding that this is a forum in which people

can engage in discourse related to retirement and related issues. A member by the name of Fred Golub took it upon himself to reply to a newer member in a rather demeaning, misogynistic manner by telling her to "quit her bitching and relax".. When I replied in a rather harmless manner I was met with quite the display of small penis anger. Information was posted about me on this forum regarding Teacher Evaluations from 2009 which were published as we all know in Newsday following a lawsuit presented by the news stations here in New York demanding that information be made public. It has been proven that the data collected in that manner during those years with their 'value-added' data was extremely flawed and was even proven so in a Federal Court under a lawsuit filed by a teacher in the Great Neck School System. In addition to that information Mr. Golub also claimed that I had many lawyers defending me and that I was declared an 'incompetent' teacher. I'm afraid you got the wrong information from your friend BC (friend of yours?)..who is a member of this group although never having been employed by the NYCDOE and remains a member just to garner information to feed her hate frenzy for Mr. P.. I'm sure BC is the one that 'hooked' you up with those postings. As I fathom you're too dumb to even figure that out for yourself.

In fact I was not found to be incompetent but was the target of a virulent tyrant of a principal at my school who decided that he would 'get rid of any senior teachers he could to increase his budget'...his words, not mine. Yes, so after 30 years as a NYC educator here in Queens, NY..I was.along with many others, railroaded out of my job as an ELA teacher at 217. I had spent 15 years at that school teaching many students who had little to no language skills and was always successfully rated by all my administrators throughout that time. I worked on Writing Curriculum and volunteered my time after school hours to assist students. I was well liked within the staff and by the former superintendent of District 28 who was my principal at 217 for many years..Ms. Jeannette Reed. I will not submit a resume here to prove anything about my career and who I was as a teacher in District 28..however..I did teach full time classroom elementary grades as well as special education for the 15 years prior to my time at 217. It was with great sorrow and heartache that I found myself one of the targeted teachers that the Principal deemed 'unworthy' to grace his school or his '217 family' as he put it on many occasions. A victim of discrimination and workplace abuse. I dedicated my life to my job, which was not just a job to me. I was a proactive teacher and was always concerned not only with my students' academic achievement but with their emotional well being as well. So to the hater by the name of Fred Golub..you can really kiss my ass. You are such a coward =.a stinking little coward and truly a little bitch of a man. I don't need to be in this group. I offered advice and council to a new member in here in an empathetic manner. You on the other hand Golub ahole are a pathetic nasty piece of sh*t who probably keeps a big stash of Viagra in his bedside table..It's easy to see what kind of person you are...nasty, foul mouthed, bad tempered, egotistical ahole. So you can do the old ES&D Golub..and oh yeah....I'm sure you do talk to your wife like that..how could you not?. To everyone else that might be reading this Peace Out..and enjoy your retirements. Oh and Golub (ugh that name is so ugly) if you plan on responding or posting anything else about me, it won't matter because I won't be seeing it. P>S> you're probably too stupid to know this..but your name is a Yiddish variation of GOLEM..which in Jewish folklore was a dumb monstrous creature..WHICH fits you amazingly well. :-) shalom ahole

View Post on Facebook · Edit Email Settings · Reply to this email to add a comment.

---

Heather Rey <notification+zzd=zriz@facebookmail.com>                    Thu, Sep 22, 2016 at 9:08 PM
Reply-To: Reply to Comment <g+403o97vf000000lokov100hqcsjq2uu6000zg4sn6i0k3ak46@groups.facebook.com>
To: Fed Up & Pissed Off Retired UFT Teachers <1562806597298532@groups.facebook.com>

Heather Rey commented on Mavis Shein's post in Fed Up & Pissed Off Retired UFT Teachers.

Heather Rey        **Heather Rey**                                            8:59pm Sep 22
Heather             I think that Mavis should be asked to remove her revolting post which insults
Rey                 half of the population.

Case 1:17-cv-02239-KAM-RLM    Document 67    Filed 03/13/18    Page 85 of 359 PageID #: 572

Comment History

**Mike Schwartz**                                               9:00pm Sep 22

Understood !!

**Heather Rey**                                                9:02pm Sep 22

Francesco Portelos why must you rip Betsy Combier apart? How is she related to this? I don't think your comments are appropriate to this thread.

**Francesco Portelos**                                         9:03pm Sep 22

Mike, I messaged you.

**Peter Zucker**                                               9:04pm Sep 22

Watch it Mike he just might show up at your house.

**Francesco Portelos**                                         9:05pm Sep 22

Peter brought up an issue involving Laurie that involved Betsy lying. I would not call that ripping apart.

View All Comments

Original Post

**Mavis Shein**                                                10:43pm Sep 20

Good Evening all..I'd like to address some very virulent and hateful posts aimed at me the other day in this forum. It is my understanding that this is a forum in which people can engage in discourse related to retirement and related issues. A member by the name of Fred Golub took it upon himself to reply to a newer member in a rather demeaning, misogynistic manner by telling her to "quit her bitching and relax".. When I replied in a rather harmless manner I was met with quite the display of small penis anger. Information was posted about me on this forum regarding Teacher Evaluations from 2009 which were published as we all know in Newsday following a lawsuit presented by the news stations here in New York demanding that information be made public. It has been proven that the data collected in that manner during those years with their 'value-added' data was extremely flawed and was even proven so in a Federal Court under a lawsuit filed by a teacher in the Great Neck School System. In addition to that information Mr. Golub also claimed that I had many lawyers defending me and that I was declared an 'incompetent' teacher. I'm afraid you got the wrong information from your friend BC (friend of yours?)..who is a member of this group although never having been employed by the NYCDOE and remains a member just to garner information to feed her hate frenzy for Mr. P.. I'm sure BC is the one that 'hooked' you up with those postings. As I fathom you're too dumb to even figure that out for yourself.
In fact I was not found to be incompetent but was the target of a virulent tyrant of a principal at my school who decided that he would 'get rid of any senior teachers he could to increase his budget'...his words, not mine. Yes, so after 30 years as a NYC educator here in Queens, NY..I was.along with many others, railroaded out of my job as an ELA teacher at 217. I had spent 15 years at that school teaching many students who had little to no language skills and was always successfully rated by all my administrators throughout that time. I worked on Writing Curriculum and volunteered my time after school hours to assist students. I was well liked within the staff and by the former superintendent of District 28 who was my principal at 217 for many years..Ms. Jeannette Reed. I will not submit a resume here to prove anything about my career and who I was as a teacher in District 28..however..I did teach full time classroom elementary grades as well as special education for the 15 years prior to my time at 217. It was with great sorrow and heartache that I found myself one of the targeted teachers that the Principal deemed 'unworthy' to grace his school or his '217 family' as he put it on many occasions. A victim of discrimination and workplace abuse. I dedicated my life to my job, which was not just a job to me. I was a proactive teacher

and was always concerned not only with my students' academic achievement but with their emotional well being as well. So to the hater by the name of Fred Golub..you can really kiss my ass. You are such a coward =.a stinking little coward and truly a little bitch of a man. I don't need to be in this group. I offered advice and council to a new member in here in an empathetic manner. You on the other hand Golub ahole are a pathetic nasty piece of sh*t who probably keeps a big stash of Viagra in his bedside table..It's easy to see what kind of person you are...nasty, foul mouthed, bad tempered, egotistical ahole. So you can do the old ES&D Golub..and oh yeah...I'm sure you do talk to your wife like that..how could you not?. To everyone else that might be reading this Peace Out..and enjoy your retirements. Oh and Golub (ugh that name is so ugly) if you plan on responding or posting anything else about me, it won't matter because I won't be seeing it. P>S> you're probably too stupid to know this..but your name is a Yiddish variation of GOLEM..which in Jewish folklore was a dumb monstrous creature..WHICH fits you amazingly well. :-) shalom ahole

View Post on Facebook · Edit Email Settings · Reply to this email to add a comment.

**Francesco Portelos and NY State Tenure Law**



Francesco Portelos

Re-posted from Parentadvocates.org:

# Editorial: Is Francesco Portelos a Danger To New York State Tenure Law?
by Betsy Combier

I am under attack by Francesco Portelos, an Absent Teacher Reserve (ATR) in New York City. "So what?" you may say. I'm saying that anyone is in danger from his vindictive internet spying and cyberbullying; or you or someone you know will feel the effect of it. I am not afraid of him.

For example:
Johnathan Hinesley, one of Francesco's group members, called me up out of the blue last summer and told me that he had been charged with 3020-a , and would like to talk about his charges. We met at the diner in Manhattan near me, and I stayed more than 3 hours answering all of his questions. I never charge a "consultation" fee, but he demanded that he pay for my tuna sandwich. I thanked him.



Johnathan Hinesley

Then he asked me to read all his papers, and then edit a rebuttal he had written to Philip Weinberg. I agreed. He then told me to edit his Notice of Claim. I agreed. Suddenly, he paid me $500 for the work I did, and I thanked him.

I called him after the September 20 UFT Solidarity meeting at which Jim Callaghan spoke badly about me, to find out what happened (I wasnt there). He told me my name was not mentioned. Then he started screaming that he would be attending my 3020-a hearings with my clients, and there was nothing I could do to stop him. I told him he would not be <u>mobbing</u> my hearings, the arbitrators and the attorneys I work with dont like mobs. He was furious.

Then Johnathan demanded I give him the $500 back, because I did nothing for him. I asked my lawyer what to do and he said to keep it and ignore Johnathan...adding I should charge for my work.

Today on Linkedin, Francesco told my contacts:

<u>Francesco Portelos</u>1st
UFT 2016 Presidential Candidate at United Federation Of Teachers
Commented 18 hours ago
"Ahhh Betsy...how many people have asked for their money back for services you didn't provide? They keep calling us and telling us they have cashed checks for legal advice. That's what this is about. So sad."
Actually, Francesco, how many people? Inquiring minds want to know. Legal advice? I don't give legal advice. I am not a lawyer. Take money without doing a service? Never in my life have I done that, and you know it. I gave this $500 to someone who needed help with paying for paper copying for his case. I give you an A for effort, though.

But think about it. A teacher, paid by public tax money, is given the right to teach children to threaten anyone they don't like, force people to do whatever he says, and lie about you through every website he can get on or set up. I think that <u>Francesco Portelos</u> is a <u>liability</u> for the NYC Department of Education.

betsy.combier@gmail.com.

In any case, to wear the brand of UFT Solidarity proudly showing support for someone who would and could be so vindictive as these sustained charges show is, in my opinion, a badge of shame.

It turns out that Francesco is, in my opinion, the most vindictive bully I have ever met, and he uses his internet knowledge to gain followers to his cult, all of whom believe that it is their right under protection of the First Amendment to say anything they want about anyone.



On September 20, 2015, at a UFT Solidarity meeting at which I did not attend, Francesco edited a video of a speech made by a former UFT writer (for NY Teacher) Jim Callaghan (pictured at left) to make Jim call me a "homophobe" and make me look like I was a worthless piece of c***, hired only because I filed a FOIL request for the personnel file of the Queens UFT District Representative Rona Freiser. These claims are false, and both Jim and Francesco knew these claims were false. But the 50 people in the room on September 20, 2015 did not know that. Neither did the many listservs and international audience of the video sent out by Francesco with Jim speaking about me.

I asked Francesco to kindly allow me to speak about what Jim said, or he, Francesco, could post on his many internet outlets that what Jim said was not true, but Francesco refused. In fact, he got angry that I asked him, and said that the talk was not about me, so he wasn't going to alter anything, and stay away.

A friend of mine who was in the rubber room which I visited when I worked as a Special Representative at the UFT (2007-2010) posted on her website FidgetyTeach about Jim Callaghan, and suddenly Francesco went after her too. He told her that the reason he attacked me was because I had posted on my blog that Randi Weingarten had changed my life by hiring me to go to the rubber rooms of NYC. Francesco then posted on the listserv my friend started, confidential information about her, in retaliation for supporting me.

Evidently this is the way Francesco keeps people afraid of him. I am not.

The first no that I gave him, was several months ago when he set up a new business, EduFOIL, charging people for his writing Freedom of Information requests. I have filed more than 50 FOIL requests, and when asked by someone how to do it, I just show them my blog, or give them the format I use.

Then a person called me to tell me he paid $29-$50 to get the rating of his principal in 2013-2014, was denied, and then the anonymous people over at EduFOIL told him that he could appeal, for $60.00. But

But the city Department of Education placed him in the absent-teacher reserve pool instead of reassigning him to Dreyfus.

# Parents against teacher tenure say they're being harassed by educator

**MONA DAVIDS AND SAM PIROZZOLO OF THE NEW YORK CITY PARENTS UNION SAY THERE WERE TARGETED BY EDUCATOR FRANCESO PORTELOS IN AN ANGRY SUNDAY TWEET.**

by Ben Chapman, NY Daily News



Sam Pirozzolo

Two city parents who signed onto a suit to end teacher tenure in New York State say they're being harassed by an educator who backs the protection.

Mona Davids and Sam Pirozzolo of the New York City Parents Union say they were targeted by teacher Francesco Portelos in a Sunday tweet.

"U need your protection removed so if you see a disservice to little Franklin P or Eric D u look away," tweeted Portelos, referring to to Davids' son Eric, 6, and Pirozzolo's son Franklin, 11. "Teachers need to be protected so they can speak up for any disservice to students," said Portelos.
*************************

Now we see Francesco trying to shovel himself into the release of confidential information citywide in his new toolbox for teachers and parents, posted recently:

Special Ed Info

Our system is unfortunately plagued with countless Special Education violations. Our neediest students suffer and often times their teachers and paraprofessionals are gagged from speaking up. Although there are avenues to report such violations, history has shown us that none of the methods through 311, the UFT and State Education Department have protected these special ed whistleblowers.

<u>Liability:</u> a person or thing whose presence or behavior is likely to cause embarrassment or put one at a disadvantage.
"he has become a political liability"
*synonyms:* <u>hindrance</u>, <u>encumbrance</u>, <u>burden</u>, <u>handicap,nuisance</u>,
 <u>inconvenience;</u>
 <u>obstacle</u>, <u>impediment,disadvantage</u>,
 <u>weakness</u>, weak link,<u>shortcoming;</u>

 millstone around one's neck,<u>albatross</u>, <u>Achilles heel</u>

If you are a tenured public educator or anyone who values tenure for teachers in New York State or elsewhere in the United States, you should be alarmed by the outrageous violations of confidentiality and the cyber bullying going on in New York City by Francesco Portelos and his group, called <u>UFT Solidarity</u>.

Francesco used to be an ally in the fight for change in New York City as far as how teachers are being treated. Indeed, I posted many articles about his being charged and found guilty of internet bullying and never admitting he was wrong, thinking that he was <u>a hero</u> and a fighter for all things good.

I was wrong. When Francesco Portelos found out that I do not agree with <u>his vindictive retaliation of anyone</u> who is rumored to be "bad" or who does not agree with him, and he decided to <u>defame my name and my work as a teacher advocate</u> by creating a video lying about how I am a <u>"homophobe"</u>, I looked more carefully at the UFT Solidarity brand.

<u>The Francesco Portelos Mob: Who Are They?</u>

Here is what Francesco sent me on May 8, 2014, marked up with yellow highlighting and red ink by him, (I guess):

<u>Francesco Portelos' 3020-a decision</u> (dated May 2014).

I put this decision on my website, in one of the many articles I wrote about Francesco glorifying his work to undermine Linda Hill who seemed at the time to have charged Francesco after he found out she was not handling money correctly. Blowing the whistle on an administrator, or any public employee is complicated. The case decided by the US Supreme Court, <u>Garcetti v Ceballos</u> (see <u>here</u>, <u>here</u> and <u>here</u>). Teachers are public employees and their <u>First Amendment rights</u> were, it seems to me, limited to "a citizen speaking on matters of public concern".

I am not a public employee and not limited by this law. I still am not able to put on the internet lies about someone, and I do not do it. I never write about anyone or any case unless the person violates my rights, defames me or libels/slanders me and/or asks me to post their case or name on any of my 6 blogs and website. I respect confidentiality.

All decisions by arbitrators at 3020-a are available to the public, all you have to do is file a FOIL request to New York State Education Department at foil@nysed.gov. Just name the person or the arbitrator, and, if you have it, the year of the decision.

Looking at Francesco's arbitration decision now, which he sent to me, I am frightened by the implications

of the sustained charges (p. 107) and his promotion of activities under the umbrella of UFT Solidarity. There are many similarities, and I fear that Francesco is deliberately putting other.teachers in danger to mitigate his punishment of $10,000. He is telling teachers to do exactly what he was charged with.....the group which is most in danger is probationary teachers, who can be fired for no reason. Principals and APs may see your allegiance to Francesco as a sign of disrespect and insubordination, and fire you without any explanation. Watch out!

Here are the sustained charges for which Arbitrator Felice Busto found Francesco guilty, on pp.7-13 of the Opinion and Award :

SPECIFICATION 6:

During the 2011-2012 school year, Respondent disclosed confidential Department information, including, but not limited to, witness statements, on a non-Department website, including, but not limited to, protectportelos.org.

SPECIFICATION 8:

During the 2011-2012 school year, Respondent inappropriately accessed and/or retrieved Department information, including, but not limited to, a Department email account and/or email messages of another Department employee.

SPECIFICATION 9:

During the 2011-2012 school year, Respondent inappropriately accessed a Department email account and/or email messages of another Department employee.

SPECIFICATION 25:

On or about January 28, 2012, Respondent, without consulting, notifying, and/or seeking authorization from Principal Hill or the I.S 49 administration, accessed the school website, www.Dreyfus49.com, as a site administrator and manipulated the settings to revoke the administrative rights and/or privileges of all individuals previously granted such administrative access.

SPECIFICATION 28:

On or about February 2012, Respondent refused to transfer control and/or ownership of the school website, www.Dreyfus49.com, to Principal Hill, I.S. 49, and/or the Department after agreeing to do so at a meeting with Principal Hill and Superintendent Erminia Claudio.

SPECIFICATION 29:

On or about November 2012, Respondent, without consulting, notifying, and/or seeking approval from Principal Hill or the I.S 49 administration, altered the website www.welearnandqrowtoqether.com, which Respondent had created for the school with Principal Hill's approval, to automatically transfer visitors to his alternative website, https://sites.qooqle.com/site/occupywarrenstreet/, which contained derogatory information about I.S. 49, Principal Hill, and/or the Department.

SPECIFICATION 31:

During the 2012-2013 school year, Respondent, without consulting, notifying, and/or seeking approval from Principal Hill and/or the Department, altered the school website, www.Dreyfus49.com, to automatically redirect visitors to his website, protectportelos.org, which chronicled his issues with various groups including Principal Hill, I.S. 49, and the Department.

SPECIFICATION 33:

During the 2011-2012 school year, Respondent recorded a video in a school facility, namely, I.S. 49, of a student during school hours, without permission or authority.

SPECIFICATION 34:

On or about December 12, 2012, Respondent notified I.S. 49 Superintendent Erminia Claudio that he showed the video referenced in Specification 33 to parents, without permission or authority.

SPECIFICATION 36:

On or about and in the month of September 2012, Respondent:

A. Sent an email message to a parent without permission or authority stating, in sum and substance, that the teacher who sent their son to summer school was not certified to teach and that this message identified the teacher and indicated that her teaching certification had expired.

B. Failed to notify and/or confirm with I.S. 49 administration that the teacher referenced above lacked certification prior to contacting the parent.

SPECIFICATION 38:

By committing one, some, or all of the actions described in the above Specifications, Respondent's actions:

A. Had a disruptive and/or negative impact on students, staff, and/or administration at I.S. 49 and the Department.

B. Caused negative publicity, ridicule, and notoriety to I.S. 49 and the Department."

*******************************************

Francesco filed an Appeal (Article 75) of the decision, but missed the 10-day rule by one day. The Judge in Richmond County wrote that he would not have overturned Arbitrator Busto, anyway. (read Judge Troia's decision).

The UFT Solidarity brand stands for all of the above, in my opinion. This is frightening.

Look at Specification #36. This seems to be the sustained charge that Francesco Portelos actually went after another teacher, and created a problem for her/him. Does anyone have any confirmation that this charge relates to the fiance of the IS 49 Chapter Leader, Dr. Richard Candia? The allegation rumored to be this specification was that Francesco wanted to retaliate against Dr. Candia for not helping him destroy IS 49 Principal Linda Hill, so Francesco went after Candia's girlfriend.

If anyone has any further information about this specific sustained charge, please send me an email at

wait a minute!!!! Ratings of principals are no longer available under FOIL, so the person writing under EduFOIL does not know this? But is charging money anyway?

Then, on September 20 came the video saying I was a homophobe, which a person in Francesco's "cabinet" sent me. He is a gay man, and was very upset.

The NY POST wrote an article about his breaking into the confidential records of parents:

## Teacher's tweets threaten kids in tenure suit: parents

By Aaron Short and Carl Campanile July 8, 2014 | 2:53am

An angry city teacher recently sprung from a rubber room spewed online threats against the children involved in a lawsuit to end tenure in New York state, the kids' parents claim.

Franceso Portelos, who was allowed to return to teaching even though charges against him were substantiated, darkly tweeted that another teacher should "look away" from helping the kids of Sam Pirozollo and Mona Davids, who claim tenure protects lousy educators.

"U need your protection removed so if you see a disservice to little Franklin P or Eric D u look away," Portelos said under his twitter handle, Mr. Portelos.

He was discussing Franklin Pirozollo and Eric Davids, who are among students named in the suit.

Mona Davids, a member of the Parents Union, responded on Twitter: "ru encouraging tcher 2 ignore a child in need." An hour later, Davids tweeted: "We are taking this threat very seriously."

On Monday night, Davids said, "He's targeting our children, my son."

Portelos denied ill intent.

"No. It was a sarcastic tweet to another teacher," he said Monday night, while joining 60 other teachers and union activists who showed up at a Staten Island Community Education Community Council meeting to protest the anti-tenure lawsuit.

Portelos also discussed the personal details of the student-plaintiffs on his blog site, protectportelos.org.

He posted a link to a New York Times article about another student-plaintiff in the case, Izaiyah Ewers, who is identified as having a mood disorder and acting out. The report also said the youngster's mom entered homeless shelters to avoid an abusive husband.

"Really unfortunate story, but . . . Teacher's fault?" Portelos asks.

Despite his whining, Portelos seems to be the epitome of the kind of teacher for whom the Parents Union is pressing the suit.

Even though a a report by Special Schools Investigator Richard Condon's office substantiated allegations that he tampered with a school website, and posted student information on his personal website, a state arbitrator refused a city DOE request that he be fired.

He was fined $10,000, and some parents at Staten Island's Dreyfus Intermediate School 49 defended him as a good teacher.

UFT Solidarity is committed to assisting these members and children.

Email spedinfo@uftsolidarity.org and we will work with the administration, the UFT and DOE to remedy the situation while keeping your name a secret.

Steps:

Staff member or parent contact spedinfo@uftsolidarity.org with information on the alleged violation or concern. UFT Solidarity Special Education task force contacts administration on member/parents behalf. Five days are given to remedy the situation.
If situation is not remedied in a week, the UFT, school superintendent, deputy chancellor and 311 are contacted. If the violations are not remedied at this level, the NYS Education Department and media are contacted as well as Special Education advocates.
***We are also there to assist and help with ANY special educaton issue whether you believe it is big or small! If you have a SESIS question or a legal question etc message us!***

Who, Francesco, is giving the legal advice? Victor Jordan?

Frightening. This one person, Francesco Portelos, shows the world why tenure should end.
Posted by Betsy Combier at 10:15 PM ✉ ✏
Labels: Francesco Portelos, tenure law

**9 comments:**
Betsy Combier said...
> Everyone should read this: Teacher's tweets threaten kids in tenure suit: parents
> http://nypost.com/2014/07/08/parents-claim-teachers-tweets-threaten-kids-in-anti-tenure-suit/
>
> November 17, 2015 at 7:43 PM 🗑

--------------------------------------------------------------------

Betsy Combier said...
> The Francesco Mob: Who Are They?
> http://nycrubberroomreporter.blogspot.com/2015/11/the-francesco-portelos-mob-who-are-they.html
>
> November 17, 2015 at 7:45 PM 🗑

--------------------------------------------------------------------

Betsy Combier said...
> The UFT Solidarity Brand is Not What UFT Members Need
> http://nycrubberroomreporter.blogspot.com/2015/11/the-uft-solidarity-brand-is-not-what.html
>
> November 17, 2015 at 7:46 PM 🗑

--------------------------------------------------------------------

Francesco Portelos said...

Hopefully everyone can see through your lie filled rants. I know most do. Did you tell everyone how Randi Weingarten gave you her cell number before you launched your smear campaign?

November 18, 2015 at 7:26 AM 🗑

------------------------------------------------

**Anonymous said...**

Tenure has been basically eradicated. Sam vs Fran? You're kidding, right? Sam hates us all. Look at Zucker's blogs about him. They were the funniest stuff I read all year - especially the one with him getting the paper in his bathrobe. Time for all you guys to bury the hatchet, it's ugly and immature.

November 18, 2015 at 12:40 PM 🗑

------------------------------------------------

**Anonymous said...**

I am a former parent at IS 49. When my child was at the school my wife and I heard all the gory details about the Principal and we want to say that we were more concerned about the teacher turned terrorist Francesco Portelos than we were about the finances of Hill. Parents were frightened to speak about Portelos and we all despised him. He used his computer to break into any confidential record of anyone. Including the children with IEP. Ms. Hill was on to him way before he went after her. And the way that Portelos went after the chapter leader Mr. Candia was scary - I mean, getting Candia's girlfriend in trouble soley to retaliate against him? Portelos jeopardized the safety of everyone in the school. The names and faces of each and every teacher who follows this guy should be memorized so that they all are removed from the classrooms. Please.

November 19, 2015 at 6:34 AM 🗑

------------------------------------------------

**Anonymous said...**

Portelos is a very dangerous .

November 19, 2015 at 6:47 AM 🗑

------------------------------------------------

**Anonymous said...**

Why would anyone want Portelos in their school, or any of his gang? Watch out for them.

November 19, 2015 at 6:50 AM 🗑

------------------------------------------------

**Anonymous said...**

There is no limit to Francesco's wrecklessness.
He inflates numbers about supporters.

He tenaciously pesters people for political support.

He divulges email confidences if things go the slightest bit sour.

He shares screen captures of text message dialogues.

This guy should not be active with other teachers as his actions put their confidentiality at risk.

The notion of this guy having any position in the UFT is very unsettling. Therefore, people should put Francesco Portelos' UFT Solidarity out of their minds.

November 22, 2015 at 10:20 AM



+1 347-564-7597

(1/3) Mr. Inniss, I've sent you several emails and just called you to obtain some clarification. I will call again and suggest you pick up. Over a year after yo

(2/3) u broke your lease, and took all the bugs and alleged apartment issues with you, your false and derogatory comments against me have appeared on someone's

(3/3) website. She is not stable and alleged you and her spoke.

(1/2) You have chosen to enter an arena you know nothing about. You are an unlicensed employee teaching our students. Something I didn't know when I tried findi

(2/2) ng you after school work. I suggest you contact this person and have them remove your defamatory allegations.

**+1 347-564-7597** 

(2/2) ng you after school work. I suggest you contact this person and have them remove your defamatory allegations.

This is the site http://nycrubberroomreporter.blogspot.com/2018/01/francesco-portelos-and-attorney-bryan.html?m=1

**+1 347-564-7597** 

(2/2) ng you after school work. I suggest you contact this person and have them remove your defamatory allegations.

This is the site http://nycrubberroomreporter.blogspot.com/2018/01/francesco-portelos-and-attorney-bryan.html?m=1

**+1 347-564-7597** 

(2/2) ng you after school work. I suggest you contact this person and have them remove your defamatory allegations.

This is the site http:// nycrubberroomreporter.blogspot.com/ 2018/01/francesco-portelos-and-attorney-bryan.html?m=1

This is the person's contact.
Betsy.combier@gmail.com

Do the right thing and have the false information taken down.

(1/2) Just so you know the woman you are getting involved with and I are caught in a legal matter in front of a federal judge. This is what you want on your pla

(2/2) te ? To get involved in this matter? Why?

Oct 27 (4 days ago)

K <u>k</u>>

to me

--- On Wed, 10/26/16, K <<u>k</u>> wrote:

> From: K <<u>k</u>>
> Subject: What is wrong with you
> To: "Francesco Portelos" <<u>mrportelos@gmail.com</u>>
> Date: Wednesday, October 26, 2016, 12:37 PM
> You text me telling me that you're
> confused, that I owe you rent for the month of November, and
> that you did nothing wrong.
>
> So us repeatedly being sick to the point that we've lost
> wages, due to the state of your property,
> Nasty orange water falling on us from the bathroom ceiling.
>
> Mushrooms growing from the bathroom walls and ceilings and
> you want to open the ceiling, exposing us to more spores and
> getting us more sick, and letting in more insects, instead
> of waiting until we leave. All so that you can rent the
> apartment immediately, no matter what effect it has on our
> health. You blame me for not reporting a leak, that I
> couldn't have known was happening.
>
> Mosquitos, beetles, drain flies, spiders, crickets and
> centipedes, on the walls our clothes, our food and  our
> bodies. Bugs whose existence you repeatedly lied about,
> whose presence I repeatedly told you that my fiancé was
> highly afraid of. Bugs that you failed to exterminate,
> because they live inside of the entire foundation of your
> property,
>
> The fact that there is little to no insulation which makes
> the apartment unbearably cold in the winter. The fact that
> there was a hole under the bathroom sink from which cold air
> from outside blew into the bathroom on a daily basis because
> for about 3 to 4 months you refused to do anything about it.
>
> Even though you assured me that the hole would be covered
> before I moved in.
>
> The fact that you promised to clean the apartment before I
> moved in, but instead I walked into a completely dust filled
> apartment.
>
> The fact that you lied about the washer and dryer being free
> more than once.
> The fact that you refuse to get a new washer and dryer even
> though Edna, the repair man and I all told you that the
> machines do not work properly and need to be replaced.
> I'm the one stuck paying the electricity bill for for this

> old beat up machine that I barely even use, that Edna
> doesn't have to pay for, but uses daily around the clock.
>
> You unnecessarily decided to bring in people in a full month
> in a half in advance, before our lease ends, while telling
> me that people want to move in before our lease ends, which
> suggest that you want us out. You suggest several times that
> we can leave early if we want, all so that we can forfeit
> our deposit and then you tell me that I'm at fault for the
> time period in which people can view the apartment, and I'm
> at fault for you not being able to find a tenant, because I
> don't want you and some strangers around our pets and our
> belongings while were not home.
>
> We keep getting locked out of the building in the cold and
> in the rain because no matter how many times I tell you that
> the door is malfunctioning, you always reply that its the
> batteries, when it is in fact the door itself and not the
> batteries at all. You wouldn't even give us a key.
>
> You suggest that I can move out sooner, while retaining my
> deposit, then change your mind and try to make it seem as if
> you paying your bills is somehow my responsibility. What you
> owe a bank has nothing to do with me. You try to make is
> seem as if a new tenants deposit, is my deposit, which it
> isn't, and has nothing to do with me.
>
> You sent a stove repair man, who shat on the bathroom floor
> and left it there.
> You sent an exterminator, who smelled so bad that we had to
> open the doors and windows for hours to clear the apartment
> of his body odor.
>
> The fact that we are well beyond stressed out all due to
> these conditions that you caused, provided us or didn't even
> care to take care of or prevent.
>
> The fact that you you refuse to acknowledge that any of
> these things are or your responsibility to take care of or
> to have prevented before hand, the fact that we are up
> coughing or can't sleep at night due to these conditions.
>
> Almost every single time that I told you that I had an issue
> with your property, you immediately replied that the
> conditions that we moved into were somehow my fault, or you
> replied that I had to spend my own money to fix these
> conditions
>
> I do not owe you and I am the one who is confused. Its
> surprising that you could treat people like this without a
> care in the world. You really don't care about how sick
> we've been, you don't care what happens to your tenants so
> long as you get rent.
>
> These conditions are more than legitimate reasons for our
> agreement to be broken and for you to return our deposit.
> Instead you refuse to acknowledge any wrong doing, You
> refuse to do the right thing. Even though these things are
> all on you, even though Melissa and I have never done

# EXHIBIT B

Opposition To Motion To Dismiss

And other Motions, Defensives, Counterclaims

By Lucio Celli

# AFFIDAVIT

I, Elizabeth Betsy Combier, swear to the truth of the following statement under the penalties of perjury:

1. I am a paralegal and consultant who works with Attorneys on cases which involve teachers in New York City as well as outside New York City.
2. I am the owner and Editor of the websites and blogs Parentadvocates.org, New York Court Corruption, NYC Rubber Room Reporter, NYC Public Voice, Inside 3020-a Teacher Trials, and National Public Voice.
3. At no time did I ever work under the title of "Attorney", and at no time have I ever told anyone that I was an Attorney, or that I must be paid for my "legal advice" as an Attorney.
4. Randi Weingarten, former President of the United Federation of Teachers, asked me to work with her on the "Rubber Rooms" in August 2007. I agreed. The rooms were closed in 2010 and I parted ways with the UFT to start my own company helping teachers and NYC Department of Education employees with any problems they may have. She believes that I did a great job while I was at the UFT, and in 2015 she told Francesco Portelos exactly that, which infuriated him, as he wanted to work at the UFT but was never offered a job, and was running for president. He lost, becoming even more angry. At me.
5. I now work with more than three attorneys on various Arbitration and Court cases as a paralegal. I assist DOE employees with legal research but I have never stated that I am an Attorney, I have never represented to anyone at any time that I am an Attorney or that my opinions are "legal advice". I placed on my blogs and websites that I am not an Attorney.
6. I met former NYC DOE General Counsel Courtenaye Jackson Chase in 2008 at the Hilton Hotel. We met several times while I worked for the UFT. In 2014 and 2015, Courtenaye helped two people with whom I was asked to work: Yolanda Walker and Joan Klingsberg. Yolanda Walker was going through a 3020-a hearing, but was very ill. Courtenaye got the NYC DOE to settle with Yolanda, at my request. Joan Klingsberg was a principal who was charged with misconduct, and she, with my help, asked Courtenaye to undo her termination. Courtenaye agreed. Ms. Jackson-Chase's email to Lucio Celli on or about January 20, 2016, saying:

"Jackson-Chase Courtenaye **<CJackson-Chase@schools.nyc.gov>**    Wed, Jan 20, 2016, 6:54 AM

to gilpp, Randi, Francesco, David, me

For the record, I do not have any relationship, business or otherwise with Ms. Combier. I have no interest in Ms. Combier's business dealings, whatever they may be.

No employee undergoing disciplinary proceedings has ever been shown preferential treatment by me or anyone on my team, for any reason.
Please remove me from these emails.
Thank you."

Is absolutely false.

7. Also false is Lucio Celli's claim that I spoke with his former Attorney Jonathan Tand about placing his HIV status in his Federal Complaint. I never spoke with Jonathan Tand about Lucio Celli. Indeed, in 2015, when I volunteered to edit what Lucio wrote for PERB, I suggested to him that he NOT leave any mention of his medical condition unsealed. Celli himself in 2015 sent more than 200 people emails saying that he was HIV+. His condition was public knowledge through his own efforts to tell everyone.

8. I never gave legal advice to Lucio Celli, only my non-Attorney opinion.

9. Lucio Celli's claims that I maliciously called former teacher Mavis Shein to bother her the day of her mother's death is a lie.

10. Lucio Celli's claim that I know Judge Angela Blassman, or that I undermined him/his case at PERB or OAR or anywhere is a lie.

11. Lucio Celli's comments about the particulars about my disability are lies.

12. Lucio Celli is not mentally capable of understanding what is the truth or what is a lie, and he has no moral or ethical standard or respect for anyone.

13. I have been defamed, lied about, and made a public enemy without any facts to support his wildly false claims.

14. Lucio Celli's claim that I stole my husband's account or password at Hunter College is a lie.

15. Upon information and belief, he is incapable of compliance with any directive given to him, including this Court's Orders.

16. I request a ruling of Contempt of Court, and any other relief that this Court believes to be just and fair under these circumstances, and I request that all of Lucio Celli's papers be sealed and removed from the public docket by this Court.

Dated:  March 9, 2018

*Elizabeth Betsy Combier*

Elizabeth Betsy Combier

Sworn before me
On the 9th day of March, 2018

Notary Public

JARRETT A KOENEMUND
Notary Public - State of New York
NO. 01K06096072
Qualified in Suffolk County
My Commission Expires

# AFFIDAVIT

I, David Kapel, swear to the truth of the following statement under the penalties of perjury:

1. I am the husband for 33 years of Elizabeth Betsy Combier ("my wife")

2. I work at Hunter College for 30+ years

3. I have never been asked by my wife to share my Hunter College account password with her.

4. My wife has never stolen my password nor has she ever used my account at Hunter College at any time for any reason.

5. The allegations that my wife "stole" my password or my account or anything else from me is defamatory, libelous, and extremely damaging to my wife's professional career as a non-attorney advocate.

6. The allegations that my wife "stole" my password or my account or anything else from me is absolutely untrue, irrational, defamatory, libelous, and extremely damaging to my wife's personal wellbeing and has caused her unmeasurable distress.

7. The information about my wife's disability is true, that she has one hand. The additional details given in Lucio Celli's papers are not true, and at no time did my wife "hide" her disability as claimed. Indeed, I affirm that my wife has accomplished a lot in her life and I and our three daughters as well as all her friends admire her intelligence, kindness and professionalism.

8. Francesco Portelos is lying about my wife, and has done so with malicious intent. He has failed as an advocate while my wife is successful. At no time and to no one has my wife suggested that she is an attorney, or that her opinions are "legal advice". My wife volunteers her information to anyone who asks, and has never said she is an attorney to anyone. Her experience as a non-Attorney advocate for New York City teachers is worthy of commendation, not ridicule and defamatory statements about her character and career.

9. I request that the documents of Lucio Celli and Francesco Portelos, including this AFFIDAVIT, be sealed from public view due to the factless, defamatory, and malicious comments inside of these documents. of Mr. Portelos and Mr. Celli.

Dated: March 9, 2018

New York, N.Y.

David Kapel

Sworn before me on March 9 2018

Notary Public

JARRETT A KOENEMUND
Notary Public - State of New York
NO. 01KO6096072
Qualified in Suffolk County
My Commission Expires _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# BETSY COMBIER

## Lucio Celli Recordings

Nov. 2 Grievance

```
 1              [START Nov_2_grievance.mp3]

 2         FEMALE VOICE 1:  Union sits on this side.

 3    Administration—

 4         MALE VOICE 1:  - - .

 5         FEMALE VOICE 1:  Oh, shoot.

 6         [Crosstalk]

 7         MR. CELLI:  I'm sorry.  I didn't know.

 8         MALE VOICE 1:  Okay.

 9         MR. CELLI:  You wanted to ask me something?

10         [Background Noise]

11         MS. BATTLE:  Okay, but you can leave the

12    door open now too.

13         MR. CELLI:  I guess so 'cause it's stuffy in

14    here.

15         MS. BATTLE:  It's stuffy in this room.

16         FEMALE VOICE 1:  First of all, I'm going to

17    have everybody sign in.  Robin has signed in.  -

18    - technical error on my part.  I'll just use the

19    same sheet.  We need the principal for this

20    case.  Were you in touch with him?

21         FEMALE VOICE 2:  - - the hearing that wasn't

22    heard.

23         FEMALE VOICE 1:  I'm asking you whether we

24    leave the - - .

25         MR. CELLI:  She's on - - anyway.
```

3

1      FEMALE VOICE 1:  Okay, we're going to

2  interact with the union.

3      MR. CELLI:  Mm-hm.

4      [Crosstalk]

5      FEMALE VOICE 1:  - - from the morning here.

6  You're going to represent the school, Robin.

7      ROBIN:  Right, yes.

8      FEMALE VOICE 1:  Okay, so your principal is

9  on the line of duty?

10     MALE VOICE 1:  Yes, she's—

11     FEMALE VOICE 1:  [Interposing] Who is

12 running the building?

13     MALE VOICE 1:  Avis Terrell [phonetic] but

14 she's interim acting and she's not there today.

15     FEMALE VOICE 1:  That's who's running the

16 building so she's responsible.  I don't think we

17 need to call yet.  I'm just doing some

18 bookkeeping first.

19     MR. CELLI:  She's not there today.

20     FEMALE VOICE 1:  Thank you.  Okay, I'm

21 Eleanor Vanson Gillagher [phonetic].  I am the

22 chancellor's representative assigned to this

23 hearing.  I'm your advocate, Nelson Lucena

24 [phonetic] and you are the grievant, Lucio Celli

25 [phonetic].  The superintendent's rep is Ms.

1    Robin Cattrell.  Before we begin, I want to ask

2    you if you have any recording devices?

3        MR. CELLI:  I do not.  I'm not putting it

4    on.

5        FEMALE VOICE 1:  Do you affirm you will not

6    use any recording devices?  You have to give

7    your word.

8        MR. CELLI:  [Interposing] Yes, I give my

9    word.

10        FEMALE VOICE 1:  It's not audio and not

11    video?

12        MR. CELLI:  No.  Well, I don't have video

13    anyway but yes.

14        FEMALE VOICE 1:  With that said, what is the

15    basis of your grievance today?

16        MR. LUCENA:  Well, the complainant concerns

17    the fact that the Office of Labor Relations

18    refused to - - grievance conference that the

19    union and grievant appeared for on November 25,

20    2015.

21        [Phone Conversation]

22        MR. LUCENA:  Yes, as I was saying, the

23    Office of Labor Relations - - refused to hold a

24    step-two agreements conference that the union

25    and the grievant - - appeared for on November

1    25, 2015 because chancellor's representative, -

2    - told the union and grievant  - - that - -

3    informed him that it was the DOE's policy that

4    grievance conferences could not be recorded.

5    Since grievant Chelli wished to record, the

6    conference was not held.  As a remedy, we're

7    seeking that the conference be held and that

8    grievant Celli be permitted to record any and

9    all future proceedings in accordance with New

10    York State Law.

11    FEMALE VOICE 1:  But what is the basis of

12    the grievance?

13    MR. LUCENA:  The basis of the grievance is

14    being denied a chance to grieve.

15    FEMALE VOICE 1:  To grieve what?

16    MR. LUCENA:  To grieve whatever it was we

17    were intending to grieve.

18    [Crosstalk]

19    FEMALE VOICE 1:  Wait a second.  When I

20    finish - - , then you're going to—he can

21    represent the department interest?

22    MR. LUCENA:  We feel that he was denied a

23    grievance which is part of the contract of

24    agreement between the union and the DOE as in

25    Article 22, grievance procedures, A, the

1    definition.  It says a grievance shall mean a

2    complaint by the court in the bargaining unit

3    that there has been as to him or her a violation

4    or misinterpretation or an equitable application

5    of any other provisions of this agreement or

6    that he or she has been treated unfairly or

7    inequitably by reason of any act—

8        FEMALE VOICE 1:  [Interposing] Sir, I'm

9    going to interrupt.

10       MR. LUCENA:  The act in this case was the

11   recording.

12       FEMALE VOICE 1:  I'm going to interrupt you.

13   The only grievance I have before me states that

14   a step two conference wasn't heard.  That's what

15   it speaks.  Now if there is an underlying

16   grievance, I don't have it.  I don't know what

17   it is.

18       MR. LUCENA:  We don't care about the

19   underlying grievance.  We'll take care of that

20   some other time.

21       MR. CELLI:  May I speak?

22       FEMALE VOICE 1:  Well, I'm going to—

23       MR. CELLI:  'Cause I know my - - very well.

24       FEMALE VOICE 1:  Excuse me, I'm going to let

25   the superintendent's rep respond first because

7

```
1    she hasn't had an opportunity yet.  Until I
2    have a grievance, I don't know that we need to
3    speak.
4         MR. CELLI:  Well, I know the grievance, but
5    I understand the prospects.
6         MS. CATTRELL:  What I investigated, what we
7    have in front of us is a step one hearing that
8    was denied based on—it was not heard because
9    they were recorded.
10        FEMALE VOICE 1:  Is that a step one or a
11   step two?
12        MR. CELLI:  Step two.
13        MS. CATTRELL:  Sorry, step two.
14        FEMALE VOICE 1:  No problem.
15        MS. CATTRELL:  No problem.  Today, is that
16   why we're here?  They said it wasn't heard.
17        FEMALE VOICE 1:  Right, so what does the
18   grievance—I'm going to ask everyone.
19        MR. CATTRELL:  Okay, but let me just finish.
20   I don't know what the grievance was.  I didn't
21   investigate any underlying grievance.  The only
22   thing that's in front of me right now is
23   something that was not heard.
24        FEMALE VOICE 1:  Right.
25        MS. CATTRELL:  That's it.  There's nothing
```

1    that I investigated regarding an underlying

2    issue.

3        FEMALE VOICE 1:  Right, and the grievance—

4    promise not to be recording, use any video or

5    audio recording devices.  That is cured.  That

6    part is cured because we are here conferring,

7    but I cannot hold a hearing if I don't know what

8    the underlying grievance is.

9        MR. LUCENA:  That's not important right now.

10   It really isn't.  We're just talking about that

11   the notion that a person is allowed to come in

12   and have his day in the hearing that has been

13   scheduled and not be told that they have to be

14   turned away and the hearing won't take place

15   just because they want to record.  According to

16   New York State law, you're allowed to make a

17   recording of sessions that you are in a group

18   with that you are part of the conversation in.

19       FEMALE VOICE 1:  This is not a court here.

20   This is a grievance hearing.

21       MR. LUCENA:  Okay, I would like to point out

22   also—

23       FEMALE VOICE 1:  [Interposing] I don't want

24   to be arguing the point.

25       MR. LUCENA:  No, no, no, we're not going to

1  argue—

2      FEMALE VOICE 1:  I'd like to give her a

3  chance—

4      MR. LUCENA:  [Interposing] I would like to

5  just make my point but you're asking—

6      FEMALE VOICE 1:  [Interposing] If it's not

7  about an issue other than the fact—

8      MR. LUCENA:  [Interposing] It is.  There's

9  stuff that's in the articles that - - .

10      FEMALE VOICE 1:  Okay.

11      MR. LUCENA:  I was asked to cite these

12  articles—

13      FEMALE VOICE 1:  [Interposing] Can I look at

14  it before you read it?

15      MR. LUCENA:  Yeah, it's just the—

16      FEMALE VOICE 1:  [Interposing] Let me just

17  look at it.

18      MR. LUCENA:  - - highlighted in this article

19  from the contract.  The remedy is that we—

20      FEMALE VOICE 1:  [Interposing] I didn't

21  finish.

22      MR. LUCENA:  It's just the highlighted part

23  that matters.

24      FEMALE VOICE 1:  What context is everything?

25  Did you not get two days' notice?  That's what's

1    highlighted here.

2        MR. LUCENA:  Right, in other words, if the

3    hearing was not going to take place for whatever

4    reason, he should've been notified with two

5    days.  Instead, he walked in thinking he was

6    going to get a hearing and it didn't occur.

7    That's when he found out that the hearing was

8    not going to—

9        MR. CELLI:  [Interposing] Can I provide you

10    context now?

11        FEMALE VOICE 1:  You need to talk to your

12    union rep.

13        MR. CELLI:  Okay.

14        FEMALE VOICE 1:  Unless I have a grievance

15    here, I don't know what you can talk about about

16    a hearing or—

17        MR. CELLI:  [Interposing] I can tell you the

18    grievance.

19        FEMALE VOICE 1:  Superintendent?

20        MS. CATTRELL:  No, I'm standing on the

21    record from three prior.  I looked at—

22        MR. CELLI:  [Interposing] This is part of my

23    ADA claim, so—

24        FEMALE VOICE 1:  [Interposing] This is not a

25    court of law.  This is—

1    MR. CELLI:  [Interposing] This will become

2  a—

3    FEMALE VOICE 1:  [Interposing] Why are you—

4    MR. CELLI:  [Interposing] Okay, it's because

5  no one's giving me a chance.

6    FEMALE VOICE 1:  That's not your friend—

7    MR. CELLI:  [Interposing] I'm saying—

8    [Crosstalk]

9    FEMALE VOICE 1:  Do you want to go out and

10  talk to your friend?

11    MR. CELLI:  No, I - - .  I just wanted to be

12  on the record by saying that because I'm not

13  getting a chance—

14    FEMALE VOICE 1:  [Interposing] You're not on

15  the record because you've interrupted the

16  superintendent.

17    MR. CELLI:  You're not done yet, so you're

18  going to get a chance.

19    MS. CATTRELL:  I'm standing on the record

20  that the only thing that I'm here or have

21  knowledge of is that it wasn't a step two

22  hearing that was heard prior.  It was because he

23  said he was going to record.  That's what this

24  hearing is based on period.  I'm standing on the

25  record and I'm finished.  I'm done.

1    FEMALE VOICE 1:  Okay, thank you.  You

2  don't have to - - .

3    [Crosstalk]

4    FEMALE VOICE 1:  What I want to ask is

5  nothing about the policy of the department which

6  doesn't permit recording.  That portion is

7  closed and over.  We're hearing the grievance

8  that you didn't have a hearing because you were

9  recording that.  Now you promised you're not

10  recording.  There's no other—am I missing a

11  grievance before this one?  What was the first

12  grievance that brought you here on March 15th?

13    MR. LUCENA:  I'm not going to explain

14  because I don't know that information, please.

15    FEMALE VOICE 1:  Can you answer me shortly

16  and not litigate right now?

17    MR. CELLI:  No.

18    FEMALE VOICE 1:  You filed a grievance that

19  was heard, when was it, the date you said

20  Nelson?

21    MR. CELLI:  I don't remember the date, but

22  the hearing took place on November 25th.

23    FEMALE VOICE 1:  On November 25th, there was

24  hearing based on what grievance?

25    MR. CELLI:  My principal said that I stated

1    to her that I took psychiatric meds when I'm

2    HIV positive.

3         FEMALE VOICE 1:   I think you're going to

4    close the door for a second.  We're staying on

5    the record but you can't breathe, right?  Open

6    the door partially.  She has some breathing

7    issues.  Okay, so on November 26, the principal—

8         MR. CELLI:   [Interposing] Yeah, 25th.  That

9    was the hearing date.  The grievance comes from—

10        FEMALE VOICE 1:   [Interposing] Do you have

11   that grievance?

12        MR. CELLI:   That grievance stems from July

13   of 2015.

14        FEMALE VOICE 1:   Do you have the grievance?

15        MR. CELLI:   Not on me, I didn't—

16        FEMALE VOICE 1:   Do you have the grievance?

17   We cannot go forward and I have to apologize to

18   you because we do not have the grievance that

19   you are talking about.

20        MR. CELLI:   You couldn't hold him 'cause

21   she's on - - .

22        FEMALE VOICE 1:   I couldn't get her 'cause

23   she's on - - .

24        MR. CELLI:   That's the other - - .  That's -

25   - that I knew already.

1    FEMALE VOICE 1:  First of all, let me

2    apologize because I didn't—I got this case

3    recently and it looks like you did too, Nelson.

4    We don't have the underlying material and you

5    don't have it.

6    MR. CELLI:  Can I also say one more thing?

7    Mr. - - was at the hearing on October 8th and

8    November 25th.

9    FEMALE VOICE 1:  What was on October 8th?

10   MR. CELLI:  I had another grievance that

11   day.

12   FEMALE VOICE 1:  What grievance was that?

13   MR. CELLI:  I don't remember.  It's all a

14   part and parcel of everything.  If it's a

15   policy, it's a policy on both dates, not just on

16   one.

17   FEMALE VOICE 1:  I don't know what you're

18   saying.

19   MR. CELLI:  On October 8th, Mr. - - , Mr. -

20   - —if I mispronounce the name, please forgive

21   me, Mr. - - , we discussed my behavior of

22   recording.  They let me record and nothing

23   happened.  Now Mr. - - knew he was holding a

24   grievance on the 25th.  As he told you, he was

25   supposed to give me two days' notice.  He waited

1  until that day to say that there was a policy,

2  plain and simple.  That's the argument.

3      FEMALE VOICE 1:  Okay, well, again, because

4  I don't have the underlying reason for your—

5      MR. CELLI:  [Interposing] No, I'm just

6  providing the facts.

7      FEMALE VOICE 1:  No, I appreciate that.

8  That gives me a lot of clarity on why people

9  would be confused.  I'm going to investigate

10  exactly this.

11      MR. CELLI:  I don't want to violate any

12  policy, but a policy has to be a policy on both

13  dates, not just one.

14      FEMALE VOICE 1:  I understand your

15  reasoning, and I'm going to investigate, like I

16  said.  What I'd like to do, with all due respect

17  since there's no underlying grievance here other

18  than the one that said you didn't have a hearing

19  on October 20th, I'd like to adjourn to discuss

20  this in our office and figure out what's the

21  best way to go forward, even if it means that I

22  will hear it once I'm provided with all the

23  information.

24      MR. CELLI:  I don't know if you can hear it.

25  I don't know if she's coming back.

1    FEMALE VOICE 1:  I'll send another
2    representative.
3    MR. CELLI:  No, that's the only person that
4    can answer the grievance is my principal.  To
5    me, it's a waste of time to tell the grievance
6    when the only person who can answer it is not
7    in—
8    FEMALE VOICE 1:  [Interposing] We have our
9    way of doing this  - - .  If somebody is out
10   sick, somebody else has to get up to speed.
11   That's how we do it because that's—people get
12   sick, they have to be - - and the business has
13   to continue to run.  By that, I mean school
14   business.  With that, I'm going to adjourn.  I'm
15   going to apologize that we couldn't—what?
16   MR. CELLI:  Let me explain why we did—
17   FEMALE VOICE 1:  Okay, I'd be fascinated to
18   hear.
19   MR. CELLI:  Okay, so the remedy that we
20   should reschedule that step two conference that
21   was originally scheduled for 11:25 - - if he
22   wishes to.
23   FEMALE VOICE 1:  Okay, so you can have the
24   first part of the - - .
25   MR. CELLI:  The problem we had was basically

1    the chancellor's representative, Mr. - - ,

2    prior to starting that step two hearing had

3    asked if he was going to be recorded.  That was

4    something that was discriminatory because he—as

5    far as we know, working in the UFT, nobody's

6    ever had that question posed of them.  I don't

7    know where he got the idea that he would be

8    recording or not.  It was—

9        [Crosstalk]

10       MR. LUCENA:  That's what it was, okay.

11       MR. CELLI:  It shouldn't have happened.

12       MR. LUCENA:  He should've been - - .

13       FEMALE VOICE 1:  I want to thank you for

14   coming.  I'm sorry we couldn't get more done.

15       MR. CELLI:  That's all right.

16       FEMALE VOICE 1:  We will.  This is the way

17   work gets done once at a time.  Good luck, sir.

18   I hope you're having—

19       MR. CELLI:  [Interposing] You have a nice

20   day.  Happy Thanksgiving.

21       FEMALE VOICE 1:  I hope your health has been

22   improving.

23       MR. CELLI:  Thank you.  I'm going the wrong

24   way.

25       [Crosstalk]

```
 1

 2          [END Nov_2_grievance.mp3]

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3                    C E R T I F I C A T E

4        The prior proceedings were transcribed from

5   audio files and have been transcribed to the

6   best of my ability. I further certify that I am

7   not connected by blood, marriage or employment

8   with any of the parties herein nor interested

9   directly or indirectly in the matter

10   transcribed.

11

12   Signature

13   Date___ March 8, 2018 ____

14

15

16

17

18

19

20

21

22

23

24

25

 **Gmail** Betsy Combier <betsy.combier@gmail.com>

## Mavis Shein mentioned you on Facebook

1 message

**Facebook** <notification+zzd=zriz@facebookmail.com>  Sun, Nov 15, 2015 at 4:07 AM
Reply-To: Reply to Comment
<e+06j6zze000000lokov1008my1fv6z7600000000000000000000000031w53@reply.facebook.com>
To: Betsy Combier <betsy.combier@gmail.com>

 Facebook

Mavis Shein mentioned you in a comment.

 **Mavis Shein**
November 15 at 4:07am

Thank you Betsy

**View on Facebook**

This message was sent to betsy.combier@gmail.com. If you don't want to receive these emails from Facebook in the future, please unsubscribe.
Facebook, Inc., Attention: Department 415, PO Box 10005, Palo Alto, CA 94303

 **Gmail**

Betsy Combier <betsy.combier@gmail.com>

---

## Mavis Shein mentioned you in a comment in Fed Up & Pissed Off Retired UFT Teachers.
1 message

| | |
|---|---|
| **Facebook** <notification+zzd=zriz@facebookmail.com>  Reply-To: noreply <noreply@facebookmail.com>  To: Betsy Combier <1562806597298532@groups.facebook.com> | Thu, Sep 22, 2016 at 2:22 PM |

 Facebook

Mavis Shein mentioned you in a comment in Fed Up & Pissed Off Retired UFT Teachers.

 **Mavis Shein**
September 22 at 2:20pm

Laurie...Aren't you the one on MENTAL HEALTH LEAVE? Really? are you serious? Are you so deranged that this is your quest now? Please don't forget to take those meds..okay? You are absolutely out of your cotton' pickin' mind...now go get some kisses from Betsy Combier.

👍 **Like**      💬 **Comment**



**View on Facebook**      **Edit Email Settings**

This message was sent to **betsy.combier@gmail.com**. If you don't want to receive these emails from Facebook in the future, please unsubscribe.
Facebook, Inc., Attention: Community Support, Menlo Park, CA 94025

 **Gmail**

Betsy Combier <betsy.combier@gmail.com>

## Re: Laurie luft
2 messages

**gilpp celli** <celligiipp@gmail.com>      Sat, Feb 27, 2016 at 8:13 PM
To: Francesco Portelos <mrportelos@gmail.com>, rweingar@aft.org, Steve Morelli <smorelli@smorellilaw.com>
Cc: Betsy Combier <betsy.combier@gmail.com>, johnathan hinesley <jhinesley@optonline.net>, Claudia F Giordano <cfgiordano@gmail.com>, Lydia Ann <lydia.howrilka@gmail.com>

Only you could have put Laurie up to what she's done or tell her about me calling you a cunt

I also have what Laurie has done to other people to harass them because of their association with Francesco

I didn't share the name or the screen shot but I want people see what I gathered

Laurie Kessler Luft
What I hear you saying is that since your abuser did not abuse me personally then he is not really an abuser.
Does that mean that my principal is not an abuser since she didnt abuse you??
and that even she can come on your show and talk about being abused by her boss?

Person.....

Have you lobbied in Albany,,,have you spent hundreds of thousands in court trying to expose this..have you lost your entire career for 30 years because you reported non compliance with a law that is FUNDED just not enforced...I am TRYING to do the right thing....it may not be what you think is the right thing and that is ok...you do what you have to do to expose this and I will what I have to do..I feel like you are harassing and bullying me know PLEASE refrain from contacting me any further..


Laurie Kessler Luft
you are in denial and yes I have lost my career and spend thousands.

Person harassed by Laurie...
PLEASE DO NOT CONTACT ME..


Laurie Kessler Luft
u asked to join my group
u contacted me
you are in denial and im telling u the truth
denial
denial
denial
denial
Sent from my iPhone

On Feb 27, 2016, at 7:54 PM, gilpp celli <celliglipp@gmail.com> wrote:

> Dear Evil Ms. Combier:
>
> Laurie carried out her threat against me! She presented that I hated women like she wrote to me....
>
> I even have serval different privates messages where she tells people my name-- I promised not to name them. I love my mother, my aunts, my female cousins and female friends, and I will never use the word cunt to describe an honorable lady. HOWEVER, you are not an honorable lady because you're an evil cunt. Yet, my mother and aunts maybe uneducated, but they are not in anyway a bitch, cunt or evil, like yourself. You are an educated woman, but YOU, Betsy Combier, are an evil cunt.
>
> Unlike like you, I was honest when a few people asked me about Laurie's post--I will go to my grave with integrity, but I hope my recordings of you will ruin yours. Calling you a fucking evil cunt is not the same as hating women. I have you stating your knowledge of libelous statements and the emails
>
> I don't even hate you, but I do dislike liars like yourself. Grow up and now I truly have the evidence that shows that you're a bully and the mafia (as you wrote in your post) --dumb ass
>
> Please sue me because I want the judge to hear the legal advice that you gave me. In addition, please stop having people harass me..... That is all documented too
>
> It is funny that you did not tell anyone how you disturbed Mavis Shien as her mother passed away.  I am glad that I recorded you being a liar and a wretched human being
>
> I still have that one recording that will put you to shame...I haven't told anyone what it is about
> <image1.PNG><image2.PNG>
>
> Sent from my iPhone
>
> On Feb 27, 2016, at 3:51 PM, gilpp celli <celliglipp@gmail.com> wrote:
>
>> Again... Stop having people contact me on your behalf!
>>
>> You said that you'd sue me..., go ahead! I want you to sue, evil Combier! I want to press play for the judge, please sue me!
>> Again, this is part of what you wrote about in your blog ... "Builing and the mafia"
>>
>> Please, do not tell anyone that I call all women "cunts" but I did called you, Betsy Combier, an evil cunt-- tell your friends that I am thankful for their harassment on your behalf. They are not the same statement but you're a liar, vicious, mean, evil, bitter old woman that creates stories to

make herself look good
<image1.PNG>

Sent from my iPhone

On Feb 26, 2016, at 9:34 PM, gilpp celli <celliglipp@gmail.com> wrote:

> And I'll use what you've done though other people too ... They were dumb to tell me and it's documented
>
> Sent from my iPhone
>
> On Feb 26, 2016, at 9:33 PM, gilpp celli <celliglipp@gmail.com> wrote:
>
> > I want press play for a judge or the cops— your choice really.
> >
> > I want the world to hear the real Betsy Combier
> >
> > Come on bitch
> >
> > Sent from my iPhone
> >
> > On Feb 26, 2016, at 8:01 PM, gilpp celli <celliglipp@gmail.com> wrote:
> >
> > > Dear Evil Combier:
> > >
> > > What is it going to take for you to sue me? I WANT a judge to hear you give me legal advice... Ok evil bitch
> > >
> > > I want the world to know that you like to lie!
> > > I want the world to know that you threatened anyone that supported Francesco
> > > I want the world to hear what type of evil fucking cunt you are to annoy Mavis Shein as her mother passed away
> > >
> > > Mostly, I want the judge to hear the legal advice. Hurry up evil bitch
> > >
> > > Sent from my iPhone
> > >
> > > On Jan 24, 2016, at 9:54 AM, Francesco Portelos <mrportelos@gmail.com> wrote:
> > >
> > > > Many are reporting the ill politics in Laurie's group. It's more about Laurie than it is about ATR issues. Good job Betsy. How's business?
> > > >
> > > > Francesco A. Portelos
> > > > Educator
> > > > www.EducatorFightsBack.org
> > > >
> > > > UFT Presidential Candidate 2016
> > > > www.UFT2016.com
> > > >
> > > > UFT Solidarity Caucus
> > > > www.UFTsolidarity.org
> > > >
> > > > Don't Tread on Educators
> > > > www.DTOE.org
> > > >
> > > > ATR Alliance
> > > > www.atralliance.org
> > > >
> > > > www.mrportelos.com
> > > >
> > > > "The foundation of every state is the education of its youth." -
> > > >
> > > > Greek Philosopher Diogenes
> > > >
> > > > On Jan 23, 2016 2:22 PM, "gilpp celli" <celliglipp@gmail.com> wrote:
> > > > > Fran,
> > > > >
> > > > > I was thrown out of ATR support group because of Betsy. Someone showed me the messages. Betsy didn't say how she owes me money, lied to my lawyer, libelous statements in her blog, etc
> > > > >
> > > > > Another harm
> > > > >
> > > > > Sent from my iPhone
> > > > >
> > > > > On Jan 23, 2016, at 11:50 AM, gilpp celli <celliglipp@gmail.com> wrote:
> > > > >
> > > > > > You don't want people posting the truth
> > > > > > <image1.PNG>
> > > > > > Sent from my iPhone
> > > > > >
> > > > > > On Jan 23, 2016, at 5:17 AM, gilpp celli <celliglipp@gmail.com> wrote:

Betsy,

You're so childish... I can't wait for Fran to post and share the true Betsy.


Sent from my iPhone

On Jan 21, 2016, at 3:46 PM, gilpp celli <celliglipp@gmail.com> wrote:

> Wait until the full Rona story is told by Betsy herself...... I'll hold on to that recording for a bit longer because PERB is not working out well
>
> Sent from my iPhone
>
> On Jan 20, 2016, at 7:30 PM, Francesco Portelos <mrportelos@gmail.com> wrote:
>
>> Yeah this won't go well. She still left her defamatory and libelous posts up on her sites.
>>
>> With every UFT member and parent who asks me "What about Betsy?" and I respond "There are better people to use than Betsy." I have some solace knowing that's money out of her pocket. A lot of money.
>>
>>
>> Francesco A. Portelos
>> Educator
>> www.EducatorFightsBack.org
>>
>> UFT Presidential Candidate 2016
>> www.UFT2016.com
>>
>> UFT Solidarity Caucus
>> www.UFTsolidarity.org
>>
>> Don't Tread on Educators
>> www.DTOE.org
>>
>> ATR Alliance
>> www.atralliance.org
>>
>> www.mrportelos.com
>>
>> "The foundation of every state is the education of its youth." -
>>
>> Greek Philosopher Diogenes
>>
>>
>> On Jan 20, 2016 8:15 AM, "gilpp celli" <celliglipp@gmail.com> wrote:
>>> Fran
>>>
>>> I think we NEED to teach Betsy a lesson now... We are going to post that mother fucker
>>>
>>> Sent from my iPhone

---

gilpp celli <celliglipp@gmail.com>                                  Sat, Feb 27, 2016 at 9:26 PM
To: Francesco Portelos <mrportelos@gmail.com>, rweingar@aft.org, Steve Morelli <smorelli@smorellilaw.com>
Cc: Betsy Combier <betsy.combier@gmail.com>, johnathan hinesley <jhinesley@optonline.net>, Claudia F Giordano <cfgiordano@gmail.com>, Lydia Ann <lydia.howrilka@gmail.com>

Randi or Steven

How are you going to control Betsy because I'm getting tired of the vindictive Blassman?

Sent from my iPhone
[Quoted text hidden]

 Gmail

Betsy Combier <betsy.combier@gmail.com>

---

**Draft 3 from Lucio to Adam Ross...**
3 messages

---

Harvey400 <harvey400@aol.com>                                          Wed, Jun 17, 2015 at 12:26 AM
To: enzo0mad@aol.com
Cc: betsy.combier@gmail.com

# Draft 3  (The correct spelling is "Susan Sedlmayer.")

Dear Mr. Ross,  (OR you can say, "Dear Adam," since he signed "Adam" instead of "Adam Ross.")

Thank you very much for your email.  I value any and all communications from you.

In terms of my providing the recording to the UFT, there are issues that the UFT must address before I would even consider sending the recording of April 16, 2015, to the union.

The first issue that the UFT must address is the collection of falsified documents submitted by Ms. Anne Bernard on May 4, 2015.

Since the UFT and the DOE have a pact in place, I believe the UFT should make the DOE hold Mr. Richard Cole and Ms. Anne Bernard accountable for their actions of falsifying observation reports.

In case you're not aware, Albert Shanker went public in the 1980s about the fact that groups of school supervisors didn't feel that they were helped by the observation and evaluation procedure to become better teachers, during the time period when they used to be teachers.

Nonetheless, they continued with these same procedures.

http://source.nysut.org/weblink7/DocView.aspx?id=709

The second issue is that the UFT must file an Article 78 on my behalf, since the secret agreement is what led to my U-rating being upheld based on falsified documents.

The third issue is that the UFT must negotiate that I do not return to a school that placed me into a room like a caged animal.

The fourth issue is that the UFT must negotiate a total settlement on my behalf.

You need to know and comprehend that I recorded most of my conversations as a way to protect myself and not be afraid once I reached this point.  I hope the DOE realized this concept, too, when I sent them a recording of Courtenaye Jackson-Chase, Esq.

In addition, I need to share the evidence when the right time comes at PERB or in court.  You are well aware of this fact.

If you want to avoid my publicizing the coercion done by Susan Sedlmayer, or the secret

agreement between the UFT and the DOE that is meant to harm members at their appeals -- and this is entirely up to you and your management at the UFT -- then, obviously, the UFT should settle with me.

The comments, actions, and inactions of Ms. Sedlmayer look extremely bad for the UFT.

In my opinion, the reason why the UFT would like to gain possession of said recording is to figure out a way to spin what Ms. Sedlmayer said to me.

Therefore, there is not a reason to gain possession of the recording before I have to present it at PERB or in court.

And, of course, there is always the media that would love to hear a story like the one I have, accompanied by my evidence.

I'll bet that your members would love to know about the secret agreement, too. I would also expect that sometime in the future, I would find it necessary to publicize what the UFT has done to me.

Naturally, I would prefer an amicable solution, but this is truly up to you and your management at the UFT. To be perfectly honest -- and based on my past experience -- I would expect the UFT to neither negotiate nor show good faith.

However, I am planning to move forward and protect my interests. I hope that we can resolve any differences we have, and that we may continue our dialogue towards a positive goal for each of us.


Sincerely,


Lucio Celli


---

**Lucio** <enzo0mad@aol.com>                                 Wed, Jun 17, 2015 at 10:14 AM
To: Harvey400 <harvey400@aol.com>
Cc: "betsy.combier@gmail.com" <betsy.combier@gmail.com>

Hey Harvey,

I'm going to wait a day or two because Mr. Ross waited two days. I just might send the email next week

Sent from my iPhone
[Quoted text hidden]

---

**Betsy Combier** <betsy.combier@gmail.com>                          Fri, Feb 2, 2018 at 6:53 PM
Reply-To: betsy.combier@gmail.com
To: Betsy Combier <betsy.combier@gmail.com>

[Quoted text hidden]
--
Betsy Combier
betsy.combier@gmail.com
ADVOCATZ

Like · Reply · September 22 at 10:55pm · Edited



**Lucio Celli** **Mike Schwartz** I just re-read Mavis Shein's post and I did not read anything about Laurie Luft.

Where are you getting this information? I don't know Laurie was on a mental leave but thanks for the unneeded information, which is private for Laurie

Like · Reply · **1** · September 22 at 10:57pm



**Mike Schwartz** Because she deleted it, she said to Laurie that she is out on Mental health leave and she delusional and should take her meds.....Way out of line

Like · Reply · September 22 at 10:59pm



**Lucio Celli** Do you have a picture of it

Like · Reply · September 22 at 11:00pm



**Mike Schwartz** It was private until Mavis chose to put it on a public site, do you want your personal info shared, oh and by the way whether she is or isn't it should not have been shared !!!

Like · Reply · September 22 at 11:01pm



**Mike Schwartz** No, I don't have a picture of it, i"m pulling it out of thin air, She deleted it !!!!! Don't be surprised if she shares your personal info as she is not the sweet little angel you think she is.

Like · Reply · September 22 at 11:03pm · Edited



**Lucio Celli** Mike Schwartz I just asked Mavis ... What you are talking about occurred between Laurie and Mavis in private ...

Who are you really? BC?

Like · Reply · September 22 at 11:04pm



**Mike Schwartz** BC ?? Who are you really cause your sounding pretty stupid not knowing all the facts !

Like · Reply · September 22 at 11:06pm · Edited



**Lucio Celli** Whatever BC ... I'm done

Like · Reply · September 22 at 11:06pm

**Heather Rey**                                                                          9:02pm Sep 22

Francesco Portelos why must you rip Betsy Combier apart? How is she related to this? I don't think your comments are appropriate to this thread.

    **Francesco Portelos**                                                    9:03pm Sep 22

    Mike, I messaged you.

    **Peter Zucker**                                                            9:04pm Sep 22

Watch it Mike he just might show up at your house.

### Francesco Portelos                    9:05pm Sep 22

Peter brought up an issue involving Laurie that involved Betsy lying. I would not call that ripping apart.

Ernest Jeter Mavis, I don't know the jest of the dispute between the gentleman and you, but reading your statement regarding this gentleman tells me that you are some kind of a woman that while I was in the DOE, I would have treasured that opportunity to work with ...See More
Like · 4 · Yesterday at 5:06pm

Peter Zucker Where were you when your leader Francesco Portelos was pulling this crap on Laurie there was silence.
Like · 2 · 4 hrs

Francesco Portelos What stuff on Laurie? At ATR Support page? Common denominator there as well...Betsy Combier spewing lies because she lost illegal clients and money. Doesn't want people like Martin Haber having a forum where people get free support.
Like · 1 hr



**Mike Schwartz** It wasn't private she posted it on this public site so again get the facts straight or stay out of it !
Like · Reply · September 22 at 11:07pm · Edited



**Mike Schwartz** Yeah , your done alright !!
Like · Reply · September 22 at 11:07pm



**Lucio Celli** I like how you create stories that aren't true and cannot prove ... You are liar and look stupid when you cannot provide proof
Like · Reply · September 22 at 11:10pm · Edited



**Mike Schwartz** I actually can prove it but your not worth the time or effort...Who the hell cares what you think anyway, I don't have to prove anything to you, Mavis lied to you so thats what she thinks of you...She deleted it cause she knows she was 100 % wrong so go to bed, do you want your private info shared cause I can inquire about you and share your personal life.
Like · Reply · September 22 at 11:12pm · Edited



**Lucio Celli** Like I thought, you cannot prove your claim ... Mavis is a good lady
Like · Reply · September 22 at 11:12pm



**Mike Schwartz** I can prove it idiot like I just told you, but you believe the little princess..Many others will attest what she wrote.
Like · Reply · September 22 at 11:14pm



**Lucio Celli** Mike Schwartz you sound like BC when she told me that she will lie
Like · Reply · September 22 at 11:14pm



**Lucio Celli** Mike Schwartz not original
Like · Reply · September 22 at 11:15pm



**Lucio Celli** Even on your blog
Like · Reply · September 22 at 11:15pm



**Mike Schwartz** WTF is BC ? Ask Mark Haber he saw what she wrote .
Like · Reply · September 22 at 11:15pm



**Lucio Celli** Then, mark would have told her to say sorry like he did to Fred
Like · Reply · September 22 at 11:16pm



**Lucio Celli** Liar
Like · Reply · September 22 at 11:16pm



**Mike Schwartz** Your a moron with the moron clan speaking without the facts...
Like · Reply · September 22 at 11:16pm



**Mike Schwartz** He did !!!!
Like · Reply · September 22 at 11:16pm



**Lucio Celli** "Moron clan"?
Like · Reply · September 22 at 11:17pm



**Mike Schwartz** Portelo is aware also and saw it all so again have a clue before you chime in...
Like · Reply · September 22 at 11:18pm



**Mike Schwartz** Cat got your tongue ??
Like · Reply · September 22 at 11:19pm



**Lucio Celli** He said that you're ONLY that wrote it ,..
Like · Reply · September 22 at 11:20pm



**Mike Schwartz** WTF are you babbling about ? I wrote it ?? go to bed idiot...
Like · Reply · September 22 at 11:21pm



**Lucio Celli** I thought you are against bad words...
Like · Reply · September 22 at 11:21pm



**Lucio Celli** "Moron clan" what do you mean?
Like · Reply · September 22 at 11:23pm



**Mike Schwartz** Not when people don't even consider that someone is telling the truth , unlike what Mavis the DB did with you..
Like · Reply · September 22 at 11:23pm


**Mike Schwartz** She lied to you, how do you like them apples ???
Like · Reply · September 22 at 11:23pm


**Lucio Celli** Who is DB
Like · Reply · September 22 at 11:24pm


**Mike Schwartz** Who is BC ??
Like · Reply · September 22 at 11:24pm


**Lucio Celli** I think, Mike Schwartz is a fake profile and I think BC
Like · Reply · September 22 at 11:26pm


**Mike Schwartz** Dude you're dumber than a log, Ask Haber or Portelo, they saw it all.....Portelo told Haber to get it under control....You have no clue of the story because she deleted it, I will repeat it again if you have a problem understanding....
Like · Reply · September 22 at 11:29pm · Edited


**Mike Schwartz** Once again I will ask you...Would you like it if your personal info was shared publicly by anyone other than yourself?
Like · Reply · September 22 at 11:34pm


**Mike Schwartz** I guess not.
Like · Reply · September 22 at 11:36pm


**Lucio Celli** No one would ... I feel sorry for Laurie because she's being used by BC --in my opinion and I know Mavis is a good person
Like · Reply · September 22 at 11:37pm


**Mike Schwartz** Excellent, believe what you want but if you saw her very hurtful remarks you might understand.....have a great night !! And again what is BC, can you please answer that ??
Like · Reply · September 22 at 11:40pm


**Mike Schwartz** Opinions are like aholes, everyone has one !
Like · Reply · September 22 at 11:41pm · Edited


**Lucio Celli** Mike Schwartz whatever dude ... Didnt you say that you were leaving the group
Like · Reply · September 22 at 11:47pm


**Mike Schwartz** Why would I be writing about something that didn't exist ? I saw it myself as did many others.......SHE DELETED IT CAUSE SHE KNEW SHE WAS WRONG !!
Like · Reply · September 22 at 11:47pm


**Lucio Celli** That's why I take screenshots and record people
Like · Reply · September 22 at 11:48pm


**Mike Schwartz** That's none of you concern, but your friend lied to you, lol that's what you should be concerned about, the one you call a good person....lmao
Like · Reply · September 22 at 11:49pm · Edited


**Lucio Celli** Always better than BC
Like · Reply · September 22 at 11:49pm


**Mike Schwartz** Screen shots were taken but you don't warrant seeing them !!
Like · Reply · September 22 at 11:49pm


**Mike Schwartz** Rofllmao, WTF is BC, you still haven't answered that...
Like · Reply · September 22 at 11:52pm · Edited


**Mike Schwartz** Lucio Celli I couldn't care less of what you take screen shots of or record because it has nothing to do with today !!!
Like · Reply · September 22 at 11:54pm


**Lucio Celli** BC or PZ
Like · Reply · September 22 at 11:55pm


**Mike Schwartz** Get your brain checked out....I'm done with your stupidity !!!!
Like · Reply · Yesterday at 12:21am


**Angela AbbatiTaylor** Bull Crap
Like · Reply · Yesterday at 6:56am
View more replies



Write a reply...


**Audrey Bogen** Take the information that helps & distance yourself from posts that are unprofessional. We are here to support and uplift each other.
Like · Reply · 2 · September 22 at 10:51pm


**Mike Schwartz** Mavis insulted his wife so get it straight or stay out of it !!!
Like · Reply · September 22 at 10:58pm · Edited


**Lucio Celli** Mavis asked Fred, if that's what Fred does to his wife ... You can read and comprehend Mike Schwartz
Like · Reply · 4 hrs



**Heather Rey** Is this still the highlight of your day?
Like · Reply · 4 hrs



**Lucio Celli** No responding to him
Like · Reply · 4 hrs



**Heather Rey** It's 9/24. That was 2 days ago. Why don't you drop it and leave the guy alone already. You are badgering.
Like · Reply · 4 hrs



**Lucio Celli** Responding is not badgering .... I didn't you see you comment when he made his comment against me. His behavior was badgering
I see you're defending him
Like · Reply · 4 hrs



**Lucio Celli** And mike can answer for himself
Like · Reply · 4 hrs · Edited



**Heather Rey** i didnt see you defend Laurie when Claudia called her a loon.
Like · Reply · 4 hrs



**Heather Rey** Or when Mavis called her mental.
Like · Reply · 4 hrs



**Heather Rey** Do you support bullies?
Like · Reply · 4 hrs



**Lucio Celli** Heather Rey I didn't see the post because I have certain people blocked... If you need to know
Like · Reply · 3 hrs



**Lucio Celli** Laurie I didn't mention you nor bothered you .... I have no idea as to why you even mentioned me ... Please leave me alone
Like · Reply · 3 hrs



**Lucio Celli** I don't have a clue
Like · Reply · 3 hrs



Write a reply...



**Heather Rey** Back to my questions about Retirement. Does anyone know who the go to person at the TRS is? My friend needs information and has called TRS only he gets a different person answering every time.
Like · Reply · 1 · 4 hrs



**Heather Rey** Is there a certain person he should request at TRS? Asking because he is not on Facebook.
Like · Reply · 1 · 4 hrs



**Lucio Celli** Look in the Uft paper for TRS help
Like · Reply · 3 hrs



**Laurie B. Kessler Luft** Heather, I will inbox you the information. I know someone at TRS.
Like · Reply · 3 hrs



**Mike Schwartz** I'm driving and my phone is blowing up...Lucio WTF is your problem ? I have had 5 people inbox and told me all about you, would you like me to put it in this public page ?? And thanks Heather for answering Lucio on my behalf but I'll take it from here....See More
Like · Reply · 3 hrs



**Lucio Celli** Mike Schwartz you said inappropriate language doesn't have a place in this forum ... I haven't use inappropriate Lang towards you nor threatened you... Like you to me
Like · Reply · 3 hrs · Edited



**Mike Schwartz** Stop asking me questions, you have no business in this conversation aside from the fact that you're friends with MAVIS & BUTTHEAD , well I have made friends with Laurie B. Kessler Luft & Heather Rey and will defend them if I please. I see no threats in my post but just so you know your friend MAVIS lied to you, some friend you're defending !!!
Like · Reply · 3 hrs



**Mike Schwartz** I haven't said a word in your direction since Thursday but if you want to butt heads I'll give you all you can handle and anyone behind you.
Like · Reply · 3 hrs



**Mike Schwartz** JO FU BC AC DC PZ, what's with the letters, I have no idea what they mean so I won't be able to solve your little riddles.
Like · Reply · 3 hrs



**Mike Schwartz** Mavis said, Mavis said, you sound like a little girl...Well why isn't Mavis saying anything now ??? Because she know's she was wrong and pictures were taken of her hurtful

words so drop it and don't bother me anymore, you're like a gnat. I have better things to do than go back and forth with you especially when you don't know the facts..Ciao
Like · Reply · 2 hrs



**Lucio Celli** I don't know butthead... Please provide me with the name
Like · Reply · 2 hrs



**Lucio Celli** CiaoSee Translation
Like · Reply · 2 hrs



**Mike Schwartz** Claudia Goirdano Lasky and I only know this because I saw it all so you really should know what's going on before you stick your 2 cents in to defend someone, especially rude and hurtful people and lying to you to boot !!!
Like · Reply · 2 hrs



**Lucio Celli** Is Claudia butthead?
Like · Reply · 2 hrs



**Mike Schwartz** I already answered that, I'm done wasting my time with you....
Like · Reply · 2 hrs



**Mike Schwartz** Oh, there's Miss Sunshine....
Like · Reply · 2 hrs



**Mike Schwartz** Betsy ? WTF is Betsy ??
Like · Reply · 2 hrs



**Lucio Celli** Mavis Shein may not be prefect, because no one is prefect, but Mavis has been nice to me. This is what matters to me
Like · Reply · 2 hrs



**Mike Schwartz** Great than converse with her...Obviously it doesn't matter to you that she lied to you as long as she's nice, that's phony and you can accept that as you please...
Like · Reply · 2 hrs · Edited



**Mike Schwartz** Shabbat Shalom.....
Like · Reply · 2 hrs



**Mike Schwartz** Don't forget, there's 3 sides to every story but in this case pictures were taken of the comments so you have the right to believe whatever you want. Have a great night !!!
Like · Reply · 2 hrs



**Lucio Celli** Ciao ... 3 sides and i like recordings
Like · Reply · 2 hrs · Edited



**Lucio Celli** Like phone calls... DA
Like · Reply · 2 hrs



**Mike Schwartz** 3 sides and i recordings, if you mean 1 recording than it it's not plural. There you go again with the letters, LMAO, what is DA, why don't you just be a man and say what you want instead of writing things that I have no clue about therefore cannot respond to it !!!!
Like · Reply · 2 hrs



**Mike Schwartz** Love that Mavis Shein, thanks. It matters not who am I but it's clear who you are, a bully but when confronted I bet you'll pee your pants...And thanks for taking the time to give me so much thought, now go get your shine box !!!
Like · Reply · 2 hrs · Edited



**Lucio Celli** I like recordings... Please see the edit
Like · Reply · 1 · 2 hrs



**Mike Schwartz** LMFAO, WTF are you recording & for what and whom ?? .....lol.. You sound like a broken record already, go make yourself a Cocktail and enjoy your evening.
Like · Reply · 2 hrs



**Lucio Celli** I know for whom and why
Like · Reply · 2 hrs



**Mike Schwartz** It's the furthest thing from a racist comment, it's a line from a movie so go smoke your cigar..
Like · Reply · 2 hrs



**Mike Schwartz** LMAO, you're comments were photographed, and you're the one that's guilty of posting horrible things on a public site so go get a box of tissues and blow your nose....
Like · Reply · 2 hrs



**Mike Schwartz** Can't tolerate you're desperation any longer, go find a mate of some kind and enjoy yourself cause you seem like a miserable woman, and don't forget Miss sensitivity,I'm Jewish also.
Like · Reply · 2 hrs



**Mike Schwartz** You already did...

Like · Reply · 2 hrs



**Mike Schwartz** getting off , I have a life !!
Like · Reply · 2 hrs



**Mike Schwartz** You're a moron, lying bully who deleted her posts..
Like · Reply · 2 hrs



**Peter Zucker** But Mavis where was your outrage when Francesco was harrassing Laurie. When he was egging on Lucio into call Betsy a c**t? When was continuously harassing Jia Lee? The harassment of Amy Arundell? Where was your outrage?
Like · Reply · 1 · 2 hrs



Peter Zucker replied · 23 Replies · 1 hr



**Mike Schwartz** Mavis, you should worry you're posts don't make it to the precinct...lol
Like · Reply · 2 · 2 hrs



**Kali Loverdos** What do you need?
Like · Reply · 2 hrs

11 Replies · 36 mins



**Mike Schwartz** Yes Kali, life is short and people shouldn't be making light of another persons disability as Mavis did and won't own up to it. Lucio is just a kiss ass follower so his input is meaningless. Mavis likes to dish it out but can't take it or acknowledge what she said was very hurtful and wrong but the Princess is a narcissist. God help her !!
Like · Reply · 1 · 18 mins



**Mike Schwartz** I wouldn't ask you the time of day....It's probably best we don't converse any further as I know what type of person you are. If I have any questions please don't answer...Thanks and have a great evening.
Like · Reply · 6 mins · Edited



**Mike Schwartz** Your stuck cause also because of your comments which you should be ashamed of yourself. I have nothing else to say to you so please stick with your clan.
Like · Reply · 2 mins



**Lucio Celli** Why are you doing exactly what you have claimed---and insulted Mavis for --- Mavis has done to someone else?
Like · Just now



**Mike Schwartz** LOL I'm no bully, I just speak the truth and unlike you can't accept what Mavis said was wrong, What if she lashed out at you? what would do then ???
Like · Just now



**Mike Schwartz** Why can't you mind your own business ???
Like · Just now



**Lucio Celli** I would speak to her because she's a good person ....
Like · Just now



**Lucio Celli** Because I want to be your mirror
Like · Just now

Write a comment...

Peter Zucker But Mavis where was your outrage when Francesco was harrassing Laurie. When he was egging on Lucio into call Betsy a c**t? When was continuously harassing Jia Lee? The harassment of Amy Arundell? Where was your outrage?

Like · 1 · 3 hrs

Hide 23 Replies


Remove
Mavis Shein Peter..I don't condone harassment. I never harassed anybody at any time. I guess you're not aware that my mother was dying at the time. I was not involved in any of that..just so you know.
Like · 3 hrs


Remove
Lucio Celli Yep, Peter's master called you, Mavis, to harass you
Like · 3 hrs


Remove
Peter Zucker Mavis have you ever spoken to your overseer condemning him for this actions?
Like · 3 hrs


Remove
Lucio Celli And Peter you don't know the story nor heard the recordings
Like · 3 hrs



Remove

Mavis Shein You had an axe to grind with FP..and I politely told you I didn't want to get involved. Lucio had a right to defend himself. That was his business. I don't anything about Jia Liee...Amy Arundell..I had my own issues to deal with and was doing the best I could under the circumstances. It's close to a year since my mother passed away and my retirement which occurred at the same time. I have been relentlessly ridiculed and derided in here? Is there an equivalent equation in here that I"m missing? I don't think so.

Like · 3 hrs



Remove

Peter Zucker Calling someone a c**t is inexcusable. Harrasing Jia, Laurie, Betsy, Amy, and other females is inexcusable.

Like · 3 hrs



Remove

Peter Zucker Mavis Shein if you haven't condemned him then you condone it. Simple.

Like · 3 hrs



Remove

Lucio Celli So peter, you condone your master calling Mavis on the day her mother died to harass her .... Where is your outrage for that and that's the reason for the word c$$t

Like · 3 hrs



Remove

Lucio Celli But you don't care about facts

Like · 3 hrs



Remove

Peter Zucker Who is my master? And how am I supposed to know who called Mavis?

Like · 3 hrs



Remove

Mavis Shein I don't have to condemn or condone. I don't represent the 'hand of G0d' Peter. No one was murdered..sticks and stones Peter. Life goes on.

Like · 3 hrs



Remove

Mavis Shein Oh and thank you for your condolences regarding my mother's death. We had a nice rapport in the ATR room..that's all I remember.

Like · 3 hrs



Remove

Peter Zucker Mavis Shein no but plenty of women were scared shitless. You either condone or condemn. Which is it?

Like · 3 hrs



Remove

Lucio Celli Peter Zucker scare of you because i would be, if I heard you

Like · 3 hrs



Remove

Peter Zucker Mavis Shein if someone called another Jew a Kike would you remain silent?

Like · 3 hrs



Remove

Lucio Celli I doubt anyone would be Peter Zucker

Like · 3 hrs



Remove

Peter Zucker Would be what?

Like · 3 hrs



Remove

Lucio Celli Some people look the other way,,.. when their master tells them too

Like · 3 hrs



Remove

Lucio Celli I doubt, and I hope, anyone would remain silent if a person said the word kike... Because it is wrong

Like · 3 hrs



Remove

Peter Zucker But C**t is ok for you?

Like · 3 hrs



Remove

Mavis Shein Lucio..stop answering him.

Like · 1 · 3 hrs



Remove

Peter Zucker Mavis why would you be friends and be a follower of someone who so degrades women?

Like · 3 hrs



Remove

Peter Zucker Mavis haven't you the ability to be a leader and not a follower?

Like · 3 hrs

Top of Form

Like · 1 · 1 hr



Remove

Mike Schwartz Yes Kali, life is short and people shouldn't be making light of another persons disability as Mavis did and won't own up to it. Lucio is just a kiss ass follower so his input is meaningless. Mavis likes to dish it out but can't take it or acknowledge what she said was very hurtful and wrong but the Princess is a narcissist. God help her !!

Like · 1 · 1 hr



Remove

Mavis Shein At the risk of stating the obvious..this is a page that was created for former teachers, now retired who have questions or issues regarding their retirement ..if you do not have any questions concerning that..then the obvious question is why are you here? You seem to be stuck on a topic that no one believes or is interested in. If you have any retirement questions feel free to ask..maybe I or another member of this page can help you.

Like · 1 hr



Remove

Mike Schwartz I wouldn't ask you the time of day....It's probably best we don't converse any further as I know what type of person you are. If I have any questions please don't answer...Thanks and have a great evening.

Like · 1 hr · Edited



Remove

Mike Schwartz Your stuck cause also because of your comments which you should be ashamed of yourself. I have nothing else to say to you so please stick with your clan.

Like · 1 hr

Bottom of Form

OLDER



**Martin Haber**
September 22 at 11:29pm

Hey Heather: Its hard to tell lately, but we were fed up & pissed off at our union, as well as the doe, and at all teacher-bashers out there. NOT each other, believe it or not...!!!

Top of Form

11 Heather Rey

Comments



Remove

Claudia Giordano Lasky #butthurt

Like · 1 · September 22 at 3:52pm



Remove

Heather Rey What does that mean?
Like · September 22 at 7:05pm


Remove

Mike Schwartz Yeah you too, I saw your appearance too and feel bad for both of you, maybe if you lost 10 or 80 lbs. you might feel better about yourself and stop hurting others. It doesn't feel good when the shoe is on the other foot which you probably haven't seen your feet in years..
Like · September 22 at 3:58pm · Edited


Remove

Laurie B. Kessler Luft No use Mike Schwartz. They only see what they want to see. They applaud profanity and shots below the belt.
Like · September 22 at 3:55pm


Remove

Mike Schwartz I see that Laurie B. Kessler Luft and I feel for you for being attacked by those two morons , The Simp & the Blimp. I hope you're not on Mental health leave as it is not a place of bliss.
Like · September 22 at 3:57pm


Remove

Laurie B. Kessler Luft I am trying to get retirement info. I think I will have to start my own page. All I have seen here are attacks on a Mr. Golub for a one time remark
Like · September 22 at 3:59pm


Remove

Mike Schwartz I don't blame you, I would love to join your page if you start one and hope there are no horrible people like the 2 idiots I mentioned earlier. Best of luck to you Laurie B. Kessler Luft....
Like · September 22 at 4:02pm


Remove

Evelyn Garcia Damers You people should private message each other and leave this forum. This is not the place for verbal abuse.
Like · 3 · September 22 at 4:07pm


Remove

Laurie B. Kessler Luft Mr. Golub seems to have left the page. I don't blame him.
Like · 1 · September 22 at 4:08pm


Remove

Mike Schwartz Exactly Evelyn Garcia Damers, that is where you put dirty laundry, not on a public site !!!

Like · 4 · September 22 at 4:17pm



Remove

Heather Rey So what I see here is that retirees come for support and receive mockery over their mental illness. Why is this happening and Who is the admin of this page?

Like · 1 · September 22 at 7:06pm

Bottom of Form



**Alice Kellman**

September 22 at 3:55pm

Martin Haber With all due respect, if you want this page to be all that we all hope it to be, I suggest you delete all of the nasty postings and perhaps if name calling continues, delete the name-callers as well. I come here for information from what I assume is a community with shared interests and support. I really don't want to scroll through the back and forth of all these attacks and counter-attacks and personality issues. Thanks.

Top of Form

LikeShow more reactions

Share

Seen by 85

1212 Heather Rey, Laurie B. Kessler Luft and 10 others

Comments

View 9 more comments



Remove

Laurie B. Kessler Luft

skills and was always successfully rated by all my administrators throughout that time. I worked on Writing Curriculum and volunteered my time after school hours to assist students. I was well liked within the staff and by the former superintendent of District 25 who was my principal at 217 for many years. Ms. Jeannette Reed. I will not submit a resume here to prove anything about my career and who I was as a teacher in District 25. however. I did teach full time classroom elementary grades as well as special education for the 15 years prior to my time at 217. It was with great sorrow and heartache that I found myself one of the targeted teachers that the Principal deemed 'unworthy' to grace his school or his 217 family as he put it on many occasions. A victim of discrimination and workplace abuse. I dedicated my life to my job, which was not just a job to me. I was a proactive teacher and was always concerned not only with my students' academic achievement but with their emotional well being as well. So to the hater (by the name of Fred Golub) you can really kiss my ass. You, are such a coward - a strong little coward and truly a little bitch of a man. I don't need to be in this group. I offered advice and council to a new member in here in an empathetic manner. You, on the other hand Golub, shole are a pathetic nasty piece of sh*t who probably keeps a big stash of Viagra in his bedside table. It's easy to see what kind of person you are. nasty, foul mouthed, bad tempered, egotistical shole. So you can do the old I.S.&D Golub and oh yeah. I'm sure you do talk to your wife like that. how could you not? To everyone else that might be reading this Peace Out. and enjoy your retirements. Oh and Golub (ugh that name is so ugly) if you plan on recording or posting anything else about me, it won't matter because I won't be seeing it. PsSo. you 're probably too stupid to know this. but your name is a Yiddish variation of GOLEM which in Jewish folklore was a dumb monstrous creature WHICH by you amazingly well, ♂ kirsten shole



Like · September 22 at 6:00pm

Remove
Heather Rey Why is this type of language allowed here?
Like · September 22 at 7:03pm
Bottom of Form



**Martin Haber**
September 22 at 4:51pm

To Alice and all: This has definitely gotten out of hand. I tried to use my best judgement from the start, but I see that I too have hurt people's feelings, so I too apologize. LET"S MOVE ON EVERYBODY!!!

Top of Form

LikeShow more reactions
Share
Bottom of Form



# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.

**1.    Personal Information**

Last Name: Celli    First Name: Lucio    MI:

Street or Mailing Address: 2743 Seymour Avenue    Apt Or Unit #: PH

City: Bronx    County: New York    State: New York    ZIP: 10469

Phone Numbers: Home: ( 646 ) 734-3899    Work: (     )

Cell: (     )    Email Address: enzo0mad@aol.com

Date of Birth: 01/24/1976    Sex: Male ☒    Female ☐    Do You Have a Disability? ☒ Yes    ☐ No

**Please answer each of the next three questions.**    i. Are you Hispanic or Latino? ☐ Yes ☐ No

ii. What is your Race? Please choose all that apply.    ☐ American Indian or Alaska Native    ☐ Asian    ☒ White    ☐ Black or African American    ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (county of origin or ancestry)? Italy

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: James Hartt    Relationship: Attorney

Address: 70 Linden Oaks, 3rd Floor    City: Rochester    State: NY    Zip Code: 14625

Home Phone: (     )    Other Phone: ( 585 ) 425-8682

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer    ☐ Union    ☐ Employment Agency    ☐ Other (Please Specify)

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: New York City Department of Education

Address: 65 Court Street    County: Brooklyn

City: New York    State: NY    Zip: 10460    Phone: (     )

Type of Business: Education    Job Location if different from Org. Address: 1970 West Farms Road

Human Resources Director or Owner Name: N/A    Phone:

Number of Employees in the Organization at All Locations: Please Check (√) One

☐ Fewer Than 15    ☐ 15 - 100    ☐ 101 - 200    ☐ 201 - 500    ☒ More than 500

**3.  Your Employment Data** (Complete as many items as you can)    **Are you a Federal Employee?** ☐Yes ☐No

Date Hired: 09/09/1999    Job Title At Hire: Teacher

Pay Rate When Hired: 28,000    Last or Current Pay Rate: 85,000

Job Title at Time of Alleged Discrimination: Teacher    Date Quit/Discharged:

Name and Title of Immediate Supervisor: Mr. Richard Cole

**If Job Applicant, Date You Applied for Job** _____ **Job Title Applied For** _____

**4.   What is the reason (basis) for your claim of employment discrimination?**
*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

[x] Race   [ ] Sex   [ ] Age   [ ] Disability   [x] National Origin   [ ] Religion   [ ] Retaliation   [ ] Pregnancy   [ ] Color (typically a difference in skin shade within the same race)   [ ] Genetic Information; choose which type(s) of genetic information is involved:

[ ] i. genetic testing   [ ] ii. family medical history   [ ] iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: Italian-American _____

If you checked genetic information, how did the employer obtain the genetic information? _____
_____
_____

Other reason (basis) for discrimination (Explain). _____

**5.  What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.**
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*
A)  Date:  06/27/2014                Action: I was given a Unsatisfactory rating

Name and Title of Person(s) Responsible: Mr. Richard Cole and Ms. Ann Bernard
B)  Date:  05/28/2014                Action: I recorded the post observation, where Mr. Cole just stated the ratings without explaining any of them. Mr. Cole set me up for failure by not providing me with materials

Name and Title of Person(s) Responsible: Mr. Cole and Ms. Bernard

**6.   Why do you believe these actions were discriminatory? Please attach additional pages if needed.**
I believe Mr. Cole and Ms. Ann Bernard acted in a discriminatory manner because I am a white Italian-American teacher.

**7.  What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**
I believe that the U rating was given to me because there were four African-American teachers given a summer position and they have less seniority than I.  Therefore, at the post observation, Mr. Cole, administrator, did not show evidence for U rating, which makes his rating his rating bogus and he wrote lies into the evaluation. When I informed Ms. Bernard, principal, about my concerns about the way Mr. Cole set me up for failure and his version of the rubric, she meet me with resistance and silence to concerns.

**8. Describe who was in the same or similar situation as you and how they were treated.  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.**

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A.  Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

| B.  Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**     3

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability.  If not, skip to question 13.  Please tell us if you have more than one disability.  Please add additional pages if needed.

9.   Please check all that apply:

- ☐  Yes, I have a disability
- ☐  I do not have a disability now but I did have one
- ☐  No disability but the organization treats me as if I am disabled

10.  What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything?  (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).


11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

  Yes ☐   No ☐

If "Yes," what medication, medical equipment or other assistance do you use?


12.  Did you ask your employer for any changes or assistance to do your job because of your disability?

  Yes ☐   No ☐

If "YES", when did you ask? _____   How did you ask (verbally or in writing)? _____

Who did you ask?  (Provide full name and job title of person)


Describe the changes or assistance that you asked for:


How did your employer respond to your request?



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622

Lucio Celli
2743 Seymour Avenue
Bronx, NY 10469

Re:    *EEOC Charge No. 520-2015-00944*
       *Celli v. NYC Department of Education*

Dear Mr. Celli,

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. The procedures apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

We have evaluated your charge based upon the information you submitted, and have determined that further investigation will unlikely result in a determination that Respondent violated one of the federal laws enforced by the Commission. Therefore, your charge will be dismissed.

Attached is your Dismissal and Notice of Rights.  If you want to pursue this matter further in federal court, your lawsuit must be filed within 90 days of your receipt of the Notice.

Please contact Investigator Paul Young at (212) 336-3783 if you have any questions

Sincerely,

_____ for                          MAR 2 6 2015

Kevin J. Berry                                _____
District Director                             Date

Enc.

Cc:
James D. Hartt, Esq.
Attorney at Law
70 Linden Oaks, 3rd Floor
Rochester, NY 14625

EEOC Form 161 (11/09)

# U.S. Equal Employment Opportunity Commission

## DISMISSAL AND NOTICE OF RIGHTS

**To:** Lucie Celli
2743 Seymour Avenue, Unit Ph
Bronx, NY 10469

**From:** New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

☐ On behalf of person(s) aggrieved whose identity is
**CONFIDENTIAL** (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-00944 | Paul Young, Investigator | (212) 336-3783 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*[signature]*

Kevin J. Berry,
District Director

MAR 26 2015
(Date Mailed)

Enclosure(s)

cc:   Robin Singer, Esq.
Associate Counsel - Office of Legal Services
**NYC DEPARTMENT OF EDUCATION**
52 Chambers Street, Room 308
New York, NY 10007

James D. Hartt, Esq.
**JAMES D. HARTT, ESQ. ATTORNEY AT LAW**
70 Linden Oaks, 3rd Floor
Rochester, NY 14625

COPY

James D. Hartt, Esq., Attorney At Law
70 Linden Oaks, Third Floor
Rochester, NY 14625
TELEPHONE: (585) 425-8682

U. S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall St., 5th Floor
New York, New York 10004-2112
FAX: 212-336-3790

| | | |
|---|---|---|
| LUCIO CELLI | ) | |
| | ) | |
| Complainant | ) | |
| | ) | EEOC NO. |
| v. | ) | |
| | ) | |
| NEW YORK CITY DEPARTMENT OF | ) | COMPLAINT |
| EDUCATION; | ) | |
| | ) | |
| Agency. | ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful employment practices on the basis of Race and National Origin discrimination, including retaliation, and to provide appropriate relief to an employee who was adversely affected by such practices. As alleged with greater particularity below, the Complainant alleges that Respondent New York City Department of Education discriminated against Complainant, when it gave Mr. Celli an "Unsatisfactory" rating without explanation and without providing him with the materials to remedy the rating, thereby setting him up for failure. In contrast, other employees (all of whom were not in Mr. Celli's alleged protected group, were treated more favorably by Respondent, by and through its authorized agents, as will be proven.

## JURISDICTION AND VENUE

1.    This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq. ("Title VII"), and 29 C.F.R., Part 1604.

2.    The employment practices alleged to be unlawful were committed within the jurisdiction of the EEOC New York District Office and the venue is properly asserted insofar as the events leading to this cause of action occurred in the county of Brooklyn in New York City, state of New York.

## PARTIES

3.    Complainant, Lucio Celli, ("Complainant"), a White Italian male, residing at 2743 Seymour Avenue, Unit PH, Bronx, New York, County of New York, State of New York is, and was at all relevant times hereto, a qualified person for the position of Teacher for the New York City Department of Education.

4.    Respondent, New York City Department of Education is located at 65 Court Street in New York City, County of Brooklyn, and State of New York. Mr. Celli reported for work, at relevant times hereto, at the following location: 1970 West Farms Road.

5.    Respondent has continuously had at least 500 employees and is otherwise a properly named Agency in this action.

## STATEMENT OF CLAIMS

6.    On June 27, 2014 and on May 28, 2014, Complainant was given a negative evaluation for extra job responsibilities by the Principal, Ms. Ann Bernard and Administrator,

2

Mr. Richard Cole. Mr. Cole just stated the ratings without explaining any of the ratings. By not providing Complainant with the means or materials to correct the ratings, Mr. Cole set up Complainant for failure on his job.    Complainant alleged that Mr. Cole and Ms. Bernard acted in a discriminatory manner because Complainant is a Caucasian Italian American teacher.

7.    Upon information and belief, four African American teachers were given a summer position despite having less seniority and fewer qualifications than Complainant. Mr. Cole was not able to show evidence for Mr. Celli's "Unsatisfactory" rating.

8.    Upon information and belief, Complainant informed Ms. Bernard about his concerns and was met with resistance and silence to his concerns.

9.    Evidence of preferential treatment of African American employees exists in the form of several examples in the workplace. Complainant stands prepared to divulge each example during the pendency of this EEOC Investigation.

10.    In addition to the foregoing, Mr. Celli alleges discrimination on the basis of his sexual orientation. Mr. Celli was treated adversely due to his sexual orientation by Respondent insofar as he suffered adverse consequences in employment (lost job opportunities, non-placement in temporary positions, among others) due to his sexual orientation as a perceived homosexual employee.

WHEREFORE, Complainant Lucio Celli respectfully requests through the undersigned that the U. S Equal Opportunity Commission investigate the aforementioned acts of discrimination by Agency; eradicate the effects of its unlawful employment practices; and make whole the Complainant.

DATED this ___ day of December, 2014.

3

Respectfully Submitted,


**JAMES D. HARTT, ESQ.**
**Attorney For Complainant**
**70 Linden Oaks, Third Floor**
**Rochester, NY 14625**
**Telephone: (585) 490-7100**
**Fax: (585) 425-0579**

4

from:   **Celli Lucio**
        **(08X519) <LCelli@schools.nyc.gov>**

to:     "esther.gutierrez@eeoc.gov"
        <esther.gutierrez@eeoc.gov>,
        "jtand@smorellilaw.com"
        <jtand@smorellilaw.com>,
        "jtan@tandandassociates.com"
        <jtan@tandandassociates.com>,
        "sagata@perb.ny.gov"
        <sagata@perb.ny.gov>,
        "azumbolo@perb.ny.gov"
        <azumbolo@perb.ny.gov>,
        "rhite@perb.ny.gov"
        <rhite@perb.ny.gov>,
        "jwirenius@perb.ny.gov"
        <jwirenius@perb.ny.gov>,
        "jorourke@perb.ny.gov"
        <jorourke@perb.ny.gov>,
        "ablassman@perb.ny.gov"
        <ablassman@perb.ny.gov>,
        "ecacavas@perb.ny.gov"
        <ecacavas@perb.ny.gov>,
        "eschneiderman@ag.ny.gov"
        <eschneiderman@ag.ny.gov>


cc:     "rweingarten@aft.org"
        <rweingarten@aft.org>,
        Mandel Susan
        <SMandel@schools.nyc.gov>,
        "cbattle@nyutmail.org"
        <cbattle@nyutmail.org>,
        "dstrom@aft.org" <dstrom@aft.org>,
        "Robert.Freeman@dos.ny.gov"
        <Robert.Freeman@dos.ny.gov>,
        "mpeters@doi.nyc.gov"
        <mpeters@doi.nyc.gov>,
        Richard Condon
        <rcondon@nycsci.org>,
        Baranello Joseph
        <JBaranello3@schools.nyc.gov>,
        Chancellor Carmen Fariña
        <NYCChancellor@schools.nyc.gov>,
        "BdeBlasio@cityhall.nyc.gov"
        <BdeBlasio@cityhall.nyc.gov>,
        "ZCarter@law.nyc.gov"
        <ZCarter@law.nyc.gov>,
        Guillaume Lourdes
        <LGuillaume2@schools.nyc.gov>,
        "enzo0mad@aol.com"
        <enzo0mad@aol.com>,
        "SMorelli@smorellilaw.com"
        <SMorelli@smorellilaw.com>,
        ":" <aross@uft.org>,
        Solimando Karen
        <KSolimando@schools.nyc.gov>,
        Guerra Charity

&lt;CGuerra7@schools.nyc.gov&gt;,
"preet.bharara@usdoj.gov"
&lt;preet.bharara@usdoj.gov&gt;,
"betsy.combier@gmail.com"
&lt;betsy.combier@gmail.com&gt;

date:    Tue, May 10, 2016 at 12:22 PM

subject:    RE: EEOC NO. 520-2016-0126

Dear Ms. Gutierrez, Mr. Tand, Mr. Morelli, Ms. Combier, Mr. Carter, and Mr. Zumbolo:

...I want to add Ms. Blassman, Mr. Morelli, and Ms. Combier to my charges...PLEASE ADVISE, if I could add them or I have to see how to deal with them legally....they are all participated in the retaliation. Without a question, I have to address with federal judge because I will not have Morelli/Combier (Morelli blamed Blassman and Combier blamed Portelos) threatened me and then have Blassman lie about the motion for particularization. Either way, this helps the DOE to retaliate against me and helps the DOE.


From: Celli Lucio (08X519)
Sent: Wednesday, May 04, 2016 12:10 AM
To: esther.gutierrez@eeoc.gov; jtand@smorellilaw.com; jtan@tandandassociates.com; sagata@perb.ny.gov; a zumbolo@perb.ny.gov; rhite@perb.ny.gov; jwirenius@perb.ny.gov; jorourke@perb.ny.gov; ablassman@perb.n y.gov;ecacavas@perb.ny.gov; eschneiderman@ag.ny.gov
Cc: rweingarten@aft.org; Mandel
Susan; cbattle@nyutmail.org; dstrom@aft.org; Robert.Freeman@dos.ny.gov; mpeters@doi.nyc.gov; Richard Condon; Baranello Joseph; Chancellor Carmen Fariña; BdeBlasio@cityhall.nyc.gov;ZCarter@law.nyc.gov; Guillaume Lourdes; enzo0mad@aol.com; SMorelli@smorellilaw.com; :; Solimando Karen; Guerra Charity; preet.bharara@usdoj.gov
Subject: RE: EEOC NO. 520-2016-0126

Dear Ms. Gutierrez, Mr. Carter, Mr. Tand, Ms. Weingarten, Ms. Guerra and Mr. Zumbolo:

Last week, I spoke to Ms. Gutierrez about the fact that my former lawyer, Steven Morelli was arrested. Under pressure by the magistrate judge, I was forced to work with Mr. Tand. Mr. Tand is a former lawyer for Mr. Morelli and I do not trust Mr. Morelli because I caught (audio recorded) him in a few lies. In fact, I have Mr. Morelli admitting that the suspension of an internal grievance hearing is actionable under title 7 and it actionable against my employer .... BUT, it is NOT written anywhere in my complaint!

Attached are the items that Mr. Tand must include into my amended complaint. If Mr. Tand continues Mr. Morelli's legal malpractice, I will be forced to file against ALJ Angela Blassman of NYS PERB because Mr. Morelli delivered a message from the Dishonorable Blassman and I WILL NOT BE THREATENED BY A LOWLIFE that needs to be disbarred!!!!! Nor, will I accept the ALJ's attempt to sabotage my lawsuit because she is a lowlife and my lawyer wants to commit legal malpractice. By May 12, I will know what I must do next in the process.

As I discussed with Ms. Gutierrez, I could send in the recordings but they must be accompanied by a transcript. I hope this will keep Dishonorable Blassman out of my business!
Ms. Gutierrez, I appreciate the information in this matter.

Thanks,
Lucio Celli

*this is not my answer to the motion for Sanctions*

*RECEIVED*
*HON. Brian M. Cogan*
*DEC 2 9 2016*

Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**DOCKET & FILE**

Re: Lucio Celli v. Richard Cole et al.
Docket No.: 15-cv-3679 (BMC) (LB)

Re: Judge Cogan dismissed the case prior to Lucio filing his opposition towards the motion for dismissal. Judge Cogan gave Lucio until December 26, 2016 Lucio's opposition—the decision was already written and you prematurely filed the order. **Nevertheless, Judge Cogan prematurely wrote and filed the dismissal order on December 24, 2016...thanks for the Christmas present.** I am aware that you are entitled to deference in making any decisions, but it are you allowed to make a decision without reading (at least pretend to read) the opposition to the motion.

Dear Judge Cogan:

As Your Honor is aware, I am the Plaintiff, Lucio Celli, in the above-referenced matter.

Your Honor provided Lucio to respond to the Defendants' motion for dismissal until December

26, 2016. However, Your Honor dismissed the complaint prior to Lucio filing his part 2.

Did Your Honor even bother to read part 1? Now it appears, you did not read it because **if**

**you did read part 1,** you would have known that I was going to submit a part 2. At least wait

until part 2 was filed because it is all about appearances.

As for the opposition to sanctions, Your Honor has allowed the following:

1. For the Defendants to get away with white-collar crimes against him—**I have the**
   **audio recordings and physical documents to prove the allegations.**

2. For Angela Blassman, Steven Morelli, Jonathan Tand, and Betsy Combier to get
   away with obstruction of justice in Your Honor's court—**I have the audio**
   **recordings to prove the allegations**

3. It appears that you did not want to want to hear the audio recording of the DOE saying it was the UFT's fault for what Cole/Bernard/Jackson-Chase did to Lucio—why? Subornation of perjury and **I have the audio recording to prove it**

4. I did not accuse you of altering and concealing jury notes to help the City of New York. I wrote that Your Honor was accused and I wanted to know why—there is a difference. In Lucio's case, it appears that you favor the City of New York and you are accused of favoring the City in the Southerland case, as well.

5. You wrote in your October 23, 2016 that Defendants were allowed to commit white-collar crimes against me, but you couched it as being merely unfair.

6. You want knew about criminal scheme at Loudermill hearing....**I have the audio recordings and emails to prove this allegation**—I even sent you one email from our Beloved Randi. **I believe that Your Honor told Senator DeWine that you would uphold decisions by Supreme Court**— why are you allowing this criminal scheme to continue? I have nothing to hide Your Honor. You worked with Randi at Stroock, Stroock, Lavin and Betsy told Lucio that Randi calls in favors. Wait, Your Honor did not even wait to file your decision prior Lucio filing his opposition towards the motion for dismissal.

7. The last white-collar crime occurred in October of 2016...but, Lucio knows that Your Honor will sanction him, for sure.

8. It does not matter what evidence Lucio's has or what pleadings put forward...he understood that what was going to happen in this case since he spoke to Morelli on October 14, 2015...

9. Lucio filed a pre-motion for FRCP 60, but you dismissed it.

10. Lucio wrote for FRCP 11 that Betsy Combier violated the said FRCP…and the evidence was already on the docket. Did you even read the motion? **Your Honor dismissed it and did not even hear the audio recordings that go along with it**—but Your Honor was able to read and see some of the evidence on the docket. Betsy Combier practiced law as she helped Lucio prepare his court papers. **It is just strange.**

11. I did not file this complaint in forma pauperis because I make to much. So, I don't understand your order

Lucio has the audio recordings of every allegation. Therefore, the sanctions are just a means to quell me. I was threatened with exposure of being rape, my status of HIV was place in the public and the court has allowed obstruction of justice—the Court did nothing. Therefore, I expect the sanctions to be placed upon me because it will not be a surprise from Your Honor, at this point. Let me play my audio recordings and see if I am telling the truth—I have nothing to hide Your Honor …do you?

Your Honor did not wait until Lucio filed his part 2 for opposition for the motion for dismissal; it appears that Your Honor did not read part 1 because Honor would have known that a part 2 was going to be filed. It does not matter because any judge that would cou

Sincerely,

Lucio Celli

Lucio Celli
646-734-3899
2743 Seymoure Ave

From: **Lucio Celli** <enzo0mad@aol.com>
Date: Sun, Mar 19, 2017 at 11:59 AM
Subject: Re:John Wirenius
To: "ksolimando@schools.nyc.gov" <KSolimando@schools.nyc.gov>, "robert.freeman@dos.ny.gov"
<Robert.Freeman@dos.ny.gov>, Richard Condon <rcondon@nycsci.org>, Randi <rweingarten@aft.org>,
Mandel Susan <SMandel@schools.nyc.gov>, "dstrom@aft.org" <dstrom@aft.org>, Guerra Charity
<CGuerra7@schools.nyc.gov>, Drantch Todd <TDrantch@schools.nyc.gov>, Chancellor Carmen Fariña
<NYCChancellor@schools.nyc.gov>, "lcelli@schools.nyc.gov" <LCelli@schools.nyc.gov>,
"jbaranello3@schools.nyc.gov" <JBaranello3@schools.nyc.gov>, "aross@uft.org" <ARoss@uft.org>,
"zcarter@law.nyc.gov" <zcarter@law.nyc.gov>, "preet.bharara@usdoj.gov"
<preet.bharara@usdoj.gov>, phoebeb@childrensaidsociety.org, mpeters@doi.nyc.gov, leslie@yu.edu, eschnei
derman@ag.ny.gov, eric.lane@hofstra.edu, ecacavas@perb.ny.gov, courtenayej@childrensaidsociety.org, can
elson@wcl.american.edu, bill.araiza@brooklaw.edu, anthonyr@childrensaidsociety.org, ablassman@perb.ny.g
ov, JWirenius@perb.ny.gov, JORourke@perb.ny.gov, HFriedma@law.nyc.gov, BdeBlasio@cityhall.nyc.gov,
"sedelman@nypost.com" <sedelman@nypost.com>


Dear Hon. John Wirenius:
Below the line are the reasons that Lucio is seeking exceptions to the decision rendered
in Case no. U-35171. This will be sent to you via postal mail this week with the required
copies.

_____

  The Charging Party is in receipt of the decision, which is dated March 9, 2017.
As a miracle, the Charging Party received the information for "exception" for the
decision rendered by an administrative law judge, as this is the first time PERB did not
commit mail fraud against Lucio. The rendered decision with the information for
exception was written for Case no. U-35171: Lucio received the decision on March 17,
2017.
  Your Honor (with the rest of PERB), UFT, and DOE has a problem with Lucio's
behavior, but his behavior is described in the Court's decision in *Olmstad v. United
States*, (1928) 277 U.S. 438, the Court held that "Crime is contagious. If the
Government becomes a lawbreaker, it breeds contempt for law; it invites every man to
become a law unto himself; it invites anarchy." If PERB, the UFT, and the DOE
wants Lucioto change his behavior, then apply the rules of law evenly. If PERB, the
UFT, or the DOE does not have to follow the laws, then Lucio has the same license not
to follow the law as well!! **The Court's decision is saying that the Government is the
steward of public trust**—wait and hold it, the Taylor Law has the same notion. The
Supreme Court cautioned governmental actions taken against the public and the Taylor
Law has the same.

  In the "Discussion" section, Your Honor cited the following: "All parties are
subject to the same rules set in place by this agency for the management of the cases
before it. A party's failure or refusal to comply with clear instructions designed for the
fair and orderly adjudication of cases is prejudicial to the other parties and detrimental
to PERB's processes. Once a charge is filed, it is incumbent upon the charging party to
protect his or her interest in its advancement."[1] Your Honor's assessment of "The
conscious decision to not appear for [the] conference, based upon one's own
determination that it is not in his best interest to do so, does not justify a failure to
appear as directed and arguably constitutes abandonment of the charges" is misplace

for various and obvious reasons. There is a pattern and practice at PERB proceedings not to adhere to rules and procedures, which Lucio audio recorded and it is documented with papers filed by the UFT. ALJ Cacavas said that all parties are subject to rules and procedures, but it is documented that only Lucio is held accountable.

The application of the cited case law has been only applied to Lucio Celli during PERB proceedings, and **most importantly,** Your Honor and ALJ Blassman did not apply the same case law to the attorneys representing the UFT or the DOE. The audio recordings, Lucio's main evidence, proves that ALJ Blassman did not adhere to the above cited case law against Battle and Drantch. In fact, Lucio's reason not to appear was predicated on the fact that Your Honor allowed Maria Elena Gonzalez, Esq. not to answer the charge truthfully because Gonzalez's answer needed to include what Battle already submitted to PERB—**if Lucio truly needs to point out the facts to PERB of how the law is not being applied evenly**. According to the case law Your Honor cited, Gonzalez needed to be held accountable too—what happened to accountable? But, Lucio is the only person being held accountable at PERB. Your Honor's decision is not written in good faith, and Lucioprefers to make his case publicly now and to the Chairperson of PERB—even though Lucio already knows the answer.

In *Butz v. Economou, 98 S. Ct. 2894 (1978), the Court cited "United States v. Lee, 106 U.S. at 220, 1 S. Ct. at 261 (1882)* 'No man [or woman] in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it.'" Lucio will not explain what the Court was trying to explain to the government, since ALJ Cacavas is a trained lawyer.

*In Geiler v. Commission on Judicial Qualifications, (1973) 10 Cal.3d 270, 286, the Court held that* "Society's commitment to institutional justice requires that judges be solicitous of the rights of persons who come before the court." For reasons unknown to Lucio, PERB (even Your Honor) seeks to deprive him of his rights at PERB…all audio recorded.

First, Your Honor is aware of prior proceedings at PERB with Blassman, Battle, and Drantch because of your statements within the decision dated March 9, 2017, and your read receipts of emails from February of 2016 through May of 2016 which were from Lucio's DOE email account. Most importantly, Lucio has you audio recorded on January 11, 2016.

Second, the above-referenced case law has established that PERB and NYC DOE are aware of fact that "all parties are subjected to the same rules of PERB."   Notwithstanding the obvious about what occurred against Lucio at PERB conferences, Your Honor has admitted that (or rather has provided Lucio with proof as to why…) ALJ Blassman and Drantch are corrupt and belong in jail and there is a three-year statute of limitation to file a 42 U.S.C. § 1983. Lucio truly appreciated the case law to cite because it is the expatiation for why Blassman and Drantch belong in jail and did not follow PERB's rules on March 23, 2015, April 8, 2015, and January 11, 2017. Please remember, Lucio audio recorded his conferences.

Moreover, Your Honor's decision did not surprise Lucio because §212.2 states, "Prior to the scheduled date of any hearing (conference), the designated administrative law judge shall hold a conference with the parties to the proceeding. The failure of a party to appear at the conference may, in the discretion of the administrative law judge, constitute ground for dismissal of the absent party's pleading." Lucio has come to terms with the notion that the play is already written prior to anyone showing up at PERB—only problem is the fact that Lucio lacks proof. Based on Lucio's experiences with Blassman and Your Honor, his appearance would not affect the outcome/decision because PERB is controlled by a criminal enterprise, as there is no other way to explain Blassman's, Battle's, and Drantch's behavior on March 23, 2015, April 8, 2015, and January 11, 2016.

As a matter of fait accompli, Lucio's appearance on February 28, 2017 would have not stopped the corruption against him becausePERB has not addressed Blassman's and Drantch's misconduct on the above-referenced dates. Only a moron would continue with the same action at PERB and believe there would or could have been a different outcome with either Your Honor or any other ALJ present on February 28, 2017. It was at your discretion to dismiss the charge and Lucio has read many of your decisions.

Third, Your Honor did not discuss how Maria Elena Gonzalez's, Esq. response to the improper charge was a violation of PERB's rules, which Your Honor cited in the "Discussion" section (only Lucio is being held accountable for PERB rules..hmm), and Your Honor mentioned the prior proceedings. This improper practice charge is a continuation of what occurred on March 23, 2015, April 8, 2015, and January 11, 2017. Therefore, how could you allow Maria Elena Gonzalez, Esq. be duplicitous in her response because as Your Honor cited, "all parties are subject to PERB's rule." Your Honor's decision opened yourself to scrutiny with your specify knowledge of prior PERB proceedings. Oh wait, the issue of the improper practice charge is the fact that Battle submitted a rubric to PERB, Lucio never received the rubric shown by Cole, and Barr's answer to Lucio's grievance was "you (Lucio) did not provide the union with Cole's rubric." The grievance was to obtain Cole's rubric and the UFT allowed this to occur because Lucio cannot give the union what he does not have in his procession, which was the point of the grievance—logic.

Lucio preferred not to attend any proceedings at the PERB's office in Brooklyn because Lucio has audio recorded that ALJs at said office because the ALJs do not follow the rules and procedures of PERB—as Your Honor has cited in her decision. Now, Lucio prefers to make his case to John Wirenius, Chairperson of PERB and in public—Battle thought that the fear of exposure of his rape would make Lucioincapacitated to act further, which is wrong notion because Battle's audio recorded statement has caused Lucio to seek full revenge for what occurred at PERB and at DOE administrative hearings.

Under normal circumstances, Your Honor would be correct about "excessive profanity," but PERB allowed Battle to coerce Lucio about an email in front of AJL Blassman (it is only a violation of the statute) and allowed Drantch to knowingly submit fraudulent documents with AJL Blassman's approval (as Your Honor cited, "all parties are subject to PERB's rules). It appears that Lucio is the ONLY PARTY that is subjected to PERB's rules—Lucio has the audio recordings to prove his statement!

It is either everyone is subjected to PERB's rules or everyone can ignore them—PERB needs to take a side. Lucio has followed the customs allowed at PERB (or DOE proceedings) and Your Honor is upset by his behavior. Lucio does not understand why Your Honor is upset, please explain. Lucio's behavior should not be a problem because Blassman's, Battle's, and Drantch's behaviors were not a problem. Luciodoes not understand, please explain. Lucio does not see an Issue with profanity because the behavior of fraud is allowed at PERB

John Wirenius, Lucio would appreciate the opportunity to make his case publicly. The Charging Party needs speakers when he addresses you publicly. Lucio has a feeling that you will deny him the public forum and you know that he has asked for this opportunity before. I will figure out a different way to go public.

Thanks,
Lucio Celli

—————————————————————————————————

[1] *Board of Educ of the City Sch Dist of the City of New York, 44 PERB ¶4589 (2011)*

As a matter of fait accompli, Lucio's appears on February 28, 2017 would have not stopped the corruption against him because PERBhas not addressed Blassman's and Drantch's misconduct on said dates. Only a moron would continue with the same action at PERB and believe there would or could have been a different outcome with either Your Honor or any other ALJ present on February 28, 2017. It was at your discretion to dismiss the charge and Lucio has read many of your decisions.

Third, Your Honor did not discuss how Maria Elena Gonzalez, Esq. response to the improper charge was a violation of PERB's rules, which Your Honor cited in the "Discussion" section, and Your Honor mentioned the prior proceedings. This improper practice charge is a continuation of what occurred on March 23, 2015, April 8, 2015, and January 11, 2017. Therefore, how could you allow Maria Elena Gonzalez, Esq. duplicitous because as Your Honor cited, "all parties are subject to PERB's rule." Your Honor's decision opened, with your specify knowledge of prior PERB proceedings, yourself to scrutiny.

Lucio preferred not to attend any proceedings at the PERB's office in Brooklyn because Lucio has audio recorded that ALJs at said office because the ALJs do not follow the rules and procedures of PERB—as Your Honor has cited in her decision. Now, Lucio prefers to make his case to John Wirenius, Chairperson of PERB and in public—Battle thought that the fear of exposure of his rape would make Lucioincapacitated to act further, which is wrong because Battle's audio recorded statement has caused Lucio to seek full revenge for what occurred at PERB and at DOE administrative hearings.

Under normal circumstances, Your Honor would be correct about "excessive profanity," but PERB allowed Battle to coerce Lucio about an email in front of AJL Blassman (it is only a violation of the statute) and allowed Drantch to knowingly submit fraudulent documents with AJL Blassman's approval (as Your Honor cited, "all parties

are subject to PERB's rules). It appears that Lucio is the ONLY PARTY that is subjected to PERB's rules—Lucio has the audio recordings to prove his statements!!!!!!!!!! As a result, Lucio has used profanity because of the customs allowed PERB and it is only fair to him...so; suck my dick because you are an evil piece of shit and you belong in jail!!!!!!!!!!!!!!!!!!

It is either everyone is subjected to PERB's rules or everyone can ignore them—PERB needs to take a side, mother-fuckers. Lucio has followed the customs allowed at PERB (or DOE proceedings) and Your Honor is upset by his behavior. Lucio does not understand why Your Honor is upset, please explain Lucio's behavior should not be a problem because Blassman's, Battle's, and Drantch's behaviors were not a problem. Lucio does not understand, please explain. Lucio does not see an Issue with profanity because the behavior of fraud is allowed atPERB...what is the big deal now?

Lucio realizes that Your Honor missed the opportunity to torture him and commit a crime... too fucking bad. Lucio will clean this up for the Chairperson, but he will have this copy in his email box.


Thanks,
Lucio Celli


[1] *Board of Educ of the City Sch Dist of the City of New York, 44 PERB ¶4589 (2011)*

From: **Lucio Celli** <enzo0mad@aol.com>
Date: Tue, Feb 28, 2017 at 9:59 PM
Subject: Re: to Mr. Bharara and I truly hope that I broke federal law
To: "ksolimando@schools.nyc.gov" <KSolimando@schools.nyc.gov>, "robert.freeman@dos.ny.gov"
<Robert.Freeman@dos.ny.gov>, Richard Condon <rcondon@nycsci.org>, "rweingarten@aft.org"
<rweingarten@aft.org>, Mandel Susan <SMandel@schools.nyc.gov>, "dstrom@aft.org" <dstrom@aft.org>,
Guerra Charity <CGuerra7@schools.nyc.gov>, Drantch Todd <TDrantch@schools.nyc.gov>, Chancellor
Carmen Fariña <NYCChancellor@schools.nyc.gov>, "lcelli@schools.nyc.gov" <LCelli@schools.nyc.gov>,
"jbaranello3@schools.nyc.gov" <JBaranello3@schools.nyc.gov>, "aross@uft.org" <ARoss@uft.org>,
"zcarter@law.nyc.gov" <zcarter@law.nyc.gov>, "preet.bharara@usdoj.gov"
<preet.bharara@usdoj.gov>, phoebeb@childrensaidsociety.org, mpeters@doi.nyc.gov, leslie@yu.edu, eschnei
derman@ag.ny.gov, eric.lane@hofstra.edu, ecacavas@perb.ny.gov, courtenayej@childrensaidsociety.org, cba
ttle@nysut.org, canelson@wcl.american.edu, bill.araiza@brooklaw.edu, anthonyr@childrensaidsociety.org, abl
assman@perb.ny.gov, JWirenius@perb.ny.gov, JORourke@perb.ny.gov, HFriedma@law.nyc.gov, BdeBlasio
@cityhall.nyc.gov, "sedelman@nypost.com" <sedelman@nypost.com>


Dear Mr. Bharara:

Attached you will hear an administrative hearing that occurred on November 2, 2016. I truly hope that I broke
federal law because I want to play my audio recordings. Normally, I play it safe that I stop or erase  audio
recording, as I am secrectly taping. I did not do that on November 2, 2016 ….I want to sit down and ram my
audio recordings down people's throat and the audio recording deals with:


1. Cole telling me created a teacher's evaluation system—but it is a mandatory subject of negotiation
2. At my Louderrmill hearing … Bernard said, "Oh, we can't speak about that" that's all she said
3. Mandel falsified grievance decision
4. Blassman told me, "Oh you can't put in for hat…" she was talking about  Mandel's decision and the
   special education complaint that I gave her
5. Lavaman and Fogel said arbitration decision existed and  Battle said that lied
6. Lavin stop me from presenting evidence and stopped me from speaking (she also motioned which
   edited the official audio recording of my Loudermill hearing…but I made my own)
7. Jackson-Chase confirmed that DOE sent me an edited audio recording and Chancellor Fairna was
   CC'ed
8. Chancellor's Rep (Kshenksy) and hearing officer (Linchestien) said that administration did not get
   notice of Jackson-Chase's email …..the administration in question was Jackson-Chases/Farina
9. Kshenky lied about DOE policy because he asked about my behavior of audio recording on Oct 8,
   2016


I have FOIL request and NONE, and I none, of the policies or rules cited are found in the FOIL request.

I hope this works because the next stop is to curse Farina out in public to get my 3020 …I need a job but they
will have to fire me because it will be the only way that I will stop. Battle/Drantch/Blassman made it personal on
April 8, 2017 because I will not be ashamed or be put in a position of fear…not when I have audio recordings

From: **Lucio Celli** <enzo0mad@aol.com>
Date: Tue, Feb 28, 2017 at 10:05 PM
Subject: Re: To Mr. Ross
To: "ksolimando@schools.nyc.gov" <KSolimando@schools.nyc.gov>, "robert.freeman@dos.ny.gov" <Robert.Freeman@dos.ny.gov>, Richard Condon <rcondon@nycsci.org>, "rweingarten@aft.org" <rweingarten@aft.org>, Mandel Susan <SMandel@schools.nyc.gov>, "dstrom@aft.org" <dstrom@aft.org>, Guerra Charity <CGuerra7@schools.nyc.gov>, Drantch Todd <TDrantch@schools.nyc.gov>, Chancellor Carmen Fariña <NYCChancellor@schools.nyc.gov>, "lcelli@schools.nyc.gov" <LCelli@schools.nyc.gov>, "jbaranello3@schools.nyc.gov" <JBaranello3@schools.nyc.gov>, "aross@uft.org" <ARoss@uft.org>, "zcarter@law.nyc.gov" <zcarter@law.nyc.gov>, "preet.bharara@usdoj.gov" <preet.bharara@usdoj.gov>, phoebeb@childrensaidsociety.org, mpeters@doi.nyc.gov, leslie@yu.edu, eschneiderman@ag.ny.gov, eric.lane@hofstra.edu, ecacavas@perb.ny.gov, courtenayej@childrensaidsociety.org, cbattle@nysut.org, canelson@wcl.american.edu, bill.araiza@brooklaw.edu, anthonyr@childrensaidsociety.org, ablassman@perb.ny.gov, JWirenius@perb.ny.gov, JORourke@perb.ny.gov, HFriedma@law.nyc.gov, BdeBlasio@cityhall.nyc.gov, "sedelman@nypost.com" <sedelman@nypost.com>


Dear High Priced Thugg:

I know it is useless to ask and you are a piece of shit....I have not heard anything about Nov 25, 2015 and Nov 2, 2016
On Feb 28, 2017, at 9:26 PM, Lucio Celli <enzo0mad@aol.com> wrote:

Dear Ms. Cacavas, Mr. Ross, Ms. **Wlasuk, and** Mr. Friedman:


It was not in my best interest to attend today's conference because Blassman lied about motion for partiuarliization. Blassman knew about the letter to medical. Battle said, on the phone, "You don't want the email of how you got HIV." Then in front of Blassman and Drantch, Battle said, "You know the UFT will have to use the email to protect itself."....I said that I am going to haunt you motherfuckers until I play my recordings.

I have every intention to ask Chancellor Farina about Battle since she approved of Drantch submitting a fraudulent document to PERB...December 18, 2015 I am seen at PEP and Drantch said a Blassman sent a decison....whci the DOE didn't get until July 7, 2016......3020 or whatever will do as long as I play my motherfucking recordings

The FOIL requests that I recieved do not match the audio recordings of the administrative hearings....what is written should match what was said to me


<Nov_2_grievance.mp4>

From: **Celli Lucio (08X519)** <LCelli@schools.nyc.gov>
Date: Sat, Dec 26, 2015 at 10:50 AM
Subject: RE: Ms. Battle
To: Jackson-Chase Courtenaye <CJackson-Chase@schools.nyc.gov>, Solimando Karen <KSolimando@schools.nyc.gov>, Kshensky Marcel <mkshensky@schools.nyc.gov>, Crespo Pedro <PCrespo@schools.nyc.gov>
Cc: "Bernard Anne (79K755)" <ABernar@schools.nyc.gov>, "Cole Richard (07X224)" <RCole4@schools.nyc.gov>, Stoff Michael <MStoff@schools.nyc.gov>, "mmulgrew@uft.org" <mmulgrew@uft.org>, ":" <aross@uft.org>, "Jpovalitis@uft.org" <Jpovalitis@uft.org>, "ASepulveda@uft.org" <ASepulveda@uft.org>, "hschoor@uft.org" <hschoor@uft.org>, "jhinds@uft.org" <jhinds@uft.org>, "kmagee@nysutmail.org" <kmagee@nysutmail.org>, "kalford@uft.org" <kalford@uft.org>, "rfernadez@uft.org" <rfernadez@uft.org>, "pfilomena@uft.org" <pfilomena@uft.org>, "charrison@uft.org" <charrison@uft.org>, "mescobar@uft.org" <mescobar@uft.org>, "ajackson@uft.org" <ajackson@uft.org>, "mborrelli@uft.org" <mborrelli@uft.org>, "jguevara@uft.org" <jguevara@uft.org>, "lbarr@uft.org" <lbarr@uft.org>, "rmantell@uft.org" <rmantell@uft.org>, "sroberson@uft.org" <sroberson@uft.org>, "matkinson@uft.org" <matkinson@uft.org>, Mills Rose Marie <RMills@schools.nyc.gov>, "dclark@uft.org" <dclark@uft.org>, "dmanganello@uft.org" <dmanganello@uft.org>, "agoldman@uft.org" <agoldman@uft.org>, "alaureano@uft.org" <alaureano@uft.org>, "apallott@nysutmail.org" <apallott@nysutmail.org>, "eespert@uft.org" <eespert@uft.org>, "ssilva@uft.org" <ssilva@uft.org>, "zmrick@org.org" <zmrick@org.org>, "wthompson@uft.org" <wthompson@uft.org>, "wvelazquez@uft.org" <wvelazquez@uft.org>, "jhuart@uft.org" <jhuart@uft.org>, "pserrano@uft.org" <pserrano@uft.org>, "brein@uft.org" <brein@uft.org>, "pcastro@uft.org" <pcastro@uft.org>, "agerard@uft.org" <agerard@uft.org>, "dalbright@uft.org" <dalbright@uft.org>, "croldan@uft.org" <croldan@uft.org>, "msanto@uft.org" <msanto@uft.org>, "ymcowell@uft.org" <ymcowell@uft.org>, d <poulos@uft.org>, "patia@uft.org" <patia@uft.org>, "ceaddy@uft.org" <ceaddy@uft.org>, "imunet@uft.org" <imunet@uft.org>, "rking@uft.org" <rking@uft.org>, "jgerowitz@uft.org" <jgerowitz@uft.org>, Capuano John <JCAPUANO@schools.nyc.gov>, "aweinstein@uft.org" <aweinstein@uft.org>, "edriesen@uft.org" <edriesen@uft.org>, "usmith@uft.org" <usmith@uft.org>, "wkalogeras@uft.org" <wkalogeras@uft.org>, "mlane@uft.org" <mlane@uft.org>, "vwilson@uft.org" <vwilson@uft.org>, "jgoldberg@uft.org" <jgoldberg@uft.org>, "eperez@uft.org" <eperez@uft.org>, "mruiz@uft.org" <mruiz@uft.org>, "rfreiser@uft.org" <rfreiser@uft.org>, "rparker@uft.org" <rparker@uft.org>, "mvaccaro@uft.org" <mvaccaro@uft.org>, "mmanley@uft.org" <mmanley@uft.org>, "jkessier@uft.org" <jkessier@uft.org>, "jschwartz@uft.org" <jschwartz@uft.org>, "bmylite@uft.org" <bmylite@uft.org>, "tdacruz@uft.org" <tdacruz@uft.org>, "dsmyth@uft.org" <dsmyth@uft.org>, "jvasques@uft.org" <jvasques@uft.org>, "bzihal@uft.org" <bzihal@uft.org>, "wsanchez@uft.org" <wsanchez@uft.org>, "ckelly@uft.org" <ckelly@uft.org>, "dpenny@uft.org" <dpenny@uft.org>, "srotkowitz@uft.org" <srotkowitz@uft.org>, "dcappola@uft.org" <dcappola@uft.org>, "lkohler@uft.org" <lkohler@uft.org>, "rweingarten@aft.org" <rweingarten@aft.org>, "cfortino@nysutmail.org" <cfortino@nysutmail.org>, Mandel Susan <SMandel@schools.nyc.gov>, &00 <&00@schools.nyc.gov>, Laveman Gary <GLavema@schools.nyc.gov>, Laveman Gary <GLaveman@schools.nyc.gov>, Fogel Stanley <SFogel@schools.nyc.gov>, Salcedo Rosa <RSalcedo@schools.nyc.gov>, "Laboy Grismaldy (08X519)" <GLaboy@schools.nyc.gov>, "cbattle@nyutmail.org" <cbattle@nyutmail.org>, "dstrom@aft.org" <dstrom@aft.org>, "Macek Claudia (11X083)" <CMacek@schools.nyc.gov>, "Bligen Doyle Sandra (08x519)" <SBligen@schools.nyc.gov>, Stewart Regina <RStewar@schools.nyc.gov>, "Peeples Charles (Human Resources)" <CPeeple@schools.nyc.gov>, Rabot Joann <JRabot@schools.nyc.gov>, "Robert.Freeman@dos.ny.gov" <Robert.Freeman@dos.ny.gov>, "mpeters@doi.nyc.gov" <mpeters@doi.nyc.gov>, Richard Condon <rcondon@nycsci.org>, "susan.edelman@nypost.com" <susan.edelman@nypost.com>, "RMendez@council.nyc.gov" <RMendez@council.nyc.gov>, "GetHelp@pubadvocate.nyc.gov" <GetHelp@pubadvocate.nyc.gov>, "District3@council.nyc.gov" <District3@council.nyc.gov>, Baranello Joseph <JBaranello3@schools.nyc.gov>, Chancellor Carmen Fariña <NYCChancellor@schools.nyc.gov>, "dklein@nysenate.gov" <dklein@nysenate.gov>, "Helen@HelenRosenthal.com" <Helen@helenrosenthal.com>, "hoylman@nysenate.go" <hoylman@nysenate.go>, "hassellt@nysenate.gov" <hassellt@nysenate.gov>, Lavin Patricia <PLavin@schools.nyc.gov>, "BKallos@council.nyc.gov" <BKallos@council.nyc.gov>, "DDromm@council.nyc.gov" <DDromm@council.nyc.gov>, "Lucas Ida (11X542)" <ILucas@schools.nyc.gov>, Panel for Educational Policy <Panel@schools.nyc.gov>, "James@pubadvocate.nyc.gov"

<James@pubadvocate.nyc.gov>, "MViverito@council.nyc.gov" <MViverito@council.nyc.gov>,
"BdeBlasio@cityhall.nyc.gov" <BdeBlasio@cityhall.nyc.gov>, "ZCarter@law.nyc.gov" <ZCarter@law.nyc.gov>,
Santana Altagracia <ASantan2@schools.nyc.gov>, Guillaume Lourdes <LGuillaume2@schools.nyc.gov>,
Weinberg Phil <pweinbe1@schools.nyc.gov>, Levy Odelia <OLevy@schools.nyc.gov>,
"hoylman@nysenate.gov" <hoylman@nysenate.gov>, "enzo0mad@aol.com" <enzo0mad@aol.com>

Dear Ms. Catherine Battle:

I am in receipt of the response that you filed with Judge Blassman. Please be advised, I provided Mr. Drantch
and the Department until January 10, 2016 to file a complete response to the charges with the judge because
the response did not answer how fraudulent documents were submitted on May 4, 2015. For example, Judge
Blassman told Mr. Drantch to get and send me the documents withheld from me by Mr. Cole, Ms. Bernard, and
a FOIL request. The documents that Mr. Drantch willfully did not provide me, they were altered from their
ORIGINAL STATE and one set of documents were concealed from the administrative hearing.

IN Mr. Drantch's response to the charges, he wrote the following statement for number five (5) and this is of
great concern to me because I do not have any knowledge of this subject. Mr. Drantch wrote the following
statement:

"The Improper Practice Charge is barred by the doctrine of res judicata. The Public Employment Relations
Board has previously dismissed charges filed by the Petitioner based on the same facts and circumstances."
HOWEVER, you wrote the following statement for number thirteen (13) of your response to the charges filed:

"To the extent that the factual allegations which form the basis for the Charge are duplicative of allegations in
the a pending PERB Charge, specifically, Case No. U-33861, the Charge should be dismissed."
I have attached your response and Mr. Drantch's response to this email.

I demand that you send any and all documents related to Mr. Drantch's statement or write a statement that you
do not have any knowledge of what Mr. Drantch wrote in the response to the charges. According to Mr.
Drantch, there were "decisions" that Judge Blassman made and the judge did not send me a copy of either
one. This is not first nor the second time that I did not receive a letter from Judge Blassman or from Mr. Monte
Klein, Esq.

Based on what Mr. Drantch wrote, Judge Blassman did not mind when he did not follow her orders and
participated in submitting fraudulent documents for May 4, 2015. More importantly, the judge ignored the
obvious false statements on the CD that I sent her.

You and Mr. Drantch have until January 10, 2016 to provide me with clarification towards the responses
submitted to me. If you or Mr. Drantch do not comply with the requests, I will file a complaint with the
disciplinary committee on January 10, 2016 against you, Judge Blassman, and Mr. Dratnch. Please be
advised, I will call the cops on January 11, 2016 because you, Mr. Drantch, and Judge Blassman have
committed fraud against me and I have the recordings to back my allegation. I will not travel to Brooklyn to
participate in an administrative hearing that is plagued with fraud--OUT OF THE QUESTION! If I were you, Mr.
Drantch or Judge Blassman, I would be worry about what was said to me on March 23, 2015 and April 8, 2015.

If Judge Blassman sends another rescheduling letter, a tactic where I do receive a letter from the judge, or
takes any action that will deprive me of my rights, I will file a 42 U.S.C. § 1983 where I ask for injunction relief
against her.
Thanks,
Lucio Celli

From: **Lucio Celli** <enzo0mad@aol.com>
Date: Thu, Mar 2, 2017 at 5:32 PM
Subject: Re:
To: "ksolimando@schools.nyc.gov" <KSolimando@schools.nyc.gov>, "robert.freeman@dos.ny.gov" <Robert.Freeman@dos.ny.gov>, Richard Condon <rcondon@nycsci.org>, "rweingarten@aft.org" <rweingarten@aft.org>, Mandel Susan <SMandel@schools.nyc.gov>, "dstrom@aft.org" <dstrom@aft.org>, Guerra Charity <CGuerra7@schools.nyc.gov>, Drantch Todd <TDrantch@schools.nyc.gov>, Chancellor Carmen Fariña <NYCChancellor@schools.nyc.gov>, "lcelli@schools.nyc.gov" <LCelli@schools.nyc.gov>, "jbaranello3@schools.nyc.gov" <JBaranello3@schools.nyc.gov>, "aross@uft.org" <ARoss@uft.org>, "zcarter@law.nyc.gov" <zcarter@law.nyc.gov>, "preet.bharara@usdoj.gov" <preet.bharara@usdoj.gov>, phoebeb@childrensaidsociety.org, mpeters@doi.nyc.gov, leslie@yu.edu, eschneiderman@ag.ny.gov, eric.lane@hofstra.edu, ecacavas@perb.ny.gov, courtenayej@childrensaidsociety.org, canelson@wcl.american.edu, bill.araiza@brooklaw.edu, anthonyr@childrensaidsociety.org, ablassman@perb.ny.gov, JWirenius@perb.ny.gov, JORourke@perb.ny.gov, HFriedma@law.nyc.gov, BdeBlasio@cityhall.nyc.gov, "sedelman@nypost.com" <sedelman@nypost.com>

Dear Mr. Friedman:

I signed a letter on February 3, 2017 and I signed a letter today because the "DOE did not have it." According to principal, DOE Legal told her what to add today and have the letter posted dated. I signed the letter under duress and I put the wrong date because this is what I asked to do by the principal and I truly like my principal, so I signed it without a problem….to be clear because DOE Legal said so and not her. You should know by now that I have an audio recording!!!!!

I welcomed the letter because Mandel, Liechtenstein, Jackson-Chase, and Drantch committed a crime against me without any problems and I should be afforded the same luxury. To this date, DOE cannot produce documents, rules, and policies cited to me by DOE Legal. DOE Legal is not above the law and Chancellor Farina is aware of the crimes being committed by DOE Legal because I went to PEP in Sept, Oct. and Dec of 2015. In fact, I informed Chancellor and the PEP members, if they wanted the opportunity to listen to the audio recordings.

The fact are:

1. ## I am seen at PEP and I am heard on December 16, 2015
2. On December 22, 2015, Drantch (who is a lawyer and a criminal) wrote that Blassman rendered a decision—Chancellor has not excuse to allow this to happen because she had DOE Legal spend over million dollars firing teacher for fraud ….what about Drantch?

3. On January 11, 2016, Drantch swore, he swore in front of Battle and Blassman with others in the room, Blassman rendered a decision

4. Also from Jan. 11th., Blassman swore she did not render a decision and when I asked for motion for particularization…..it is not exist for me and Blassman knowingly accepted fraudulent documents from Drantch

5. According to DOE FOIL, DOE did not receive Blassman's decision until July 7, 2016 at 9:36 am, so Drantch lied and committed a crime against me and he was helped by Blassman and Battle

Taylor Law, LMRA, and FAA all speak to no agreement will be upheld if it violates public policy —hmmm
Ross emailed me saying, Sedlmeyer was wrong and the UFT does not have a secret agreement with the DOE
My "Beloved Randi" emailed me saying, Seldmeyer was wrong and the UFT does not have a secret agreement with the DOE
Barr emailed me saying, Sedlmeyer was wrong and the UFT does not have a secret agreement with the DOE
Hold it, Barr emails me again saying, Sedlmeyer is wrong because it is DOE policy…nope because I have the audio recordings (not in the FOIL request that I recently receive)
Then, I just received my FOIL request for Betsy Combier's FOIL request and I get what Betsy told me about Ed Fagan ( the lawyer and not Ed Farrell)…which is related to public policy

My behavior is predicated on the fact that DOE Legal wants to get away with crimes and I have the intent and volition to expose because I audio recorded everything. As I told Blassman on March 23, 2015, if it was a mistake then I will accept because everyone makes them….I am being told documents exist, rules exist, and policies exist which I have the statements all audio recorded….where are they???

Please confirm that you received the email or I resend it tomorrow d

 **Gmail**

Betsy Combier <betsy.combier@gmail.com>

---

## RE: moving forward
22 messages

---

**Betsy Combier** <betsy.combier@gmail.com>
To: Lucio C <enzo0mad@aol.com>, Betsy Combier <betsy.combier@gmail.com>

Mon, Nov 9, 2015 at 3:55 PM

Dear Lucio,

We have known each other for at least 7 years, and you have often said that you love me and my advocacy.

When your new partnership with UFT Solidarity came to be, I received the video from you that Francesco created and sent with Jim Callaghan saying I am a homophobe. I am very grateful to you for giving me this video, for many reasons.

You also chose to hire me to help you write and pursue PERB, and complaints in Federal and State Courts. I have been available to you at all times, not only because you hired me, but because I consider you a friend.

Until today.

I have heard that you are saying you gave me a check and then I refused to help you?

Maybe you could explain this lie. I think that your allegiance to the Francesco group is making you do things that I cannot approve of, nor do I want to associate with.

If you dont want to explain, I would be glad to end any contact with you, and in good faith, send you back unspent money ($500, about) to assure that you cease and desist from lying at any time about me and my advocacy to anyone. This is your only notice.

Please send me your full address.

Betsy

--
Betsy Combier
betsy.combier@gmail.com
ADVOCATZ
parentadvocates.org
NYC Rubber Room Reporter

---

**Lucio** <enzo0mad@aol.com>
To: Betsy Combier <betsy.combier@gmail.com>

Mon, Nov 9, 2015 at 4:04 PM

Betsy,

You told me that if I hired a lawyer that you couldn't be able to help me. This what you told me in July and before the Fran issue

I asked Mr. Morelli how to deal with it because I saw that you were involved with a lawsuit with him. I was upset and you told me prior to the Fran issued because this conversation was back in July. When I hired you, it was the lawsuit and then it changed to just the PERB. When I read your post, I was taken back because you said that you only worked with lawyers on 3020-a. I respected your position because you are my friend. After I read your post, I was hurt by what I read and I wanted to know how to deal with it

I could forward you the email that I sent Mr. Morelli. I was upset and didn't understand. So, I asked Mr. Morelli how to handling it.

Sent from my iPhone

---

[Quoted text hidden]

---

**Betsy Combier** <betsy.combier@gmail.com>                               Mon, Nov 9, 2015 at 4:20 PM
To: Lucio <enzo0mad@aol.com>, Betsy Combier <betsy.combier@gmail.com>

obviously you are lost in some other reality. Two clients of Mr. Morelli hired me and I am working with them, the teachers and Steve, on state, federal lawsuits and 3020-a, just fine. You know I work with 6 attorneys.

I would appreciate your not putting my name in any email where you malign my name to people anywhere at any time. If you have something to say about me, say it to me.

Betsy
[Quoted text hidden]
--
Betsy Combier
betsy.combier@gmail.com
ADVOCATZ
parentadvocates.org
NYC Rubber Room Reporter

---

**Lucio** <enzo0mad@aol.com>                                              Mon, Nov 9, 2015 at 4:50 PM
To: Betsy Combier <betsy.combier@gmail.com>

I didn't mean to hurt you nor malign your name, but I was hurt and didn't understand.

I was going to call you, but you called me the previous day to tell me that you weren't going to talk to me because of Fran. Now, I don't agree with what he has done you or Laurie and I've been the subject of a similar tactic by him. However, I don't understand certain things and i accept people for who they are...

You questioned me because of my association with Fran

He questioned me because of my friendship with you

I think you're both wrong.

Again, I should have worded it where I hired you to be my paralegal. After I hired Mr. Morelli, you informed me that you don't work with lawyers on lawsuits and just 3020-a.

When I hired you, it was to be my paralegal and I thought it was understood that you would come along when I hired a lawyer. When I hired a lawyer, I respected your position and we had an unspoken agreement that it would be only PERB. I didn't question you or say but I hired you because we have a friendship.

I appreciate your legal advice and the knowledge you provide because it is helpful.

Again, I was hurt that you're working on someone's case, but you told me you don't do that... I respected your position without a question in July because I accepted it as the truth, which was based on 8 years of friendship. But last night, I came to find out that you're working on a lawsuit with my lawyer. What you told me in July doesn't match what I read last night.

Sent from my iPhone
[Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                                              Mon, Nov 9, 2015 at 5:18 PM
To: Betsy Combier <betsy.combier@gmail.com>

Correction

Again, I should have worded it where I hired you to be my paralegal. After I hired Mr. Morelli, you informed me that you don't work with lawyers on lawsuits. However, you just work with lawyers on 3020-a.

This was my understanding in July. You cannot say that I questioned you, but I accepted the terms as you changed them because of friendship. However, the terms were for the lawsuit and I was fine with the change until I read your blog last night.

I clarified the misconception or I hope that I did. Please clarify what I heard and understood in July. I was deeply hurt by what I read last night because it didn't match what my friend told to me in July. Again, I didn't question you in July because of our friendship. But, you questioned me about Fran. I agree that I should have spoken to you first, but you put me in an awkward position because of Fran. So, I couldn't come straight to you and Mr. Morelli should have told me that he couldn't respond to the matter and just ask you.

Sent from my iPhone
[Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                                                          Mon, Nov 9, 2015 at 6:27 PM
To: Betsy Combier <betsy.combier@gmail.com>
Cc: Steve Morelli <smorelli@smorellilaw.com>

Dear Ms. Combier:

I just finished reading your email. My address is:

Lucio Celli
2743 Seymour Ave
Bronx, New York 10469

As you informed me in July, you only work with lawyers on 3020-a. However, I hired you in June for the lawsuit. I didn't mind nor did I ever question you about the change in terms, in July, because of our friendship. Nevertheless, I was deeply hurt by your blog post last night because you told me that you don't work with lawyers on lawsuits. As you put it, "I don't write for them." In July, I accepted the terms of the change to be just PERB because of our friendship. You did help me edit a letter to Judge Blassman, in July, after you helped me to edit the complaint. Further, the last time I had to respond to Judge Blassman, Harvey helped me because you were busy and I understood your schedule, so I did not say anything. In addition, I appreciate all the legal advice you have provided to me and my friends that I have sent to you over the years.

You and Francesco Portelos have put me in an awkward position, where I must choose between the two of you. I do not want to nor will I choose between anyone. Therefore, you will have to make that choice for yourse and this is what I told Francesco. I believe, I could continue my friendship with both you and Francesco because I am an adult. You called me on Saturday to tell me, if I continued with my association with Francesco that you had to stop speaking to me. Therefore, this is the reason that I asked Mr. Morelli how to deal with the issue because I was deeply hurt by your post. I realize that I did not word my email correctly, but I was upset by your blog post. Therefore, I hope this clears up the matter for Mr. Morelli, since he told you about my email to him. If Mr. Morelli couldn't respond to the matter because he works with you or for whatever reason, then a simple "ask her yourself" response would have been fine with me. I only wrote to Mr. Morelli about you, so you did not have to write, "I heard" because he was the only person that I addressed this matter too. In addition, it is disturbing that I emailed him and he informed you of my email.

I hope this email clears up or solves the issue of maligning your name because I cc'ed Mr. Morelli. However, I await your response to clear up what you told me in July because it doesn't match what I read last night in your blog post. In July, I accepted what you said, but after reading your blog, I believe I am entitled to an explantation.

As far as the refund, I believe an explantation would be fine. However, if you believe that the Francesco issue doesn't allow you to be my paralegal anymore, then I will have to accept the refund that you offered. Please note, I have provided you with that decision to make.

Thanks,
Mr. Lucio Celli
Sent from my iPhone
[Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                                                          Mon, Nov 9, 2015 at 6:49 PM
To: Betsy Combier <betsy.combier@gmail.com>

Cc: Steve Morelli <smorelli@smorellilaw.com>

Last item, the check was for 1,000 and not 500.

Sent from my iPhone
[Quoted text hidden]

---

**Betsy Combier** <betsy.combier@gmail.com>               Mon, Nov 9, 2015 at 10:02 PM
To: Lucio <enzo0mad@aol.com>, Betsy Combier <betsy.combier@gmail.com>

Dear Mr. Celli,

I could not possibly have ever told you that I do not work with attorneys on lawsuits, as I have been hired by law firms for 5 years and have been assisting these lawyers in state and federal courts. I told you that when someone hires an Attorney and NOT me, I dont step in and comment on what the lawyer does.

Indeed, when I was hired to work with Steve, I told you how excited I was, and that if you needed anything to let me know, I would let Steve know that I knew you. The next time you called, you were screaming that Steve did not know what he was doing, and was not serving your lawsuit, and you wanted it served. I told you to trust Steve, a well-known and experienced attorney. You would not listen. Then you told me that you served the lawsuit yourself, despite the fact that evidently your lawsuit was served by Steve's firm. Crazy.

Nothing, absolutely nothing in your email is true except for the fact that I have been assisting you for many months and speaking with you whenever you call me, however late or early in the morning it is. All I remember about your sending me and Harvey something to edit is that you gave me no time at all to respond, and now you are attacking me.

You are confused, and you must stop lying about people. You are hurting yourself and everyone else. I will discuss your email privately with Steve and tell him what I did/did not do.

[Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                  Mon, Nov 9, 2015 at 10:26 PM
To: Betsy Combier <betsy.combier@gmail.com>
Cc: Steve Morelli <smorelli@smorellilaw.com>

Dear Ms. Combier,

Since July/August, I started to not trust you, but I thought I was being paranoid.

Let me put you on notice as to not malign my name with your fabricated story of the truth! I recorded you speaking disparagingly about Mr. Morelli on 10/13 and it was 15:10 min recording. I have to check the others. I informed him and offered to send him the recording! In addition, I cc'ed him on this email because I will not tolerate lies about me! Who is crazy or not in reality now-- I'm the one with your statements! Pow booboo, pow!

This is your only notice to stop your lies or I will have to take action! I am happy that you wrote are lies! Please make sure whatever you tell or told Mr. Morelli is the truth-I hope I make myself clear!
Please refund me my money, thanks!
Address is
2743 Seymour Ave
Bronx, New York 10460

Thanks,
Mr. Celli

Sent from my iPhone
[Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                  Mon, Nov 9, 2015 at 10:31 PM

To: Betsy Combier <betsy.combier@gmail.com>
Cc: Steve Morelli <smorelli@smorellilaw.com>

Betsy

He will love your comments about how he screwed up on Mavis.

He will love your comments and threats about Francesco.

Stop your lies and give me my money or I will report you to the DA for giving me legal advice and you have not passed the bar exam!!

Sent from my iPhone
[Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                 Mon, Nov 9, 2015 at 10:36 PM
To: Betsy Combier <betsy.combier@gmail.com>

You are the liar and don't you ever call me a liar.
When I can you on tape and your email doesn't match what you said.

Sent from my iPhone
[Quoted text hidden]

---

**Steve Morelli** <SMorelli@smorellilaw.com>            Mon, Nov 9, 2015 at 10:37 PM
To: Lucio <enzo0mad@aol.com>
Cc: Betsy Combier <betsy.combier@gmail.com>

Lucio, let's just move forward. Let's just win your case.

Sent from my iPhone
[Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                 Mon, Nov 9, 2015 at 10:40 PM
To: Betsy Combier <betsy.combier@gmail.com>
Cc: Steve Morelli <smorelli@smorellilaw.com>

You have a lot of nerve to portray me as crazy or that I lied.

How does it feel to be caught in a lie? The people that you told me that hate you--I have you recorded saying this, they are collecting information to give to the DA. Let me be the first one to provide you with that notice. I was on your side until today but I don't want anything to do with you because NO ONE will portray me as liar or destroy my character when I have he proof!
Sent from my iPhone
[Quoted text hidden]

---

**Betsy Combier** <betsy.combier@gmail.com>            Mon, Nov 9, 2015 at 10:49 PM
To: Lucio <enzo0mad@aol.com>, Betsy Combier <betsy.combier@gmail.com>

Move forward, Lucio, as Steve said. Good luck. Anything that is said or done will be met with the appropriate response in the proper forum, online and off.
[Quoted text hidden]

---

**Betsy Combier** <betsy.combier@gmail.com>            Tue, Nov 10, 2015 at 2:24 AM
To: Betsy Combier <betsy.combier@gmail.com>

[Quoted text hidden]

---

Case 1:17-cv-02239-KAM-RLM     Document 67    Filed 03/13/18     Page 182 of 359 PageID #: 669

**Lucio** <enzo0mad@aol.com>
To: betsy.combier@gmail.com                        Sun, May 22, 2016 at 1:08 PM

Please read below... As I prepare my recordings for the Judge and statement in anticipation for your blog post

What you told me on Oct 13, 2015 does not match what you wrote in this email.

You have written libelous statements to harass and intimidate me because of my association with Francesco Portelos.

In a phone recording of about 16 minutes, you threatened to harm anyone that is associated with Francesco.

My lawyer has committed legal malpractice in various ways and has lied about knowing you. Your threat and your business so association is an ethics violation. Morelli blamed Blassman for vindictive ways on Oct 14, 2015. Or it could be your business relationship because you said that you'll stop at nothing

Your posting my status is homophobic or being homophobe... You know that but I cannot stop you from being evil

Please do not respond

Sent from my iPhone

Begin forwarded message:

> **From:** Betsy Combier <betsy.combier@gmail.com>
> **Date:** November 9, 2015 at 10:02:07 PM EST
> **To:** Lucio <enzo0mad@aol.com>, Betsy Combier <betsy.combier@gmail.com>
> **Subject: Re: moving forward**

[Quoted text hidden]

---

**Betsy Combier** <betsy.combier@gmail.com>            Sun, May 22, 2016 at 1:33 PM
Reply-To: betsy.combier@gmail.com
To: Lucio <enzo0mad@aol.com>, Unknown <betsy.combier@gmail.com>

Thank you, Lucio. For clarifying once again your incapacity as far as understanding facts, as opposed to hallucinations. You never hired me. I edited your PERB complaint and that is what I did, for free, as a friend. When I am hired by anyone, I have a written statement/agreement to that hiring. We never did a written agreement because you never hired me and I never demanded money or that you sign anything. Please send me the "hiring" agreement, if you believe that I am lying.

And yes, I will be using your most recent emails for my blogs and website. I have no contact with Ms. Blassman, and your threats to me about harming your lawsuit are so outrageous. As you know, you did not ask the Judge in your federal case to seal your Complaint papers about your HIV+ status. I did not breach any confidential information guidelines at any time. And you told me way before you filed the lawsuit that you were HIV+, and you sent me docs with your social security #, and I never revealed anything until you put your Complaint into the public domain. In my opinion, the only people you are harming are yourself and anyone who supports you.

I have the right to write about facts, my opinion, and accountability. This is what I will continue to do.
[Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                           Sun, May 22, 2016 at 1:38 PM
To: betsy.combier@gmail.com

I have the recording Betsy and Morelli didn't tell me because in my opinion, you had this plan to post t

Sent from my iPhone
[Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                                    Sun, May 22, 2016 at 1:39 PM
To: betsy.combier@gmail.com

    You edited my federal complaint but thanks for lying ... I'll forward it to you

    Sent from my iPhone
    [Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                                    Sun, May 22, 2016 at 2:03 PM
To: betsy.combier@gmail.com

    You wrote that I gave you a gift ... You wrote hired

    Sent from my iPhone
    [Quoted text hidden]

---

**Betsy Combier** <betsy.combier@gmail.com>                    Sun, May 22, 2016 at 2:47 PM
Reply-To: betsy.combier@gmail.com
To: Lucio <enzo0mad@aol.com>, Unknown <betsy.combier@gmail.com>

    you never hired me! There is no invoice for services, or signed anything, which would have to happened for me to be
    "hired".
    [Quoted text hidden]

---

**Lucio** <enzo0mad@aol.com>                                    Sun, May 22, 2016 at 4:01 PM
To: betsy.combier@gmail.com

    Betsy you wrote hired and then changed to a gift --- evidence and words---I believe that you changed it from me hiring
    you to gift because you didn't want to declare it, in my opinion.

    According to your websites, you're an advocate and a paralegal, but I don't see proofreader. I paid you and a few days
    later you helped me with my complaint.

    Please stop emailing me

    Sent from my iPhone
    [Quoted text hidden]

From: **Celli Lucio (08X519)** <LCelli@schools.nyc.gov>
Date: Thu, May 19, 2016 at 9:59 PM
Subject: RE: FOIL Request/letter to Medical
To: "macarvin@jonesday.com" <macarvin@jonesday.com>, "rosman@cir-usa.org" <rosman@cir-usa.org>, "vanlindti@dany.nyc.gov" <vanlindti@dany.nyc.gov>, "Mklein@perb.ny.gov" <Mklein@perb.ny.gov>, "sagata@perb.ny.gov" <sagata@perb.ny.gov>, "ademarco@perb.ny.gov" <ademarco@perb.ny.gov>, "msingas@nassaucountyny.gov" <msingas@nassaucountyny.gov>, "thompsonk@brooklynda.org" <thompsonk@brooklynda.org>, "kthompson@brooklynda.org" <kthompson@brooklynda.org>, "thechiefsubs@rcn.com" <thechiefsubs@rcn.com>, "ctrapasso@nydailynews.com" <ctrapasso@nydailynews.com>, "adam.a.stephan@abc.com" <adam.a.stephan@abc.com>, "rgonzalez@univision.net" <rgonzalez@univision.net>, "newsroom@dnainfo.com" <newsroom@dnainfo.com>, "noticias41ny@univision.net" <noticias41ny@univision.net>, "anna.phillips@nytimes.com" <anna.phillips@nytimes.com>, "wnbc.newsdesk@nbcuni.com" <wnbc.newsdesk@nbcuni.com>, "wpixnewsdesk@tribune.com" <wpixnewsdesk@tribune.com>, "newsroom@wnyc.org" <newsroom@wnyc.org>, "desk@cbs2ny.com" <desk@cbs2ny.com>, "assignmenteditors@ny1.com" <assignmenteditors@ny1.com>, "canarsiec@aol.com" <canarsiec@aol.com>, "nathanduke2001@yahoo.com" <nathanduke2001@yahoo.com>, Solimando Karen <KSolimando@schools.nyc.gov>, Kshensky Marcel <mkshensky@schools.nyc.gov>, "rhite@perb.ny.gov" <rhite@perb.ny.gov>, "jwirenius@perb.ny.gov" <jwirenius@perb.ny.gov>, "jorourke@perb.ny.gov" <jorourke@perb.ny.gov>, "kflanigan@perb.ny.gov" <kflanigan@perb.ny.gov>, "wconley@perb.ny.gov" <wconley@perb.ny.gov>, "amcnally@perb.ny.gov" <amcnally@perb.ny.gov>, "scomenzo@perb.ny.gov" <scomenzo@perb.ny.gov>, "nburritt@perb.ny.gov" <nburritt@perb.ny.gov>, "kcarlson@perb.ny.gov" <kcarlson@perb.ny.gov>, "mwlasuk@perb.ny.gov" <mwlasuk@perb.ny.gov>, "kmoorward@perb.ny.gov" <kmoorward@perb.ny.gov>, "kkenney@perb.ny.gov" <kkenney@perb.ny.gov>, "lmatles@perb.ny.gov" <lmatles@perb.ny.gov>, "ablassman@perb.ny.gov" <ablassman@perb.ny.gov>, "ecacavas@perb.ny.gov" <ecacavas@perb.ny.gov>, "gpoland@perb.ny.gov" <gpoland@perb.ny.gov>, "lfitzgerald@perb.ny.gov" <lfitzgerald@perb.ny.gov>, "jodonnell@perb.ny.gov" <jodonnell@perb.ny.gov>, "eschneiderman@ag.ny.gov" <eschneiderman@ag.ny.gov>
Cc: "nancy.redd@huffingtonpost.com" <nancy.redd@huffingtonpost.com>, Laveman Gary <GLaveman@schools.nyc.gov>, Laveman Gary <GLavema@schools.nyc.gov>, "Bligen Doyle Sandra (08x519)" <SBligen@schools.nyc.gov>, Rabot Joann <JRabot@schools.nyc.gov>, "Bernard Anne (79K755)" <ABernar@schools.nyc.gov>, "Cole Richard (07X224)" <RCole4@schools.nyc.gov>, Stoff Michael <MStoff@schools.nyc.gov>, "mmulgrew@uft.org" <mmulgrew@uft.org>, ":" <aross@uft.org>, "Jpovalitis@uft.org" <Jpovalitis@uft.org>, "ASepulveda@uft.org" <ASepulveda@uft.org>, "hschoor@uft.org" <hschoor@uft.org>, "jhinds@uft.org" <jhinds@uft.org>, "kmagee@nysutmail.org" <kmagee@nysutmail.org>, "kalford@uft.org" <kalford@uft.org>, "rfernadez@uft.org" <rfernadez@uft.org>, "pfilomena@uft.org" <pfilomena@uft.org>, "charrison@uft.org" <charrison@uft.org>, "mescobar@uft.org" <mescobar@uft.org>, "ajackson@uft.org" <ajackson@uft.org>, "mborrelli@uft.org" <mborrelli@uft.org>, "jguevara@uft.org" <jguevara@uft.org>, "lbarr@uft.org" <lbarr@uft.org>, "rmantell@uft.org" <rmantell@uft.org>, "sroberson@uft.org" <sroberson@uft.org>, "matkinson@uft.org" <matkinson@uft.org>, Mills Rose Marie <RMills@schools.nyc.gov>, "dclark@uft.org" <dclark@uft.org>, "dmanganello@uft.org" <dmanganello@uft.org>, "agoldman@uft.org" <agoldman@uft.org>, "alaureano@uft.org" <alaureano@uft.org>, "apallott@nysutmail.org" <apallott@nysutmail.org>, "eespert@uft.org" <eespert@uft.org>, "ssilva@uft.org" <ssilva@uft.org>, "zmrick@org.org" <zmrick@org.org>, "wthompson@uft.org" <wthompson@uft.org>, "wvelazquez@uft.org" <wvelazquez@uft.org>, "jhuart@uft.org" <jhuart@uft.org>, "pserrano@uft.org" <pserrano@uft.org>, "brein@uft.org" <brein@uft.org>, "pcastro@uft.org" <pcastro@uft.org>, "agerard@uft.org" <agerard@uft.org>, "dalbright@uft.org" <dalbright@uft.org>, "croldan@uft.org" <croldan@uft.org>, "msanto@uft.org" <msanto@uft.org>, "ymcowell@uft.org" <ymcowell@uft.org>, d <poulos@uft.org>, "patia@uft.org" <patia@uft.org>, "ceaddy@uft.org" <ceaddy@uft.org>, "imunet@uft.org" <imunet@uft.org>, "rking@uft.org" <rking@uft.org>, "jgerowitz@uft.org" <jgerowitz@uft.org>, Capuano John <JCAPUANO@schools.nyc.gov>, "aweinstein@uft.org" <aweinstein@uft.org>, "edriesen@uft.org" <edriesen@uft.org>, "usmith@uft.org" <usmith@uft.org>, "wkalogeras@uft.org" <wkalogeras@uft.org>, "mlane@uft.org" <mlane@uft.org>, "vwilson@uft.org" <vwilson@uft.org>, "jgoldberg@uft.org" <jgoldberg@uft.org>, "eperez@uft.org" <eperez@uft.org>, "mruiz@uft.org" <mruiz@uft.org>, "rfreiser@uft.org" <rfreiser@uft.org>, "rparker@uft.org" <rparker@uft.org>, "mvaccaro@uft.org" <mvaccaro@uft.org>, "mmanley@uft.org" <mmanley@uft.org>, "jkessier@uft.org"

<jkessier@uft.org>, "jschwartz@uft.org" <jschwartz@uft.org>, "bmylite@uft.org" <bmylite@uft.org>, "tdacruz@uft.org" <tdacruz@uft.org>, "dsmyth@uft.org" <dsmyth@uft.org>, "jvasques@uft.org" <jvasques@uft.org>, "bzihal@uft.org" <bzihal@uft.org>, "wsanchez@uft.org" <wsanchez@uft.org>, "ckelly@uft.org" <ckelly@uft.org>, "dpenny@uft.org" <dpenny@uft.org>, "srotkowitz@uft.org" <srotkowitz@uft.org>, "dcappola@uft.org" <dcappola@uft.org>, "lkohler@uft.org" <lkohler@uft.org>, "rweingarten@aft.org" <rweingarten@aft.org>, "cfortino@nysutmail.org" <cfortino@nysutmail.org>, Mandel Susan <SMandel@schools.nyc.gov>, &00 <&00@schools.nyc.gov>, Fogel Stanley <SFogel@schools.nyc.gov>, Salcedo Rosa <RSalcedo@schools.nyc.gov>, "cbattle@nyutmail.org" <cbattle@nyutmail.org>, "dstrom@aft.org" <dstrom@aft.org>, "Macek Claudia (11X083)" <CMacek@schools.nyc.gov>, Stewart Regina <RStewar@schools.nyc.gov>, "Peeples Charles (Human Resources)" <CPeeple@schools.nyc.gov>, "Robert.Freeman@dos.ny.gov" <Robert.Freeman@dos.ny.gov>, "mpeters@doi.nyc.gov" <mpeters@doi.nyc.gov>, Richard Condon <rcondon@nycsci.org>, "RMendez@council.nyc.gov" <RMendez@council.nyc.gov>, "GetHelp@pubadvocate.nyc.gov" <GetHelp@pubadvocate.nyc.gov>, "District3@council.nyc.gov" <District3@council.nyc.gov>, Baranello Joseph <JBaranello3@schools.nyc.gov>, Chancellor Carmen Fariña <NYCChancellor@schools.nyc.gov>, "dklein@nysenate.gov" <dklein@nysenate.gov>, "Helen@HelenRosenthal.com" <Helen@helenrosenthal.com>, "hoylman@nysenate.go" <hoylman@nysenate.go>, "hassellt@nysenate.gov" <hassellt@nysenate.gov>, Lavin Patricia <PLavin@schools.nyc.gov>, "BKallos@council.nyc.gov" <BKallos@council.nyc.gov>, "DDromm@council.nyc.gov" <DDromm@council.nyc.gov>, "sedelman@nypost.com" <sedelman@nypost.com>, Panel for Educational Policy <Panel@schools.nyc.gov>, "James@pubadvocate.nyc.gov" <James@pubadvocate.nyc.gov>, "MViverito@council.nyc.gov" <MViverito@council.nyc.gov>, "BdeBlasio@cityhall.nyc.gov" <BdeBlasio@cityhall.nyc.gov>, "ZCarter@law.nyc.gov" <ZCarter@law.nyc.gov>, Santana Altagracia <ASantan2@schools.nyc.gov>, Guillaume Lourdes <LGuillaume2@schools.nyc.gov>, Weinberg Phil <pweinbe1@schools.nyc.gov>, "hoylman@nysenate.gov" <hoylman@nysenate.gov>, "enzo0mad@aol.com" <enzo0mad@aol.com>, ":" <ctrapass@nydailys.com>, "SMorelli@smorellilaw.com" <SMorelli@smorellilaw.com>, "info@1010winsmail.com" <info@1010winsmail.com>, "KMatthews@ap.org" <KMatthews@ap.org>, "mezamashi@fci-ny.com" <mezamashi@fci-ny.com>, "stevecohengdny@gmail.com" <stevecohengdny@gmail.com>, "mhopf@kingworld.com" <mhopf@kingworld.com>, "lyunaska@kingworld.com" <lyunaska@kingworld.com>, "stsoflias@pix11.com" <stsoflias@pix11.com>, "cleibowitz123@yahoo.com" <cleibowitz123@yahoo.com>, "clrodriguez@univision.net" <clrodriguez@univision.net>, "garth@gothamist.com" <garth@gothamist.com>, "Lore@siadvance.com" <Lore@siadvance.com>, "sicb1@si.rr.com" <sicb1@si.rr.com>, "schoolbook@wnyc.org" <schoolbook@wnyc.org>, "mara.montalbano@ny1news.com" <mara.montalbano@ny1news.com>, "gtoppo@usatoday.com" <gtoppo@usatoday.com>, "michaelholmeswbai@gmail.com" <michaelholmeswbai@gmail.com>, "fingtonpost.com" <nancy.redd@huf>, "drose@council.nyc.gov" <drose@council.nyc.gov>, "NYSAssembly60@gmail.com" <NYSAssembly60@gmail.com>, "rjackson@council.nyc.gov" <rjackson@council.nyc.gov>, "vignizio@council.nyc.gov" <vignizio@council.nyc.gov>, "powellm@nytimes.com" <powellm@nytimes.com>, "checchi@siadvance.com" <checchi@siadvance.com>, "michael.chandler@washpost.com" <michael.chandler@washpost.com>, "oyaniv@nydailynews.com" <oyaniv@nydailynews.com>, addock <bpaddock@nydailynews.com>, Terrell Avis <ATerrel2@schools.nyc.gov>, "Furnell Joshua (08X519)" <JFurnell@schools.nyc.gov>, "Lucas Ida (11X542)" <ILucas@schools.nyc.gov>

Dear Mr. Joseph Baranello and Mr. Zumbolo :

Under the New York Freedom of Information Law, N.Y. Pub. Off. Law sec. 84 et seq., I am requesting an opportunity to inspect or obtain copies of public records of work rules, and policies of fraudulent statements on legal documents . Attached is a letter sent to medical. In the letter that is attached, I informed some administrator said that I told them I take psychiatric medication. THE FUCKING MEDICATION THAT I TAKE IS FOR FUCKING HIV MOTHER FUCKERS!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! I FUCKING TRIED OF

ASKING THE SAME FUCKING QUESTION!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! And I have May 19, 2014 recorded and I did not make that statement nor did that subject come up....but it was written MOTHER FUCKERS!!!!!!!!!!!!!!!!!!!!!!!!!!

The letter is dated March 5, 2015 and it was faxed on 7-5-2015....PLEASE LOOK AT THE ATTACHMENT!!!  BUT the evil beast and animal Blassman knew of this letter on April 8, 2015....I NEED A MOTHER FUCKING answer to my MOTHER FUCKING QUESTIONS!!!!!!!!!!!!!!!! TOO MANY FUCKING MONTHS has passed to allow FUCKING FRAUD TO TAKE PLACE ...I AM DONE

Point 1: It is my understanding that grievance procedures are terms and conditions of employment and, thus, is a mandatory negotiable subject matter. (p. 90 of the PERB reference guide attached)

Point 2: The impact of the exercise of a management prerogative on terms and conditions of employment of employees affected by it is a mandatory subject. (p. 87 of the PERB reference guide attached)

Point 3:  It is my understanding that disagreements over the specifics of a spoken command, violation of which may be difficult to resolve, a demand that verbal orders concerning work rules or regulations later be reduced to written form.   (p. 69 of the PERB reference guide attached)

Point 4: It is my understanding that there cannot be a waiver or modification of a statutory right or privilege which otherwise constitutes a term and condition of employment is mandatorily negotiable unless it is against public policy or contrary to a clear legislative intent. (p. 100 of the PERB reference guide attached)

Point 5:  It is my understanding that a union cannot demand a term and condition that would have a contravention of a law. (p. 99 of the PERB reference guide attached)

I CANNOT BELIEVE it has to come to this point because settling the issue should be easier. HOWEVER, the UFT and DOE continue to lie to me because they want to cover up what they have done to me at these administrative hearings. I have the recordings and I want to play them because it is the ONLY way to force the truth out!!!!!!!!!!!!!!!!!!!! I HAVE NOTHING TO HIDE

Attached are two recordings. There is a one recording labeled "hearing" and the other recording labeled "Mary." Mary is Mary Atkinson of the UFT.  According to Ms. Atkinson, the UFT is figuring it out what happened and they have not heard from the DOE...please listen and then I have so many emails from Ms. Atkinson---this is being done to have it time out!!!!!!!!!

Rules and polices of the DOE are sometimes like a nut and sometimes like FRUAD. FOR SURE, Ms. Courtenaye Jackson-Chase supervised and over the fraud. Ms. Jackson-Chase and her team had the audacity to spend over a million dollars to fire a teacher for fraud (it is fraud to Ms. Jackson-Chase because she told me she had integrity) and then turned around and commit fraud against me!!!!!!!!!!!!!!!!!

FROM PERB
It is my understanding that anything negotiated is filed with PERB.
 Under the New York Freedom of Information Law, N.Y. Pub. Off. Law sec. 84 et seq., I am requesting an opportunity to inspect or obtain copies of public records of work rules, and policies of grievance procedures and administrative hearings that UFT and DOE agreed upon.
(We to stop dancing in circles because the answers should be simple)

If there are any fees for searching or copying these records, please inform me of the cost.

The New York Freedom of Information Law requires a response time of five business days.  If access to the records I am requesting will take longer than this amount of time, please contact me with information about when I might expect copies or the ability to inspect the requested records.

If you deny any or all of this request, please cite each specific exemption you feel justifies the refusal to release

the information and notify me of the appeal procedures available to me under the law.

Thank you for considering my request.

Sincerely,

_____

From: Celli Lucio (08X519)
Sent: Thursday, May 19, 2016 8:59 AM
To: vanlindti@dany.nyc.gov; Mklein@perb.ny.gov; sagata@perb.ny.gov; ademarco@perb.ny.gov; azumbolo@perb.ny.gov; msingas@nassaucountyny.gov; thompsonk@brooklynda.org; kthompson@brooklynda.org; thechiefsubs@rcn.com; ctrapasso@nydailynews.com; adam.a.stephan@abc.com; rgonzalez@univision.net; newsroom@dnainfo.com; noticias41ny@univision.net; anna.phillips@nytimes.com; wnbc.newsdesk@nbcuni.com; wpixnewsdesk@tribune.com; newsroom@wnyc.org; desk@cbs2ny.com; assignmenteditors@ny1.com; canarsiec@aol.com; nathanduke2001@yahoo.com; Solimando Karen; Kshensky
Marcel; rhite@perb.ny.gov; jwirenius@perb.ny.gov; jorourke@perb.ny.gov; kflanigan@perb.ny.gov; wconley@perb.ny.gov; amcnally@perb.ny.gov; scomenzo@perb.ny.gov; nburritt@perb.ny.gov; kcarlson@perb.ny.gov; mwlasuk@perb.ny.gov; kmoorward@perb.ny.gov; kkenney@perb.ny.gov; lmatles@perb.ny.gov; ablassman@perb.ny.gov; ecacavas@perb.ny.gov; gpoland@perb.ny.gov; lfitzgerald@perb.ny.gov; jodonnell@perb.ny.gov; eschneiderman@ag.ny.gov
Cc: nancy.redd@huffingtonpost.com; Laveman Gary; Laveman Gary; Bligen Doyle Sandra (08X519); Rabot Joann; Bernard Anne (79K755); Cole Richard (07X224); Stoff Michael; mmulgrew@uft.org;
:; Jpovalitis@uft.org; ASepulveda@uft.org; hschoor@uft.org; jhinds@uft.org; kmagee@nysutmail.org; kalford@uft.org; rfernadez@uft.org; pfilomena@uft.org; charrison@uft.org; mescobar@uft.org; ajackson@uft.org; mborrelli@uft.org; jguevara@uft.org; lbarr@uft.org; rmantell@uft.org; sroberson@uft.org; matkinson@uft.org; Mills Rose
Marie; dclark@uft.org; dmanganello@uft.org; agoldman@uft.org; alaureano@uft.org; apallott@nysutmail.org; eespert@uft.org; ssilva@uft.org; zmrick@org.org; wthompson@uft.org; wvelazquez@uft.org; jhuart@uft.org; pserrano@uft.org; brein@uft.org; pcastro@uft.org; agerard@uft.org; dalbright@uft.org; croldan@uft.org; msanto@uft.org; ymcowell@uft.org;
d; patia@uft.org; ceaddy@uft.org; imunet@uft.org; rking@uft.org; jgerowitz@uft.org; Capuano
John; aweinstein@uft.org; edriesen@uft.org; usmith@uft.org; wkalogeras@uft.org; mlane@uft.org; vwilson@uft.org; jgoldberg@uft.org; eperez@uft.org; mruiz@uft.org; rfreiser@uft.org; rparker@uft.org; mvaccaro@uft.org; mmanley@uft.org; jkessier@uft.org; jschwartz@uft.org; bmylite@uft.org; tdacruz@uft.org; dsmyth@uft.org; jvasques@uft.org; bzihal@uft.org; wsanchez@uft.org; ckelly@uft.org; dpenny@uft.org; srotkowitz@uft.org; dcappola@uft.org; lkohler@uft.org; rweingarten@aft.org; cfortino@nysutmail.org; Mandel Susan; &00; Fogel Stanley; Salcedo Rosa (08X519); cbattle@nyutmail.org; dstrom@uft.org; Macek Claudia (11X083); Stewart Regina; Peeples Charles (Human Resources); Robert.Freeman@dos.ny.gov; mpeters@doi.nyc.gov; Richard Condon; RMendez@council.nyc.gov; GetHelp@pubadvocate.nyc.gov; District3@council.nyc.gov; Baranello Joseph; Chancellor Carmen Fariña; dklein@nysenate.gov; Helen@HelenRosenthal.com; hoylman@nysenate.go; hassellt@nysenate.gov; Lavin
Patricia; BKallos@council.nyc.gov; DDromm@council.nyc.gov; sedelman@nypost.com; Panel for Educational Policy; James@pubadvocate.nyc.gov; MViverito@council.nyc.gov; BdeBlasio@cityhall.nyc.gov; ZCarter@law.nyc.gov; Santana Altagracia; Guillaume Lourdes; Weinberg
Phil; hoylman@nysenate.gov; enzo0mad@aol.com;
:; SMorelli@smorellilaw.com; info@1010winsmail.com; KMatthews@ap.org; mezamashi@fci-ny.com; stevecohengdny@gmail.com; mhopf@kingworld.com; lyunaska@kingworld.org; stsofilias@pix11.com; cleibowitz123@yahoo.com; clrodriguez@univision.net; garth@gothamist.com; Lore@siadvance.com; sicb1@si.rr.com; schoolbook@wnyc.org; mara.montalbano@ny1news.com; gtoppo@usatoday.com; michaelholmeswbai@gmail.com;
fingtonpost.com; drose@council.nyc.gov; NYSAssembly60@gmail.com; rjackson@council.nyc.gov; vignizio@council.nyc.gov; powellm@nytimes.com; checchi@siadvance.com; michael.chandler@washpost.com; oyaniv@nydailynews.com; addock; Terrell Avis; Furnell Joshua (08X519); Lucas Ida (11X542)
Subject: RE: FOIL Request

Dear Mr. Joseph Baranello and Mr. Zumbolo :

Under the New York Freedom of Information Law, N.Y. Pub. Off. Law sec. 84 et seq., I am requesting an opportunity to inspect or obtain copies of public records of by-laws for the Panel for Educational Policy and the Appeals Process handbook. The Appeals Process handbook is attacked.
Point 1: It is my understanding that there could be a contract clause that authorizes the employer to alter by-laws or polices respecting a term and condition of employment, after giving the union notice and an opportunity to consult, but requiring the union's consent, is a mandatory subject of negotiations. (p. 82 of the PERB reference guide attached)
Point 2: It is my understanding that there cannot be a waiver or modification of a statutory right or privilege which otherwise constitutes a term and condition of employment is mandatorily negotiable unless it is against public policy or contrary to a clear legislative intent. (p. 100 of the PERB reference guide attached)

Point 3:  It is my understanding that a union cannot demand a term and condition that would have a contravention of a law. (p. 99 of the PERB reference guide attached)

Under the New York Freedom of Information Law, N.Y. Pub. Off. Law sec. 84 et seq., I am requesting an opportunity to inspect or obtain copies of public records that are related to each point mentioned above. I am requesting any and all documents that the legislature modified NY PL 175 for New York City Department of Education.
On May 4, 2015, Ms. Anne Bernard submitted documents that were altered and falsified. The numbers on the rubric submitted were higher than the scores shown to be me on May 28, 214. Please take notice, Mr. Cole is CLEARLY heard saying each score.  On May 4, 2015, when asked about a missing page and the whereabouts of the sheets that had Mr. Celli's signatures, Ms. Bernard stated "We can't speak about that now...(sigh)"
On January 11, 2016, Mr. Todd Drantch, Esq.  stated to Administrative Law Judge that the Office of Appeals and Review preformed their required actions.  PLEASE TAKE NOTICE; the required actions are contained in the Appeals Process handbook, which is attached. In fact, Mr. Drantch clearly stated (and I could provide an audio recording of the fact) "OAR provided Mr. Celli with the observation documents on the day of the appeal and I don't know what Mr. Celli wants." I understand that honesty is difficult for Mr. Drantch because law school did not teach him that concept. But, Mr. Drantch's statement contradicts what is written in the Appeals Process handbook.
The ONLY way Mr. Drantch's statement is truthful is if the legislature provided NYC DOE with the right to commit fraud and not adhere to the right civil servants gained under Cleveland Board of Education v. Loudermills. In addition, the UFT and the DOE had to have negotiated each point mentioned above.
I would have attached the January 11, 2016 audio recording, but Mr. Zumbolo is stalling to answer my previous FOIL request about a motion for particularization by the charging party. According to ALJ Blassman it does not exist. According to PERB's own website, the charging party has this right.  I am waiting to provide Ms. Weingarten specific evidence of how the ALJ was bias. BUT NOW, I will want to attach it to embarrass Mr.  Drantch for lying to ALJ Blassman as I wrote previously to Mr. Klein (Mr. Drantch broke his ethics code as a lawyer and I wanted to drive to Albany to let Mr. Klein hear the recording.)

FROM PERB
It is my understanding that anything negotiated is filed with PERB.
 Under the New York Freedom of Information Law, N.Y. Pub. Off. Law sec. 84 et seq., I am requesting an opportunity to inspect or obtain copies of public records that deals with the requests made above to the DOE. I am requesting the policies and procedures of when a lawyer lies to an ALJ.

If there are any fees for searching or copying these records, please inform me of the cost.

The New York Freedom of Information Law requires a response time of five business days.  If access to the records I am requesting will take longer than this amount of time, please contact me with information about when I might expect copies or the ability to inspect the requested records.

If you deny any or all of this request, please cite each specific exemption you feel justifies the refusal to release the information and notify me of the appeal procedures available to me under the law.

Thank you for considering my request.

Sincerely,

**From:** "Celli Lucio (08X519)" <LCelli@schools.nyc.gov>
**Date:** March 16, 2016 at 9:42:53 AM EDT
**To:** "cvance@dany.nyc.gov" <cvance@dany.nyc.gov>, "vanlindti@dany.nyc.gov" <vanlindti@dany.nyc.gov>, "rjohnson@bronxda.nyc.gov" <rjohnson@bronxda.nyc.gov>, "angueirl@bronxda.nyc.gov" <angueirl@bronxda.nyc.gov>, "Mklein@perb.ny.gov" <Mklein@perb.ny.gov>, "sagata@perb.ny.gov" <sagata@perb.ny.gov>, "ademarco@perb.ny.gov" <ademarco@perb.ny.gov>, "azumbolo@perb.ny.gov" <azumbolo@perb.ny.gov>, "msingas@nassaucountyny.gov" <msingas@nassaucountyny.gov>, "thompsonk@brooklynda.org" <thompsonk@brooklynda.org>, "kthompson@brooklynda.org" <kthompson@brooklynda.org>, "thechiefsubs@rcn.com" <thechiefsubs@rcn.com>, "ctrapasso@nydailynews.com" <ctrapasso@nydailynews.com>, "adam.a.stephan@abc.com" <adam.a.stephan@abc.com>, "rgonzalez@univision.net" <rgonzalez@univision.net>, "newsroom@dnainfo.com" <newsroom@dnainfo.com>, "noticias41ny@univision.net" <noticias41ny@univision.net>, "anna.phillips@nytimes.com" <anna.phillips@nytimes.com>, "wnbc.newsdesk@nbcuni.com" <wnbc.newsdesk@nbcuni.com>, "wpixnewsdesk@tribune.com" <wpixnewsdesk@tribune.com>, "newsroom@wnyc.org" <newsroom@wnyc.org>, "desk@cbs2ny.com" <desk@cbs2ny.com>, "assignmenteditors@ny1.com" <assignmenteditors@ny1.com>, "canarsiec@aol.com" <canarsiec@aol.com>, "nathanduke2001@yahoo.com" <nathanduke2001@yahoo.com>, Solimando Karen <KSolimando@schools.nyc.gov>, Kshensky Marcel <mkshensky@schools.nyc.gov>, "rhite@perb.ny.gov" <rhite@perb.ny.gov>, "jwirenius@perb.ny.gov" <jwirenius@perb.ny.gov>, "jorourke@perb.ny.gov" <jorourke@perb.ny.gov>, "kflanigan@perb.ny.gov" <kflanigan@perb.ny.gov>, "wconley@perb.ny.gov" <wconley@perb.ny.gov>, "amcnally@perb.ny.gov" <amcnally@perb.ny.gov>, "scomenzo@perb.ny.gov" <scomenzo@perb.ny.gov>, "nburritt@perb.ny.gov" <nburritt@perb.ny.gov>, "kcarlson@perb.ny.gov" <kcarlson@perb.ny.gov>, "mwlasuk@perb.ny.gov" <mwlasuk@perb.ny.gov>, "kmoorward@perb.ny.gov" <kmoorward@perb.ny.gov>, "kkenney@perb.ny.gov" <kkenney@perb.ny.gov>, "lmatles@perb.ny.gov" <lmatles@perb.ny.gov>, "ablassman@perb.ny.gov" <ablassman@perb.ny.gov>, "ecacavas@perb.ny.gov" <ecacavas@perb.ny.gov>, "gpoland@perb.ny.gov" <gpoland@perb.ny.gov>, "lfitzgerald@perb.ny.gov" <lfitzgerald@perb.ny.gov>, "jodonnell@perb.ny.gov" <jodonnell@perb.ny.gov>, "eschneiderman@ag.ny.gov" <eschneiderman@ag.ny.gov>, "acumo@governor.ny.gov" <acumo@governor.ny.gov>
**Cc:** "nancy.redd@huffingtonpost.com" <nancy.redd@huffingtonpost.com>, "Laveman Gary" <GLaveman@schools.nyc.gov>, Laveman Gary <GLavema@schools.nyc.gov>, "Bligen Doyle Sandra (08x519)" <SBligen@schools.nyc.gov>, Rabot Joann <JRabot@schools.nyc.gov>, "Bernard Anne (79K755)" <ABernar@schools.nyc.gov>, "Cole Richard (07X224)" <RCole4@schools.nyc.gov>, Stoff Michael <MStoff@schools.nyc.gov>, "mmulgrew@uft.org" <mmulgrew@uft.org>, ":" <aross@uft.org>, "Jpovalitis@uft.org" <Jpovalitis@uft.org>, "ASepulveda@uft.org" <ASepulveda@uft.org>, "hschoor@uft.org" <hschoor@uft.org>, "jhinds@uft.org" <jhinds@uft.org>, "kmagee@nysutmail.org" <kmagee@nysutmail.org>, "kalford@uft.org" <kalford@uft.org>, "rfernadez@uft.org" <rfernadez@uft.org>, "pfilomena@uft.org" <pfilomena@uft.org>, "charrison@uft.org" <charrison@uft.org>, "mescobar@uft.org" <mescobar@uft.org>, "ajackson@uft.org" <ajackson@uft.org>, "mborrelli@uft.org" <mborrelli@uft.org>, "jguevara@uft.org" <jguevara@uft.org>, "lbarr@uft.org" <lbarr@uft.org>, "rmantell@uft.org" <rmantell@uft.org>, "sroberson@uft.org" <sroberson@uft.org>, "matkinson@uft.org" <matkinson@uft.org>, Mills Rose Marie <RMills@schools.nyc.gov>, "dclark@uft.org" <dclark@uft.org>, "dmanganello@uft.org" <dmanganello@uft.org>, "agoldman@uft.org" <agoldman@uft.org>, "alaureano@uft.org" <alaureano@uft.org>, "apallott@nysutmail.org" <apallott@nysutmail.org>, "eespert@uft.org" <eespert@uft.org>, "ssilva@uft.org" <ssilva@uft.org>, "zmrick@org.org" <zmrick@org.org>, "wthompson@uft.org" <wthompson@uft.org>, "wvelazquez@uft.org" <wvelazquez@uft.org>, "jhuart@uft.org" <jhuart@uft.org>, "pserrano@uft.org" <pserrano@uft.org>, "brein@uft.org" <brein@uft.org>, "pcastro@uft.org" <pcastro@uft.org>, "agerard@uft.org" <agerard@uft.org>, "dalbright@uft.org" <dalbright@uft.org>, "croldan@uft.org" <croldan@uft.org>, "msanto@uft.org" <msanto@uft.org>, "ymcowell@uft.org" <ymcowell@uft.org>, d <poulos@uft.org>, "patia@uft.org" <patia@uft.org>, "ceaddy@uft.org" <ceaddy@uft.org>, "imunet@uft.org" <imunet@uft.org>, "rking@uft.org" <rking@uft.org>, "jgerowitz@uft.org" <jgerowitz@uft.org>, Capuano John <JCAPUANO@schools.nyc.gov>, "aweinstein@uft.org" <aweinstein@uft.org>, "edriesen@uft.org" <edriesen@uft.org>, "usmith@uft.org" <usmith@uft.org>, "wkalogeras@uft.org" <wkalogeras@uft.org>, "mlane@uft.org" <mlane@uft.org>, "vwilson@uft.org" <vwilson@uft.org>, "jgoldberg@uft.org" <jgoldberg@uft.org>, "eperez@uft.org" <eperez@uft.org>, "mruiz@uft.org"

<mruiz@uft.org>, "rfreiser@uft.org" <rfreiser@uft.org>, "rparker@uft.org" <rparker@uft.org>, "mvaccaro@uft.org" <mvaccaro@uft.org>, "mmanley@uft.org" <mmanley@uft.org>, "jkessier@uft.org" <jkessier@uft.org>, "jschwartz@uft.org" <jschwartz@uft.org>, "bmylite@uft.org" <bmylite@uft.org>, "tdacruz@uft.org" <tdacruz@uft.org>, "dsmyth@uft.org" <dsmyth@uft.org>, "jvasques@uft.org" <jvasques@uft.org>, "bzihal@uft.org" <bzihal@uft.org>, "wsanchez@uft.org" <wsanchez@uft.org>, "ckelly@uft.org" <ckelly@uft.org>, "dpenny@uft.org" <dpenny@uft.org>, "srotkowitz@uft.org" <srotkowitz@uft.org>, "dcappola@uft.org" <dcappola@uft.org>, "lkohler@uft.org" <lkohler@uft.org>, "rweingarten@aft.org" <rweingarten@aft.org>, "cfortino@nysutmail.org" <cfortino@nysutmail.org>, Mandel Susan <SMandel@schools.nyc.gov>, &00 <&00@schools.nyc.gov>, Fogel Stanley <SFogel@schools.nyc.gov>, Salcedo Rosa <RSalcedo@schools.nyc.gov>, "cbattle@nyutmail.org" <cbattle@nyutmail.org>, "dstrom@aft.org" <dstrom@aft.org>, "Macek Claudia (11X083)" <CMacek@schools.nyc.gov>, Stewart Regina <RStewar@schools.nyc.gov>, "Peeples Charles (Human Resources)" <CPeeple@schools.nyc.gov>, "Robert.Freeman@dos.ny.gov" <Robert.Freeman@dos.ny.gov>, "mpeters@doi.nyc.gov" <mpeters@doi.nyc.gov>, Richard Condon <rcondon@nycsci.org>, "RMendez@council.nyc.gov" <RMendez@council.nyc.gov>, "GetHelp@pubadvocate.nyc.gov" <GetHelp@pubadvocate.nyc.gov>, "District3@council.nyc.gov" <District3@council.nyc.gov>, Baranello Joseph <JBaranello3@schools.nyc.gov>, Chancellor Carmen Fariña <NYCChancellor@schools.nyc.gov>, "dklein@nysenate.gov" <dklein@nysenate.gov>, "Helen@HelenRosenthal.com" <Helen@HelenRosenthal.com>, "hoylman@nysenate.go" <hoylman@nysenate.go>, "hassellt@nysenate.gov" <hassellt@nysenate.gov>, "Lavin Patricia" <PLavin@schools.nyc.gov>, "BKallos@council.nyc.gov" <BKallos@council.nyc.gov>, "DDromm@council.nyc.gov" <DDromm@council.nyc.gov>, "sedelman@nypost.com" <sedelman@nypost.com>, Panel for Educational Policy <Panel@schools.nyc.gov>, "James@pubadvocate.nyc.gov" <James@pubadvocate.nyc.gov>, "MViverito@council.nyc.gov" <MViverito@council.nyc.gov>, "BdeBlasio@cityhall.nyc.gov" <BdeBlasio@cityhall.nyc.gov>, "ZCarter@law.nyc.gov" <ZCarter@law.nyc.gov>, Santana Altagracia <ASantan2@schools.nyc.gov>, Guillaume Lourdes <LGuillaume2@schools.nyc.gov>, Weinberg Phil <pweinbe1@schools.nyc.gov>, "hoylman@nysenate.gov" <hoylman@nysenate.gov>, "enzo0mad@aol.com" <enzo0mad@aol.com>, ":" <ctrapass@nydailys.com>, "SMorelli@smorellilaw.com" <SMorelli@smorellilaw.com>, "info@1010winsmail.com" <info@1010winsmail.com>, "KMatthews@ap.org" <KMatthews@ap.org>, "mezamashi@fci-ny.com" <mezamashi@fci-ny.com>, "stevecohengdny@gmail.com" <stevecohengdny@gmail.com>, "mhopf@kingworld.com" <mhopf@kingworld.com>, "lyunaska@kingworld.com" <lyunaska@kingworld.com>, "stsoflias@pix11.com" <stsoflias@pix11.com>, "cleibowitz123@yahoo.com" <cleibowitz123@yahoo.com>, "clrodriguez@univision.net" <clrodriguez@univision.net>, "garth@gothamist.com" <garth@gothamist.com>, "Lore@siadvance.com" <Lore@siadvance.com>, "sicb1@si.rr.com" <sicb1@si.rr.com>, "schoolbook@wnyc.org" <schoolbook@wnyc.org>, "mara.montalbano@ny1news.com" <mara.montalbano@ny1news.com>, "gtoppo@usatoday.com" <gtoppo@usatoday.com>, "michaelholmeswbai@gmail.com" <michaelholmeswbai@gmail.com>, fingtonpost.com <nancy.redd@huf>, "drose@council.nyc.gov" <drose@council.nyc.gov>, "NYSAssembly60@gmail.com" <NYSAssembly60@gmail.com>, "rjackson@council.nyc.gov" <rjackson@council.nyc.gov>, "vignizio@council.nyc.gov" <vignizio@council.nyc.gov>, "powellm@nytimes.com" <powellm@nytimes.com>, "checchi@siadvance.com" <checchi@siadvance.com>, "michael.chandler@washpost.com" <michael.chandler@washpost.com>, "oyaniv@nydailynews.com" <oyaniv@nydailynews.com>, addock <bpaddock@nydailynews.com>

**Subject: RE: Besty Combier on the topics of Rona Freiser/My lawyer/Ms. Jackoson-Chase/ Ms. Weingarten**

Dear Mr. Carter, Mr. Peters, and Ms. Weingarten:

Attached you will find a phone recording of Betsy Combier and I speaking about Ms. Weingarten. Ms. Combier loves to speak about herself, about who she knows, and what she has done for people at 3020-as. Please note, she works with my lawyer. According to Ms. Combier, she has a personal relationship with Ms. Weingarten and I had to listen to her (Betsy) ego several times. Ms. Combier told me the story of how she was hired at the UFT--not a plausible story to me. Most interesting fact told by Ms. Combier, the UFT made backdoor phone calls to agencies, like PERB, while she worked for the union--ex parte conversions. Ms. Combier told me about Ms. Rona Freiser and FOIL too.

Ms. Combier and I spoke about her special relationship that she has with Ms. Jackson-Chase and

attached is Ms. Jackson-Chase's response.  Basically, I asked Ms. Jackson-Chase did her relationship
with Ms. Combier influence Ms. Jackson-Chase to help my friend Joan Klingsberg.  Ms. Jackson-
Chase's e-mail predated Ms. Edelman's story in the NY POST.
http://nypost.com/2016/02/14/education-officials-bought-off-principal-to-avoid-ethics-suit/
I guess Ms. Jackson-Chase lied to me in her response, BUT I recorded her saying that she had
integrity.  I came to realize that Ms. Jackson-Chase's definition of integrity meant FRAUD. Ms.
Jackson-Chase supervised the Office of Labor Relations and Office of Appeals and Review that
committed fraud against me.

Ms. Combier has a special relationship with Ms. Weingarten and Ms. Jackson-Chase. HOWEVER, it
does not matter that Ms. Combier is working with my lawyer and helped my lawyer to lie to me
because my lawyer said that Ms. Blassman would be vindictive---that's the evidence that I have. Ms.
Combier and lawyer have the same problem of not return money to their clients. According to Mr.
Morelli, Ms. Blassman has ways to be vindictive and that has to be the reason he left out my retaliation
claim.

I have more recordings of Ms. Combier. By the way, Ms. Combier informed me that she records
conversations as well---she attends many 3020-a hearings. Somehow or someway we have to force
the truth out.


Thanks,
Mr. Celli


From: Celli Lucio (08X519)
Sent: Tuesday, March 15, 2016 12:48 AM
To: cvance@dany.nyc.gov; vanlindti@dany.nyc.gov; rjohnson@bronxda.nyc.gov; angueirl@bronxda.n
yc.gov; Mklein@perb.ny.gov; sagata@perb.ny.gov; ademarco@perb.ny.gov; azumbolo@perb.ny.gov;
msingas@nassaucountyny.gov; thompsonk@brooklynda.org; kthompson@brooklynda.org; thechiefsu
bs@rcn.com; ctrapasso@nydailynews.com; adam.a.stephan@abc.com; rgonzalez@univision.net; ne
wsroom@dnainfo.com; noticias41ny@univision.net; anna.phillips@nytimes.com; wnbc.newsdesk@nb
cuni.com; wpixnewsdesk@tribune.com; newsroom@wnyc.org; desk@cbs2ny.com; assignmenteditors
@ny1.com; canarsiec@aol.com; nathanduke2001@yahoo.com; Solimando Karen; Kshensky
Marcel; rhite@perb.ny.gov; jwirenius@perb.ny.gov; azumbolo@perb.ny.gov; jorourke@perb.ny.gov; kf
lanigan@perb.ny.gov; wconley@perb.ny.gov; amcnally@perb.ny.gov; scomenzo@perb.ny.gov; nburrit
t@perb.ny.gov; kcarlson@perb.ny.gov; mwlasuk@perb.ny.gov; kmoorward@perb.ny.gov; kkenney@p
erb.ny.gov; lmatles@perb.ny.gov; ablassman@perb.ny.gov; ecacavas@perb.ny.gov; gpoland@perb.n
y.gov; lfitzgerald@perb.ny.gov; jodonnell@perb.ny.gov; eschneiderman@ag.ny.gov; acumo@governo
r.ny.gov
Cc: nancy.redd@huffingtonpost.com; Laveman Gary; Laveman Gary; Bligen Doyle Sandra (08x519);
Rabot Joann; Bernard Anne (79K755); Cole Richard (07X224); Stoff Michael; mmulgrew@uft.org;
:; Jpovalitis@uft.org; ASepulveda@uft.org; hschoor@uft.org; jhinds@uft.org; kmagee@nysutmail.org;
kalford@uft.org; rfernadez@uft.org; pfilomena@uft.org; charrison@uft.org; mescobar@uft.org; ajacks
on@uft.org; mborrelli@uft.org; jguevara@uft.org; lbarr@uft.org; rmantell@uft.org; sroberson@uft.org;
matkinson@uft.org; Mills Rose
Marie; dclark@uft.org; dmanganello@uft.org; agoldman@uft.org; alaureano@uft.org; apallott@nysutm
ail.org; eespert@uft.org; ssilva@uft.org; zmrick@org.org; wthompson@uft.org; wvelazquez@uft.org; j
huart@uft.org; pserrano@uft.org; brein@uft.org; pcastro@uft.org; agerard@uft.org; dalbright@uft.org;
croldan@uft.org; msanto@uft.org; ymcowell@uft.org;
d; patia@uft.org; ceaddy@uft.org; imunet@uft.org; rking@uft.org; jgerowitz@uft.org; Capuano
John; aweinstein@uft.org; edriesen@uft.org; usmith@uft.org; wkalogeras@uft.org; mlane@uft.org; vw
ilson@uft.org; jgoldberg@uft.org; eperez@uft.org; mruiz@uft.org; rfreiser@uft.org; rparker@uft.org; m
vaccaro@uft.org; mmanley@uft.org; jkessier@uft.org; jschwartz@uft.org; bmylite@uft.org; tdacruz@uf
t.org; dsmyth@uft.org; jvasques@uft.org; bzihal@uft.org; wsanchez@uft.org; ckelly@uft.org; dpenny
@uft.org; srotkowitz@uft.org; dcappola@uft.org; lkohler@uft.org; rweingarten@aft.org; cfortino@nysut
mail.org; Mandel Susan; &00; Fogel Stanley; Salcedo Rosa

(08X519); cbattle@nyutmail.org; dstrom@aft.org; Macek Claudia (11X083); Stewart Regina; Peeples Charles (Human Resources); Robert.Freeman@dos.ny.gov; mpeters@doi.nyc.gov; Richard Condon; RMendez@council.nyc.gov; GetHelp@pubadvocate.nyc.gov; District3@council.nyc.gov; Baranello Joseph; Chancellor Carmen Fariña; dklein@nysenate.gov; Helen@HelenRosenthal.com; hoylman@nysenate.go; hassellt@nysena te.gov; Lavin Patricia; BKallos@council.nyc.gov; DDromm@council.nyc.gov; sedelman@nypost.com; Panel for Educational Policy; James@pubadvocate.nyc.gov; MViverito@council.nyc.gov; BdeBlasio@cityhall.nyc.gov; ZCart er@law.nyc.gov; Santana Altagracia; Guillaume Lourdes; Weinberg Phil; hoylman@nysenate.gov; enzo0mad@aol.com; :; SMorelli@smorellilaw.com; info@1010winsmail.com; KMatthews@ap.org; mezamashi@fci-ny.com; stevecohengdny@gmail.com; mhopf@kingworld.com; lyunaska@kingworld.com; stsoflias@pi x11.com; cleibowitz123@yahoo.com; clrodriguez@univision.net; garth@gothamist.com; Lore@siadva nce.com; sicb1@si.rr.com; schoolbook@wnyc.org; mara.montalbano@ny1news.com; gtoppo@usatod ay.com; michaelholmeswbai@gmail.com; fingtonpost.com; drose@council.nyc.gov; NYSAssembly60 @gmail.com; rjackson@council.nyc.gov; vignizio@council.nyc.gov; powellm@nytimes.com; checchi@ siadvance.com; michael.chandler@washpost.com; oyaniv@nydailynews.com; addock
Subject: RE: Seth Agata of PERB about Judge Blassman

Dear Mr. Agata, Ms. Blassman, Ms. Battle, and Mr. Drantch:

Attached you will find an e-mail that I sent to Ms. Wiengarten and a recording of March 23, 2015, at PERB.

On April 8, 2015, Ms. Blassman said that I would win my case. But, this was only a ruse because Ms. Blassman helped Mr. Drantch commit fraud against me--based on information, belief and recordings!. Also, Ms. Blassman knew that I would have a psychology exam. My principal threatened to write me up if I did not disclose the medication that I took. My principal thought the medication was assumed it was for anxiety and I went along with her story. The letter for this exam was dated March 8, 2015, and faxed on July 7, 2015, but the vindictive Blassman knew about the letter on April 8, 2015. First, the medication that I take is for HIV. Second, I have recordings (in person and over the phone) to play for you.

My principal had me segregated from my co-workers. While I was segregated, I recorded her saying, "Mr. Celli, did you take your medication today?" Then saying, "You can't become an administrator if you can't the stress. Hehehehehehehehe"

My lawyer, Steven Morelli, told me that the judge would be vindictive on October 14, 2015, and I recorded him saying that too. Well, I am tired of the vindictive Blassman. Please control her and I rather be judged by a felony because she does not have any morals!

Please take notice, my lawyer salivated like a dog when I told him about the recording of judge. Then changed his tune to help the judge be vindictive but Mr. Morelli left out my retaliation claim. Please note, I presented recordings and the EEOC's compliance manual for retaliation. In the manual it is an unlawful employment practice to suspend an administrative grievance hearing. I meet the causal connection between the EEOC complaint and action because the grievance was for the mental exam.  Next step is to establish motivate; I  have Mr. Kshensky recorded on October 8, 2015, and November 25, 2015, and he lied about the reason for the suspension. On said dates, Mr. Kshensky and I spoke about my behavior of recording, BUT only on November 25, 2015, did Mr. Kshensky lie about the policy of recording. I have Ms. Mary Atikinson, of the UFT, recorded saying that she never heard of this policy.

Remember; I  told you that my lawyer salivated like a dog when I told me about recording the judge and how he left out my retaliation claim. Back in early February, I sent e-mail to everyone on this list saying that either my lawyer was threatened, or someone put money in his pocket....WELL, he was grand larceny
http://abc7ny.com/news/7-on-your-side-lawyer-who-delayed-settlement-faces-grand-larceny-charges/1236483/

I believe the UFT put money in his pocket, but I do not have anyone saying that in my recordings. But my recordings say that Ms. Blassman would be vindictive, and I have to go with the evidence, sorry.

I am willing to drive up to Albany to play my recordings of April 8, 2015, and January 2016, so please provide me with a time and date. I would like to help you reeducate Ms. Blassman and Mr. Klein because they made mistakes against the Adminsitrative Law Judge manual and I have the recordings to help us, like being deceitful and having ex parte conversions. I read that manual a few times and I think, I could help you train your staff.

Sincerely,
Mr. Celli

---

From: Celli Lucio (08X519)
Sent: Monday, March 07, 2016 5:53 PM
To: thechiefsubs@rcn.com; ctrapasso@nydailynews.com; adam.a.stephan@abc.com; rgonzalez@univision.net; newsroom@dnainfo.com; noticias41ny@univision.net; anna.phillips@nytimes.com; wnbc.newsdesk@nbcuni.com; wpixnewsdesk@tribune.com; newsroom@wnyc.org; desk@cbs2ny.com; assignmenteditors@ny1.com; canarsiec@aol.com; nathanduke2001@yahoo.com; Solimando Karen; Kshensky Marcel; preet.bharar@usdoj.gov
Cc: nancy.redd@huffingtonpost.com; Laveman Gary; Laveman Gary; Bligen Doyle Sandra (08x519); Rabot Joann; Bernard Anne (79K755); Cole Richard (07X224); Stoff Michael; mmulgrew@uft.org; :; Jpovalitis@uft.org; ASepulveda@uft.org; hschoor@uft.org; jhinds@uft.org; kmagee@nysutmail.org; kalford@uft.org; rfernadez@uft.org; pfilomena@uft.org; charrison@uft.org; mescobar@uft.org; ajackson@uft.org; mborrelli@uft.org; jguevara@uft.org; lbarr@uft.org; rmantell@uft.org; sroberson@uft.org; matkinson@uft.org; Mills Rose
Marie; dclark@uft.org; dmanganello@uft.org; agoldman@uft.org; alaureano@uft.org; apallott@nysutmail.org; eespert@uft.org; ssilva@uft.org; zmrick@org.org; wthompson@uft.org; wvelazquez@uft.org; jhuart@uft.org; pserrano@uft.org; brein@uft.org; pcastro@uft.org; agerard@uft.org; dalbright@uft.org; croldan@uft.org; msanto@uft.org; ymcowell@uft.org;
d; patia@uft.org; ceaddy@uft.org; imunet@uft.org; rking@uft.org; jgerowitz@uft.org; Capuano
John; aweinstein@uft.org; edriesen@uft.org; usmith@uft.org; wkalogeras@uft.org; mlane@uft.org; vwilson@uft.org; jgoldberg@uft.org; eperez@uft.org; mruiz@uft.org; rfreiser@uft.org; rparker@uft.org; mvaccaro@uft.org; mmanley@uft.org; jkessier@uft.org; jschwartz@uft.org; bmylite@uft.org; tdacruz@uft.org; dsmyth@uft.org; jvasques@uft.org; bzihal@uft.org; wsanchez@uft.org; ckelly@uft.org; dpenny@uft.org; srotkowitz@uft.org; dcappola@uft.org; lkohler@uft.org; rweingarten@aft.org; cfortino@nysutmail.org; Mandel Susan; &00; Fogel Stanley; Salcedo Rosa
(08X519); cbattle@nyutmail.org; dstrom@aft.org; Macek Claudia (11X083); Stewart Regina; Peeples Charles (Human Resources); Robert.Freeman@dos.ny.gov; mpeters@doi.nyc.gov; Richard Condon; RMendez@council.nyc.gov; GetHelp@pubadvocate.nyc.gov; District3@council.nyc.gov; Baranello Joseph; Chancellor Carmen
Fariña; dklein@nysenate.gov; Helen@HelenRosenthal.com; hoylman@nysenate.go; hassellt@nysenate.gov; Lavin Patricia; BKallos@council.nyc.gov; DDromm@council.nyc.gov; sedelman@nypost.com; Panel for Educational
Policy; James@pubadvocate.nyc.gov; MViverito@council.nyc.gov; BdeBlasio@cityhall.gov; ZCarter@law.nyc.gov; Santana Altagracia; Guillaume Lourdes; Weinberg
Phil; hoylman@nysenate.gov; enzo0mad@aol.com;
:; SMorelli@smorellilaw.com; info@1010winsmail.com; KMatthews@ap.org; mezamashi@fci-ny.com; stevecohengdny@gmail.com; mhopf@kingworld.com; lyunaska@kingworld.com; stsoflias@pix11.com; cleibowitz123@yahoo.com; clrodriguez@univision.net; garth@gothamist.com; Lore@siadvance.com; sicb1@si.rr.com; schoolbook@wnyc.org; mara.montalbano@ny1news.com; gtoppo@usatoday.com; michaelholmeswbai@gmail.com; fingtonpost.com; drose@council.nyc.gov; NYSAssembly60@gmail.com; rjackson@council.nyc.gov; vignizio@council.nyc.gov; powellm@nytimes.com; checchi@siadvance.com; michael.chandler@washpost.com; oyaniv@nydailynews.com; addock
Subject: RE: Inquiry for November 25, 2015 for Ms. Salimando and Mr. Barr

Dear Mr. Barr and Ms. Karen Salimando:
I need a response for November 25, 2015 because the Department is required to provide me with an answer for the unlawful employment action taken by Ms. Salimando. Is the Department going to provide me with a new date?  I need a response for October 8, 2015 because agents of the Office

Labor Relations love to commit fraud—anyone want to listen to the recordings?

To Ms. Salimando:
I would like to come and play my recordings of March 23, 2015, April 8, 2015, and January 11, 2016. On said dates, Mr. Drantch lied to ALJ Blassman and as you know, this could be an ethics violation. I hope you do not run from the idea of me playing my recordings.

To Mr. Barr:
I am in receipt of Ad Com decision. You wrote, "The Committee asked to see a copy of the rubric, which you were unable to provide", but I was not asked to furnish a copy. Even though I was asked not to record the proceeding on February 1, 2016, please know without a doubt that I recorded the proceedings for this very reason!
It is not a surprise; Ms. Battle submitted a copy of Mr. Richard Cole' fraudulent rubric as part of her exhibits for a motion to dismiss a PERB. When I spoke to Ms. Dainiels, in the grievance department, a few days prior to February 1, 2016, she and I spoke about the rubric and she made CLEAR references to rubric too.  NEVERTHELESS, Ad Com did not have a copy from the grievance department, Ms. Battle, and NO ONE asked me—interesting.
Mr. Barr, your letter states that my union supports the Department in committing fraud against the members. I would like you to be clear in your statement. Mr. Richard Cole committed fraud and misrepresented the rubric as we spoke on May 28, 2014. As you are aware, there is a recording of May 28, 2014.
The Department suspended a grievance hearing on November 25, 2016 and this is an exact example in the EEOC compliance manual for retaliation. Please let me remind you, the grievance that was suspended was to obtain the identity of the person that put in for a mental exam, and I submitted a ADA claim with the EEOC. PLEASE TAKE NOTICE, the EEOC manual requires a causal connection between the adverse employment action and the claim.
No one from the Union has addressed what occurred to me on November 25, 2015. PLEASE TAKE FURTHER NOTICE, the EEOC compliance manual has an example when a union does not process grievances too.
This is pure retaliation and I keep documenting it by audio recording each person that I come into contact.
Please inform me the way the UFT is going to address November 25, 2015. In addition, please address the reason ALJ allowed Mr. Drantch to lie on March 23, 2015, April 8, 2015, and January 11, 2016. More importantly, please address the reason Ms. Battle, Esq. had an ex parte conversation with ALJ Blassman prior April 8, 2015 because this is an ethics violation for Ms. Battle, Mr. Drantch, and the Vindictive Blassman. Also, the need information about my case because Ms. Battle wasn't dismissed and Mr. Drantch wrote it was dismissed. I do not trust Ms. Blassman's answer becasue she's vindictive and a liar.

Sincerely,
Lucio Celli

**gilpp celli <celliglipp@gmail.com>**

May 10, 2016, 9:03 AM

to me, Steve, Francesco, johnathan, rweingar, dstrom, Jonathan, Jonathan, ablassman, mklien, Catherine, Adam

| | |
|---|---|
| from: | **gilpp celli** <celliglipp@gmail.com> |
| to: | betsy.combier@gmail.com |
| cc: | Steve Morelli <smorelli@smorellilaw.com>, Francesco Portelos <mrportelos@gmail.com>, johnathan hinesley <jhinesley@optonline.net>, rweingar@aft.org, dstrom@aft.org, Jonathan Tand <JTand@smorellilaw.com>, Jonathan Tand <jtand@tandandassociates.com>, ablassman@perb.ny.gov, mklien@perb.ny.gov, Catherine Battle <cbattle@nysutmail.org>, Adam Ross <ARoss@uft.org> |
| date: | May 10, 2016, 9:03 AM |
| subject: | Re: Betsy's post |
| mailed-by: | gmail.com |
| signed-by: | gmail.com |

Dear Ms. Combier:

I have read your post and I will submit my recordings to the federal judge, which you threaten my lawsuit and the obvious lies you tell because I recorded you. You and Mr. Morelli had conversations without me. Mr. Morelli told me that Blassman of PERB has vindictive way. Ms. Blassman of PERB lied about the motion of particularizations, which I recorded.

I have you telling me not to include Ms. Jackson-Chase and I have Ms. Andors (former lawyer for Mr. Morelli) telling me that Mr. Morelli told her not to include DOE lawyers. Then, I have recordings of Ms. Blassman with Mr. Drantch and Ms. Battle. I have all the recordings that I need and I hope YOU, Ms. Combier are ready to be exposed as a liar. This just goes around in a circle .... But, I think

I totally understand and please do not respond to this e-mail.

God bless you Ms. Combier and your ego because you LOVE to speak and you taught me how to record. I appreciate the recording lesson that you provided me
Sent from my iPhone

On Apr 20, 2016, at 9:41 PM, Betsy Combier <betsy. @gmail.com> wrote:

Thank you. You are lying Lucio, and I intend on posting this and all your emails. I dont give legal advice, I am not an attorney. I give my experience and opinion. I think it is time to have a chat about you, Lucio, Francesco, Lydia, and Jonathan, with the District Attorney. I hope all of you have your papers in order!!!

Have a great evening, all!

On Wed, Apr 20, 2016 at 9:33 PM, gilpp celli <celliglipp@gmail.com> wrote:

Dear Mr. Morelli:

Ms. Combier informed me that you provided her with clients to provide legal advice.

Please clarify this statement by Ms. Combier because this would be an ethics charge against you.

I have the recording and I make you hear what Ms. Combier had to say.


Sent from my iPhone

On Apr 20, 2016, at 9:24 PM, gilpp celli <celliglipp@gmail.com> wrote:

Dear Ms. Weingarten:

I think I am ready to let the world hear how Ms. Combier was hired by the UFT. More importantly,  I will let Ms. Combier speak for herself because she told me ....lol god bless Ms. Combier and her ego!

Since Ms. Combier is a liar and I have it documented, I should put in the FOIL request that Ms. Combier told me about first because I have to verify what she said to me.


Thanks,


Sent from my iPhone

On Apr 20, 2016, at 9:19 PM, gilpp celli <celliglipp@gmail.com> wrote:

Dear Ms. Combier:

There is a cancelled check that I paid you and for what reason, but thank you for this email.

I hope this person also told you that I sent out a recording of you, as well. I never said that I would destroy the doe, which is a pure lie by whomever told you that information. More importantly, I never said that I would destroy you. I wrote "God bless Betsy Combier and her ego because she LOVES to speak." To my knowledge, I did not bad mouth you on my NYC DOE email.


Unlike you, I am not a liar and I have recordings to prove what you said to me and that you are a liar!

I have you recorded and you threatened my lawsuit in writing and in a recordings.

I appreciate the information that you. It is my current understanding that you lied on your Federal income tax return--- you forgot an email you sent me and what you said over the phone.

Again, I do not need for you to respond to this e-mail because I do not want anything to do with you. I wish you the best at your evil deeds to harm your clients!


Thanks,
Lucio Celli


Sent from my iPhone

On Apr 20, 2016, at 7:36 PM, Betsy Combier <betsy.combier@gmail.com> wrote:

Dear Lucio,

Huh? you make no sense. I never charged you, you never hired me and I am not an attorney. You asked me to edit some papers, which I did for free, and you gifted me. I reported your gift to the IRS when I did my taxes and thanked you. Then you told me and 100+ people how you are going to destroy the DOE and hurt everyone, including me,  calling me an evil fucking cunt to extort money from me?

No good deed goes unpunished, I guess.

Betsy


On Wed, Apr 20, 2016 at 4:54 PM, gilpp celli <celliglipp@gmail.com> wrote:
Dear Ms. Combier:

I informed you months ago that I need a receipt. Please send me a letter that I paid you to be my paralegal:

2743 Seymour Avenue
Bronx, New York 10469

If I do not receive a receipt from you, I will inform the IRS of your refusal.

I prefer that you do not answer this e-mail and just send a letter with an invoice. If you do not, I will provide the IRS the e-mails and recordings to proof that I paid you and the type of work you did for me. Then, this would become the IRS' problem.


Thanks,
Lucio

**gilpp celli <celliglipp@gmail.com>**                                   Wed, Jan 20, 2016, 8:15 AM

to Francesco, me

**gilpp celli** <celliglipp@gmail.com>

              to:   Betsy Combier
                        <betsy.combier@gmail.com>,
                        rweingar@aft.org,
                        Jackson-Chase Courtenaye
                        <CJackson-
                        Chase@schools.nyc.gov>,
                        Francesco Portelos
                        <mrportelos@gmail.com>,
                        dstrom@aft.org

          date:   Jan 20, 2016, 8:52 AM

    subject:   Fwd: Recording

Fran

I think we NEED to teach Betsy a lesson now... We are going to post that mother fucker

**gilpp celli <celliglipp@gmail.com>**
to rweingar, Jackson-Chase, Francesco, dstrom, me

Here is a recording and I informed Francesco that we need to post became Betsy's unwilling victims need to be warned.

On one recording Betsy asked me, "are you recording me?"

As I told Betsy, I hope she has prove for what she told me.

**Francesco Portelos <mrportelos@gmail.com>**                         Wed, Jan 20, 2016, 7:30 PM

to gilpp, me

Yeah this won't go well. She still left her defamatory and libelous posts up on her sites.

With every UFT member and parent who asks me "What about Betsy?" and I respond "There are better people to use than Betsy." I have some solace knowing that's money out of her pocket. A lot of money.

Francesco A. Portelos
Educator
www.EducatorFightsBack.org

UFT Presidential Candidate 2016
www.UFT2016.com

UFT Solidarity Caucus
www.UFTsolidarity.org

Don't Tread on Educators
www.DTOE.org

ATR Alliance
www.atralliance.org

www.mrportelos.com

"The foundation of every state is the education of its youth." -

Greek Philosopher Diogenes

**gilpp celli <celliglipp@gmail.com>**                    Jan 23,
                                                          2016, 5:17
                                                          AM

to Francesco, me

Betsy,

You're so childish... I can't wait for Fran to post and share the true Betsy.

**Laurie Luft <lauriel516@aol.com>**                    Fri, Jan 22,
                                                         2016, 2:21 PM

to me

I deleted lucio off of my page and unfriended him. If he asks why, I will say, "why do you think?"

**gilpp celli <celliglipp@gmail.com>**                    Sat, Jan 23,
                                                          2016, 5:22 PM

to Francesco, me

Fran,

I was thrown out of ATR support group because of Betsy. Someone showed me the messages. Betsy didn't say how she owes me money, lied to my lawyer, libelous statements in her blog, etc

Another harm

**Francesco Portelos  <mrportelos@gmail.com>**                   Sun, Jan 24,
                                                                 2016, 9:54 AM

to gilpp, me

Many are reporting the ill politics in Laurie's group. It's more about Laurie than it is about ATR issues. Good job
Betsy. How's business?

**gilpp celli  <celliglipp@gmail.com>**                          Sun, Jan 24,
                                                                 2016, 3:50 PM

to Francesco, me

This is making Betsy mad .... 🐵😭😭😂😂 . I'll tell you in private how I know Fran
and she worried about the recordings too

And I didn't say what's on one of them... I should tell Randi and she won't like it either 😂😂

 but we'd like it

On Wed, Dec 30, 2015 at 2:49 PM, Lucio <enzo0mad@aol.com> wrote:
Dear Ms. Combier:

Where is my money? You took and did not render services. I have many damaging recordings where you
speak many different topics like Ms. Jackson-Chase

**Betsy Combier  <betsy.combier@gmail.com>**                     Nov 9, 2015,
                                                                 10:02 PM

to Lucio, me

Dear Mr. Celli,

I could not possibly have ever told you that I do not work with attorneys on lawsuits, as I have been hired by
law firms for 5 years and have been assisting these lawyers in state and federal courts. I told you that when
someone hires an Attorney and NOT me, I dont step in and comment on what the lawyer does.

Indeed, when I was hired to work with Steve, I told you how excited I was, and that if you needed anything to let
me know, I would let Steve know that I knew you. The next time you called, you were screaming that Steve did
not know what he was doing, and was not serving your lawsuit, and you wanted it served. I told you to trust

Steve, a well-known and experienced attorney. You would not listen. Then you told me that you served the lawsuit yourself, despite the fact that evidently your lawsuit was served by Steve's firm. Crazy.

Nothing, absolutely nothing in your email is true except for the fact that I have been assisting you for many months and speaking with you whenever you call me, however late or early in the morning it is. All I remember about your sending me and Harvey something to edit is that you gave me no time at all to respond, and now you are attacking me.

You are confused, and you must stop lying about people. You are hurting yourself and everyone else. I will discuss your email privately with Steve and tell him what I did/did not do.

**Lucio <enzo0mad@aol.com>**                                                 Nov 9, 2015,
                                                                            10:26 PM

to Steve, me

Dear Ms. Combier,

Since July/August, I started to not trust you, but I thought I was being paranoid.

Let me put you on notice as to not malign my name with your fabricated story of the truth! I recorded you speaking disparagingly about Mr. Morelli on 10/13 and it was 15:10 min recording.  I have to check the others. I  informed him and offered to send him the recording! In addition, I cc'ed him on this email because I will not tolerate lies about me! Who is crazy or not in reality now-- I'm the one with your statements! Pow booboo, pow!

This is your only notice to stop your lies or I will have to take action! I am happy that you wrote are lies! Please make sure whatever you tell or told Mr. Morelli is the truth-I hope I make myself clear!
Please refund me my money, thanks!
Address is
2743 Seymour Ave
Bronx, New York 10460

Thanks,
Mr. Celli

Sent from my iPhone

**Lucio <enzo0mad@aol.com>**                                                 Nov 9, 2015,
                                                                            10:31 PM

to me, Steve

Betsy

He will love your comments about how he screwed up on Mavis.

He will love your comments and threats about Francesco.

Stop your lies and give me my money or I will report you to the DA for giving me legal advice and you have not passed the bar exam!!

Sent from my iPhone

**Lucio <enzo0mad@aol.com>**                              Nov 9, 2015,
                                                          10:36 PM

to me

You are the liar and don't you ever call me a liar.
When I can you on tape and your email doesn't match what you said.

Sent from my iPhone

**Steve Morelli <SMorelli@smorellilaw.com>**             Nov 9, 2015,
                                                          10:37 PM

to Lucio, me

Lucio, let's just move forward. Let's just win your case.

Sent from my iPhone

**Lucio <enzo0mad@aol.com>**                              Nov 9, 2015,
                                                          10:40 PM

to Steve, me

You have a lot of nerve to portray me as crazy or that I lied.

How does it feel to be caught in a lie? The people that you told me that hate you--I have you recorded saying this, they are collecting information to give to the DA. Let me be the first one to provide you with that notice. I was on your side until today but I don't want anything to do with you because NO ONE will portray me as liar or destroy my character when I have he proof!
Sent from my iPhone



**Betsy Combier <betsy.combier@gmail.com>**              Nov 9, 2015,
                                                          10:49 PM

to Lucio, me

Move forward, Lucio, as Steve said. Good luck. Anything that is said or done will be met with the appropriate response in the proper forum, online and off.



**Betsy Combier <betsy.combier@gmail.com>**                     Nov 10, 2015, 2:24 AM

to me

**Lucio <enzo0mad@aol.com>**                                   May 22, 2016, 1:08 PM

to me

Please read below... As I prepare my recordings for the Judge and statement in anticipation for your blog post

What you told me on Oct 13, 2015 does not match what you wrote in this email.

You have written libelous statements to harass and intimidate me because of my association with Francesco Portelos.

In a phone recording of about 16 minutes, you threatened to harm anyone that is associated with Francesco.

My lawyer has committed legal malpractice in various ways and has lied about knowing you. Your threat and your business so association is an ethics violation. Morelli blamed Blassman for vindictive ways on Oct 14, 2015. Or it could be your business relationship because you said that you'll stop at nothing

Your posting my status is homophobic or being homophobe... You know that but I cannot stop you from being evil

Please do not respond

Sent from my iPhone

Begin forwarded message:

**From:** Betsy Combier <betsy.combier@gmail.com>
**Date:** November 9, 2015 at 10:02:07 PM EST
**To:** Lucio <enzo0mad@aol.com>, Betsy Combier <betsy.combier@gmail.com>
**Subject: Re: moving forward**

**Betsy Combier <betsy.combier@gmail.com>**                    May 22, 2016, 1:33 PM

to Lucio, me

Thank you, Lucio. For clarifying once again your incapacity as far as understanding facts, as opposed to hallucinations. You never hired me. I edited your PERB complaint and that is what I did, for free, as a friend. When I am hired by anyone, I have a written statement/agreement to that hiring. We never did a written agreement because you never hired me and I never demanded money or that you sign anything. Please send me the "hiring" agreement, if you believe that I am lying.

And yes, I will be using your most recent emails for my blogs and website. I have no contact with Ms. Blassman, and your threats to me about harming your lawsuit are so outrageous. As you know, you did not ask the Judge in your federal case to seal your Complaint papers about your HIV+ status. I did not breach any confidential information guidelines at any time. And you told me way before you filed the lawsuit that you were HIV+, and you sent me docs with your social security #, and I never revealed anything until you put your Complaint into the public domain. In my opinion, the only people you are harming are yourself and anyone who supports you.

I have the right to write about facts, my opinion, and accountability. This is what I will continue to do.

**Lucio <enzo0mad@aol.com>**                                   May 22, 2016, 1:38 PM

to me

I have the recording Betsy and Morelli didn't tell me because in my opinion, you had this plan to post t

Sent from my iPhone

**Lucio <enzo0mad@aol.com>**                                   May 22, 2016, 1:39 PM

to me

You edited my federal complaint but thanks for lying ... I'll forward it to you

Sent from my iPhone

**Lucio <enzo0mad@aol.com>**                                   May 22, 2016, 2:03 PM

to me

You wrote that I gave you a gift ... You wrote hired

Sent from my iPhone



**Betsy Combier <betsy.combier@gmail.com>**                    May 22,
                                                              2016, 2:47
                                                                 PM

to Lucio, me

you never hired me! There is no invoice for services, or signed anything, which would have to happened for me
to be "hired".

**Lucio <enzo0mad@aol.com>**                                   May 22,
                                                              2016, 4:01
                                                                 PM

to me

Betsy you wrote hired and then changed to a gift --- evidence and words---I believe that you changed it from
me hiring you to gift because you didn't want to declare it, in my opinion.

According to your websites, you're an advocate and a paralegal, but I don't see proofreader. I paid you and a
few days later you helped me with my complaint.

Please stop emailing me

**Mike Schwartz** **<notification+zzd=zriz@facebookmail.com>**
Sep 24,
2016, 7:38
PM

to Fed

Mike Schwartz commented on Heather Rey's post in Fed Up & Pissed Off Retired UFT
Teachers.

> **Mike Schwartz**                                                    7:31pm Sep 2
>
> Love that Mavis Shein, thanks. It matters not who am I but it's clear who you are, a
> bully but when confronted I bet you'll pee your pants...

Comment History

> **Lucio Celli**                                                      7:32pm Sep 24
>
> Like phone calls... DA

> **Mike Schwartz**                                                    7:35pm Sep 24
>
> 3 sides and i recordings, if you mean 1 recording than it it's not plural. There you go
> again with the letters, LMAO, what is DA, why don't you just be a man and say what
> you want instead of writing things that I have no clue about therefore cannot respond
> to it !!!!

> **Peter Zucker**                                                     7:35pm Sep 24
>
> Lucio have you completely lost it? Funny how both you and Mavis both rail against a
> bully yet both of you drink the Kool-Aid of a bully.

> **Peter Zucker**                                                     7:38pm Sep 24
>
> Lucio you are completely fucking paranoid to think I or Betsy is Mike Schwartz. Is it you
> think Jews only capable of hiding behind Jewish pseudonyms? You must think Jews are
> not very creative. Please, get the help you so desperately need.

> **Mike Schwartz**                                                    7:38pm Sep 24
>
> Love that Mavis Shein, thanks. It matters not who am I but it's clear who you are, a
> bully but when confronted I bet you'll pee your pants...

Original Post

**Lucio Celli <notification+zzd=zriz@facebookmail.com>**               Sep 24, 2016, 7:47 PM

to Fed

Lucio Celli commented on Heather Rey's post in Fed Up & Pissed Off Retired UFT Teachers.

**Lucio Celli**                                                        7:42pm Sep 2

I like recordings... Please see the edit

Comment History

**Mike Schwartz**                                                     7:42pm Sep 24

You never said that ??? I think the BC & PZ & DA are people you think I am so you are saying it !!!!

**Peter Zucker**                                                      7:43pm Sep 24

Get help Lucio break free of your owner/master/Sith Lord. Stop being someone's little bitch.

**Lucio Celli**                                                       7:43pm Sep 24

Peter Zucker those are letters like the butt dial and your comment of DA

**Mike Schwartz**                                                     7:44pm Sep 24

Lucio you are completely out of your tree.

**Peter Zucker**                                                      7:46pm Sep 24

Lucio cut the shit. Become an independent thinker. Be a man!!!

From: Lucio Celli <enzo0mad@aol.com>
Date: Mon, Dec 11, 2017 at 12:38 PM
Subject: Re: Grievance and 12/13 Abs
To: "lcelli@schools.nyc.gov", "ksolimando@schools.nyc.gov",
"HFriedman@schools.nyc.gov", "FFriedman@schools.nyc.gov"
Cc: "lcelli@schools.nyc.gov",
"KSolimando@schools.nyc.gov", "RadziviloverElenor <EBadziv@schools.nyc.gov>, "Kittrell Robin
<RKittrell@schools.nyc.gov>, "Jbaranello3@schools.nyc.gov", "JBaranello3@schools.nyc.gov",
"aross@uft.org", "aross@uft.org", "ablassman@perb.ny.gov", "ablassman@perb.ny.gov",
"jwirenius@perb.ny.gov", "jwirenius@perb.ny.gov", "mpeters@dol.nyc.gov", "mpeters@dol.nyc.gov",
Chacon Geneal <GChacon@schools.nyc.gov>, Carmignani Isaac <ICarmignani@schools.nyc.gov>,
Calandrella Peter <PCalandrella@schools.nyc.gov>, "Chapman April (PEP)" <AChapman7@schools.nyc.gov>,
Dillingham Deborah <DDillingham@schools.nyc.gov>, Cleveland Elzora <ECleveland@schools.nyc.gov>,
Leung Vanessa <VLeung@schools.nyc.gov>, Linnen Gary <GLinnen@schools.nyc.gov>, Podvesker Lori
<LPodvesker@schools.nyc.gov>, Soto Stephanie <SSoto13@schools.nyc.gov>, Shuldiner Ben
<BShuldiner@schools.nyc.gov>, "MZorrillaAnslv@schools.nyc.gov", "MZorrillaAnslv@schools.nyc.gov",
"zcarter@law.nyc.gov", "zcarter@law.nyc.gov", "cicero3@schools.nyc.gov", "cicero3@schools.nyc.gov"
<dstrom@aft.org>, "Rodi Katherine G.", <KRodi@schools.nyc.gov>, "dstrom@aft.org"
<CCicero3@schools.nyc.gov>, Mandel Susan <SMandel@schools.nyc.gov>, "matkinson@uft.org"
<matkinson@uft.org>, "robert.freeman@dos.ny.gov", "robert.freeman@dos.ny.gov"
<kristin.oneill@dos.ny.gov>, "kristin.oneill@dos.ny.gov", "dmazzola@uft.org", "dmazzola@uft.org"
"jdevito@schools.nyc.gov", "jdevito@schools.nyc.gov", "jluft@schools.nyc.gov", "jluft@schools.nyc.gov",
"sedelman@nypost.com" <sedelman@nypost.com>, Caldwell Colin <CCaldwell@schools.nyc.gov>,
"sedelman@nypost.com"

Dear Ms. Atkinson, Mr. Friedman, Ms. Rodi, and Mr. Caldwell

Attached is my 3rd grievance. In the grievance if I will explain why I cannot appear at 100 Gold Street because
Stg Ishmael and Set. Frias physically threatened me if I came within 5 block radius of chancellor's office. I am
not afraid of being arrested but I am afraid of being physically harmed by them. I had to make a few phone calls
to find out where they work and how to file a complaint against them

*My absence is not by choice but due to a physical threat made to me by
chancellor farina via Stg Ishmael and Det Frias. Being arrested does not bother
me...been there and done that...being physically harmed and the threat of being
denied by meds is just beyond*

**I will be back to work on 12/14—I still can't believe they said that the chancellor
does not care about the safety of the kids so leave her alone..tsk, tsk, tsk!!!**

If Mr. Caldwell is fine with me overnighting and emailing the documents to him on 12/13, then I will not be
absent. But, I took Stg Ishmael's and Det. Frias' physical threat seriously.

Please inform of your decision Mr. Caldwell. I have follow what you say but I have to protect me physically too.



## STEP ONE GRIEVANCE

**Case Number:**

**Name of Grievant: Lucio Celli**

**Title: Teacher**

**File Number: 765918**

**School: 08X519**                          **District: 8**

**File Date: November 30, 2017**

To Chancellor Carmen Farina and Mr. Friedman:
(Principal's Name)

Pursuant to the procedures set forth in Articles 2 (**Union Busting**), 20, (**Matters not covered**), 21 (**Due Process and Review Procedures**), and 22 (**Grievance Procedures**), of the Collective
Bargaining Agreement covering <u>teachers</u> please arrange a conference with me to discuss the following complaint:
Chancellor Farina (representative rather) ,

I recieved a visit from a Sgt. Ishmael and Det. Frias on 12/5. My complaint is the following:
1 The police officers did not show me any idenificaiton and it does not say their address in the visitor's book
2 I called the Bronx Da and they told me how to find out because the cops told me not to appear within a 5 block radius of Chancellor Farina's Office and I have to appear at 100 Gold street on 12/13. I will call out sick and filling a grievance because I do not want to be physically harmed by anyone
3 The officers did not tell me where they were coming from (office, etc)..they just said around
4 They said Chancellor Farina made a complaint. I never threatened the lady. I just addressed her in emails and at a public meeting about how IEPs were being written based on the school's budget and how she ignored my audio recordings (I audio record ALL the time) of an AP smoking weed and getting a student a hotel room
  ° They said it is not the chancellor's job to deal with misconduct of her employees
  ° Leave her alone about these issues

- ○ She does not care about the safety of the students
- ○ Do not appear at NYC DOE PEP meetings
- ○ The real issue is http://www.nycsci.org/public/Reporting%20Obligations.pdf my complaints and numerous emails is the chancellor's and PEP's obligation to report to SCI and the public would not the evidence and facts I have to present to the public
- ○ From a search, I would need to visit farina at her house or threaten her physically—I was never at house (I don't even know where she lives) and I never threatened the lady physically. My threats are to exposure her for not maintaining the safety of the students, WHICH is her job. The teacher who I have audio recorded, she received an 8-month suspension for 1,200 text messages and I had her confession....

○

2 I do not care about being arrested but the Sgt and the Det said the threats
- ○        If we come back there could be an accident on the way to the tombs
- ○        Cops cannot always watch you, as you are in the tombs
- ○        You may not get your HIV meds for days (quoting my emails to the Chancellor)
3 I've been arrested before so I understand the process and I am not afraid of it, but I am afraid of being physically harmed

I do not feel safe and I have audio recordings
Mr. Lucio Celli This is the true reason for the cops showing up…

http://www.nycsci.org/public/Reporting%20Obligations.pdf

I only clicked on the site because someone sent me the pep video and I click on the link to see what obligation is owed. I did not know this, but I do know

**This is what is being covered up and why they want me to shut up—because the educator got a hotel room**: (g) Every employee and officer of the DOE has an affirmative obligation to report immediately to his/her principal/supervisor and the Special Commissioner of Investigation any information concerning sexual misconduct involving students by DOE officers, employees, or others connected with school programs or services, such as volunteers. This obligation extends to sexual misconduct on and off school premises. The principal/supervisor must contact the student's parent.

# WOW …the Chancellor is not afraid…I know no one is afraid of me, especially… I am the only person who is physically afraid of Farina

I **WILL NOT** be in attendance on 12/13/17 at 100 Gold Street because this place is within the 5-block radius of Farina's office. Stg Ishmael and Det Frias threatened me physically if I appeared anyway near her, a public meeting, or near her office. I will not go to 3450 Treamont either because I have a letter that states to report to 100 Gold Street. I cannot report to a place that Stg Ishmeal and Det Frias physically threatened me not to appear. I can deal with being arrested because I've been through that process, but I do not want to be physically harmed.

If I am given any documents that Mr. Caldwell stated in the letter, I will overnight them and sent them via email...but I cannot appear where Stg. Ishmael and Det. Frias physically threatened me because then this is a setup by Chancellor Farina...Plus, I gave my word to the criminals and I **made a complaint about what they said to me.**

**Legal conclusions**

Statute: Public Employees' Fair Employment Act, N.Y. Civ. Serv. Law §§200-214 Focus: CSL §209-a Improper Practice Provisions

Controlling Proposition: If speech in any form (verbal, printed, demonstrative, symbolic) is concerted and protected, it cannot be the basis for any adverse employment action and cannot be subjected to unilaterally imposed employer prohibitions or restrictions. Facts of case can be important as to whether speech is protected. Issues arise in a variety of contexts, most often disciplinary.

**Plainedge Public Schools**, 13 PERB ¶3037 (1980)
Union representative who publicly criticized school principal's pupil promotion and retention policy protected even though comments were inaccurate and an exaggeration. Employees do not lose Act's protection merely because statements are inaccurate or disturbing to an employer. Protected unless statements are intentionally false or malicious. Reference to is loyalty concepts. Summoning employee to principal's office to explain comments was improper interference with employee's protected rights. **Please Take Notice**, I went to PEP to publicly criticize the Chancellor for having Principal Terrell harass me and postdate documents but did not have the time send anyone to talk to me about the teacher who smoke weed or Drantch

**Staten Island Rapid Transit Operating Auth.**, 28 PERB ¶3080 (1995) Employees have a protected right to discuss employment issues while at work so long as communication does not disrupt work. No policy, rule or practice of an employer can interfere with that protected right of communication. **Please Take Notice**, Chancellor sent the police BECAUSE of the grievance of the DoE took away my email. They looked for another legal way

IF what is stated in http://ypdcrime.com/penal.law/article240.htm#p240.25, is true, then I was required to inform the Chancellor and PEP, as it also states in obligations in http://www.nycsci.org/public/Reporting%20Obligations.pdf, I was not harassing the Chancellor—but she used her position to silence me...I'm glad that I audio record everything. Also, if the Taylor is alike to NRLB, then I

should be within my limits. But, I am afraid that Chancellor Farina will have Det. Frias and Stg. Ishmael physically harm me and that's the true reason I did not say arrest me because I've been arrested and I am not afraid of that but I am afraid of being harmed...**are they part of the School Safety police or the mafia?**

**Articles Violated: Article 20, Article 21, Article 22, and Article 2**

**Remedy Sought: To be made whole in every sense of the term.**

**Not appear anywhere and within a 5-block radius of the Chancellor's office because she had Stg Ishmael and Det. Frias physical threaten me, as Farina feels threatened of exposure of not doing her job.**

**To get back the day that I will miss on 12/13 because my absence is not by choice but due to a physical threat made to me by chancellor farina via Stg Ishmael and Det Frias**

Sincerely,
_____ (Signature)
Lucio Celli
2743 Seymour Avenue
Bronx, New York 10469
718-547-9675

E.D.N.Y.–Bklyn
15-cv-3679
Cogan, J.
Bloom, M.J.

# United States Court of Appeals
### FOR THE
## SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of November, two thousand seventeen.

Present:

Jon O. Newman,
José A. Cabranes,
                    *Circuit Judges,*
Robert N. Chatigny,
                    *District Judge.*\*

---

Lucio Celli,

                    *Plaintiff-Appellant,*

        v.                                                    17-234

Mr. Richard Cole, in his official and individual capacity, et al.,

                    *Defendants-Appellees.*

---

We find that the imposition of a leave-to-file sanction is appropriate, in light of Appellant's litigation history.

By order filed November 1, 2017, this Court directed Appellant to show cause why a leave-to-file sanction should not be imposed. *See* 2d Cir. 17-234, doc. 80. Appellant timely responded to the order to show cause. Upon due consideration, because Appellant has failed to show cause why a leave-to-file sanction should not be imposed, it is hereby ORDERED that the Clerk of the Court

---

\* Judge Robert N. Chatingy, of the United States District Court for the District of Connecticut, sitting by designation.

refuse to accept for filing from the Appellant any future appeal, motion, or other papers unless he first obtains leave of the Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

2

# EXHIBIT C

## Opposition To Motion To Dismiss

## By Bryan Glass and Jordan Harlow

# BRUCE A. YOUNG

*Attorney and Counselor at Law*
*100 Church Street, Suite 800*
*New York, New York 10007*
*Phone: 646-775-8994 / Fax: 646-405-0169*
*Email: BruceAYoung181@gmail.com*
*Web: BruceAYoungEsq.Com*

July 5, 2017

Richard A. Luthmann, Esq., LL.M.
Luthmann Law Firm, PLLC
1811 Victory Boulevard
Staten Island, NY 10314
Tel: 718-447-0003/Fax: 347-252-0254 rluthmann@luthmannfirm.com

RE:    Combier v. Portelos et al.
       USDC - EDNY 17 Civ. 2239 (FB)(RLM)

Dear Mr. Luthmann:

Our olive branch of resolution is now and continues to be made in good faith.

There is a window of opportunity for a resolution of this matter with my clients' Mr. Glass and Mr. Harlow with your client Combier. We have no control over any of the other defendants.

Perhaps our resolution will serve as a model for your independent resolution with them. Regardless, we offer the attached proposed settlement agreement; to end all disputes between your client and Mr. Glass and Mr. Harlow. By this agreement, Bryan Glass and Jordan Harlow and Elizabeth Combier agree to cease and desist from any defamatory remarks about each other in any way. In short, this is a "live and let live" settlement agreement that you and I have discussed.

We extend this offer until Monday, July 10, 2017 to respond and for your client to accept or reject the agreement.

If we do not have a preliminary agreement by this deadline, Mr. Glass and Mr. Harlow intend to move vigorously in opposition to dismiss in its entirety, your Amended Complaint and for sanctions against you and your client under Rule 11 for bringing a frivolous suit.

Additionally, the timing for response was fixed based upon your unauthorized ECF posting of the Waiver of Service on behalf of Mr. Glass and Mr. Harlow. We did not mutually agree to the date or manner in which you posted, nor were any defenses waived.

Despite this misconduct and these irregularities we still seek and believe that all sides can and should make a workable resolution to resolve this matter and I await your response.

Sincerely yours,

Bruce A. Young

cc:    FileGlass-Luthmann-7-5-17.Ltr

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---

ELIZABETH "BETSY" COMBIER,

                               Plaintiff,                        17-CV-02239 (FB) (RLM)

      -against-

FRANCESCO PORTELOS, LUCIO CELLI, BRYAN GLASS,      SETTLEMENT AGREEMENT AND
    ESQ., JORDAN HARLOW, ESQ., NEW YORK CITY         GENERAL RELEASE
    DEPARTMENT OF EDUCATION, CARMEN FARINA,
    CHANCELLOR OF THE NEW YORK CITY
    DEPARTMENT OF EDUCATION, all sued individually
    and officially,

                             Defendants.

---

      This Settlement Agreement and General Release (the "Settlement Agreement") is made as of the date of execution of this Settlement Agreement, by and between Elizabeth Combier ("Combier"), and Bryan D. Glass  ("Glass") and Jordan F. Harlow ("Harlow"), collectively referred to as the "Parties."

      WHEREAS:

           A.      Combier instituted the above-captioned federal action against Glass and Harlow, among other defendants;

           B.      In the Amended Complaint in the federal action, Combier alleged that Glass and Harlow engaged in a violation of 42 U.S.C. 1983, as well as engaged in false light invasion of privacy, defamation and libel per se, intentional infliction of emotional distress, negligent supervision, deprivation of rights under color of law, injurious falsehood, libel, defamatory injury to reputation, and tortious interference with business prospects;

           C.      Glass and Harlow have denied and continue to deny each and every allegation set forth in the Amended Complaint, and deny having violated any law or regulation, or having committed any wrong or causing any injury to Combier; and intend to commence counterclaims and/or a separate action against Combier for, inter alia, defamation and tortious interference with business relations should this action continue;

D.    The parties desire to settle fully and finally any and all differences between Combier and Glass and Harlow including, but not limited to, Combier's allegations contained in the Amended Complaint, all of which Glass and Harlow deny.

NOW, THEREFORE, IT IS AGREED THAT:

**1. Definitions**

1.1    All references to Combier include her predecessors, successors, heirs, executors, receivers, administrators, estates, assigns, agents, servants, employees, and representatives.

1.2    All references to Glass include his predecessors, successors, heirs, executors, receivers, administrators, estates, assigns, agents, servants, employees, and representatives.

1.3 All references to Harlow include his predecessors, successors, heirs, executors, receivers, administrators, estates, assigns, agents, servants, employees, and representatives.

**2. Discontinuance of Action and Mutual Releases**

2.1    Combier, in consideration of a mutual non-disparagement agreement between the parties and pursuant to this Settlement Agreement, releases and forever discharges Glass and Harlow (hereinafter collectively referred to as "Releasees"), from all actions, causes of action, claims, and demands whatsoever, whether known or unknown in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any and all claims of breach of contract, any and all claims for equitable estoppel, any and all claims for alleged violations of 42 U.S.C. 1983, any and all claims for false light invasion of privacy, defamation and libel per se, intentional infliction of emotional distress, negligent supervision, deprivation of rights under color of law, injurious falsehood, libel, defamatory injury to reputation, and tortious interference with business prospects, and any claim for attorneys' fees, experts' fees, disbursements or costs; which against the Releasees, Combier, Combier's heirs, executors, administrators, or assigns ever had, now have, or hereafter may have, by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date of Combier's execution of this Settlement Agreement.

2.2    Combier represents and warrants that Combier has never commenced or filed, and Combier covenants and agrees never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted any such claims or actions against the Releasees or any of them.

3.    **Confidentiality**

Combier shall keep the terms and fact of this Settlement Agreement confidential, and shall not hereafter disclose any information concerning this Settlement Agreement or the Amended Complaint to any person, firm, corporation, governmental agency, or other entity, without the prior written consent of Glass or Harlow. This prohibition does not apply to any filing or related communication with any federal, state, or local taxing authority or to comply with any lawfully issued subpoena.

4.    **Mutual Non-Disparagement**

4.1. The parties agree, warrant, and represent that Combier, Glass and Harlow will not publish, post or disclose facts relating to or disparage, denigrate, or otherwise demean Combier or any of the Releasees, or their business, operations, personnel, policies or procedures, to any person, firm, corporation, governmental agency, or other entity, including making any such posting on any social media outlet. The parties agree that all references to the other on any blog post or electronic medium will be immediately removed upon execution of this agreement

4.2 Any violation of this mutual non-disparagement clause, including communications, whether oral or in writing, to any person, firm, corporation, governmental agency, or other entity, including making any such posting on any social media outlet, will result in payment of $1,500.00 to Glass and Harlow separately and individually.

5.    **Breach of Agreement**

5.1    The parties agree to indemnify and hold harmless the other from and against any and all direct and indirect loss, cost, damage, or expense, including, but not limited to, attorneys' fees, incurred by the other, or any of them, arising out of any breach by the other of this Settlement Agreement.

6.    **Entire Agreement**

6.1    This Settlement Agreement sets forth the entire Settlement Agreement between the parties hereto, fully supersede any and all prior Settlement Agreements or understandings between the parties hereto, and may not be modified orally.

6.2    Should any provision of this Settlement Agreement be declared or determined by a court to be illegal or invalid, the validity of the remaining provisions shall not be affected thereby and said illegal or invalid provision shall be deemed not to be a part of this Settlement Agreement.

7.    **Governing Law**

This Settlement Agreement shall be deemed to have been made in New York, New York, and shall be interpreted, construed, and enforced pursuant to the laws of the State of New York, without giving effect to its conflict or choice of law principles.

8.    **No Admission of Fault**

This Settlement Agreement shall not in any way be construed as an admission by each or any of the parties of any liability.

**9.    Counterparts**

This Agreement may be executed in counterparts, each of which constitutes an original, all of which constitute one and the same Agreement. Signatures delivered by facsimile transmission or as .pdf attachments to emails shall constitute acceptable, binding signatures for purposes of this Agreement.

10.    **Other Provisions**

Notwithstanding any other provision of this Settlement Agreement to the contrary:

(a) The Parties (Combier, Glass, and Harlow) agree that, by entering into this Settlement Agreement, Combier, Glass and Harlow do not waive rights or claims that may arise after the date this Settlement Agreement is executed.

(b) The Parties further agree that Combier knowingly and voluntarily waives all rights or claims (that arose prior to Combier's execution of this Settlement Agreement) Combier may have against the Releasees, or any of them, to receive any benefit or remedial relief of any litigation concerning any facts alleged in any such charge.

© The parties each agree that, for a period of seven (7) days following the execution of this Settlement Agreement, Combier has the right to revoke this Settlement Agreement by providing written notice to Bryan D. Glass and Jordan F. Harlow, Esq.'s, Glass Krakower LLP, 100 Church Street, Suite 800, New York, New York 10007. The Parties further agree that this Settlement Agreement shall not become effective or enforceable until the eighth (8th) day after the execution of this Settlement Agreement; and that in the event Combier revokes this Settlement Agreement prior to the eighth (8th) day after the execution of this Settlement Agreement, this Settlement Agreement, and the promises contained in this Settlement Agreement, shall automatically be deemed null and void.

(d) Glass and Harlow hereby advises and urges Combier in writing to consult with an attorney prior to executing this Settlement Agreement.

11. COMBIER EXPRESSLY ACKNOWLEDGES, REPRESENTS, AND WARRANTS THAT COMBIER HAS CAREFULLY READ THIS SETTLEMENT AGREEMENT; THAT COMBIER FULLY UNDERSTANDS THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS SETTLEMENT AGREEMENT; THAT COMBIER HAS HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS SETTLEMENT AGREEMENT; THAT GLASS AND HARLOW HAVE ADVISED AND URGED COMBIER TO CONSULT WITH AN ATTORNEY CONCERNING THIS SETTLEMENT AGREEMENT; THAT COMBIER HAS HAD A FULL OPPORTUNITY TO REVIEW THIS SETTLEMENT AGREEMENT WITH AN ATTORNEY, AND HAS DONE SO; AND THAT COMBIER HAS EXECUTED THIS SETTLEMENT AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH SUCH ADVICE FROM HER ATTORNEY, THE LAW FIRM RICHARD A. LUTHMANN, AS COMBIER DEEMED APPROPRIATE.

BY:


_____    _____    _____

ELIZABETH COMBIER          BRYAN D. GLASS              JORDAN F. HARLOW

-5-

Thursday, October 6, 2016

## Teacher's Lawyer helps another teacher get their job back



Middle school gossip should not be permitted to ruin a 13 year stellar career. In a 3020-a hearing, an arbitrator terminated a 13 year physical education teacher, despite the DOE's poor evidence. The teacher retained our firm and we filed an Article 75 to vacate his termination. Justice was delayed, but finally served.  Our firm was able to argue for the teacher and the Supreme Court of New York County reversed the arbitrator's decision. Bryan D. Glass, Esq. and Jordan F. Harlow. Esq.

The court's decision states:

*"Based on all the circumstances of the case, including the lack of any prior allegations of misconduct against petitioner during 13 years of service and the fact that the misconduct does not violate any specific rule or regulation, we find the penalty of termination sufficiently disproportionate to the offenses to shock the conscience (see Lackow v Department of Educ. [or "Board"] of City of N.Y., 51 AD3d 563, 569 [1st Dept 2008])."*

If you, or someone you know, was terminated or fined, or is need of representation at a 3020-a hearing, please fill out the form on our website www.ghnylaw.com

.

# IS FILING A FALSE POLICE REPORT A CRIME?

https://www.johnzarych.com/can-i-be-arrested-for-filing-a-false-police-report-in-new-jersey/

While most people recognize that filing a police report that is untrue is ethically suspect, many are surprised to learn that filing a false report is against the law. Like many crimes in New Jersey, filing a false police report can be charged in multiple degrees depending on the severity of the alleged conduct.

Under N.J.S.A. 2C:28-4(a) *False Reports to Law Enforcement Authorities* any person who falsely incriminates another can be charged with a fourth-degree indictable offense. An indictable offense is similar to a felony in New Jersey. The statute states:

*A person who knowingly gives or causes to be given false information to any law enforcement officer with purpose to implicate another commits a crime of the fourth degree.*

Thus, there is the *mens rea* element that the person knowingly, meaning he or she is aware that the circumstances exist or aware that a high probability of the circumstances exist. The state must also show that the person had the intent to falsely accuse another person of a crime.

This offense can also be charged at the disorderly persons level when

*(a) Reports or causes to be reported to law enforcement authorities as offense or other incident within their concern knowing that it did not occur; or*

*(b) Pretends to furnish or causes to be furnished such authorities with information relating to an offense or incident when he knows he has no information relating to such offence or incident.*

Thus there are two circumstances where a person can face the lower level of making a false report to law enforcement. The first occurs when a person reports or induces another to report an incident or offense. The other circumstance boils down to an individual who wastes the time of law enforcement agents by pretending to have information about an offense or incident when he or she does not.

# WHAT PENALTIES CAN I FACE FOR FILING A FAKE POLICE REPORT?

In New Jersey, a fourth-degree indictable offense is a crime carrying serious consequences. A defendant who is convicted of a fourth-degree indictable offense can be sentenced to serve up to eighteen months in state prison. A fine up to $10,000 can also be imposed. For the disorderly persons version of the offense, the possibility of facing up to six months in jail exists. In most cases, due to the presumption against incarceration for first-time offenders, a jail term will not be ordered. However, it is important to note that a disorderly persons offense is a crime and will result in a criminal record.

 Gmail

Betsy Combier <betsy.combier@gmail.com>

---

## RE: conclusion of Marilynn Vega at Passaic County IA
2 messages

**Betsy Combier** <betsy.combier@gmail.com>
Reply-To: betsy.combier@gmail.com
To: mvega@passaiccountynj.org, Betsy Combier <betsy.combier@gmail.com>

Fri, Oct 20, 2017 at 9:59 PM

Dear Ms. Vega:

This morning at 9:42 AM you called me with your conclusion after investigating the event which took place at 2:16AM on September 22, 2017 by West Milford New Jersey Police Officer Bruce Lederman.

On September 22, 2017, I emailed PO Lederman that he was wrong to accuse me of having the Social Security number of James Geist on my website. I asked why he never checked my website Parentadvocates.org to see whether it was there - it is not.

PO Lederman never replied to me.

I sent an email to West Milford Police Sargeant Sommerville and Captain Congleman (also head of the Internal Affairs Unit) on September 25, 2017, filing a complaint about PO Lederman's false accusation which I consider harassment and threatening to my safety. I asked both officers to tell me how I, a resident of manhattan, could be threatened by a police officer in West Milford about a lie?

PO Lederman, Sargeant Sommerville and Captain Congleman never responded to me.

I contacted you on October 5, 2017, and asked the same questions. You proceeded with an investigation, then told me on October 10, 2017 that I needed to file a complaint with the IA office in West Milford. I asked you if this was the right way to go, as captain Congleman was in charge of the IA in West Milford. You told me to file a complaint anyway, and go to someone other than Captain Congleman.

I did as you told me to do on October 10. I called the West Milford Police Department and spoke with Lt. James Divore, who told me he would investigate the matter because Captain Congleman was his boss and head of IA. I asked him if this was a conflict of interest, and he said no.

On October 18 Lt. Divore sent me an email saying that "The incident never occurred."

I called him, and left a message saying that I did not understand. He called me back and told me that I was not harassed or threatened, so the incident of harassment never occurred. When I asked whether the allegation of criminal wrong-doing as claimed by James Geist, that his SSN was on my website, was true, Lt. Divore told me that he never looked at my website, but he found a link with the SSN# on Google.

I then called you, and you told me that you would look into this. I sent you all the emails and documentation that I had.

You called me this morning and told me that you met with Lt. Divore and Captain Congleman, and the conclusion you reached is that I was never harassed or threatened and the SSN# of James Geist is not on my website Parentadvocates.org. you also agreed that I have no control over what is cached on Google, and that I had requested Google remove the link that I have no knowledge of who or when it went online, but that Jim Geists Attorneys Bryan Glass and Jordan Harlow did have, and continue to have, Jim Geist's SSN# clearly visible in the papers they posted in the Geist Appeal of his termination from his employment at the Department of Education.

If you have any comments or additions to this conclusion, please email me no later than Thursday October 26, 2017, with your comments.

Thank you,

Betsy Combier
917-596-1762
betsy.combier@gmail.com

BETSY COMBIER
315 EAST 65TH STREET, APT 4C
NEW YORK, N.Y. 10065
917-596-1762

October 21, 2017

Prosecutor Camelia Valdes
Passaic County Administration Building
401 Grand Street
Paterson, NJ 07505

RE: Complaint against NJ resident James Geist, Investigator Marilynn Vega,
and the West Milford Police Department

Dear Prosecutor Valdes:

At approximately 7PM on September 21, 2017, a man by the name of James Geist (of
Hewlett, N.J.) walked into the West Milford Police Department and filed a criminal
complaint against me for stealing his identity by posting his Social Security Number on
my website Parentadvocates.org.

Geist knew that his complaint was false and that his social security number was NOT on
my website, but it WAS posted by his Attorney in unsealed papers filed in the New York
State Supreme Court 12/02/2013.

On September 22, 2017 at 2:16AM Police Officer Bruce Lederman sent me an email
which stated that I had to remove the Geist social security number from my website,
and he sent me a URL to a link which was not my website. As I wrote above, the SSN #
is NOT on my website.

I contacted PO Lederman, and asked why he never checked Jim Geist's claim and
found nothing on my website. Lederman did not respond. On September 25 I wrote
Sargeant Sommerville and Captain Congleman, asking why I was being falsely charged
with a crime. I received no response.

I contacted your office, and spoke with Investigator Marilynn Vega (I thought her name
was Diaz). I sent the emails to her.

She told me that I had to go back to the West Milford Police Department and file a
complaint. I spoke with Lieutenant James Divore, who told me that he would look into
this, even though his boss was Captain Congleman. I asked him if this was a conflict of
interest. He told me no.

Lt. Divore wrote me back that "The incident never occurred". He called me, and told me that as I was not threatened or harassed, that is why he wrote the incident never occurred.

Lt. Divore told me that he never visited my website to see if the SSN # of Mr. Geist was there.

I called Ms. Vega up, and told her what Lt. Divore had told me. She said that she would look into it. She called me on October 20 and told me that she had met with Captain Congleman and Bruce Lederman in West Milford, and said that everyone agreed I was not harassed or threatened, so no incident ever occurred. She told me that everyone agreed that the Social Security number of James Geist was not on my website. That is the conclusion of her investigation.

I am at this point appalled that the West Milford Police Department can take a complaint by a delusional former teacher from New York City and use his reckless and completely false statement to send a threatening and frightening email to me telling me I have to do something that I cannot do – take a SSN# down that simply is not on my website at all.

I know that under N.J.S.A. 2C:28-4(a) "False Reports to Law Enforcement", any person who falsely incriminates another can be charged with a fourth-degree indictable offense.

I want to immediately file a complaint against Hewlett N.J. resident James Geist for deliberate malfeasance and knowingly filing a false police report, and I am also asking for disciplinary action be taken against West Milford Police Officer Bruce Lederman, Sargeant Sommerville, Captain Congleman, and Lieutenant James Divore.

Please see the enclosed Exhibits.

Please take note of the fact that I sent Ms. Vega the Ex. 1 email twice, to have her put her conclusions in writing, but she has blocked my emails, and she wants to keep this blotched event hidden. I will make this very public, but I ask for your report as soon as possible.

Thank you.


Betsy Combier

FILED: NEW YORK COUNTY CLERK 12/02/2013

NYSCEF DOC. NO. 2

INDEX NO. 654135/2013

RECEIVED NYSCEF: 12/02/2013

# OPINION AND AWARD

In the Matter of Arbitration between:

_____

DEPARTMENT OF EDUCATION OF THE CITY
OF NEW YORK,

                 Complainant-Employer,

v.

                                          **SED File No. 20,660**

JAMES GEIST,

                 Respondent-Tenured Teacher,

Pursuant to Education Law Section 2590-j(7)
and Section 3020-a.

_____

Before:  Marc A. Winters, Hearing Officer

## APPEARANCES:

### For the Department of Education

Mallory O. Sullivan, Esquire, Of Counsel, Office of Legal Services

### For the Respondent

Jordan F. Harlow, Esquire, Of Counsel

Betsy Combier, Paralegal

**10/13/16**

**Francesco Portelos**

<u>3 hrs</u> ·
<u>Hootsuite</u>
Some UFT NYC Public Schools members are paying Betsy Combier for legal counsel when she has no licence to practice law. Tinyurl.com/BetsyCombier
<u>Like</u>
<u>Comment</u>
<u>Share</u>
<u>7 Nancy Zazulka and 6 others</u>
<u>1 share</u>

**Comments**

<u>Leigh Helena Louise</u> How did that happen?
<u>Like</u> · <u>Reply</u> · <u>3 hrs</u>

<u>Francesco Portelos</u> She tells them to pay her to file legal papers and act as a "paralegal."
<u>Like</u> · <u>Reply</u> · <u>3 hrs</u>

<u>Danielle Kushner</u> But I thought this was already exposed, why again? She is not a paralegal unless she is working with a layer
<u>Like</u> · <u>Reply</u> · <u>3 hrs</u>

<u>Francesco Portelos</u> She continues to charge. Some have paid her $3,000 in addition to $10,000 for a lawyer for a 3020-a
<u>Like</u> · <u>Reply</u> · <u>2 hrs</u>

<u>View 2 more comments</u>

<u>Bliss-Ann Herlihy</u> There's no end.
<u>Like</u> · <u>Reply</u> · <u>2 hrs</u>

<u>Despena Vasiadis Kiladitis</u> We will talk about this on Saturday
<u>Like</u> · <u>Reply</u> · <u>1</u> · <u>2 hrs</u>

<u>Tom Filoramo</u> Aside from that imo she is mentally unstable. I would not advise anyone go to her for assistance.
<u>Like</u> · <u>Reply</u> · <u>2 hrs</u>


<u>Francesco Portelos</u> Greed is one of her worst qualities. She's had it out for me and Solidarity because we provide FREE help that takes illegal business from her here <u>uftsolidarity.org/toolbox</u>
<u>Like</u> · <u>Reply</u> · <u>2 hrs</u> · <u>Edited</u>

Write a comment...

10/14/16

<u>**Francesco Portelos** shared <u>Teacher's Lawyer Bryan Glass - GHNY Law</u>'s post.</u>

<u>13 hrs</u> ·

If you need real legal counsel, go with someone who actually went to law school. Careful of snake oil salesmen.

GHNY
Law

<u>Teacher's Lawyer Bryan Glass - GHNY Law</u>
<u>18 hrs</u> ·

Share with colleagues in need. We also address many other workplace issues. Having a lawyer in your corner can help.

<u>Teacher's Lawyer helps another teacher get their job back</u>
Middle school gossip should not be permitted to ruin a 13 year stellar career. In a 3020-a hearing, an arbitrator terminated a 13 year p... stellar career. In a 3020-a hearing, an arbitrator terminated a 13 year physical education teacher, despite the DOE's poor evidence. The teacher retained our firm and we filed an Article 75 to vacate his termination. Justice was delayed, but finally served. Our firm was able to argue for the teacher and the Supreme Court of New York County reversed the arbitrator's decision. Bryan D. Glass, Esq. and Jordan F. Harlow. Esq.

The court's decision states:
*"Based on all the circumstances of the case, including the lack of any prior allegations of misconduct against petitioner during 13 years of service and the fact that the misconduct does not violate any specific rule or regulation, we find the penalty of termination sufficiently disproportionate to the offenses to shock the conscience (see Lackow v Department of Educ. [or "Board"] of City of N.Y., 51 AD3d 563, 569 [1st Dept 2008])."*

If you, or someone you know, was terminated or fined, or is need of representation at a 3020-a hearing, please fill out the form on our website www.ghnylaw.com
teacherslawyer.blogspot.com|By Front Desk
*Providing quality legal counsel for a fraction of the cost.*



# Glass Krakower LLP

LABOR & EMPLOYMENT LAW · EDUCATION LAW · CIVIL RIGHTS · DISCRIMINATION · WHISTLEBLOWER

Providing quality legal counsel for a fraction of the cost.

| HOME | COMPANY | SERVICES | CONTACT US | RESOURCES | SOCIAL MEDIA |
|------|---------|----------|------------|-----------|--------------|

This page has been put together to hold all the information pertaining to the ATR discrimination action.

**\*We are receiving many applications after the deadline we set below. We are processing the submissions we received on time, but will make all attempts to accept and process submissions we receive prior to filing in the next two weeks.**

Initially, we put out a questionnaire to assess the data pertaining to ATRs not being hired permanently. The data, from the 60+ ATRs who filled out the form, showed that the average age was over **50** and the average years experience was over **20**. This is very telling as the NYCDOE has been hiring approximately 5,000 new teachers every year, and that excessing is supposed to be in reverse seniority.

STATE OF NEW YORK
STATE EDUCATION DEPARTMENT
-----------------------------------------------------------------X

In The Matter of the Disciplinary Proceeding

　　　　　　of the

**DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK**

　　　　　　　　　　"Complainant"

　　　　-against-

**CHRISTINE RUBINO**

　　　　　　　　　"Respondent"

**PURSUANT TO EDUCATION LAW §3020-a
SED FILE # 17,116**
-----------------------------------------------------------------X

**HEARING**

**OFFICER'S**

**OPINION**

**AND**

**AWARD**



**BEFORE: RANDI E. LOWITT, ESQ.**

**APPEARANCES:**
**FOR THE DEPARTMENT:**
**MICHAEL BEST, ESQ., GENERAL COUNSEL TO THE CHANCELLOR, by**
**JEFFREY GAMILS, ESQ.**

**FOR THE RESPONDENT:**
**GLASS KRAKOWER, LLP, by**
**BRYAN GLASS, ESQ.**

**Department of Education**

Dennis M. Walcott, Chancellor

Cluster Three
Donald Conyers, Cluster Leader
Joanne Bruzella, CFN Network Leader
CFN 201

June 13, 2011

Ms. Christine Rubino
1864 Ryder Street
Brooklyn, NY 11234

Dear Ms. Rubino,

Please be advised that based on the 3020-A Arbitrator's decision dated June 13, 2011, your employment with the department of Education has been terminated effective June 13th 2011.

Therefore, you are no longer to report to 22K203.

Attached is the Arbitrator's decision if you have not received a copy by mail.

Very truly yours,

Mrs. Patricia Allen
HR Director


Christine Rubino

I received this letter on June 14, 2011

## SPECIFICATIONS

**CHRISTINE RUBINO** (hereinafter referred to as "Respondent"), File # 728581, is a tenured teacher formerly assigned to PS 203 Floyd Bennett (K203), in Brooklyn within District 22.   During the 2008-2009 and 2009-2010 school years, Respondent engaged in verbal abuse, corporal punishment, misconduct, neglect of duty and conduct unbecoming her profession as follows:

## In Particular:

**SPECIFICATION 1:**
On or about June 23, 2010, Respondent posted and/or disseminated comments on her **_Facebook.com_** webpage stating, "after today, I'm thinking the beach sounds like a wonderful idea for my 5th graders!  I HATE THEIR GUTS!  They are all the devils spawn!"

**SPECIFICATION 2:**
Respondent's comment, as described in Specification 1, inappropriately referenced the drowning death of a 6th grade NYC public school student during a school trip to the beach on June 22, 2010.

**SPECIFICATION 3:**
On or about June 23, 2010, Respondent received a response to her previous comment described in Specification 1 from an individual with the **_Facebook.com_** screen name *Scott J. Levine* stating, "oh you would let little Kwame float away!," and Respondent posted and/or disseminated a subsequent message stating, "Yes, I wld not throw a life jacket in for a million!!"

**SPECIFICATION 4:**
On or about and between November 2010 and December 2010, Respondent interfered with an official investigation of The Special Commissioner of Investigation for the New York City School District by directing her friend, Joanne Engel, to provide false information to investigators by claiming to have written the comments on Respondent's **_Facebook.com_** webpage as detailed in Specification 1 & 3, so that Respondent would not get into trouble.

**SPECIFICATION 5:**
On or about April 30, 2009, Respondent:

3

## BACKGROUND

The Department of Education of the City of New York (DOE) preferred charges pursuant to Education Law §3020-a against Respondent, Christine Rubino (Respondent), a tenured teacher assigned to PS 203 Floyd Bennett (K203), in Brooklyn within District 22. (Department Exhibit [DOE] 1). The undersigned was designated to be the Hearing Officer for this matter, by the New York State Education Department. (Hearing Officer Exhibit 1).

A prehearing conference was held on February 16, 2011, at which time Ms. Rubino was represented by counsel other than Mr. Glass. She discharged that counsel and appeared at the February 17, 2011 hearing without counsel. She was granted an adjournment, at her request, so that she could obtain counsel. Thereafter, Mr. Glass provided notification that he would be representing Ms. Rubino. The hearing formally commenced on February 28, 2011. Hearings on this matter were conducted on February 17, 2011, February 28, 2011, March 2, 2011, March 3, 2011, March 8, 2011, March 10, 2011, March 14, 2011, March 25, 2011, April 4, 2011, April 6, 2011, April 7, 2011, April 11, 2011 and April 27, 2011. The record was closed after the Hearing Officer's receipt of transcripts of the oral closing arguments offered by both parties, which was received May 6, 2011. A complete stenographic record of the prehearing conference and the hearing was taken.

2

1. Grabbed Student A* by the back of his neck.

2. Pushed Student A* to the ground.

3. Wrestled with Student A while attempting to retrieve her cellular phone.

4. Pushed and/or struck Student A on his back.

5. As a result of Specification 5(1-4):

   a. Student A's face struck the floor.
   b. Student A sustained a bloody nose.
   c. Student A was visibly upset and crying.

**SPECIFICATION 6:**
On or about April 30, 2009, Respondent made inappropriate statements to Student A utilizing expletives "Shit" and/or "Fuck".

**SPECIFICATION 7:**
On or about April 30, 2009, Respondent made statements to Student A, to the effect of:

1. That's what you get.

2. You shouldn't touch my fucking stuff.

3. I'm a crazy woman don't mess with me.

4. Next time don't touch my shit.

5. Who's fucking tough now.

6. Don't fuck with me.

7. Don't touch me or my fucking shit.

**SPECIFICATION 8:**
On or about June 28, 2010, after a meeting with Principal Esposito where Respondent was notified that her "N" rating for the 2009-2010 school year would be changed to an "Unsatisfactory" rating, Respondent approached Student B and stated, "You told your mom, right? Trying to get me fired? Good try."

4

### The Foregoing Constitutes:

-   Just cause for disciplinary action under Education Law §3020-a;
-   Conduct unbecoming Respondent's position, and conduct prejudicial to the good order, efficiency, or discipline of the service;
-   Substantial cause rendering Respondent unfit to perform her obligations properly to the service;
-   Violation of the by-laws, rules and regulations of the Chancellor, Department School or District;
-   Violation of the New York City Charter;
-   Neglect of duty; and
-   Just cause for termination

*Student's names will be provided prior to trial.

### Positions of the Parties:

**The DOE argues** that Ms. Rubino is culpable of the charges preferred against her by the DOE.   As the DOE notes, "(t)eachers are charged with educating the youth of this city.   In order to perform effectively, teachers must demonstrate a belief in the worth and dignity of each child..... Teachers are expected to lead by example and play a key role in molding future generations of reasonable, hard-working, honest, considerate, and educated citizens."(1497).[1]  As an initial matter, the DOE highlights some United States Supreme Court cases, which, it points out, hold that ...teachers can be held accountable for unprofessional and inappropriate conduct occurring beyond the four walls of the school building." (1498).  The DOE contends that Ms. Rubino's

---

[1] Numbers in parentheses correspond to appropriate page numbers in the transcripts.

5

actions, both in and out of the classroom, show she is "...guilty of each specification charged, and the only appropriate penalty is termination from service." (1497). The DOE addresses the issue of its having no official rule or regulation regarding Facebook.   "Teachers are expected to maintain a standard of professional behavior.   Every single rule or regulation does not have to be explicitly written out in a detailed handbook.  And...some actions are so inherently inappropriate that some forms of misconduct are completely contradictory to the duties and responsibilities of a teacher and are in clear opposition of established social standards that public school teachers do not have to be advised that to engage in them would lead to misconduct."    (1503). Notwithstanding this, DOE points to a variety of advisory memos from AFT, NYSUT, and UFT "inappropriate activity over social networking can fall within the category of activities considered so inherent in the current standards of professional conduct and fitness that it could lead to misconduct." (1504).  Finally, DOE queries, "...Does our society have an expectation that our public school teachers should refrain from posting threatening and demeaning and inappropriate statements about their students on the internet and sending them to over 100 people?  If the answer is clearly yes...then a specific rule addressing the conduct is not required under a just cause standard." (1508).

6

Turning to Specifications 1 – 4, DOE summarizes what it believes Respondent's arguments are:   that she made the comments out of frustration; that she erased them when she didn't feel that way anymore; that she was truthful when she told Principal Esposito that other people use her account and then turned Principal Esposito and the SCI investigators to Joann Engel; that she did not put Joann Engel up to lying to the investigators and that Joann Engel truthfully said this when she testified at the hearings; and that she did not interfere with or obstruct any investigations.  (1510 – 1518).  The DOE asserts that, the only truth told, by either Ms. Rubino or Ms. Engel, during the course of the entire investigation was when Joann Engel told Investigator Caiati the truth about Ms. Rubino's involvement and her complicity with it.  (1512 – 1513).

DOE then highlights myriad court cases and Facebooks own policy, and argues that it is disingenuous for Ms. Rubino to feign an expectation of privacy with regard to comments she may have posted on Facebook. (1524 – 1530).  And, as to First Amendment Rights, DOE emphasizes that the courts have read the Constitution to "provide public school teachers with limited protection under the...First Amendment to the Constitution. ...(T)he Constitution protects public employees when they speak as private citizens on matters of public concern. ...Therefore, to receive First Amendment protection, Respondent must establish that she as speaking on Facebook as a private citizen, not as a teacher, and that her

7

comments related to a matter of public concern. Under the present facts, Respondent's statements related directly to her role and position as a New York City public school teacher and not a private citizen. Furthermore, Respondent's comments failed to address any issue of public concern. Respondent admitted that her comments were made out of frustration and were an expression of her emotions and feelings. ... Clearly Respondent was not intending to raise any issue of social concern with the general public.... Therefore, Respondent's inappropriate, degrading, and threatening comments failed to reflect any issue that would raise concern for the general public and thus are not entitled to First Amendment protections. (1530 – 1532). Therefore, DOE demands that Respondent be found culpable of Specifications 1 – 4.

As to Specifications 5, 6 and 7, "...Respondent let her anger and frustration boil over to the point where she lost control." (1533). DOE finds the testimony of J.H. and the statements of J.H. and R.K. to be credible. It believes that Ms. Rubino lacks credibility in her testimony and in the statement she provided to Principal Esposito. Further, DOE argues that Respondent did violate A-420 in that her response to J.H. was not reasonable. (1533 – 1537). "(I)t is not reasonable for a teacher to attack a student, to wrestle him to the floor, and engage in a scuffle with a student to get a cell phone back. And, this incident ultimately caused the student to sustain a bloody nose and injury to himself. ...J.H. wasn't even trying to

steal the phone. He was only playing with it directly in open view of Respondent." (1536). DOE demands that Respondent be found culpable of Specifications 5 – 7.

As to Specification 8, DOE avows that this is another example of Ms. Rubino's lack of self-control. "...Respondent is the type of person who reacts to situations. She writes hateful things on Facebook to hundreds of people. She wrestles a student to the ground because he's playing with a cell phone. She answers people back when they comment on The New York Post website about her misconduct. ...Respondent is not the type of person who would run home and avoid confrontation. This respondent looks for confrontation and, in fact, she feeds off of it." (1538). DOE does not believe Ms. Rubino when she testified that she was so distraught, upon learning that she would receive a U rating for the 2009-2010 school year, she went home. Rather, DOE believes that Ms. Rubino "...went downstairs to see the devil's spawn student, the student she hated the most, one of the students that she wanted to take to the beach to let drown, and confronted her because she was blaming her for the fact that she was receiving a U rating. ...Respondent went downstairs to the cafeteria, saw A.S. and needed to say something. Respondent needed to act aggressively, she needed to confront a little girl who caused her so many problems during that year. And, as A.S. was leaving the school building, Respondent took the opportunity to unleash her frustrations, to vent...."

9

(1538 – 1541). As to the investigation by Principal Esposito, her testimony, and the testimony of A.S., DOE insists that all are credible. Finally, although Specification 8 is "phrased slightly differently than the evidence introduced....," DOE maintains that the Specification is specific enough that its intent is clear. (1545 – 1546).

DOE demands termination of Ms. Rubino as being the only appropriate conclusion. "This is a full and complete picture of how Respondent conducts herself as a New York City public school teacher. This is how she reacts under pressure and in situations that test her self control, temper and professionalism. ... She is not fit to act as a role model, a professional educator, or a public servant in the New York City Department of Education. ...Respondent's conduct has destroyed any degree of trust or credibility shared between her and the Department. The Department has clearly established by a preponderance of the evidence that she is guilty of each specification charged and they have just cause for termination." (1546 – 1549).

**The Respondent argues** that the DOE has not proven many of the specifications brought against Respondent and that, even if Respondent did engage in any inappropriate behavior or activity, it should not lead to her termination.

Specification 1, Specification 2, Specification 3 and Specification 4 charge Ms. Rubino with making comments on Facebook,

"inappropriately" referencing the drowning of a New York City school student, and interfering with an official investigation of the matter. Respondent asks "...what policy does it violate. Does it violate any particular misconduct policy other than it shows poor judgment thing, which, you know, you have to discipline her on that. We recognize that. But I don't think you actually have to. I think a letter to file or a reprimand would be sufficient on that, because she did say she did learn her lesson." (1484).

Respondent counsel points to SCI and states "they're the ones who recommended termination. The principal said she was actually kind of shocked about the, you know, termination. And there was actually no one from school that actually suggested termination was really warranted. But that's the SCI, unfortunately seemed to blow things out of proportion." (1478). Respondent counsel notes that people make errors all the time, and ask for apology all the time. " Chancellor Black was at a meeting and talked about birth control....which is equally conceived as racist. She put her foot in her mouth and she apologized. Mayor Bloomberg, about the same time, the Irish comment that he made that was all over the news that, Oh, he talks about the drunks hanging out the window, the Irish. People say stupid things.... ...Christine was saying a stupid thing on Facebook on what she thought was a private Facebook. ...The only reason it came out is because David Senatore copied it from

11

an email, gave it to the AP, the AP gave it to the principal, and the principal asked Legal what to do. That's why this is all over the place. You know, that's the series of chain of events why this has turned into this big deal. She herself said she took it down within three days. ...It doesn't meet A-420, it doesn't meet A-421. ...We just know that she should use better judgment. And she admitted she should have." (1479 – 1480). Turning to any policy that would advise on Facebook use, Respondent notes that he "...asked multiple times, Do you have any policies on Facebook." (1481). In answer, he was shown various policies from other organizations, but no, specific DOE policy. Additionally, Respondent avers that "...there's a perception that Facebook is a private thing, it's not going to go out to the general public. And, you know, I think she's learned her lesson, at this point, that anything put on a computer could actually be copied. ...Should she have made the comment? Of course not. But, you know, it was a – thing and that's all it was. All she could do was apologize. So it should not be given more than what it is. I talked a little bit about the double standard. How you have, you know, Black has put her foot in her mouth, Mayor Bloomberg has put his foot in his mouth. And they apologized. If you look at what they said in the papers, they said I shouldn't have to say that – it was insensitive of me. Of course I care about those people and I'm not going to – that's not who I am." (1482 – 1483). Respondent maintains that Ms. Rubino has apologized, has

12

validated that it was a mistake to make the comments on Facebook, and wishes to move on. However, "...SCI, when it gets to the reports, and then they all know about it. It just, it mushrooms, and it's something that could have been, you know, killed. If the concern was the impact on the school and the perception of the school, well, there was at least three people who could have killed it on the vine. But they didn't do that. They, in fact, mushroomed it.   So, we ask you, you know, just consider the circumstances.... You know, this is poor judgment.  And, I'm not saying that some of the specifications haven't been proven factually, but they haven't been proved as misconduct.  And she's learned her lessons here. She understands how important this is.   And, she deserves another chance." (1493 - 1494).

As to the issue of Joann Engel, Respondent claims to have been as surprised as anyone that Ms. Engel would tape the interview, claim that she had made the postings, claim that Ms. Rubino had asked her to take the blame and claim that Ms. Rubino was complicit in the fabrication. Respondent contends that Ms. Rubino was truthful when she told Principal Esposito that Ms. Engel was one of the two other users of her Facebook account.   "She didn't lie about it.   ...She did give her the number, because the principal asked her." (1484).  Additionally, Respondent insists that Investigator Caiati and his partner engaged in bullying with Ms. Engel and was not truthful with her.  "...(U)ntil they heard what they wanted to

13

hear, they didn't leave her alone.   And so you have basically three versions of events, here, because now you have Ingall (sp.) saying initially, when she first spoke to them, Christine didn't put me up to this.  And then later, she's saying, when this question is asked...he's totally misleading her to believe that she's already admitted it and she might as well just admit everything.  ...Now, the only time Joann was under oath was in this case. All these threats of perjury and all this stuff about, you know, if you don't admit that she directed you to do this, you're going to be facing all these criminal consequences and everything, well, she came in and the only time she was under oath here, and she said, The absolute truth is Christine did not put me up to this.  She did not tell me to take the fall.  Is it possible that, you know, it is more logical that Joann felt really bad for Christine and said, I'll – I'm not the employer.  I'll just say that I did it.  It is a possible, you know, logical response from a friend.   And to say that Christine directed her to take the responsibility for her, which is what the charge is, was not proven.  They have no proof of it."  (1485 – 1486).  Respondent insists that Ms. Engel was truthful at the hearing, Ms. Engel was not in cahoots with Ms. Rubino, Ms. Engel told the investigators what they wanted to hear so that they would leave her alone, and Ms. Rubino was complicit in no wrongdoing or interference with the investigation.

Turning to the issue of First Amendment Rights, Respondent states that it does not "...think the law's really defined on whether you have

absolute First Amendment protection for this kind of speech. I know Facebook's policies have changed." (1491).

As to whether or not Respondent has shown sufficient remorse, Respondent insists that this is a slippery slope. Ms. Rubino has "no prior history of misconduct like this. And this is something that got spun out of control. ...You've got to look at the conduct at issue. It's ridiculous to say someone did something that was fairly minor, and then because they didn't really – sufficiently apologetic, they should be terminated over this. ... She was remorseful. She was apologetic. Yes, at times she was like, Well, you know, what's the charge? ...But she did get it at the end of the day. And she does understand that she can't engage in this and words have consequences when you put them on websites, you know, because they can be misconstrued and obviously, Facebook, there are lots of risks there." (1489 – 1490). Finally, Respondent highlights the fact that Hearing Officers and others have "over done on the remorse thing. They're getting reversed now on appeal. ... And, if the conduct isn't sufficient to warrant termination, you're not going to hang the person if they weren't sufficiently remorseful, apologetic about it." (1489 – 1490). Therefore, Respondent asks that Ms. Rubino's remorse be considered sincere and, since there were no grounds for termination, she be disciplined only to the extent of a Letter of Reprimand.

15

Specification 5, Specification 6 and  Specification 7 charge Ms. Rubino with grabbing a student, J.H., wrestling him to the ground and causing him injury, causing J.H. to become upset, cursing at him and making derogatory comments towards and to him.  Respondent argues that this entire incident could have and should have been dealt with in the letter from Principal Esposito and the statements taken from Ms. Rubino, J.H. and R.K., another student who was in the room at the time of the alleged incident.  (DOE Exhibits #16, 24).  The Principal "...had no intention of taking this to the next level.  ...And she had no real interest in turning this into 3020-a charges against Christine.   ...I might have considered a counseling memo, but we don't really do them anymore, because they hold no weight.  So that's why I did it this way.  ...no one really cared about this incident until, you know, they needed additional ammunition against her for this case.  It's clearly a one-time incident. We're not saying that she's got any pattern of corporal punishment against children, that she has a history of hitting kids.  And nothing happened after that point to suggest that this was – she didn't learn from the experience."  (1469-1470).   Respondent points out that Ms. Rubino was assigned a class of students without an assistant or co-teacher, the following year.  Conversely, Respondent argues that J.H. lacks credibility. J.H. has a poor record; he admitted to touching Ms. Rubino even though he did not admit to touching her breast; he admitted to a struggle that

16

resulted in a nose bleed; he admitted to taking her phone and not giving it back even when asked to do so. Respondent avers that, despite the Department's allegations that she should have picked up the phone in the room rather than wrestle J.H. to the floor, "...Christine testified...after she was touched, she stepped back and she couldn't even get to the phone, because the way that her room was laid out, the kid had her cell phone, J.H. had her cell phone. It was between her and the phone. ...He did fall to the ground and she did, you know, hold him there. But he calmed down. They went about their business." (1473-1474, Respondent Exhibit #s 10, 17). As for the language, Ms. Rubino admitted to saying "shit." "But, again, it wasn't directed at the kid. It wasn't meant to be demeaning to the kid. ...the only thing that J.H. actually said was that she said Don't touch my shit...." (1474). As to whether or not this violated Chancellors Regulations A-420 and A-421, Respondent notes that "...if you're protecting yourself or your property, that's not necessarily – that is self defense and that's not corporal punishment under the definition. ...Could she have handled the situation a little differently? Did it have to escalate that there was some physical interaction? Who knows? It was a very quick thing. The DOE recognized what it was at the time. A letter to file would be sufficient. ...And I don't think additional discipline is warranted here even if you find...some of the specifications, the conduct of the specifications are -, none of this actually constitute misconduct.

17

And if it does, really what does it warrant under the circumstances given there's no history, no prior history, no post-history, one-time incident what happened to her in this particular situation, and the principal saying this was done, over with." (1477).

Specification 8 charges Ms. Rubino with speaking inappropriately to Student A.S. on the last day of school. "...(T)his was a very bizarre charge with a lot of conflicting testimony, and the students' version of events just doesn't hold up." (1461).  Respondent argues that, notwithstanding all the testimony of A.S. and all the alleged investigation of Principal Esposito, Ms. Rubino's testimony is that she "wasn't even there."     (1462). Respondent insists that this testimony is credible and plausible, based on the testimony of A.P. Sadowski and the testimony of Ms. Goodman and Ms. Gilman, as well as the testimony of Principal Esposito.   Respondent points out that this allegation, which was brought to Principal Esposito on the last day of school in June 2010, "...didn't seem to be revived by the principal until after the Facebook allegation came out. So...allegedly this happened June 28th, and all of a sudden, she's (Principal Esposito) recalling and reinvestigating witnesses, calling A.S. at home.  And she doesn't get to speak to A.S.  The mother gets on the phone and filters everything. ...And, the principal's investigation is very bizarre. ...So it was very strange...her sense of corroboration...." (1463-1464).  Respondent argues that no statements were taken from A.S., other than the notes

18

written by the Principal the day A.S. allegedly came to complain to her. (Respondent Exhibit #7). Additionally, Principal Esposito took no witness statements from any of the other students who would have been around A.S. that day.   And, finally, even Principal Esposito did not wish to investigate this matter, preferring to turn it over to SCI or OSI, but "...they didn't want to touch this.... The principal said, I was begging them to take this. I didn't want to do it. And they were like, No, this not what she -. She couldn't get them to take it." (1465-1466). Conversely, Respondent notes that Ms. Rubino's testimony is wholly consistent, that she had no inkling that A.S. would have been in any way responsible for the U rating for the year, that she believed the U rating was due to an unresolved DUI incident.   "...(T)he principal admitted that she didn't really tell her what this was about. She thought it had to do with the DUI. ...So why Christine would jump to the conclusion that A.S. had something to do with the U rating is also never really explained by the DOE and it doesn't make sense according to the testimony we've heard."   (1466-1467).   Therefore, Respondent demands that Specification 8 be dismissed.

Respondent contends that termination is not an appropriate penalty, that the non-Facebook issues were resolved prior to the drawing up of the specifications and were only reinvigorated because of the Facebook allegations, and that the Facebook allegations could have been resolved if anyone had just asked Ms. Rubino to take down the

19

comments.  Respondent asserts that Ms. Rubino has shown appropriate remorse and that she should be returned to the classroom, where she can return to being an excellent teacher.

### OPINION

Based on my careful review of the hearing record, I find Respondent Christine Rubino culpable of Specifications 1, 3 and 4.  I Dismiss Specifications 2, 5, 6, 7, and 8.  (DOE Exhibit #2).  I find termination to be the appropriate penalty in this case.  My reasoning is as follows.

At the prehearing conference, Respondent's then-counsel made a motion to dismiss **Specification 2**, arguing that it "does not really state a charge on which any relief can be granted.  (I)t appears to be an explanation...with reference to Specification 1.  So although that may be evidence that the Department puts on it its case regarding Specification 1...Specification 2 doesn't allege any conduct on the part of the Respondent."  (6).  "There's no conduct in Specification 2.  It's a description of the conduct alleged in Specification 1."  (9).  Conversely, the Department argued that "Specification 2 does acknowledge or reference additional activity, additional inappropriate activity. ...(B)eyond the statement mentioned in Specification 1, there's additional misconduct because it inappropriately references a tragic event that happened in New York City public schools the day before."  (6-7).  Having held that motion in abeyance, subsequent to the conclusion of the

20

hearing, I find that there is no actionable charged conduct in Specification 2. Therefore, I return to the motion made by prior counsel to Ms. Rubino. I now grant the motion to dismiss Specification 2.

**Specification 1** charges Ms. Rubino with making inappropriate postings on Facebook about her 5th grade class. I find Respondent culpable for the conduct charged in Specification 1.

**Specification 3** charges Ms. Rubino with making additional inappropriate postings on Facebook about her 5th grade class. I find Respondent culpable of the conduct charged in Specification 3.

**Specification 4** charges Ms. Rubino with interfering with an investigation. I find Ms. Rubino culpable of the conduct charged in Specification 4.

As an initial matter, the testimony and documentary evidence are unrebutted as to the fact that the New York City Department of Education has no official policy on the use of Facebook; there were no rules at the school about the use of Facebook; Respondent was not charged with using Facebook on school computers or during school hours. However, there is official policy regarding the removal of teachers for conduct unbecoming a teacher's position. (DOE Exhibit #s 29, 30). There is official policy prohibiting interference with an investigation, with penalties for such interference including suspension or removal from office. (DOE Exhibit #31).

21

I will examine the entirety of these three specifications together, since they deal with one series of occurrences. Aside from the fact that there was testimony from multiple witnesses, much of the information gleaned for these specifications could have been set forth as the result of agreement between the parties. It was not. Therefore, I will summarize certain areas of the testimony that are most relevant. It is clear that on or about June 23, 2010, Ms. Rubino posted the following comments on her Facebook account:

> After today, I am thinking the beach sounds like a wonderful idea for my 5th graders? I HATE THEIR GUTS! They are all the devils spawn!
>
> ...
>
> Yes, I wld not throw a life jacket in for a million.
>
> (DOE Exhibit #6).

These comments were made subsequent to the drowning death of a New York City student, who was on a field trip to the beach. (DOE Exhibit #'s 2, 3, 4). Among the many "Facebook friends" of Ms. Rubino, some are colleagues at her school. One of them, Mr. David Senatore, saw these comments and was troubled by them. He contacted the Assistant Principal, Mr. Brian Sadowski, who asked Mr. Senatore, and finally convinced Mr. Senatore, to send over a copy of the Facebook page to him, via email. (DOE Exhibit #7). Upon receipt, Mr. Sadowski felt that he was obligated to inform Principal Esposito, which he did; thereafter she

22

had Mr. Sadowski contact SCI and file an official complaint. (DOE Exhibit #5).

Respondent questioned each and every witness who testified as to any part of these specifications, asking if the entire incident might not have amounted to nothing if only someone had asked Ms. Rubino to remove the comment from her page. This questioning belies the actual fact that Ms. Rubino did exercise extremely poor judgment by making the postings in the first place, a fact agreed to by Ms. Rubino's friend, and the woman who initially lied to the SCI investigator, Ms. Joann Engel. (Respondent Exhibit #15) (DOE Exhibit #35).

Mr. David Senatore testified that he was a Facebook friend of Ms. Rubino's at the time of the posting. (251). He explained that he had seen the posting made by Ms. Rubino and "was kind of upset....," and that he knew it was "based on something that happened the day before...a terrible tragedy...." (254). Mr. Senatore reached out to Mr. Sadowski, by telephone, and ultimately sent him a copy of the Facebook posting. (258-259, 290-291). Subsequent to doing this, he ultimately spoke with an investigator for SCI. Mr. Senatore was, initially, a confidential witness. (266 – 268, 288, 294). (DOE Exhibit #12).

Mr. Brian Sadowski received the telephone call from Mr. Senatore and, after hearing what Mr. Senatore was concerned about, asked Mr. Senatore to forward to him the Facebook comments from Ms. Rubino's

23

page. (335 – 340). (DOE Exhibit # 7). Upon receipt, Mr. Sadowski
reviewed the comments and felt obligated to share them with Principal
Lisa Esposito. (340 – 341). Principal Esposito asked Mr. Sadowski to report
the incident, which he did. (342 – 344). (DOE Exhibit #s 4, 5).
Subsequently, Mr. Sadowski also spoke to an SCI investigator about the
matter. (DOE Exhibit #12). (351 – 354).

Principal Lisa Esposito testified as to her involvement. According to
Principal Esposito, she became aware of Ms. Rubino's Facebook
comments from Mr. Sadowski, and asked that they be reported to SCI.
Subsequently, SCI came to the school to interview her, Mr. Sadowski and
Mr. Senatore. She received a report from SCI, subsequent to its
investigation, whereafter she contacted Ms. Rubino to have a meeting.
(DOE Exhibit #13) (272 – 280).

On November 23, 2010, Principal Esposito met with Ms. Rubino and
Ms. Vivian Goodman, the UFT representative at the building. Principal
Esposito related that Ms. Rubino told her that there were two other people
who used her Facebook account, and that Ms. Rubino offered to provide
her with the names. (280 – 282). Ms. Rubino did provide Principal Esposito
with the names and information on the persons who used the account, at
which point Principal Esposito passed it along to SCI, causing the
investigation to be reopened. (318 – 320). Principal Esposito received a
revised SCI report that did not change the SCI recommendation. (DOE

Exhibit #15). Principal Esposito had a second disciplinary conference with Ms. Rubino, at which time she showed Ms. Rubino the SCI revised report. Ms. Rubino did not take responsibility, maintaining that no one got hurt and that she had freedom of speech. (324 – 327). Principal Esposito concurred with the findings of SCI and issued her own letter to Ms. Rubino on January 25, 2011. Ms. Rubino responded, in writing, on January 26, 2011. (DOE Exhibit #19).

Robert Caiati is the SCI investigator who was assigned the complaint generated from Ms. Rubino's Facebook postings. As an initial matter, Mr. Caiati was able to ascertain that the comments did, indeed, come from Ms. Rubino's account. (DOE Exhibit #s 9, 10). Mr. Caiati conducted his investigation by interviewing Principal Esposito, Mr. Sadowski and Mr. Senatore. (DOE Exhibit # 11). He attempted to interview Ms. Rubino, but she declined, most likely because she did not know why he was asking to speak with her. (DOE Exhibit #8). Mr. Caiati ultimately made a final report to his superior, in which he substantiated the case against Ms. Rubino, specifically that she made inappropriate and inflammatory comments on her Facebook account. (147). (DOE Exhibit #12). Subsequently, Mr. Caiati was asked to reopen his investigation to interview an additional witness, whose name had been provided by Ms. Rubino. (156). Mr. Caiati reached out to that witness, Ms. Joann Engel, and interviewed her on December 15, 2010, in his car, with

25

his partner, on the street, outside of her place of work, at her request. (156 – 157). According to Mr. Caiati, Ms. Engel began by saying that she had gotten her friend into trouble by posting the comments. However, during the course of the conversation, it became clear to Mr. Caiati that Ms. Engel had not posted the comments. (157 – 160). Mr. Caiati said that he then explained to Ms. Engel the consequences of fabricating testimony, not necessarily when speaking to an investigator, but if she were to be called to testify, after which he asked her if she posted the comments. She said she did not. (159 – 161). Mr. Caiati memorialized this interview. (DOE Exhibit #14). He sent his report to his superiors, who issued an amended final recommendation on the case. (DOE Exhibit #15).

On cross examination, Mr. Caiati was asked, a number of times, whether he had perjured himself while on the stand, by, for example, telling Ms. Engel that she could wind up in jail. He denied fabricating and maintained that he did not say anything false or inappropriate to Ms. Engel. (168 – 179, 203 – 206, 229 – 231, 234 – 241). Mr. Caiati also explained that there was nothing nefarious about Mr. Senatore being a confidential witness; upon asking, any person may remain confidential until, possibly, the confidentiality needs to be lifted in the course of a hearing. (186).

Ms. Joann Engel has been friends with Ms. Rubino since they were in junior high school. (881). She explained that she had set up Ms. Rubino's

26

Facebook account and that she used Ms. Rubino's Facebook account to play Farmville, since Ms. Rubino had more "friends" that played Farmville than she did and she enjoyed playing the game with a wider group. (882 – 883, 931 - 933). Ms. Engel said that in November, Ms. Rubino told her about the allegations regarding comments that she had made on Facebook, that Ms. Rubino said she did not remember making the comments, and that she told the Principal that other people used her account. (883 – 886). Ms. Engel was contacted by an investigator, thereafter, and she agreed to speak with him. Ms. Engel asked that the interview be conducted near where she works, and it did occur in the vehicle of Mr. Caiati, with his partner and Ms. Engel present. (886 – 888). Unbeknownst to Mr. Caiati, Ms. Engel recorded the conversation on her phone. Ms. Engel insisted that she did this for her interests, and that Ms. Rubino had not asked her to do so. (889 – 891). However, Ms. Engel acknowledged that she had told Ms. Rubino about the fact that she had tried to take responsibility for the comment during the interview. (942 – 943). But, she did not tell Ms. Rubino that she told the investigator that Ms. Rubino had asked her to do so. (943). Ms. Engel admitted that she had not posted the comments on Facebook. (920, 956 - 957). Ms. Engel said that Ms. Rubino did not ask her to lie. (920, 922). Ms. Engel maintained that she was nervous speaking to the investigator, once he realized she was lying, and that is why she implied to him that Ms. Rubino asked her to

27

lie. (922, 958 - 962).    Ms. Engel also acknowledged that, based on her understanding of the way Facebook works, when Ms. Rubino posted her comments, they would have appeared as an update or news status on the accounts of her many Facebook friends, and that the friends would not have to have logged onto Ms. Rubino's page to actually see the comments. (941).

Ms. Engel was interviewed by Mr. Caiati on December 15, 2010. The transcript of the hearing includes a poor version of the audio recording that was made by Ms. Engel. (894 – 916). A copy of the actual recording made by Ms. Engel was provided to the Hearing Officer, on a flash drive. (Respondent Exhibit #15).    Additionally, DOE counsel created a transcription of the recording, which, after some minor corrections, was approved by Respondent counsel, and admitted into evidence as DOE Exhibit #35. In both the recording and by reading the transcription, it is clear that Mr. Caiati determined that Ms. Engel was not being truthful when she said that she had written the comments on Ms. Rubino's Facebook account. It is apparent that Mr. Caiati called her on this lie. He told Ms. Engel that, if she were to be put under oath and if she were to lie, then she would go to jail for perjury; that if she were found to be lying then Mr. Caiati would go to the DA's office and report her; that she could be taken in handcuffs; that Ms. Engel might end up on Rikers Island; that it will cost her money for a lawyer.  Initially, Ms. Engel persisted in telling the

28

investigator that she made the comments. She said that she did not want Ms. Rubino to lose her job; she said that Ms. Rubino did not ask her to fabricate the story. Ms. Engel said that Ms. Rubino told her that Ms. Rubino told the Principal that other people use her Facebook account. Ultimately, Ms. Engel said that she had been lying and that Ms. Rubino and she had decided to say that she was on Ms. Rubino's computer and she had made the comments, not Ms. Rubino. Ms. Engel said "I mean believe me she realized that this is so fucking stupid and to lose a job over a comment that was made... can you blame the girl for saying 'I didn't do it', she's afraid to lose her job over this stuff...." (DOE Exhibit #35, pp. 16-17). Ms. Engel said that Ms. Rubino "didn't think of the circumstances that it would...it would take if it would; went any further." (Id., p. 18). Despite Respondent's protestations that Ms. Engel was browbeaten by Mr. Caiati, Ms. Engel then says "...do you have any further questions for me, like, I'm not ready to run off. I could sit here and tell you how the workings of Facebook is and how stupid she is for even putting a comment on there, I've put my foot in her ass." (Id., p. 19). After some additional conversation, Ms. Engel cordially tells Mr. Caiati and his partner "Thanks guys, thank you. ...Have a good holiday." (Id., p. 23). At no time did her voice sound stressed. At no time did Ms. Engel say or imply that she wanted to leave the interview or that she felt she was being coerced into saying things or agreeing to things that were not, ultimately, the truth. In

<div align="center">29</div>

fact, the recording is quite clear as to the tone of the various persons engaged in the conversation.  Notwithstanding Ms. Engel's subsequent testimony, there is no indication that Ms. Engel was coerced into making false statements during the interview that she recorded.  It is clear that she voluntarily made false statements about posting comments on Facebook; and then recanted them while stating that Ms. Rubino had, in some way, asked her to take responsibility; and then tried to recant again, under oath at the hearing, the statements about Ms. Rubino's involvement in making up the initial lie.

Ms. Rubino testified about the Facebook comments and her Facebook account.  She explained that she had been on Facebook for about one and one half years; that she has many friends; that she did not know personally know Scott Levine until after the June posting, despite the fact that he was a "friend" of hers; that she does not play Farmville; and that Ms. Engel and her stepson both use her Facebook account.  (1138 – 1145).

As to the comments and the Specifications, Ms. Rubino did not realize that, when she was called into Principal Esposito's office on the last day of school in 2010, the reason she was classified with a U was because of the Facebook comments.  (1153 – 1154).  She ultimately found out about the Facebook allegations in November, when she and Ms. Goodman were called to a meeting with Principal Esposito, and were

30

presented with the initial SCI report. (1156 – 1159). Ms. Rubino explained that she mentioned Ms. Engel's name because Ms. Engel had access to her Facebook account and because she did not recall making the comments and did not know the name Scott Levine. (1159 – 1161, 1381). She maintained that she did not recall making the comments, when asked about them by Principal Esposito. (1378 – 1379). However, and juxtaposed to this, Ms. Rubino maintained that within a few days of posting the comments, she had gone onto the computer to "clean up" a few things and had deleted the comments. (1359 – 1360). Ms. Rubino had discussions with Ms. Engel about the comments and queried how they could have been made public. Ms. Rubino did tell Ms. Engel that she was going to give Principal Esposito her contact information. (1164 – 1166). Upon realizing that she was the one who posted the comments on Facebook, Ms. Rubino did not ever tell Principal Esposito not to have the investigation reopened and/or not to engage in conversation with Ms. Engel. (1357 – 1358, 1368, 1400 - 1402). According to Ms. Rubino, it was not until March 2011 that Ms. Engel told Ms. Rubino she had recorded the conversation with the investigators from SCI. (1167, 1366). Ms. Rubino avers that she did not tell or ask Ms. Engel to take responsibility for the comments and that she was "shocked" that Ms. Engel told her that she did take responsibility. (1168 – 1169, 1397 – 1398, 1402 - 1403).

31

At the meeting held with Principal Esposito subsequent to the SCI amended report, Ms. Rubino did ask Principal Esposito what she was accused of and whether or not there was freedom of speech. (1174 – 1176). At no time did she offer any apology or explanation of what had transpired. (1397 – 1403).

After careful review of all the information presented, I find Ms. Rubino culpable of all three Specifications. I find that, as Ms. Rubino ultimately acknowledged, she did post the comments. These were certainly conduct unbecoming a New York City teacher. Social media, Facebook, LinkedIn, Twitter, all of these and more are becoming embedded in society. People attempt to post anonymously so that they will not be found out; people post without regard to the fact that what they post has a shelf-life of forever. As the old parable goes, if you take a feather pillow into a windy field and rip it open, it will be as impossible to recapture the feathers as they fly away as it will be impossible to recapture a comment once you hit "send." Whether or if anyone should have told Ms. Rubino to simply remove the comment belies the fact that it was "out there," accessible to anyone who a friend might have forwarded to, and so on, and so on. One might make the argument that Facebook and its ilk are pernicious, that the irreparable harm done by them, when misused, is something that corrupts in an evil or insidious way. Therein lies the act of denying responsibility for actions. If a person posts

32

something, then it is that person's responsibility to "own up" to the posting. If it should not be posted, then, simply said, don't hit "send." That said, Ms. Rubino is culpable of posting the comments. She may have First Amendment rights and she may have rights as a union employee, and she may have rights under myriad other statutes or laws. But, she is culpable for their posting, as conduct unbecoming her position. As Principal Esposito noted, when asked her opinion of the possible effect of the comments on the school and the community, they "would cause a great deal of concern by the parents, by the students. I think they would find it offensive. I think staff would find it offensive. It's inappropriate." (483). It is disingenuous for Ms. Rubino to hid behind the cloak of alleged Facebook setting privacy.

Additionally, I do not find it credible when Ms. Rubino says that she was not involved with or complicit with Ms. Engel's attempts at taking the blame. I do not find it credible that Ms. Rubino ultimately recalled making the comments but did not think to notify anyone that Ms. Engel was not involved. I do not find it credible that Ms. Engel would decide to take the blame, all by herself, and then concur with the investigators when they tried to pin the blame on Ms. Rubino; in fact, if Ms. Engel had tried so hard to cover for Ms. Rubino without Ms. Rubino's having been complicit, then Ms. Engel could easily have maintained at least that part of her story and maintained her part in the entire failed enterprise without ever blaming

33

Ms. Rubino. I do not find it credible that Ms. Engel was feeling pressure from the investigators. She recorded the interview; she brought the recording forward. It is clear what is said and the tenor and tone in which it is said. I am not persuaded by the testimony of either Ms. Engel or Ms. Rubino that Ms. Rubino was not involved in the obfuscation, or, to use a better term, the interference with the investigation. (DOE Exhibit #31). I do believe that Ms. Rubino was caught off guard, when the comments were brought to her attention so many months after they had been posted and taken down by her. I do believe that Ms. Rubino was fearful for her position. But, I also believe that Ms. Rubino interfered with and attempted to obstruct the investigation by continuously denying knowledge of the comments and by pointing to Ms. Engel as the likely or possible source. Therefore, as stated, I find Ms. Rubino culpable of Specifications 1, 3 and 4.

**Specification 5, Specification 6 and Specification 7** charge Ms. Rubino with inappropriate verbal and physical interaction with a student, J.H. Since the three Specifications involve one incident, they will be dealt with as a whole. I find Ms. Rubino not culpable of the conduct charged in Specification 5. I find Ms. Rubino not culpable of the conduct charged in Specification 6. I find Ms. Rubino not culpable of the conduct charged in Specification 7.

34

I do not find Ms. Esposito to have conducted an appropriate investigation and to have reached appropriate conclusions, as she states them in her letter of May 25, 2009, regarding her investigation of the allegations. (DOE Exhibit #24). Principal Esposito acknowledges that one of the first things Ms. Rubino said to her, when she went to the Principal's office in April 2009, was that J.H. had touched her breast. (423). Principal Esposito made note of this in the notes she took while speaking to Ms. Rubino. (Respondent Exhibit #18). Principal Esposito was aware of J.H.'s conduct, noting that she had even altered his schedule so that he would not be as easily able to sexually harass certain students. (424). She seemed to place great stock in the fact that J.H. would be "very forthcoming" about his inappropriate behavior, and that he "was very honest about saying that, in fact, he did...," act inappropriately. (425). Notwithstanding this, for J.H. to acknowledge inappropriate sexual behavior towards a student is substantially different than acknowledging it towards a teacher. I am not persuaded that Principal Esposito should have deferred to J.H.'s account of his touching Ms. Rubino, rather than Ms. Rubino's account.

Ms. Esposito relies on J.H.'s statement that Ms. Rubino "pushed him onto the floor. She threw him onto the floor." (428). After hearing the testimony of both Ms. Rubino and J.H, and reviewing the documentary evidence, I do not find this to be the case. I find that Ms. Rubino was

35

trying to retrieve the phone that J.H. was holding onto, playing games on, and that J.H. was likely so engrossed and holding the phone so tightly that the grabbing and the tussling and Ms. Rubino's reaching and pushing J.H.'s hands that were coming towards her all likely contributed to causing J.H. to fall, whereafter Ms. Rubino did attempt to subdue him and he began to struggle and he did hit his nose. It appears that Principal Esposito was predisposed to find against Ms. Rubino's version of events and in favor of J.H.'s version of events. I do note that there was another student in the SAVE room at the time of this incident, R.K. (DOE Exhibit #24). I do not find R.K.'s statement to be compelling and do not find it to be sufficiently credible to overshadow the fact that Ms. Rubino had been subject to uninvited touching by a student. J.H., in his statement, says that Ms. Rubino stomped on his back, which would imply that he did not fall on his back, but his testimony is that he fell on his back. (DOE Exhibit #24) (496). I do not find J.H. to be consistent in his version of the story. I do not find R.K.'s version of the story, as written in his witness statement, to be credible. (DOE Exhibit #24).

There does appear, *prima facie*, to be a violation of the Chancellor's Regulations A-420. Respondent did engage in physical contact with J.H. Respondent did use the word "shit," directed towards J.H.'s actions, not towards J.H., himself. However, J.H. is a student who has a history of inappropriate activity and behavior, both against students

36

and teachers. (Respondent Exhibit #10)   He is an aggressor, he is aware of it, and he admits to many of the actions which have resulted in his being disciplined. Despite his polite demeanor at the hearing, I note that J.H. is a troubled young man.   No teacher is permitted, outright to take physically or verbally aggressive actions against a student.   However, I believe Ms. Rubino when she says that she had been inappropriately touched by J.H. (DOE Exhibit #16) (1085-1086). I believe Ms. Rubino when she said it was not possible to get across the room, past J.H. to the wall phone. (Respondent Exhibit #17)(1089).   I believe Ms. Rubino when she says that she demanded the return of her cell phone and that it was not forthcoming.   (1088). I believe that Ms. Rubino said "shit," but do not believe that she said the other things she is alleged to have said; however, I believe that Ms. Rubino was both provoked and distraught at having been touched inappropriately, along with the entirety of the situation with J.H. (475, 501, 10961100, 1267-1273). I do believe that Ms. Rubino wrote the entire statement she gave to Principal Esposito, and that it encompassed her accurate recollection of the incident, notwithstanding the DOE contentions that she fabricated what she wrote in the margin so that her version of events would be more credible. (DOE Exhibit #16)(1103-1106, 1417). I do not believe J.H. when he says he did not touch Ms. Rubino's breast, but patted and/or rubbed her back. (470, 491-494).   I believe J.H. when he says that he took the phone to play games. (470-

37

471). I believe J.H. when he said that he would not give it back because he wanted to play more games, and that he was struggling on the ground with it so he could keep playing the games, while Ms. Rubino's hands were also on the phone. (471-474, 494-496, 498, 1092). I also believe J.H. when he says that he "...kept struggling and I hit my nose...on the floor." (473, 499-500, 1093). I do not concur with Respondent's reading of the regulation. Chancellors Regulation A-420, which "...defines corporal punishment as any act of physical force upon a pupil **for the purpose of punishing that pupil.**"(emphasis added). I do not believe that Ms. Rubino acted with the purpose of punishing J.H. I do find that Ms. Rubino did act with physical force on J.H. I do not condone Ms. Rubino's actions, despite the occurrence. I find that the mitigating circumstances lead to Ms. Rubino being not culpable for the conduct alleged. As to Chancellor's Regulation A-421, I do not find Ms. Rubino's use of the word "shit" to have been verbally abusive. It was inappropriate; it was not verbally abusive when examined within the totality of the circumstances. Therefore, Specifications 5, 6 and 7 are dismissed.

**Specification 8** charges Ms. Rubino with speaking inappropriately to a student, A.S. I do not find Ms. Rubino culpable of the conduct charged in Specification 8. While I find Principal Esposito to be a credible witness, and I do not believe that there is any underlying conspiracy that would have caused her to find against Ms. Rubino in either this Specification or

38

Specification's 5, 6, and 7, the investigation she conducted into this entire matter lacks foundation for holding Ms. Rubino culpable. The alleged precedent to the allegations, the fact of Ms. Rubino believing that she received a "U" rating because of A.S. cannot be corroborated; therefore, the antecedent, the allegation of Ms. Rubino making the remarks to A.S., are not something that can be corroborated. As Respondent counsel points out, no one heard Ms. Rubino say these things to A.S.; no one saw Ms. Rubino exchange verbal comments with A.S. When speaking to each other at the meeting in Ms. Esposito's office, Ms. Rubino and Ms. Goodman both believed that the rating was likely due to an unresolved driving infraction. This testimony is unrebutted. In the notes of the interview Principal Esposito had with Ms. Rubino in December, Ms. Rubino is credible; and Ms. Rubino consistent in her recollections throughout her testimony. (Respondent Exhibit #19).

The allegation is that, on the last day of school, Ms. Rubino made inappropriate and negative comments towards A.S., believing that A.S. was the reason behind Ms. Rubino having received a U rating. According to Ms. Rubino, she was told, by Mr. Brian Sadowski, the Assistant Principal, to go to Principal Esposito's office at the time that she was relieved by Ms. Georgena Gilman, the gym teacher. (998). Ms. Rubino and Ms. Vivian Goodman went to Principal Esposito's office, where they were told that Ms. Rubino would be receiving a U for the year, and where they were also

39

not told why Ms. Rubino was receiving that rating.  In fact, Principal Esposito refused to tell them.  (1001-1002, 1153).  Ms. Rubino thought that the reason for the U might be that Ms. Rubino had not completed a class she was required to take, after a DWI. (1003, 1153 – 1154, 1329, 1345). Ms. Rubino explained that she became very upset and asked Principal Esposito if someone else could dismiss her class.   She was given permission, took the report cards she had in her possession down to the cafeteria and gave them to Ms. Gilman, and then she immediately left the building, stopping to speak to no one.  (1007-1008, 1016, 1342). According to Ms. Rubino, she did not return to the building until well after the students were gone, but in time for the end of the year meeting with the administration, as she had been told to do by Principal Esposito. (1017 – 1018).  Subsequently, in December 2010, Ms. Rubino was apprised of an alleged investigation conducted by Principal Esposito, and ultimately received a letter from Principal Esposito explaining the incident that was being investigated and the conclusions reached by Principal Esposito. (Respondent Exhibit #6).

Ms. Georgena Gillman is a health and physical education teacher in the school.  When asked what she recollected about Ms. Rubino's conduct on the last day of school in 2010, Ms. Gillman said that she was in the cafeteria with Ms. Rubino's class and that "she asked me to distribute report cards...she just walked through the lunchroom...she seemed to be

40

upset...." (828-829). Subsequent to her seeing Ms. Rubino, "(t)he principal came down and asked me if I could dismiss Ms. Rubino's class and I said no...I told her I couldn't dismiss 'cause I had another class to pick up...she left. She didn't say anything, but the assistant principal was nearby and I walked over to him and I said Ms. Esposito asked me to dismiss Ms. Rubino's class, but I have to pick up Ms. Lucile's class...and I can't dismiss two classes...and the assistant principal said that he'll dismiss the class." (830-831). Ms. Gillman said that she distributed the report cards to the children in Ms. Rubino's class. (832). However, Ms. Gillman did not recall specifically giving report cards to any student other than A.S. (851- 853 ).

Mr. Brian Sadowski was unclear as to when he did and did not see Ms. Rubino in the cafeteria on the last day of school, except to say that she was not in the cafeteria when the children were dismissed and he did not see Ms. Rubino give out the report cards to the children. (42-45).

Ms. Vivian Goodman is a kindergarten teacher at the school as well as being the Union Chapter Leader. When asked about Principal Esposito, Ms. Goodman said that "...(t)eachers, we're always wrong until proven right. She takes the children's side all the time. She takes the parents' side all the time if it's a parent making a complaint. She'll take anyone's side against the teacher." (693). Speaking of the meeting with Principal Esposito on June 28, 2010, wherein Ms. Rubino was presented with a U rating, Ms. Goodman said that she and Ms. Rubino were

"...flabbergasted.... We had no clue what was going on." (715, 773-774). Ms. Esposito insisted that she could not tell them why Ms. Rubino was receiving the U rating; Ms. Rubino was upset and asked to leave the building; Ms. Esposito told her that she could leave provided that she return by 1:00 p.m. (715-717, 776).

In December 2010, Ms. Goodman and Ms. Rubino had a meeting with Principal Esposito, at which time Principal Esposito said she had investigated allegations by A.S.   Principal Esposito had no written statements, saying that she had interviewed the students by telephone. (721-723).   At a subsequent meeting, later in December 2010, Ms. Goodman and Mr. Alan Abrams, also of the Union, were present, at which time Mr. Abrams criticized Ms. Esposito's handling of the alleged investigation into the A.S. allegations. (723-724).

A.S. testified about the alleged incident.  According to her, on the last day of school in 2010, Ms. Rubino "was handing out the cards, the report cards, she leaned over and said something to me, but I forgot...when I was walking out and I was at the bottom of the steps because she was at the top of the steps, she told me that your mother could get me fired all she want but it's not happening...."  (394-395). According to A.S., this comment came on the heels of a variety of other negative comments that Ms. Rubino had directed towards her over the past few days, regarding getting beaten up in high school, not having her

brother to watch out for her anymore, and writing "bitch" across her forehead. After class was dismissed and after school was dismissed, A.S. immediately went to find Principal Esposito and, when she found her, Principal Esposito led A.S. back into the cafeteria to talk to her, and, at that time "...Ms. Rubino gave me a dirty look." (397). While speaking to Principal Esposito, A.S. also told her that Ms. Rubino had said some other nasty things to her and other students in the class, within the past few days. (398-403). A.S. said she never made a written statement about any of these allegations. (404). A.S. alleged that there had been classroom issues and a conversation with Ms. Rubino that led up to Ms. Rubino saying these inappropriate and upsetting things to her in the cafeteria and out on the steps of the school. (447-448). When A.S. spoke to Principal Esposito, A.S. said that Principal Esposito "...said she didn't get me. She didn't understand me. ...she said that you can go. I'm going to call your mother and have a meeting arranged." (449). However, there was never a meeting and A.S. never spoke to Principal Esposito about the alleged incident, again. Rather, Principal Esposito called A.S.'s house and spoke to her mother, who told A.S. what was being asked and who relayed the answers back to Principal Esposito. (456-461).

Principal Esposito explained that there had been issues with Ms. Rubino's annual performance review, having given her an N and then having to change it to a U. (DOE Exhibit #s 20, 21). The N was originally

given because of the DWI.  However, Principal Esposito said that, when the investigation into the Facebook incidents began, "I was advised by Legal that given the nature of the investigation that was pending that I was to rate her a U." (338).  Principal Esposito had a meeting in her office with Ms. Rubino and Ms. Goodman, wherein she gave Ms. Rubino the U rating and declined to tell her why she was receiving a U.  (341-342). According to Principal Esposito, Ms. Rubino "left the office very angry...if I recall correctly she told me that I needed to dismiss her, I needed to find a way to dismiss her class." (342).  Principal Esposito recalled going down to the cafeteria and telling Mr. Sadowski to arrange for Ms. Rubino's class to be dismissed. (342).

Subsequent to dismissal, Principal Esposito saw A.S. back in front of the building at the Safety Agent's desk, speaking on her cell phone and appearing to be upset. (345-346).  A.S.'s mother, who was on the cell phone, gave permission for A.S. to speak with Principal Esposito, so they entered the building again and went into the cafeteria.  Principal Esposito said she did not notice Ms. Rubino in the cafeteria at the time they entered.   (349-350).     Principal Esposito took some notes during this conversation with A.S., on an envelope that she had picked up from the floor.   (Respondent Exhibit #7).   However, she did not get a written statement from A.S.  Thereafter, she tried to have A.S. come in to give a statement, but A.S. did not or would not.  Principal Esposito ultimately

44

spoke with A.S.'s mother, by telephone, and the mother relayed questions and answers. Principal Esposito also subsequently spoke to other students who were allegedly in the classroom during the last days of school and in the cafeteria on the last day of school, and who were proximate to A.S. She was allegedly told that Ms. Rubino gave out the report cards, that Ms. Rubino dismissed the students, and that A.S. did not seem upset at dismissal. (367-372). All of these conversations were had six months after the alleged incident, and none of them resulted in a written document being provided by any student. Each was conducted by telephone.

There was much conversation with each the witnesses who testified about this Specification, regarding the layout of the cafeteria, the exit that A.S. took, the steps that lead to the exit and the steps that lead from the exit to the outside of the school building. A.S. drew a very minimalist sketch at the request of the Hearing Officer. (Hearing Officer Exhibit #2). Notwithstanding all this testimony, I am not persuaded that Ms. Rubino was in the cafeteria and spoke to A.S.; I am not persuaded that Ms. Rubino spoke to A.S. when she was on the steps leaving the school; I am not persuaded that Ms. Rubino gave A.S. a dirty look when A.S. entered the cafeteria with Principal Esposito.

Principal Esposito concluded that Ms. Rubino had, in fact, spoken inappropriately to A.S. I do not concur. I do not find that Ms. Rubino did anything but go down to the cafeteria and hand over her report cards,

45

after which she left and did not return until after the students were gone. The leap of faith that Principal Esposito makes, implying that, since all children would happily trot off after being dismissed on the last day of school, the fact that A.S. was at the front desk, on the phone with her mother and visibly upset, makes it more likely than less that Ms. Rubino is culpable, is a leap that I am not willing to make. There has been no proper investigation, there have been no proper findings, and the supposition and hypotheses are insufficient to render a finding of culpability. Therefore, I dismiss Specification 8.

## CONCLUSIONS

Having found Ms. Rubino culpable of the conduct charged in Specification 1, Specification 3 and Specification 4, the question turns to penalty.

Numerous cases from other hearing officers and/or courts were given to me by the parties. Each and every case stands on its own facts and its own merits. Having read them and weighed them carefully, as well as having taken into consideration all the evidence, the testimony, the audio of the interview with Ms. Engel and Investigator Caiati, and the arguments in this case, I reach the following determinations.

There are myriad issues regarding social media that are currently in the courts, at the NLRB, and that are subject of debate and discourse across the nation. No final determination, from either the highest court in

the state of New York, the Federal Court in the 2nd Circuit, or the Supreme Court has been rendered. Actions have begun; cases have been heard; some determinations have been made. Past decisions by the Supreme Court and other courts regarding obligations of public employees appear to stand for the proposition that a public employee has a right to "speak" wearing his or her "public employee hat," even if it is in a negative light about the employer, providing that the comments made are regarding a matter of legitimate public concern. *Pickering v. Board of Education, 88 S. Ct. 1731 (1968).* In the case of *Pickering,* the Court noted that the case was one "in which a teacher has made erroneous public statements upon issues then currently the subject of public attention, which are critical of his ultimate employer...." *Id., at 1737.* In this case, Ms. Rubino was clearly speaking about an issue that was currently the subject of public attention, the drowning of a girl who was on a public school field trip, which story was in the newspapers and on the news reports. (DOE Exhibit #s 2-4, for example). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. *Connick v. Myers, 103 S. Ct. 1684 (1983), at 1690.* In this instance, while the drowning certainly was a matter of public concern, Ms. Rubino's comments do not appear to be comments that concern the

47

community; rather, they are comments, clearly made in her "teacher hat" since she refers to her "students," which comments are antagonistic to the school community and its inhabitants.    Additionally, "...when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos, 126 S.Ct. 1951 (2006), at 1960.* So, the question is whether Ms. Rubino was posting as a private citizen or as a teacher, and whether her posting were a matter of official duties or personal commentary.  Ms. Rubino definitely posted as a teacher.  The matter about which she wrote was not pursuant to her official duties.

I will not jump into the fray render a conclusive decision on the rights of a person of making inappropriate comments on Facebook, specifically. I will make a determination on the propriety of making those comments while being a public employee, commenting about the job and the students.  I will note the it is disingenuous to argue that, just because Facebook settings allow a certain amount of "privacy," that would protect a person from comments made that were subsequently disseminated. In this day and age, it appears that anyone can see almost anything that appears in any form of social media, whether the information/photographs/documents/and et cetera are posted by the person who generated them or by some third party. There is very, very

48

little that is truly private anymore. That is apparent to almost anyone, including most children. So, Respondent's constant attempts to hide behind the Facebook "privacy" settings is unpersuasive argument. Additionally unpersuasive and disingenuous is Respondent's argument that, if only someone had asked Ms. Rubino to take down the comment, then this entire issue would have been a non-issue. The fact that it was posted, the fact that it was copied by at least one person, the fact that it was subsequently disseminated in the media and the fact that it could still be "alive and well out in the ether" is also something that Respondent cannot deny. Everyone leaves electronic footprints, even when delete is pressed or comments are removed. The only way to ensure that you do not leave them is not to post or send or email or engage, in the first place.

I also render this decision on the significance and propriety of engaging in deception and obfuscation with an investigation. That breach of trust, that creation of a lack of trust on behalf of the New York City Department of Education towards Ms. Rubino, renders it impossible for her employment to be continued. The lie she conspired in, with her friend, Ms. Joann Engel, which prolonged the investigation needlessly, leads to a lack of faith and confidence that cannot be overcome. Culpability, taking responsibility for mistakes made, is something that parents should teach to and instill in children and something that teachers should also teach to and instill in children. Deflecting the blame will

49

typically not work.  Even Respondent finally acknowledged this, in her cross examination. (1234 – 1237)

Additionally, and notwithstanding the fact that Ms. Rubino does not acknowledge that which is clear to this Hearing Officer about her corroboration with Ms. Engel, she has not acknowledged her wrongdoing in any part of the obfuscation, whether it be the actual lying to the investigators or the fact of holding Ms. Engel out as the possible Facebook comment poster.  She has only acknowledged her poor judgment in making the posting to Facebook, in the first place, and, it appears, has only done so grudgingly.  (1384 – 1391, 1397 – 1405, 1204).  I do not find termination to be an excessive penalty.

Finally, the Hearing Officer wishes to address an issue brought up periodically by Respondent counsel, that he was somehow disadvantaged during the course of the hearing, either by the dates that were previously designated, or by the fact that discovery is ongoing and it did, in fact, continue throughout the case, or by the Hearing Officer not granting every request he made, including the request for this Hearing Officer to recuse herself from the hearing.  (253 – 266, 288 – 316, 1491 - 1492).  A read of the transcripts, from the outset when Respondent counsel was not representing Respondent, through the time period when Respondent appeared without counsel and was not "forced" to go forward, to Respondent counsel filing his appearance and being apprised

50

of what had transpired and what the assigned dates were, clearly shows that this hearing was held in an evenhanded, appropriate, non-arbitrary and non-capricious manner. Notwithstanding periodic protests to the contrary, a full and fair hearing has occurred and this determination is the result of a careful and dutiful evaluation of the evidence, the testimony, the closings and the documents provided at closing. Additionally, it was Respondent who demanded a public hearing, which request resulted in a reporter for the New York Post appearing on one of the hearing dates, which resulted in an article and picture appearing in the New York Post and in the online version, and about which Respondent commented. (DOE Exhibit #32). This Hearing Officer had no involvement with, nor discussions with, any member of the public or the press, during the course of this hearing, nor did she invite any member of the public to attend the hearing.

Therefore, I render the following:

## AWARD

1. Specifications 2, 5, 6, 7, and 8 are dismissed.

2. I find Respondent, Christine Rubino, culpable for Specifications 1, 3 and 4.

3. For the culpability in Specifiations 1, 3 and 4, Respondent, Christine Rubino, is to be terminated from her position as a teacher in the New York City Schools.

Dated: June 6, 2011

Randi E. Lowitt, Esq.
Hearing Officer

## AFFIRMATION

STATE OF NEW YORK)
COUNTY OF NEW YORK )

I, Randi E. Lowitt, Esq., affirm that I am the individual who executed the foregoing instrument which is my Opinion and Award.

Dated: June 6, 2011

Randi E. Lowitt, Esq.
Hearing Officer

52

**UNIVERSITY OF THE STATE OF NEW YORK**

**STATE EDUCATION DEPARTMENT**

| | |
|---|---|
| In the Matter of the Administrative Hearing ] | |
| **Between** ] | |
| **Department of Education of the City School District of the City of New York, Complainant- Employer** ] | **Opinion and Award** |
| ] | **Gloria Johnson** |
| **and** | **Arbitrator** |
| ] | |
| **Valon Beasley  - Tenured Teacher; Respondent** | **SED No. 29,121** |
| **Section 3020-a Education Law Proceeding** ] | |

**APPEARANCES:**

<u>**For the Complainant:**</u>          Clorisa Cook, Esquire
                            NYC Department of Education
                            Office of Legal Services
                            49-51 Chambers Street
                            New York, New York 10007

<u>**For the Respondent:**</u>          Valon Beasley, *Pro Se*


## I. INTRODUCTION

The instant Charges and Specifications were filed by the Department of Education of

the City School District of the City of New York ("Complainant," "Department" or "DOE")

against Valon Beasley ("Respondent") pursuant to Section §3020-a of the Education Law of

the State of New York.  As a result of the filing of these Charges, the undersigned was

designated to serve as Arbitrator to hear and decide whether there is just cause for disciplinary

action against Respondent.  On April 12, 2016, through the efforts of her initial Attorney

## VI. PENALTY/AWARD

1. Specification 1 A,B, C.D and E are hereby sustained

2. Specification 2 A,B and C are hereby sustained

3. Specification 3 is hereby sustained.

4. Specification 4 A and B are hereby sustained.

5. Specification 5 A,B,C, D and E are hereby sustained.

6. Specification 6 is hereby sustained; to include occurrences 1 to 33 set forth therein.

7. Specification 7 is hereby sustained; to include occurrences 1 to 12, set forth therein.

8. Specification 8 A and B are hereby sustained. And the typo calling it Specification 6 is hereby corrected for the record.

For the foregoing reasons, Respondent's misconduct merits a penalty. There is just cause for termination.

Gloria Johnson
Arbitrator

Date of Award: August 22, 2016

## AFFIRMATION

I, Gloria Johnson, do solemnly affirm upon my oath as Arbitrator, that I am the individual described in and who executed this instrument which is my Opinion and Award.

Gloria Johnson
Arbitrator

Date of Award:  August 22, 2016

# EXHIBIT D

Opposition To Motion To Dismiss

By NYC Department of Education

Transcript of Feb. 2015 meeting

Welcome. [CARMEN FARINA]

>> You're like a cast of thousands. I didn't even know I had this Army. So this is really good. I would say thank you for coming.

I know many of you who have traveled distances to be here today, and I appreciate your coming.

I think you're, first of all, seeing something very unique. You're seeing two of us sitting next to each other.

We're actually smiling at each other.

All because we really have one mission, and one mission is to make sure that there is the best teacher in every single classroom in every school in our city.

Many of you are parents and grandparents.

What I want to tell you is that I take very seriously about any classroom that I would not put my grandchild in, I would not put anybody else's children in.

By the same token, there are many teachers who can have an angry parent or an angry this or an angry that bring up charges that may not be correct, but we cannot have people in limbo.

We cannot have people who should be working, not working, and people who shouldn't be working, working.

And I am asking you to really rethink the whole process of the work that you do.

First of all, we want to make sure you're looking at evidence that matters.

Having been a principal who would spend 40 percent of a given year writing people up. I understand how much time it took me.

If I forgot to cross a T, I literally hired a retired principal to just read my paperwork because it was so cumbersome, and as onerous as some of the charges were, if my T wasn't crossed and my dot, we should not be looking at our work in that kind of detail.

We should be looking at what is the problem and how serious is it and what do we do as the next steps?

Do I want to make sure that you're looking at evidence that's relevant to the case. , that that's your focus, your lens.

When I visit a school, I know there are at least three things I want to look for in every single school, and I am focused on that.

Principals try to divert me and say look at this, look at that, I want to go back to the three things that I want to look at.

So what are the things you need to do to decide your case and focus on those.

Also, I don't know why we need five witnesses when three will do.

The reality is, if something is substantiated and one person says it, another person says it, and then a third person says it, I don't understand why we need to have a cast of thousands.

And I'm really asking you -- and I don't think it's due process.


It's just a matter of how much longer can this drag out. I'm looking at how much sooner can we get this done?

Is there's a 30-day rule for most things, and I think to the degree that we can do it, I suggest we do it.

The other thing is that I think it's really important also to ensure that, if there's anything that's standing in the way, at least from my perspective as a chancellor, and you need me to fix it, I'm more than happy to fix it.

So for example, you need a witness, you need them to be there at 4:00, you need someone to come from the school, to a degree that I can say to a principal make sure this person is

released when this person has to be there, I'll do that because my thing is to get this thing done as quickly as possible so that everyone's rights are protected, and most importantly, the child who sits in a classroom.

And if it means I have to send someone to convince the parent for a child to be a witness in the case, I'm happy to do that as well, but I also feel that sometimes we wait so long to hear a case, that my memory certainly isn't what it used to be, we can't expect a kid to be able to do that.

So the quicker we do things, the more concentrateded we are on getting the case settled, the better we'll have a public school system.

And both Michael and I are convinced the only way to have a public school system is we hold everyone to the highest level.

I do not want to see some teachers who are getting by on slightly ineffective.

I only want highly effective teachers in every one of our schools. To that, I am committed, and I am committed, along with Michael, to make sure the 30-20 process is fair, equitable, and reasonable.

I do not understand why some cases are dragging along as far as they are.

Again, I'll be very personal.

I remember having a teacher for six months on suspension, going back to the hearing, having the teacher allowed to pick, in those days, what kind of hearing she wanted, and then coming back to the classroom and actually doing very serious to a child because of the process.

We cannot have that. You're on, Michael.

## [MICHAEL MULGREW]

>> Thank you very much, Carmen, and thank you all for coming. It's lovely weather that we're having here.

I just found out that we now have the coldest February in the history of New York City.

So thank you all for coming out.

I met with some of you years ago, and I want to first thank you for the amazing service that you supply us.

These are not easy issues, and we have taken a system that used to be

-- take a lot longer, and we have really shortened it.

And what you're hearing from myself and the chancellor today is we're looking to even try to make it faster.

Fairness is the key to all of this.


The legal processes, I understand at times, can become somewhat of an impediment in terms of efficiency and speed, but what you're hearing us say here today is this is what we would like.

And if there is something going on that we should know about, if there is someone on either side, an attorney from either staff doing something that drags out a case, not doing things properly, not using the full hearing day, we need to know about that because we will be looking, because we do believe it is important that, if there is any sort of allegation, we want it to take as little time as possible because I do know from being a teacher, from a chapter leader, people that would be completely exonerateded but were never correct because they were out of the classroom for so long and the astigmatism that was tied to that.

So we know it's in everyone's interest to have the most efficient, effective, speediest process as long as we can also ensure fairness, which is a difficult job that we're asking to you do.

But I know that we have shortened the timelines greatly from where we were at five and six years ago, and I can't thank you enough for that, but we're looking now to say, as Carmen said, if there's two witnesses saying the same thing, we don't want ten.

And the things that you know better than I do about what else in the process, but more importantly, if you feel there's something not going right, please let us know because we want to know if people aren't doing what we have directed them to do, which is to make it efficient, effective, fair, and speedy.

Because that is the way that we feel will better serve the students of this city.

So I can't thank you all enough for what you already have done.

I speak very proudly around this state about what we have done here in New York City, and you all know the scrutiny that it is under, and I love that I can produce actual facts to refute a lot of the rhetoric that's out there, and that has a lot to do with your work.

So I can't thank you enough for that, but at the same time, we believe that we can do it even better.

So at this point, questions?

## [COURTENAYE JACKSON-CHASE, ADAM ROSS, AUDIENCE]
>> Sure.

>> I get a lot of questions when I speak to principals and teachers and whatever. Not one question? Okay.
Yes?

>> Remember the last time we were here?

>> Why are we here?

>> Because we want to make sure that everybody understands that we want this process to be done quickly.


You are in charge of the process when it gets to your level.

And if there are people -- if there is something that could be done to make it faster, we'd like to hear it, and if there is a party on either side that you believe is wasting time, we need to know about it.

>> And I would say also very clearly that for too long, that the head of the education department and the unions were almost expected to be fighting each other and that this group would say, well, we can't do this because, and we can't do this because.

We wanted to be clear here today that we're giving the same message to everyone from both of us, and I think that's really important, and it's certainly something that people outside the organization say, well, you can't do it because of the union, or you can't do it because of the chancellor.

We're united on this one.

There is absolutely no disagreement between the two of us on only the best people need to be in these positions.

So we wanted to say it, and we wanted to say it out loud, and we'll probably be repeating it a lot.

>> And an agreement that was signed  --
>> 2010.

>> That would be five,  2010.
It said that the chancellor and the union president can bring the panels in to discuss this with them, and we just wanted to make it clear exactly what our expectations are at this  point.

>> How do the pro ses get in the  transcripts?

>> We have an agreement, as part of the 2010 agreement, that the transcripts are not necessary before you issue a decision or before you do a  closing.
So the pro ses should be getting the transcripts, but it should not be impeding the speed of the  process.

>> That's not my question. How do we get  them?
It's on teach.
Do the pro ses have access to   Teach?

>> The pro se, I don't know the answer to that.  I can find out the answer to  that.

>> Come on up if you have the answer. [ No microphone  ].

>> I would say for the more technical questions for the lawyers that do the work, you can feel free to stand up like Laura just   did.


>> She spoke.
They have access to the   Teach.

>> Well, I would assume, since there are no questions, that everyone gets the  message.
Again, I just want to be clear that, if there's anything that is actually keeping you from doing the job, all you need to do is let us know because I am determined on this issue -- many others, but this one in particular -- that we will get to June with as many cases  closed as possible so principals can be assured that teachers they do not want back in the building, or teachers that can be cleared so they can be back in the building, we can be on their rosters at the end of June.

>> So there's no need to have transcripts before a closing argument, is that  correct?
                            That the arbitrators should all know  that.

>> Yes, that's  correct.

>> Okay.
Well, thank  you.

>> Thank you for  coming.

>> We can go through a couple of more technical  things.

So what I was going to just say is that to Michael and Carmen's point about making the process be as efficient as possible and still fair, there are a group of things that the DOE and NYSUT and Courtney and I have agreed to over the years to help make the process run as efficiently as possible without compromising the  hearing.

One of them relates to the holding of pre-hearing conferences, which should not be done on hearing  days.

We should be using hearing days for  hearings.

We shouldn't be using them for settlement discussions either. Parties are free to discuss settlement whenever they   want.

Courtney and I actively encourage people to settle, but hearing days should be used for  hearings.

The pre-hearing conferences should be used to the maximum extent possible to premark exhibits, stipulate the facts, stipulate to admissibility of documents, where those things are not in dispute.  And discovery should be provided prior to the pre-hearing conference to the extent that that's required by our   agreements.

We have agreements about what things are supposed to be provided on what timeline, and we have asked that the -- all of the attorneys abide by those  provisions.

>> I think the other thing that we want to talk about, I know that there are more cases that are handled by private counsel, and   we're

going to be doing another   orientation.

But I know that it's hard when you have lawyers who may not be used to kind of the groove of things, and they're balancing cases in  courtrooms and also trying to manage within this   system.

Please let us know how we can be helpful to help better integrate them into the system so they get caught up to speed because I know at times it can be a nightmare for everyone to juggle the scheduling that has  to happen, and we want to help get you to the place where the rules  for timelines can apply to   everybody.

So we do know.

We are aware that that's been a   problem.

We're working on it on our end, but I welcome -- even though that can be seen as a more technical issue, you obviously talked to the  managers that you usually interface with and the lawyers, but you can also reach out to us so that we can help manage them a  lot.

>> Absolutely.

But what I would say is, regardless of who the attorney is, whether  it's pro se, whether it's an NYCIT attorney representing the respondent, another attorney representing the respondent -- all of the cases should be held to the same timelines, the same 60 days for doing the hearing, the same efficiency requirements, the same everything  else.

To that end, one of the other things we have agreed is to the use of full hearing days to the maximum extent  possible.

That may require either or both parties to have multiple witnesses ready to go in the day, and that is something that we expect both sides of the case to be ready to  do.

That's something that's written in our agreement and that we believe  is an important part of making sure that the full hearing day is    used.

>> I will add, particularly for the DOE, since we have the burden and we also have the school-based witnesses, as Carmen said, we are committed to making sure that we can work to make things easier to get the witnesses here.

Again, everyone here knows that it's a hard juggle to manage what we do down here and what goes on in schools, but I welcome your feedback on that point, and we're committed to making that even more seamless. I know we've made some improvements over the last few years, but we're going to keep working on it.

>> One of the things that we hear a lot about, Courtney and I do, is about the length of particular testimony and who is allowed to testify to what.

My way of summing this up has been that grandma is not a relevant witness.

We are asking the hearing officers to actively control the hearings, to make firm -- rather than -- we know there's a tradition in labor arbitration to sort of take everything for whatever it's worth and sort it out later.


That is not what I think is the best way to be doing business.

We think the hearing officer should be ruling on relevancy, ruling on redundancy, ruling on cumulative, ruling on whatever it is, hearsay, whatever it is, to make sure that we're not spending an inordinate amount of time on the testimony of witnesses who don't have anything relevant to testify to or anything additionally relevant to testify to.

One of the other things we've looked at in terms of the process is the use of rebuttal witnesses.

We have pretty clearly written out that rebuttal is supposed to be used only for purposes of refuting a fact that an opposing party attempted to establish on its case and not just for further bolstering the case that one side or the other put on on its direct case, and we would ask all of you to please think about whether or not, in the cases that come up for you, whether or not rebuttal is being used for what is truly a rebuttal purpose and not simply to bolster the direct case.

We talked about the private counsel cases.

The only other thing I would add about that is that even when attorneys change in the middle of a hearing, we totally understand that hearing officers, and obviously the UFT and the DOE, all want to make sure that everyone has their constitutional due process and right to counsel and all of the other stuff.

But it also is not true that those changes in counsel should do anything more than the most minimal derailing of the speed of the case.

The only other thing that I have on my list of things that I wanted to highlight for everyone was decisions and that we've asked the hearing officers to -- not only have we asked, but it's in the law that the decisions be issued within 30 days.

That means, look, I have read a lot of 3020 decisions, and many of them are comprehensive, and I know how much hard work and deliberation goes into all of those decisions, and certainly we want decision that's are thoughtful and review all of the evidence and stand up to review on appeal.

But we also need that to be balanced with the notion that we need the decisions to be issued as timely as possible because we want the people who should be back at work to be back at work, and we want the people who should be disciplined or terminated to be disciplined or terminated. And it's to no one's benefit for someone to be waiting, reassigned, doing administrative work for a period of time while we wait for a decision.

Some of that is necessary. I totally understand that.

But we'd like to minimize that as much as possible. Anything I left out on our  list?
Is.

>> No.


Yes, sir?

>> If you don't want us to have a pre-hearing conference on a hearing day, what do you suggest we do with the rest of the  day?

>> I think the pre-hearing conferences should not be held on hearing days.
They could be held either on other days of the month. They could be held before a regular hearing  starts.
They could be held after a regular hearing starts. After it  concludes.
They can be held on a lunch   break.
They can be held on another day, like I  said.
But they shouldn't be held in lieu of using a hearing day for a hearing.

>> In lieu of is your  problem?

>> Yes. Okay.

>> There a hand in the  back?

>> Yes.
I heard earlier about the position before they  close.
What is your position about a pro se or a private counsel insisting I need to look at the transcript before I close or I need to look at the transcript before seeing a  referee.
I guess the question is  twofold.
Do I need the transcript before  closing?
                              And what is your position on reading  briefs?

>> We trust you to use your discretion. I'm sorry, I can't see younow.
We trust you to use your discretion to manage the process.  I was a prosecutor for many   years.
We would have trials where someone's liberty was actually at risk. We were never permitted to actually get  transcripts.
For those of you who are trial lawyers on the criminal side, you know what I'm talking  about.
The judge would just say, you were just here. You heard all theevidence.
Let's go.
I understand that these hearings don't happen on consecutive dates, but they do happen closely enough in time where we're saying if you really -- some cases might be   complex.
We understand  that.
But for ones that are not, you can hold  firm.
You'll have us to support you to say, I don't believe that that's necessary or warranted here in this case and your request is   denied.

>> Right,  exactly.

In a lot of these cases, you'll have -- I forgot what -- I'm blanking on the word.

You won't have final transcripts, but you'll have the -- what's the word I'm looking  for?

Is the tentative  transcripts.

>> What's a tentative   transcript?

>> There are -- well, I will talk to -- Courtney and I can talk to the transcription services about whether or not there's a way to get the transcripts to you even if they're not certified and final, as fast as possible.

Let's put it that  way.

>> What about  briefs?

Do you have a position on reading briefs? Do you allow it?

Do you not?

>> Again, I would never think -- I would never want to manage the process.

That's why we have  you.

I respect your discretion on what you think is necessary in order to have a full and fair hearing on a   case.

>> Absolutely.

I think, if you were to say, given the case, no, I as a hearing  officer don't need a brief, that that is not something that inherently either one of us think there's a problem  with.

There may be occasions where you think it's appropriate to have a brief, but if you don't think it's appropriate to have written briefing, there's nothing that we would say says to you you have   to.

>> We'll support you on that. [ No microphone ].

>> But the point is you want these cases to hold up in court, and you have lawyers insisting, again, a pro se, saying I want to file a  brief.

>> Then you can say  no.

>> You're telling me to just say   no.

>> I understand, but you know on appeal, as long as the facts are there, it's clear that a person acting pro se really did follow and really did  understand.

I'm not saying, if I were in your shoes, I wouldn't have   some

trepidation  too.

The first few cases where you say no, yeah, you're going to wait and see if they take an appeal and what  happens.

But we're saying do what's right and what's best and what's prudent for each case.

If you do not need all the extra, do not do it. If it's not appropriate, don't do   it.

Again, you'll have our  support.

>> Nina, did you have a   question?

>> No.

Just with the transcript, I just wanted to clear that up.

As far as the practice, it's determined case by case if it's relevant. If you have a minor witness or a minor witness who doesn't have important testimony, the parties could agree that the transcript is not necessary, it's limited testimony.

However, if there are some days of hearing where you'll have a transcript, I think certainly the need for a transcript, they should have that and should not waste time to wait for the hearings to move forward by not having a transcript for all of our cases.

I think it works out just that way.

>> Yes, sir?

[ No microphone ].

>> It is essentially unfair that the transcripts from the DOE are open, but the testimony of our witnesses aren't available by transcript.

Is there a way to make sure that maybe that's a fair process?

>> What you're saying is they're being prepared chronologically. So because the DOE goes first, that comes first.

Sure, we'll certainly look into that.

>> Yeah, I think that's right, Chris.

I mean, I'm just -- I just think what Lena said is a fairly good point.

No one size fits all solution in any of these cases.

But the hearing officers and the attorneys together should be making good faith judgments about what is necessary to do to get the case done efficiently and fairly and what is not necessary to get the cases done efficiently and fairly and what is just extra, I guess, is the best way of putting it.

The fact that it's a pro se counselor, pro se respondent or a nonNYCIT council, doesn't necessarily in my mind alter the analysis so much as what is the nature of the case and what is the nature of the arguments that are being made?

>> There's a question that came in via -- over here.

>> We won't forget you.

>> There's a question that came in from someone who's doing the live streaming, an arbitrator asked the question, when private counsel's involvement in a case leads to scheduling difficulties, it would sometimes be helpful to be able to take the next case out of order. We have been told that that is not permitted.

Can there be some flexibility here?

>> We'll look into that.

>> Yeah, but I would also say that, in general, our agreements are pretty specific that the scheduling of the attorneys is not ordinarily  a reason, whether it be a private counsel case or otherwise, for a  case not to proceed on the scheduled  day.
[ No microphone  ].

>> I'm looking for the language of the agreement on what we   have.
The actual language of the agreement on transcripts from 2010 is "a party to the hearing or a hearing officer may request an unedited copy of the relevant  transcript.
If a certified transcript is not available when  needed.
The unavailability of a certified transcript shall not excuse  adherence to the timelines for completion of a hearing and issuance of  a decision.
That's the language of what we've agreed  to.

>> If I ask for it, do I pay for   it?

>> I don't know the answer to   that.

>> Do you guys  know?

>> What's the new agreement that you just signed? Is there anychange?

>> I don't think we have signed a new  agreement.

>> Does anybody know? Hold your  point.
Does anybody know if there's a cost associated with what we're calling  a tentative  transcripts?

>> There's a cost for  it.

>> Yes, that's  okay.

>> Unedited was the word I was looking  for.

>> There's a cost for expedited  transcripts.
I'm not really clear if what Adam just referred to would qualify as an expedited.
And there is a new agreement that's in the process of being signed  with the new transcription service, but we'll get some clarity on that and let all the arbitrators know if there will be a cost involved with getting the tentative, unedited  transcript.

>> Thank you.

>> My understanding is we do not, under the new agreement, get copies of transcripts.
Okay rat?

>> I don't know, but lots of people who I trust are nodding their heads in the  audience.
So I'll say yes.

>> I believe that the transcripts are going to be uploaded to   Teach.

>> Yes, that's what I  said.

>> Yes, where you can get them.

>> Yeah, I know. Thank you.

>> Anybody else?
Well, now I guess you get to eat.

>> Now you can really eat.

>> And I think we lose the room at 5:00.
So you have about 15 minutes to mingle and take your time.

>> Can I just say one other thing, Courtney?
  On behalf of the UFT, NYSUT, the DOE, we're all very appreciative of attorneys on both sides and hearing officers.
As practitioners, we want to say it too. We know that you all have not an easy job.
The attorneys have the job of being zealous advocates, the hearing officers have the job of being neutral referees.
It is not easy, but you can all -- you all do on a daily basis a vital service and can really deserve a lot of appreciation for the work you do.


>> Thank you very much."

Here are the attendees:

Betsy Combier
betsy.combier@gmail.com

Editor, <u>NYC Rubber Room Reporter</u>
Editor, <u>Parentadvocates.org</u>

Friday, December 14, 2012

**DOE CEO John Shea Once Again Is Accused Of Sexual Misconduct And The DOE Does Nothing About It.**
**http://chaz11.blogspot.com/2012/12/doe-ceo-john-shea-once-again-is-accused.html**



In another case of the hypocrisy at Tweed, a second women has filed a federal lawsuit of sexual harassment against DOE top Manager John Shea for making highly inappropriate sexual remarks and showing her pictures of him in a skimpy bathing suit and putting the picture close to her face. Yet the DOE ignores the hostile *"frat boy"* atmosphere that rules under Mr. Shea and makes females uncomfortable and leaves Mr. Shea in his $182,000 position. Yes, this is the same hypocritical DOE who removes teachers, tries to suspend them without pay, and files 3020-a charges to terminate them on the mere unfounded suggestion of sexual misconduct. Yet when it comes to one of their top managers it is *"innocent until proven guilty"* and even if guilty, it is *"boys will be boys"*.

Previously John Shea was accused by another female employee that he commented on their bodies and rated them as *"doable"* if he wanted to have sexual intercourse with them. In 2011, Shea described one DOE attorney as "hot" and declared that he "would do her," the complaint states.   As for those female employees who don't measure up?  Especially those with tummy fat?  They shouldn't  be allowed to wear women's clothes that revel their "muffin tops". How disgusting.  Now there are two federal lawsuits dealing, in part, with sexual harassment with John Shea prominently named in both lawsuits.  What hypocrisy by the DOE when they profess "zero tolerance" for any innocent action that somebody might find it to be sexual in nature when it comes to school staff but ignore their own rules when a top manger commits sexual misconduct.

The hypocrites at the DOE should be ashamed of themselves for their blatant *"double standard"* in the John Shea sexual harassment federal  lawsuits.  Chancellor Walcott, what John Shea did is sexual misconduct, why don't you fire him?

# NYC Rubber Room Reporter

Inbox x

**NYC Rubber Room Reporter and ATR CONNECT** <noreply+feedproxy@google.com> 2016, 12:00 PM

to me

## NYC Rubber Room Reporter

- Matter of Thomas v NYC DOE: No Private Right of Action
- U-Rating Upheld by the Appellate Division in the Case of Anne Van Rabenswaay
- The Rubber Room Still Exists, Folks
- Stuyvesant High School Principal Retires to Become Superintendent of the New York Military Academy
- Bernard Gassaway Becomes the Reason Why Nothing is Going Right At the NYC DOE - After He Says NYC has No Education Plan
- Attorney Howard Friedman Appointed NYC Department of Education General Counsel
- Job Opening at the NYC Department of Education Office of Special Investigations - Ethics Optional
- Former Queens Principal Minerva Zanca is the Subject of a Federal Racial Discrimination Lawsuit Filed By US Attorney Preet Bharara
- Bronx Pre-K Administrator Martha Vazquez Caught Forging Parent Signatures on IEPs
- Boys and Girls High School Withdraws Co-Location Plan; Principal Michael Wiltshire in Trouble
- PLEASE Get Rid of Mayoral Control of the NYC Public Schools!
- The 3020-a Arbitration Newswire: Digging Up The Garbage On the UFT/DOE Partnership of Harm For Charged DOE Employees
- Mayor Bill Defends Keeping Correspondence With Friends/Advisers Secret
- Francesco Portelos Goes To the American Arbitration Association To Check on Voting
- Remember Francesco Portelos' Threats To Parents?
- LaborNotes 2014: Myths of Tenure
- Labels - How Good are They?
- The 3020-a Arbitration Newswire: Digging Up The Garbage on The XEROX Machine
- EDNotes Online Discusses Getting The Vote Out For MORE
- OP-ED: Why Cyberstalker Francesco Portelos and His Bully Mob, UFT Solidarity, Failed
- Deborah Marriott Leaves New York State Education Department and Her Position as Director of Teacher Tenure Unit
- State Assemblyman Jeffrey Dinowitz Is Accused of Blocking Minority Students From Enrolling at PS 24 in Riverdale
- Arthur Goldstein: The Discipline Policy of the DOE Needs Revision
- The 3020-a Arbitration Newswire: Digging Up The Garbage on the DOE Lawyers - Shareema Abel

- The Carmen Farina Purging Strategy - Teachers, Parents, Children, Anyone Who Gets in Her Way

## Matter of Thomas v NYC DOE: No Private Right of Action

Posted: 29 Jun 2016 08:18 PM PDT

| Matter of Thomas v New York City Dept. of Educ. |
|:---:|
| 2016 NY Slip Op 02154 [137 AD3d 642] |
| March 24, 2016 |
| Appellate Division, First Department |
| Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. |
| As corrected through Wednesday, April 27, 2016 |

[*1]

In the Matter of Michael P. Thomas, Appellant,
v
New York City Department of Education et al., Respondents.

Michael P. Thomas, appellant pro se.

Zachary W. Carter, Corporation Counsel, New York (Jeremy W. Shweder of counsel), for respondents.

Judgment, Supreme Court, New York County (Ellen M. Coin, J.), entered September 24, 2014, denying the petition challenging respondent DOE's determination, dated September 4, 2013, which found petitioner's allegations of misappropriation of Title I funds to be unsubstantiated, and dismissing this proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.

As we discussed on a prior appeal, in a related proceeding, in August 2010, petitioner, then a public school teacher, employed by the Manhattan Center for Science and Mathematics (MCSM), filed allegations with respondent DOE, complaining of, inter alia, a misappropriation of federal funds received by

MCSM under Title I, Part A of the Elementary and Secondary Education Action of 1965, reauthorized as the No Child Left Behind Act (NCLB) of 2001 (20 USC § 6301 *et seq.*; *see Matter of Thomas v New York City Dept. of Educ.*, 103 AD3d 495 [2013]).

Petitioner, a member of MCSM's School Leadership Team (SLT), lacks standing to challenge the results of DOE's investigation of his allegations, brought pursuant to the "No Child Left Behind Written Complaint and Appeal Procedures" adopted by the New York State Education Department (*see New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004]; *Matter of Posner v Rockefeller*, 26 NY2d 970 [1970]). Petitioner's status as a complainant who initiated an administrative investigation, does not provide him with standing for a private right of action to challenge the agency's determination, absent a demonstration that he suffered actual injury (*see Sassower v Commission on Jud. Conduct of State of N.Y.*, 289 AD2d 119 [1st Dept 2001], *lv denied* 99 NY2d 504 [2002]). Moreover, petitioner does not "fall within the zone of interests . . . sought to be promoted or protected" by Education Law § 2590-h or the NCLB (*see Novello*, 2 NY3d at 211). Concur— Tom, J.P., Friedman, Saxe and Richter, JJ.


## U-Rating Upheld by the Appellate Division in the Case of Anne Van Rabenswaay

Posted: 28 Jun 2016 05:55 AM PDT
2016 NY Slip Op 05051 IN RE ANNE VAN RABENSWAAY,
Petitioner-Appellant,
v.
CITY OF NEW YORK; ET AL.,
RespondentsRespondents.
1571, 101036/14.

Decided June 23, 2016. Appellate Division of the Supreme Court of New York, First Department.
Glass Krakower LLP, New York (John Hogrogian of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York (Jeremy W. Shweder of counsel), for respondents.
Before: Tom, J.P., Friedman, Richter, Kapnick, Gesmer, JJ.

Judgment, Supreme Court, New York County (Carol E. Huff, J.), entered on or about
April 21, 2015, denying the petition to annul respondents' determination, which upheld petitioner's
unsatisfactory rating (Urating) for the 20122013 school year, and
dismissing the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without
costs.
Petitioner has failed to show that the Urating was arbitrary and capricious, or made in bad faith.
The evidence that petitioner failed to timely complete individualized education plans (IEPs)
for at least five of her students, despite repeated warnings and offers of assistance from the
IEP coordinator, provided a rational basis for the rating (see e.g. Matter of Murname v Department
of Educ. of the City of N.Y., 82 AD3d 576 [1st Dept 2011]; Batyreva v New York City Dept. of Educ., 50 A
D3d 283 [1st Dept 2008]).
Petitioner's various excuses, even if valid, would not warrant a finding that the U-
rating was arbitrary and capricious under the circumstances. To accept them would amount
to second guessing the determination that her repeated failure to timely complete the IEPs
reflected a pedagogical deficiency that merited the Urating (see Maas v Cornell Univ.,
94 NY2d 87, 92 [1999]).
Furthermore, petitioner has failed to demonstrate the existence of any issue of fact that could
show, even if resolved in her favor, arbitrary and capricious action under the circumstances.
Thus, there was no need for the court to have conducted a hearing (see CPLR 7804[h]).

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISIO
N, FIRST DEPARTMENT

## The Rubber Room Still Exists, Folks

Posted: 23 Jun 2016 08:32 PM PDT
Robert Bradbury did not deserve to be in the latest mess created by the New York City Department of
Education. I met him many years ago, and we have kept in touch, and I can tell you that he is a very, very
nice guy.

But his Principal, Howard Kwait, has so many demons and skeletons dangling around him that I'm
surprised he is still getting a salary. (see below)

Why do we have such people working forever at the DOE while good people lose their jobs for no reason?

Dunno.

Betsy Combier
betsy.combier@gmail.com
Editor, NYC Rubber Room Reporter
Editor, Parentadvocates.org
Editor, New York Court Corruption
Editor, National Public Voice
Editor, The NYC Public Voice



Robert Bradbury

# Teachers trapped in rubber rooms for years, still collect full pay and raises

LINK
By Susan Edelman

They've been rubber marooned for five to seven years each.

The city Department of Education has kept three accused teachers on the payroll, but confined to menial office tasks since seeking to fire them in 2009 to 2011. One takes home nearly $100,000 a year, and they all get contractually mandated raises.

It's a violation of a major 2010 agreement between the DOE and the United Federation of Teachers to break up the infamous holding pens dubbed "rubber rooms."

In the pact, former Chancellor Joel Klein and union president Michael Mulgrew agreed to end long delays in the handling of educators charged with misconduct or incompetence.

But the rules have collapsed in several cases. Arbitrators who have 30 days to file their rulings after completing termination trials simply abandoned the cases, and the DOE says it could do nothing about it.

"They've been in limbo for nearly six years — collecting full pay and benefits but just sitting here doing nothing with no light at the end of the tunnel," a reassigned educator said of two tenured teachers waiting long overdue rulings at 28-11 Queens Plaza North.



Howard Kwait

Robert Bradbury, 47, who taught history at John Bowne HS in Flushing, mans the reception desk. He made $84,104 in 2015. Bradbury was accused of incompetence by Principal Howard Kwait, who has since cost the city more than $500,000 in settlements with two assistant principals who accused Kwait of sexual harassment, and a student falsely blamed for sending menacing e-mails to staffers.

Bradbury's trial ended July 5, 2011, but arbitrator Leona Barsky failed to file a ruling.


Leona Barsky

"I had to step away from the case due to the recurrence of my breast cancer," Barsky told The Post. She's been removed from a panel of hearing officers.

Joshua Cutler, 36, an English-as-a-second-language teacher at IS 10 Horace Greeley, makes photocopies in the Queens office. He was paid $67,672 last year.

Back in 2011, Cutler, was yanked from his classroom for tussling with a student.

"One of the most violent kids in my class accused me of intentionally bending his wrist to try to hurt him," he told NPR in 2013. "I did break up fights repeatedly, but I never intentionally caused harm to a child."

Cutler said he would not quit his DOE job: "I'm fighting this till the very end, no matter what."

Arbitrator Beverly Harrison, also removed from a panel of DOE hearing officers, never ruled.

Seven years ago in May 2009, Laurie Goldstone, a teacher at P.S. 268 Emma Lazarus in East Flatbush, was charged with incompetence and reassigned to clerical duties, officials said. Arbitrator Adam Goldberg conducted her hearing but left the post in 2010-11 without filing a ruling. Goldstone took home $98,366 in 2015.

The DOE cannot fire tenured teachers unless an arbitrator says so.

Arbitrators get paid $1,400 for each day they work on a case after filing their rulings.

While state law mandates decisions 30 days after a trial, they typically take four to six months, said Betsy Combier, a paralegal who defends teachers.

"The DOE does not hold arbitrators accountable for missing the deadline," she contends.

But DOE officials said state law has no penalty for arbitrators who drop the ball, and no process to re-do a hearings with different arbitrators.

"We have repeatedly reached out to the independent arbitrators handling these cases to issue their decisions, and their failure to do so is unacceptable," said DOE spokeswoman Devora Kaye. "We are evaluating new options to close these cases, as well as options for penalizing arbitrators who fail to issue timely decisions."

**FILED UNDER** DEPARTMENT OF EDUCATION , RUBBER ROOM , TEACHERS ,

# Principal who cost city $500K in settlements now accused of fixing grades

By Georgett Roberts and Carl Campanile

LINK

# Pervy principal keeps his job despite draining city in legal fees

By Selim Algar



LINK

A randy Queens high-school principal has cost the city more than a half a million dollars to settle sexual-harassment suits brought by staffers and students — and he's still on the job.

John Bowne HS Principal Howard Kwait presented the latest hefty tab to taxpayers on Thursday, when the city agreed to give a combined $275,000 to two former assistant principals who accused him of everything from lewd advances to fudging grades.

Maria Catenacci and Sally Maya were so disgusted by Kwait's boorish antics that they resigned their positions, court papers state. Maya agreed to settle her case for $150,000 and Catenacci for $125,000.

"It was best for the city to settle," a spokesman told the Post.

It's not the first time Kwait's antics cost the city cash. A 2012 suit against him by a student's family, who said the girl was falsely accused of sending staffers threatening e-mails, was settled by the city for $225,000.

"We settled after evaluating the facts and the risks of proceeding with the litigation," said a city Law Department spokesman.

The city also paid an undisclosed amount when, in 2012, it settled another harassment case against Kwait. That one was brought by an assistant principal who accused him of discrimination when she became pregnant.



Howard Kwait (left)

In the latest suit, Catenacci claimed that Kwait pressed her to go home with him after an alcohol-soaked retirement party for a colleague and attempted to straddle her at another school related event.

"Mr. Kwait made numerous sexual advances towards Ms. Catenacci," the suit, brought by attorney Steven Morelli, states.

Knowing she was a lesbian, Kwait profanely interrogated her about her sexual interest in other female staffers at the school, the suit stated. When she rebuffed his advances, Kwait revoked her teaching responsibilities and undermined her, the suit said.

Maya, meanwhile, accused Kwait of criticizing her for getting pregnant and taking time off.

Despite his legal woes, Kwait remains principal at the school, where the motto is "the relentless pursuit of success," according to its Web site.

"We are reviewing Mr. Kwait's status," said Department of Education spokeswoman Devora Kaye.



# A Voice From the 'Rubber Room'

By **Liana Heitin** on May 13, 2013 12:31 PM

LINK

Sixteen years ago, Radio Diaries, an audio series broadcast on NPR in which people document their stories, **had a show on Josh Cutler**, a high school student living with **Tourette Syndrome**, a neurological disorder characterized by vocal and motor tics. Last week, the program aired a follow-up episode, in which Cutler caught listeners up on where he is today.

As it turns out, the now 33-year-old became a New York City public school teacher. But two years ago, in his seventh year of teaching, he was accused of misconduct and terminated from the classroom. He explains: "One of the most violent kids in my class accused me of intentionally bending his wrist to try to hurt him. ... They said that I was doing this repeatedly. Well, yes, I did break up fights repeatedly, but I never intentionally caused harm to a child. Of course not."

During a termination hearing, one of his colleagues testified that she had been concerned for her safety because "Mr. Cutler has some bizarre tendencies." She continued: "Mr. Cutler has openly told me that in social situations he doesn't always behave appropriately because of medical issues. ... And his behavior is unpredictable and it's strange."

Cutler now sits in a temporary reassignment center, or what is colloquially known as a "rubber room," from 8:30 a.m. to 3:20 p.m. each day doing office tasks as needed. He continues to receive his teaching salary. "My parents think I should leave and go do something else, but I'm not going to do that," he says. "I'm fighting this till the very end, no matter what."

We've written about rubber rooms and the **absent-teacher reserve pool** (the teachers who are paid to sit in the rooms) quite a bit over the years. In 2010, the United Federation of Teachers and the N.Y.C. school district **reached an agreement to close the rooms** and instead have teachers report to the central office for clerical work. But as *Ed Week* **reporter Stephen Sawchuk has written**—and as Cutler's story corroborates—not much has changed. The rooms may now be in an office setting, but the teachers in them are still getting paid for, as Cutler says, "just sitting around in limbo."

Cutler's account of the dismissal and arbitration offers a glimpse into how complex these cases can be—and perhaps into why these policies have yet to be truly undone. Be sure to check out Cutler's diaries from **both then and now**, as well as the rest of the series, entitled **Teenage Diaries Revisited**.

### Stuyvesant High School Principal Retires to Become Superintendent of the New York Military Academy

Posted: 19 Jun 2016 08:12 AM PDT

# Stuyvesant principal quits for post at Trump's former school

## Jie Zhang retires after four years at helm for upstate gig at military academy


Stuyvesant High School

LINK

Stuyvesant High School Principal Jie Zhang announced Monday that she would retire in July to become superintendent at the New York Military Academy, a private boarding school upstate best known for having had Donald Trump as a student.


Former NYC Chancellor Dennis Walcott and Jie Zhang

Zhang has spent more than 30 years as an educator, which means she was likely not increasing her future pension by continuing in the post she has held for just four years. In fact, she should now be able to draw on that pension while receiving her private-sector salary from the military school, located in Cornwall-on-Hudson.

In an email to students Monday, Zhang did not explain the reasons for her decision other than to say it was "difficult." She wrote that she chose July 21 as her retirement date because it was on that date in 1985 when she landed at Kennedy Airport "to pursue my American dream."

Her first job as a teacher was at Rikers Island. She took the helm at Stuyvesant High School after a cheating scandal led to her predecessor's resignation.

Zhang's new school was bought at a bankruptcy auction last fall for a reported $15.825 million by a nonprofit controlled by Chinese investors, who pledged to reopen the 126-year-old high school after it filed for Chapter 11 protection in March 2015. The school sent letters assuring students that it would open in September of that year, but it did not.

Besides Trump, the school's alumni include Stephen Sondheim, John A. Gotti and Francis Ford Coppola, according to *The New York Times*. It was founded in 1889, but military schools have recently fallen out of favor, and that trend has contributed to the New York Military Academy's financial struggles. Its enrollment had fallen to fewer than 100 students from more than 600 in the 1960s.

Trump graduated from the school in 1964 and later credited it with maturing him after a rambunctious stretch at a Queens prep school. The *Washington Post* (which on Monday was banned by Trump from his campaign events) reported that his five years at the military school, which runs from eighth grade through twelfth, were not without controversy.

Though many alumni from the school went on to celebrated military careers, Trump got educational and medical deferments to avoid serving in the Vietnam War.

## Bernard Gassaway Becomes the Reason Why Nothing is Going Right At the NYC DOE - After He Says NYC has No Education Plan

Posted: 17 Jun 2016 05:47 AM PDT

Bernie has been saying that the NYC DOE needs help for years. I spoke with him after he resigned as Superintendent, and he was saying then that the NYC DOE was a mess.



Bernard Gassaway

There is just no accountability for any failures by the DOE chiefs, of which there are too many. Why do we need Tweed hiring anyone for too much money?

What a waste of public money.

Keep talking, Mr. Gassaway!

Betsy Combier



Bernard Gassaway, left, talks about his resignation with Errol Louis

# *Principal of Failing Brooklyn School Quits, Saying City Lacks an Education Plan*

By ELIZABETH A. HARRISOCT. 10, 2014
Continue reading the main storyShare This Page

Share
Tweet
Email
More

LINK

The latest indictment of the Department of Education's management of failing schools was personified last week by Bernard Gassaway, the recently self-retired principal of Boys and Girls High School.

As he stepped down after five tortured years at the helm of the storied Bed-Stuy school, Gassaway took a verbal backhand to the DOE for failing to produce a plan to turn around the chronically failing school.

Predictably, the DOE shot back that Gassaway was the problem and that the they were planning to get rid of him anyway. But the hard truth is that we as a community – from DOE policy makers, Gassaway and school leadership to the parents and surrounding community-based institutions – ultimately failed the students of Boys and Girls and have been doing so for years.

I believe that the wider community of parents, teachers and neighborhood-based institutions - not just a singular principal or a fix-all plan handed down from Mount Tweed - has the resilience to produce a thriving learning environment if it is engaged through an effective community school model.

The mayor, having promised 100 community schools, has already designated 42 of them. Boys and Girls, in a cluster with other schools in the area, should be included in the next round.

Boys and Girls offers robust services as many community schools do, and is the site of countless community events. It also has the support of local politicians. However it struggles to offer the high academic standards and broad collaboration that are essential elements of effective community schools.

Specifically, parents and the surrounding community have remained under-informed regarding the school and under-engaged in determining its fate. A community school is not just a school within a neighborhood, but an academic and socio-economic hub for the surrounding community. Is this yet another supposed solution-in-a-box? No.

A community school model doesn't suddenly address all the challenges posed by poverty, institutional racism, and DOE bureaucracy. For instance, Boys and Girls will continue to fail under any plan, under any leader, if it continues to be used as the high school of last resort. But with adequate resources, intelligently invested in a community school model, Boys and Girls can begin to address the physical and emotional needs of not just the whole child, but the whole family.

While the Children's Aid Society in New York and Community in Schools, a national network of community schools, provide evidence that community schools demonstrate higher academic achievement levels, the model ultimately rises and falls on the strength and organizing skills of the community behind it.

This is a critical moment in the transition for Boys and Girls, which just named Gassaway's replacement. We've all seen principals, who, from a single centralized command, keep

parents at a distance, see community institutions simply as service providers rather than partners, and treat peer schools as competitors. With so much pressure to meet city and state standards, schools often morph into fortresses and focus their attention inward. In effective community schools, principals are not dictators, but savvy community organizers and collaborators who know how to harvest the talent of the people and organizations around them.

Neither a new principal nor a new plan by the DOE will alone "fix" Girls and Boys. But within a community school framework, they can both provide a rare opportunity to re-think how to build investment and accountability among a broader set of people deeply engaged in the success of a school.

****

Mark Winston Griffith is the Executive Director of the Brooklyn Movement Center, a community organizing group developing leadership among Central Brooklyn parents.

# *Principal of Failing Brooklyn School Quits, Saying City Lacks an Education Plan*

By ELIZABETH A. HARRIS OCT. 10, 2014
Continue reading the main storyShare This Page

Share
Tweet
Email
More


LINK
The principal of a long-struggling high school in Brooklyn handed in his resignation this week — and offered Mayor Bill de Blasio's Education Department one of its sternest public rebukes yet.

"The problem is, there is no plan," the principal, Bernard Gassaway of Boys and Girls High School, said of the city's approach to struggling schools. "They're making it up as they go along."

Mr. de Blasio and the schools chancellor, Carmen Fariña, have distanced themselves aggressively from the approach taken by the administration of former Mayor Michael R. Bloomberg to the city's worst performing schools, which rested primarily on closing them and replacing them with new, generally smaller ones. But Mr. Gassaway's critique, perhaps

the first of Ms. Fariña's tenure to be made so loudly by an insider, comes amid growing questions about what the city plans to do instead.

Boys and Girls, which has existed in some form since 1878 and is Bedford-Stuyvesant's main high school, has a long list of distinguished alumni, including Shirley Chisholm, Norman Mailer and Aaron Copland. But in recent years, its reputation has become checkered.

In 2005, a class-action lawsuit against the city alleged that some students at Boys and Girls were essentially warehoused in an auditorium for large portions of the day, segregated from the rest of the students and not given enough opportunity to earn the credits needed to graduate. The suit was settled in 2008; the city did not admit any wrongdoing.

In the last three school years of Mayor Bloomberg's term, Boys and Girls received three F grades, based on student performance, college and career readiness, student progress and other metrics. In the spring, Boys and Girls, along with Automotive High School in Williamsburg, Brooklyn, was classified by the state as being "out of time" to turn itself around and given a handful of options, including shutting the school down, converting it to a charter school and replacing its administration.

That was under Mr. Gassaway's watch, but he said that the school received dismal results because the most difficult students in the system were routinely assigned there, in unusually large numbers.

Whatever the reason, the atmosphere at the school — where enrollment has plummeted to about 800 students from over 2,000 in 2009, Mr. Gassaway said — could stand improvement.

"There's enough security," said Eli Bradley, 18, a student at Boys and Girls. "That's about it."

Another student at the school, a 16-year-old junior who declined to give his name for fear of reprisal, said on Friday that he was transferring.

"The school could be better, the teaching could be better, the resources could be a whole lot better," he said, pointing to ragged, overgrown tennis courts nearby. "I'm going to transfer soon. They don't give you a lot of opportunity here."

Mr. Gassaway said the de Blasio administration did not provide a coherent vision of how it planned to improve Boys and Girls, and he said the approaches the city planned to use, like social services for the students and increased professional development for the staff, were not sufficient. (Mr. Gassaway has not been shy about criticizing the Education Department. A former superintendent under Mr. Bloomberg, he publicly rebuked that administration after leaving the post.)

His voice joins a small chorus of those questioning the city's plans for struggling schools, and for struggling high schools in particular. Last week, charter school supporters held a rally to call attention to the city's failing schools and to demand that the city come up with a strategy to address them. Mr. Bloomberg often gave charter schools the space freed up by the closing of schools.

"The D.O.E. is innovating and investing to improve achievement outcomes at all our schools, especially those that have longstanding challenges," Devora Kaye, a department spokeswoman, said in an email. "We continue to focus on ensuring that we meet the whole needs of each child and family."

The city must present its plan for more than 200 of its most struggling schools to the New York State Department of Education by Nov. 7. Plans were originally due at the end of July, but the state granted an extension.

Mr. Gassaway's departure was reported Friday by The New York Post. Ms. Kaye said an interim principal would be put in place.

Nate Schweber contributed reporting.

## Attorney Howard Friedman Appointed NYC Department of Education General Counsel

Posted: 15 Jun 2016 07:35 PM PDT



Howard Friedman

# Department of Education gets new top lawyer amid segregation and safety challenges

By Philissa Cramer
LINK

PUBLISHED: June 15, 2016

When New York City's education department responds to a lawsuit challenging its handling of school violence, there will be a new name on the legal papers.

Howard Friedman, who has worked for the city's law department for nearly two decades, will become the Department of Education's general counsel next month. Chancellor Carmen Fariña announced the appointment in a statement that heralded Friedman's "dedication, passion, and innovative thinking.

The top legal slot had been open since Courtenaye Jackson-Chase left for the Children's Aid Society in February after a decade at the department. With her predecessor, Jackson-Chase tackled efforts to close the "rubber room" for teachers who were removed from the classroom after being accused of misconduct and to streamline disciplinary hearings for department employees. As those issues dropped from the department's public priorities under the de Blasio administration, Jackson-Chase reviewed the department's Respect for All anti-bullying policy.

Friedman arrives as the department faces a full slate of legal issues. They include how to

Case 1:17-cv-02239-KAM-RLM Document 67 Filed 03/13/18 Page 323 of 359 PageID #: 810

 **Gmail**

**Betsy Combier <betsy.combier@gmail.com>**

---

## [ATR SUPPORT GROUP-PRIVATE] 24Q119: I.S. 119 The Glendale
1 message

---

**Mavis Shein <notification+zzd=zriz@facebookmail.com>**     Thu, Oct 15, 2015 at 9:03 PM
Reply-To: Reply to Comment <g+40s4jx75000000lokov100gse5iqt11u000zg4sn6i0k31146@groups.facebook.com>
To: ATR SUPPORT GROUP-PRIVATE <ATRSUPPORT@groups.facebook.com>

 Facebook

Mavis Shein, Laurie Kessler Luft and 4 others posted in ATR SUPPORT GROUP-PRIVATE.

 **Mavis Shein**
October 15 at 9:03pm

24Q119: I.S. 119 The Glendale
28Q080: PS 80 The Thurgood Marshall Magnet Scho
28Q161: P.S. 161 Arthur Ashe School

They had me reassigned to PS80 in D28, my home district..on SESIS yesterday...they changed it to D24 today out of my license with a provisional assignment. I tried calling HR no answer..I emailed them as well...according to the MOA I cannot be placed as a provisional outside my district outside of my license area..the job is special ed. Thanks cynthia for emailing me the email that they did not send me with the outline of assignment information.

👍 **Like**    💬 **Comment**

 **View on Facebook**    **Edit Email Settings**

Reply to this email to comment on this post.

This message was sent to betsy.combier@gmail.com. If you don't want to receive these emails from Facebook in the future, please unsubscribe.
Facebook, Inc., Attention: Department 415, PO Box 10005, Palo Alto, CA 94303

# EXHIBIT D

## Opposition To Motion To Dismiss By NYC Department of Education

Transcript of the Feb 2015 Meeting

Welcome.[CARMEN FARINA]

>> You're like a cast of thousands. I didn't even know I had this Army. So this is really good. I would say thank you for coming.

I know many of you who have traveled distances to be here today, and I appreciate your coming.

I think you're, first of all, seeing something very unique. You're seeing two of us sitting next to each other.

We're actually smiling at each other.

All because we really have one mission, and one mission is to make sure that there is the best teacher in every single classroom in every school in our city.

Many of you are parents and grandparents.

What I want to tell you is that I take very seriously about any classroom that I would not put my grandchild in, I would not put anybody else's children in.

By the same token, there are many teachers who can have an angry parent or an angry this or an angry that bring up charges that may not be correct, but we cannot have people in limbo.

We cannot have people who should be working, not working, and people who shouldn't be working, working.

And I am asking you to really rethink the whole process of the work that you do.

First of all, we want to make sure you're looking at evidence that matters.

Having been a principal who would spend 40 percent of a given year writing people up. I understand how much time it took me.

If I forgot to cross a T, I literally hired a retired principal to just read my paperwork because it was so cumbersome, and as onerous as some of the charges were, if my T wasn't crossed and my dot, we should not be looking at our work in that kind of detail.

We should be looking at what is the problem and how serious is it and what do we do as the next steps?

 Do I want to make sure that you're looking at evidence that's relevant to the case.

, that that's your focus, your lens.

When I visit a school, I know there are at least three things I want to look for in every single school, and I am focused on that.

Principals try to divert me and say look at this, look at that, I want to go back to the three things that I want to look at.

So what are the things you need to do to decide your case and focus on those.

Also, I don't know why we need five witnesses when three will do.

The reality is, if something is substantiated and one person says it, another person says it, and then a third person says it, I don't understand why we need to have a cast of thousands.

And I'm really asking you -- and I don't think it's due process.


It's just a matter of how much longer can this drag out. I'm looking at how much sooner can we get this done?

 Is there's a 30-day rule for most things, and I think to the degree that we can do it, I suggest we do it.

The other thing is that I think it's really important also to ensure that, if there's anything that's standing in the way, at least from my perspective as a chancellor, and you need me to fix it, I'm more than happy to fix it.

So for example, you need a witness, you need them to be there at 4:00, you need someone to come from the school, to a degree that I can say to a principal make sure this person is

released when this person has to be there, I'll do that because my thing is to get this thing done as quickly as possible so that everyone's rights are protected, and most importantly, the child who sits in a classroom.

And if it means I have to send someone to convince the parent for a child to be a witness in the case, I'm happy to do that as well, but I also feel that sometimes we wait so long to hear a case, that my memory certainly isn't what it used to be, we can't expect a kid to be able to do that.

So the quicker we do things, the more concentrateded we are on getting the case settled, the better we'll have a public school system.

And both Michael and I are convinced the only way to have a public school system is we hold everyone to the highest level.

I do not want to see some teachers who are getting by on slightly ineffective.

I only want highly effective teachers in every one of our schools. To that, I am committed, and I am committed, along with Michael, to make sure the 30-20 process is fair, equitable, and reasonable.

I do not understand why some cases are dragging along as far as they are.

Again, I'll be very personal.

I remember having a teacher for six months on suspension, going back to the hearing, having the teacher allowed to pick, in those days, what kind of hearing she wanted, and then coming back to the classroom and actually doing very serious to a child because of the process.

We cannot have that. You're on, Michael.

## [MICHAEL MULGREW]

>> Thank you very much, Carmen, and thank you all for coming. It's lovely weather that we're having here.

I just found out that we now have the coldest February in the history of New York City.

So thank you all for coming out.

I met with some of you years ago, and I want to first thank you for the amazing service that you supply us.

These are not easy issues, and we have taken a system that used to be

-- take a lot longer, and we have really shortened it.

And what you're hearing from myself and the chancellor today is we're looking to even try to make it faster.

Fairness is the key to all of this.


The legal processes, I understand at times, can become somewhat of an impediment in terms of efficiency and speed, but what you're hearing us say here today is this is what we would like.

And if there is something going on that we should know about, if there is someone on either side, an attorney from either staff doing something that drags out a case, not doing things properly, not using the full hearing day, we need to know about that because we will be looking, because we do believe it is important that, if there is any sort of allegation, we want it to take as little time as possible because I do know from being a teacher, from a chapter leader, people that would be completely exonerateded but were never correct because they were out of the classroom for so long and the astigmatism that was tied to that.

So we know it's in everyone's interest to have the most efficient, effective, speediest process as long as we can also ensure fairness, which is a difficult job that we're asking to you do.

But I know that we have shortened the timelines greatly from where we were at five and six years ago, and I can't thank you enough for that, but we're looking now to say, as Carmen said, if there's two witnesses saying the same thing, we don't want ten.

And the things that you know better than I do about what else in the process, but more importantly, if you feel there's something not going right, please let us know because we want to know if people aren't doing what we have directed them to do, which is to make it efficient, effective, fair, and speedy.

Because that is the way that we feel will better serve the students of this city.

So I can't thank you all enough for what you already have done.

I speak very proudly around this state about what we have done here in New York City, and you all know the scrutiny that it is under, and I love that I can produce actual facts to refute a lot of the rhetoric that's out there, and that has a lot to do with your work.

So I can't thank you enough for that, but at the same time, we believe that we can do it even better.

So at this point, questions?

## [COURTENAYE JACKSON-CHASE, ADAM ROSS, AUDIENCE]
>> Sure.

>> I get a lot of questions when I speak to principals and teachers and whatever. Not one question? Okay.
Yes?

>> Remember the last time we were here?

>> Why are we here?

>> Because we want to make sure that everybody understands that we want this process to be done quickly.


You are in charge of the process when it gets to your level.
And if there are people -- if there is something that could be done to make it faster, we'd like to hear it, and if there is a party on either side that you believe is wasting time, we need to know about it.

>> And I would say also very clearly that for too long, that the head of the education department and the unions were almost expected to be fighting each other and that this group would say, well, we can't do this because, and we can't do this because.
We wanted to be clear here today that we're giving the same message to everyone from both of us, and I think that's really important, and it's certainly something that people outside the organization say, well, you can't do it because of the union, or you can't do it because of the chancellor.
We're united on this one.
There is absolutely no disagreement between the two of us on only the best people need to be in these positions.
So we wanted to say it, and we wanted to say it out loud, and we'll probably be repeating it a lot.

>> And an agreement that was signed  --
>> 2010.

>> That would be five,  2010.
It said that the chancellor and the union president can bring the panels in to discuss this with them, and we just wanted to make it clear exactly what our expectations are at this  point.

>> How do the pro ses get in the  transcripts?

>> We have an agreement, as part of the 2010 agreement, that the transcripts are not necessary before you issue a decision or before you do a  closing.
So the pro ses should be getting the transcripts, but it should not be impeding the speed of the   process.

>> That's not my question. How do we get  them?
It's on teach.
Do the pro ses have access to   Teach?

>> The pro se, I don't know the answer to that.  I can find out the answer to   that.

>> Come on up if you have the answer. [ No microphone  ].

>> I would say for the more technical questions for the lawyers that do the work, you can feel free to stand up like Laura just   did.


>> She spoke.
They have access to the   Teach.

>> Well, I would assume, since there are no questions, that everyone gets the  message.
Again, I just want to be clear that, if there's anything that is actually keeping you from doing the job, all you need to do is let us know because I am determined on this issue -- many others, but this  one in particular -- that we will get to June with as many cases  closed as possible so principals can be assured that teachers they do not want back in the building, or teachers that can be cleared so they can be back in the building, we can be on their rosters at the end of June.

>> So there's no need to have transcripts before a closing argument, is that  correct?
                              That the arbitrators should all know  that.

>> Yes, that's  correct.

>> Okay.
Well, thank  you.

>> Thank you for  coming.

>> We can go through a couple of more technical  things.

So what I was going to just say is that to Michael and Carmen's point about making the process be as efficient as possible and still fair, there are a group of things that the DOE and NYSUT and Courtney and I have agreed to over the years to help make the process run as efficiently as possible without compromising the   hearing.

One of them relates to the holding of pre-hearing conferences, which should not be done on hearing   days.

We should be using hearing days for   hearings.

We shouldn't be using them for settlement discussions either. Parties are free to discuss settlement whenever they   want.

Courtney and I actively encourage people to settle, but hearing days should be used for   hearings.

The pre-hearing conferences should be used to the maximum extent possible to premark exhibits, stipulate the facts, stipulate to admissibility of documents, where those things are not in dispute.  And discovery should be provided prior to the pre-hearing conference to the extent that that's required by our   agreements.

We have agreements about what things are supposed to be provided on what timeline, and we have asked that the -- all of the attorneys abide by those   provisions.

>> I think the other thing that we want to talk about, I know that there are more cases that are handled by private counsel, and   we're

going to be doing another   orientation.

But I know that it's hard when you have lawyers who may not be used to kind of the groove of things, and they're balancing cases in  courtrooms and also trying to manage within this   system.

Please let us know how we can be helpful to help better integrate them into the system so they get caught up to speed because I know at times it can be a nightmare for everyone to juggle the scheduling that has  to happen, and we want to help get you to the place where the rules  for timelines can apply to   everybody.

So we do know.

We are aware that that's been a   problem.

We're working on it on our end, but I welcome -- even though that can be seen as a more technical issue, you obviously talked to the  managers that you usually interface with and the lawyers, but you can also reach out to us so that we can help manage them a  lot.

>> Absolutely.

But what I would say is, regardless of who the attorney is, whether  it's pro se, whether it's an NYCIT attorney representing the respondent, another attorney representing the respondent -- all of the cases should be held to the same timelines, the same 60 days for doing the hearing, the same efficiency requirements, the same everything  else.

To that end, one of the other things we have agreed is to the use of full hearing days to the maximum extent  possible.

That may require either or both parties to have multiple witnesses ready to go in the day, and that is something that we expect both sides of the case to be ready to  do.

That's something that's written in our agreement and that we believe  is an important part of making sure that the full hearing day is   used.

>> I will add, particularly for the DOE, since we have the burden and we also have the school-based witnesses, as Carmen said, we are committed to making sure that we can work to make things easier to get the witnesses here.

Again, everyone here knows that it's a hard juggle to manage what we do down here and what goes on in schools, but I welcome your feedback on that point, and we're committed to making that even more seamless. I know we've made some improvements over the last few years, but we're going to keep working on it.

>> One of the things that we hear a lot about, Courtney and I do, is about the length of particular testimony and who is allowed to testify to what.

My way of summing this up has been that grandma is not a relevant witness.

We are asking the hearing officers to actively control the hearings, to make firm -- rather than -- we know there's a tradition in labor arbitration to sort of take everything for whatever it's worth and sort it out later.

That is not what I think is the best way to be doing business.

We think the hearing officer should be ruling on relevancy, ruling on redundancy, ruling on cumulative, ruling on whatever it is, hearsay, whatever it is, to make sure that we're not spending an inordinate amount of time on the testimony of witnesses who don't have anything relevant to testify to or anything additionally relevant to testify to.

One of the other things we've looked at in terms of the process is the use of rebuttal witnesses.

We have pretty clearly written out that rebuttal is supposed to be used only for purposes of refuting a fact that an opposing party attempted to establish on its case and not just for further bolstering the case that one side or the other put on on its direct case, and we would ask all of you to please think about whether or not, in the cases that come up for you, whether or not rebuttal is being used for what is truly a rebuttal purpose and not simply to bolster the direct case.

We talked about the private counsel cases.

The only other thing I would add about that is that even when attorneys change in the middle of a hearing, we totally understand that hearing officers, and obviously the UFT and the DOE, all want to make sure that everyone has their constitutional due process and right to counsel and all of the other stuff.

But it also is not true that those changes in counsel should do anything more than the most minimal derailing of the speed of the case.

The only other thing that I have on my list of things that I wanted to highlight for everyone was decisions and that we've asked the hearing officers to -- not only have we asked, but it's in the law that the decisions be issued within 30 days.

That means, look, I have read a lot of 3020 decisions, and many of them are comprehensive, and I know how much hard work and deliberation goes into all of those decisions, and certainly we want decision that's are thoughtful and review all of the evidence and stand up to review on appeal.

But we also need that to be balanced with the notion that we need the decisions to be issued as timely as possible because we want the people who should be back at work to be back at work, and we want the people who should be disciplined or terminated to be disciplined or terminated.

And it's to no one's benefit for someone to be waiting, reassigned, doing administrative work for a period of time while we wait for a decision.

Some of that is necessary. I totally understand that.

But we'd like to minimize that as much as possible. Anything I left out on our list?
Is.

>> No.

Yes, sir?

>> If you don't want us to have a pre-hearing conference on a hearing day, what do you suggest we do with the rest of the day?

>> I think the pre-hearing conferences should not be held on hearing days.
They could be held either on other days of the month. They could be held before a regular hearing starts.
They could be held after a regular hearing starts. After it concludes.
They can be held on a lunch break.
They can be held on another day, like I said.
But they shouldn't be held in lieu of using a hearing day for a hearing.

>> In lieu of is your problem?

>> Yes. Okay.

>> There a hand in the back?

>> Yes.
I heard earlier about the position before they close.
What is your position about a pro se or a private counsel insisting I need to look at the transcript before I close or I need to look at the transcript before seeing a referee.
I guess the question is twofold.
Do I need the transcript before closing?
And what is your position on reading briefs?

>> We trust you to use your discretion. I'm sorry, I can't see younow.
We trust you to use your discretion to manage the process. I was a prosecutor for many years.
We would have trials where someone's liberty was actually at risk. We were never permitted to actually get transcripts.
For those of you who are trial lawyers on the criminal side, you know what I'm talking about.
The judge would just say, you were just here. You heard all theevidence.
Let's go.
I understand that these hearings don't happen on consecutive dates, but they do happen closely enough in time where we're saying if you really -- some cases might be complex.
We understand that.
But for ones that are not, you can hold firm.
You'll have us to support you to say, I don't believe that that's necessary or warranted here in this case and your request is denied.

>> Right,  exactly.
In a lot of these cases, you'll have -- I forgot what -- I'm blanking on the word.
You won't have final transcripts, but you'll have the -- what's the word I'm looking  for?
Is the tentative  transcripts.

>> What's a tentative  transcript?

>> There are -- well, I will talk to -- Courtney and I can talk to the transcription services about
whether or not there's a way to get the transcripts to you even if they're not certified and final, as
fast as possible.
Let's put it that  way.

>> What about  briefs?
Do you have a position on reading briefs? Do you allow it?
Do you not?

>> Again, I would never think -- I would never want to manage the process.
That's why we have  you.
I respect your discretion on what you think is necessary in order to have a full and fair hearing
on a   case.

>> Absolutely.
I think, if you were to say, given the case, no, I as a hearing  officer don't need a brief, that that
is not something that inherently either one of us think there's a problem  with.
There may be occasions where you think it's appropriate to have a brief, but if you don't think it's
appropriate to have written briefing, there's nothing that we would say says to you you have   to.

>> We'll support you on that. [ No microphone ].

>> But the point is you want these cases to hold up in court, and you have lawyers insisting,
again, a pro se, saying I want to file a  brief.

>> Then you can say  no.

>> You're telling me to just say   no.

>> I understand, but you know on appeal, as long as the facts are there, it's clear that a person
acting pro se really did follow and really did  understand.
I'm not saying, if I were in your shoes, I wouldn't have   some


trepidation  too.
The first few cases where you say no, yeah, you're going to wait and see if they take an appeal
and what  happens.
But we're saying do what's right and what's best and what's prudent for each case.
If you do not need all the extra, do not do it. If it's not appropriate, don't do   it.
Again, you'll have our  support.

>> Nina, did you have a   question?

>> No.
Just with the transcript, I just wanted to clear that  up.
As far as the practice, it's determined case by case if it's relevant. If you have a minor witness or a minor witness who doesn't have important testimony, the parties could agree that the transcript is  not necessary, it's limited  testimony.
However, if there are some days of hearing where you'll have a transcript, I think certainly the need for a transcript, they should have that and should not waste time to wait for the hearings to move forward by not having a transcript for all of our  cases.
I think it works out just that  way.

>> Yes, sir?
[ No microphone  ].

>> It is essentially unfair that the transcripts from the DOE are open, but the testimony of our witnesses aren't available by transcript.
Is there a way to make sure that maybe that's a fair   process?

>> What you're saying is they're being prepared chronologically. So because the DOE goes first, that comes  first.
Sure, we'll certainly look into   that.

>> Yeah, I think that's right,   Chris.
I mean, I'm just -- I just think what Lena said is a fairly good point.
No one size fits all solution in any of these  cases.
But the hearing officers and the attorneys together should be making good faith judgments about what is necessary to do to get the case  done efficiently and fairly and what is not necessary to get the cases done efficiently and fairly and what is just extra, I guess, is the  best way of putting  it.
The fact that it's a pro se counselor, pro se respondent or a nonNYCIT council, doesn't necessarily in my mind alter the analysis so much as what is the nature of the case and what is the nature of the arguments that are being  made?

>> There's a question that came in via -- over  here.



>> We won't forget  you.

>> There's a question that came in from someone who's doing the live streaming, an arbitrator asked the question, when private counsel's involvement in a case leads to scheduling difficulties, it would sometimes be helpful to be able to take the next case out of order.  We have been told that that is not  permitted.
Can there be some flexibility   here?

>> We'll look into  that.

>> Yeah, but I would also say that, in general, our agreements are pretty specific that the scheduling of the attorneys is not ordinarily a reason, whether it be a private counsel case or otherwise, for a case not to proceed on the scheduled day.
[ No microphone ].

>> I'm looking for the language of the agreement on what we have.
The actual language of the agreement on transcripts from 2010 is "a party to the hearing or a hearing officer may request an unedited copy of the relevant transcript.
If a certified transcript is not available when needed.
The unavailability of a certified transcript shall not excuse adherence to the timelines for completion of a hearing and issuance of a decision.
That's the language of what we've agreed to.

>> If I ask for it, do I pay for it?

>> I don't know the answer to that.

>> Do you guys know?

>> What's the new agreement that you just signed? Is there anychange?

>> I don't think we have signed a new agreement.

>> Does anybody know? Hold your point.
Does anybody know if there's a cost associated with what we're calling a tentative transcripts?

>> There's a cost for it.

>> Yes, that's okay.

>> Unedited was the word I was looking for.

>> There's a cost for expedited transcripts.
I'm not really clear if what Adam just referred to would qualify as an expedited.
And there is a new agreement that's in the process of being signed with the new transcription service, but we'll get some clarity on that and let all the arbitrators know if there will be a cost involved with getting the tentative, unedited transcript.

>> Thank you.

>> My understanding is we do not, under the new agreement, get copies of transcripts.
Okay rat?

>> I don't know, but lots of people who I trust are nodding their heads in the audience.
So I'll say yes.

>> I believe that the transcripts are going to be uploaded to Teach.

>> Yes, that's what I said.

>> Yes, where you can get  them.

>> Yeah, I know. Thank you.

>> Anybody  else?
Well, now I guess you get to  eat.

>> Now you can really  eat.

>> And I think we lose the room at  5:00.
So you have about 15 minutes to mingle and take your  time.

>> Can I just say one other thing,  Courtney?
  On behalf of the UFT, NYSUT, the DOE, we're all very appreciative of attorneys on both sides
and hearing  officers.
As practitioners, we want to say it too.  We know that you all have not an easy  job.
The attorneys have the job of being zealous advocates, the hearing officers have the job of
being neutral  referees.
It is not easy, but you can all -- you all do on a daily basis a vital service and can really deserve
a lot of appreciation for the work you do.


>> Thank you very  much."

Here are the attendees:



Betsy Combier
betsy.combier@gmail.com

**Editor, NYC Rubber Room Reporter**
**Editor, Parentadvocates.org**

Friday, December 14, 2012

**DOE CEO John Shea Once Again Is Accused Of Sexual Misconduct And The DOE Does Nothing About It.**
**http://chaz11.blogspot.com/2012/12/doe-ceo-john-shea-once-again-is-accused.html**



In another case of the hypocrisy at Tweed, a second women has filed a federal lawsuit of sexual harassment against DOE top Manager John Shea for making highly inappropriate sexual remarks and showing her pictures of him in a skimpy bathing suit and putting the picture close to her face. Yet the DOE ignores the hostile *"frat boy"* atmosphere that rules under Mr. Shea and makes females uncomfortable and leaves Mr. Shea in his $182,000 position. Yes, this is the same hypocritical DOE who removes teachers, tries to suspend them without pay, and files 3020-a charges to terminate them on the mere unfounded suggestion of sexual misconduct. Yet when it comes to one of their top managers it is *"innocent until proven guilty"* and even if guilty, it is *"boys will be boys"*.

Previously John Shea was accused by another female employee that he commented on their bodies and rated them as *"doable"* if he wanted to have sexual intercourse with them. In 2011, Shea described one DOE attorney as "hot" and declared that he "would do her," the complaint states. As for those female employees who don't measure up? Especially those with tummy fat? They shouldn't be allowed to wear women's clothes that revel their "muffin tops". How disgusting. Now there are two federal lawsuits dealing, in part, with sexual harassment with John Shea prominently named in both lawsuits. What hypocrisy by the DOE when they profess "zero tolerance" for any innocent action that somebody might find it to be sexual in nature when it comes to school staff but ignore their own rules when a top manger commits sexual misconduct.

The hypocrites at the DOE should be ashamed of themselves for their blatant *"double standard"* in the John Shea sexual harassment federal lawsuits. Chancellor Walcott, what John Shea did is sexual misconduct, why don't you fire him?

# NYC Rubber Room Reporter

Inbox x

**NYC Rubber Room Reporter and ATR CONNECT** <noreply+feedproxy@google.com> 2016, 12:00 PM

to me

# NYC Rubber Room Reporter

- Matter of Thomas v NYC DOE: No Private Right of Action
- U-Rating Upheld by the Appellate Division in the Case of Anne Van Rabenswaay
- The Rubber Room Still Exists, Folks
- Stuyvesant High School Principal Retires to Become Superintendent of the New York Military Academy
- Bernard Gassaway Becomes the Reason Why Nothing is Going Right At the NYC DOE - After He Says NYC has No Education Plan
- Attorney Howard Friedman Appointed NYC Department of Education General Counsel
- Job Opening at the NYC Department of Education Office of Special Investigations - Ethics Optional
- Former Queens Principal Minerva Zanca is the Subject of a Federal Racial Discrimination Lawsuit Filed By US Attorney Preet Bharara
- Bronx Pre-K Administrator Martha Vazquez Caught Forging Parent Signatures on IEPs
- Boys and Girls High School Withdraws Co-Location Plan; Principal Michael Wiltshire in Trouble
- PLEASE Get Rid of Mayoral Control of the NYC Public Schools!
- The 3020-a Arbitration Newswire: Digging Up The Garbage On the UFT/DOE Partnership of Harm For Charged DOE Employees
- Mayor Bill Defends Keeping Correspondence With Friends/Advisers Secret
- Francesco Portelos Goes To the American Arbitration Association To Check on Voting
- Remember Francesco Portelos' Threats To Parents?
- LaborNotes 2014: Myths of Tenure
- Labels - How Good are They?
- The 3020-a Arbitration Newswire: Digging Up The Garbage on The XEROX Machine
- EDNotes Online Discusses Getting The Vote Out For MORE
- OP-ED: Why Cyberstalker Francesco Portelos and His Bully Mob, UFT Solidarity, Failed
- Deborah Marriott Leaves New York State Education Department and Her Position as Director of Teacher Tenure Unit
- State Assemblyman Jeffrey Dinowitz Is Accused of Blocking Minority Students From Enrolling at PS 24 in Riverdale
- Arthur Goldstein: The Discipline Policy of the DOE Needs Revision
- The 3020-a Arbitration Newswire: Digging Up The Garbage on the DOE Lawyers - Shareema Abel

- <u>The Carmen Farina Purging Strategy - Teachers, Parents, Children, Anyone Who Gets in Her Way</u>

## <u>Matter of Thomas v NYC DOE: No Private Right of Action</u>

Posted: 29 Jun 2016 08:18 PM PDT

| **Matter of Thomas v New York City Dept. of Educ.** |
|---|
| 2016 NY Slip Op 02154 [137 AD3d 642] |
| March 24, 2016 |
| Appellate Division, First Department |
| Published by <u>New York State Law Reporting Bureau</u> pursuant to Judiciary Law § 431. |
| As corrected through Wednesday, April 27, 2016 |

[*1]

In the Matter of Michael P. Thomas, Appellant,
v
New York City Department of Education et al., Respondents.

Michael P. Thomas, appellant pro se.

Zachary W. Carter, Corporation Counsel, New York (Jeremy W. Shweder of counsel), for respondents.

Judgment, Supreme Court, New York County (Ellen M. Coin, J.), entered September 24, 2014, denying the petition challenging respondent DOE's determination, dated September 4, 2013, which found petitioner's allegations of misappropriation of Title I funds to be unsubstantiated, and dismissing this proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.

As we discussed on a prior appeal, in a related proceeding, in August 2010, petitioner, then a public school teacher, employed by the Manhattan Center for Science and Mathematics (MCSM), filed allegations with respondent DOE, complaining of, inter alia, a misappropriation of federal funds received by

MCSM under Title I, Part A of the Elementary and Secondary Education Action of 1965, reauthorized as the No Child Left Behind Act (NCLB) of 2001 (20 USC § 6301 *et seq.*; *see Matter of Thomas v New York City Dept. of Educ.*, 103 AD3d 495 [2013]).

Petitioner, a member of MCSM's School Leadership Team (SLT), lacks standing to challenge the results of DOE's investigation of his allegations, brought pursuant to the "No Child Left Behind Written Complaint and Appeal Procedures" adopted by the New York State Education Department (*see New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004]; *Matter of Posner v Rockefeller*, 26 NY2d 970 [1970]). Petitioner's status as a complainant who initiated an administrative investigation, does not provide him with standing for a private right of action to challenge the agency's determination, absent a demonstration that he suffered actual injury (*see Sassower v Commission on Jud. Conduct of State of N.Y.*, 289 AD2d 119 [1st Dept 2001], *lv denied* 99 NY2d 504 [2002]). Moreover, petitioner does not "fall within the zone of interests . . . sought to be promoted or protected" by Education Law § 2590-h or the NCLB (*see Novello*, 2 NY3d at 211). Concur—Tom, J.P., Friedman, Saxe and Richter, JJ.


## U-Rating Upheld by the Appellate Division in the Case of Anne Van Rabenswaay

Posted: 28 Jun 2016 05:55 AM PDT

2016 NY Slip Op 05051 IN RE ANNE VAN RABENSWAAY,
Petitioner-Appellant,
v.
CITY OF NEW YORK; ET AL.,
RespondentsRespondents.
1571, 101036/14.

Decided June 23, 2016. Appellate Division of the Supreme Court of New York, First Department.
Glass Krakower LLP, New York (John Hogrogian of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York (Jeremy W. Shweder of counsel), for respondents.
Before: Tom, J.P., Friedman, Richter, Kapnick, Gesmer, JJ.

Judgment, Supreme Court, New York County (Carol E. Huff, J.), entered on or about
April 21, 2015, denying the petition to annul respondents' determination, which upheld petitioner's
unsatisfactory rating (Urating) for the 20122013 school year, and
dismissing the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without
costs.
Petitioner has failed to show that the Urating was arbitrary and capricious, or made in bad faith.
The evidence that petitioner failed to timely complete individualized education plans (IEPs)
for at least five of her students, despite repeated warnings and offers of assistance from the
IEP coordinator, provided a rational basis for the rating (see e.g. Matter of Murname v Department
of Educ. of the City of N.Y., 82 AD3d 576 [1st Dept 2011]; Batyreva v New York City Dept. of Educ., 50 A
D3d 283 [1st Dept 2008]).
Petitioner's various excuses, even if valid, would not warrant a finding that the U-
rating was arbitrary and capricious under the circumstances. To accept them would amount
to second guessing the determination that her repeated failure to timely complete the IEPs
reflected a pedagogical deficiency that merited the Urating (see Maas v Cornell Univ.,
94 NY2d 87, 92 [1999]).
Furthermore, petitioner has failed to demonstrate the existence of any issue of fact that could
show, even if resolved in her favor, arbitrary and capricious action under the circumstances.
Thus, there was no need for the court to have conducted a hearing (see CPLR 7804[h]).

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISIO
N, FIRST DEPARTMENT

## The Rubber Room Still Exists, Folks

Posted: 23 Jun 2016 08:32 PM PDT
Robert Bradbury did not deserve to be in the latest mess created by the New York City Department of
Education. I met him many years ago, and we have kept in touch, and I can tell you that he is a very, very
nice guy.

But his Principal, Howard Kwait, has so many demons and skeletons dangling around him that I'm
surprised he is still getting a salary. (see below)

Why do we have such people working forever at the DOE while good people lose their jobs for no reason?

Dunno.

Betsy Combier
betsy.combier@gmail.com
Editor, NYC Rubber Room Reporter
Editor, Parentadvocates.org
Editor, New York Court Corruption
Editor, National Public Voice
Editor, The NYC Public Voice



Robert Bradbury

# Teachers trapped in rubber rooms for years, still collect full pay and raises

LINK
By Susan Edelman

They've been rubber marooned for five to seven years each.
The city Department of Education has kept three accused teachers on the payroll, but confined to menial office tasks since seeking to fire them in 2009 to 2011. One takes home nearly $100,000 a year, and they all get contractually mandated raises.

It's a violation of a major 2010 agreement between the DOE and the United Federation of Teachers to break up the infamous holding pens dubbed "rubber rooms."

In the pact, former Chancellor Joel Klein and union president Michael Mulgrew agreed to end long delays in the handling of educators charged with misconduct or incompetence.

But the rules have collapsed in several cases. Arbitrators who have 30 days to file their rulings after completing termination trials simply abandoned the cases, and the DOE says it could do nothing about it.

"They've been in limbo for nearly six years — collecting full pay and benefits but just sitting here doing nothing with no light at the end of the tunnel," a reassigned educator said of two tenured teachers waiting long overdue rulings at 28-11 Queens Plaza North.



Howard Kwait

Robert Bradbury, 47, who taught history at John Bowne HS in Flushing, mans the reception desk. He made $84,104 in 2015.Bradbury was accused of incompetence by Principal Howard Kwait, who has since cost the city more than $500,000 in settlements with two assistant principals who accused Kwait of sexual harassment, and a student falsely blamed for sending menacing e-mails to staffers.

Bradbury's trial ended July 5, 2011, but arbitrator Leona Barskyfailed to file a ruling.


Leona Barsky

"I had to step away from the case due to the recurrence of my breast cancer," Barsky told The Post. She's been removed from a panel of hearing officers.

Joshua Cutler, 36, an English-as-a-second-language teacher at IS 10 Horace Greeley, makes photocopies in the Queens office. He was paid $67,672 last year.

Back in 2011, Cutler, was yanked from his classroom for tussling with a student.

"One of the most violent kids in my class accused me of intentionally bending his wrist to try to hurt him," he told NPR in 2013. "I did break up fights repeatedly, but I never intentionally caused harm to a child."

Cutler said he would not quit his DOE job: "I'm fighting this till the very end, no matter what."

Arbitrator Beverly Harrison, also removed from a panel of DOE hearing officers, never ruled.

Seven years ago in May 2009, Laurie Goldstone, a teacher at P.S. 268 Emma Lazarus in East Flatbush, was charged with incompetence and reassigned to clerical duties, officials said. Arbitrator Adam Goldberg conducted her hearing but left the post in 2010-11 without filing a ruling. Goldstone took home $98,366 in 2015.

The DOE cannot fire tenured teachers unless an arbitrator says so.

Arbitrators get paid $1,400 for each day they work on a case after filing their rulings.

While state law mandates decisions 30 days after a trial, they typically take four to six months, said Betsy Combier, a paralegal who defends teachers.

"The DOE does not hold arbitrators accountable for missing the deadline," she contends.

But DOE officials said state law has no penalty for arbitrators who drop the ball, and no process to re-do a hearings with different arbitrators.

"We have repeatedly reached out to the independent arbitrators handling these cases to issue their decisions, and their failure to do so is unacceptable," said DOE spokeswoman Devora Kaye. "We are evaluating new options to close these cases, as well as options for penalizing arbitrators who fail to issue timely decisions."

FILED UNDER DEPARTMENT OF EDUCATION , RUBBER ROOM , TEACHERS ,

# Principal who cost city $500K in settlements now accused of fixing grades

By Georgett Roberts and Carl Campanile

LINK

# Pervy principal keeps his job despite draining city in legal fees

By Selim Algar



LINK

A randy Queens high-school principal has cost the city more than a half a million dollars to settle sexual-harassment suits brought by staffers and students — and he's still on the job.

John Bowne HS Principal Howard Kwait presented the latest hefty tab to taxpayers on Thursday, when the city agreed to give a combined $275,000 to two former assistant principals who accused him of everything from lewd advances to fudging grades.

Maria Catenacci and Sally Maya were so disgusted by Kwait's boorish antics that they resigned their positions, court papers state. Maya agreed to settle her case for $150,000 and Catenacci for $125,000.

"It was best for the city to settle," a spokesman told the Post.

It's not the first time Kwait's antics cost the city cash. A 2012 suit against him by a student's family, who said the girl was falsely accused of sending staffers threatening e-mails, was settled by the city for $225,000.

"We settled after evaluating the facts and the risks of proceeding with the litigation," said a city Law Department spokesman.

The city also paid an undisclosed amount when, in 2012, it settled another harassment case against Kwait. That one was brought by an assistant principal who accused him of discrimination when she became pregnant.



Howard Kwait (left)

In the latest suit, Catenacci claimed that Kwait pressed her to go home with him after an alcohol-soaked retirement party for a colleague and attempted to straddle her at another school related event.

"Mr. Kwait made numerous sexual advances towards Ms. Catenacci," the suit, brought by attorney Steven Morelli, states.

Knowing she was a lesbian, Kwait profanely interrogated her about her sexual interest in other female staffers at the school, the suit stated. When she rebuffed his advances, Kwait revoked her teaching responsibilities and undermined her, the suit said.

Maya, meanwhile, accused Kwait of criticizing her for getting pregnant and taking time off.

Despite his legal woes, Kwait remains principal at the school, where the motto is "the relentless pursuit of success," according to its Web site.

"We are reviewing Mr. Kwait's status," said Department of Education spokeswoman Devora Kaye.



# A Voice From the 'Rubber Room'

By Liana Heitin on May 13, 2013 12:31 PM

LINK

Sixteen years ago, Radio Diaries, an audio series broadcast on NPR in which people document their stories, **had a show on Josh Cutler**, a high school student living with **Tourette Syndrome**, a neurological disorder characterized by vocal and motor tics. Last week, the program aired a follow-up episode, in which Cutler caught listeners up on where he is today.

As it turns out, the now 33-year-old became a New York City public school teacher. But two years ago, in his seventh year of teaching, he was accused of misconduct and terminated from the classroom. He explains: "One of the most violent kids in my class accused me of intentionally bending his wrist to try to hurt him. ... They said that I was doing this repeatedly. Well, yes, I did break up fights repeatedly, but I never intentionally caused harm to a child. Of course not."

During a termination hearing, one of his colleagues testified that she had been concerned for her safety because "Mr. Cutler has some bizarre tendencies." She continued: "Mr. Cutler has openly told me that in social situations he doesn't always behave appropriately because of medical issues. ... And his behavior is unpredictable and it's strange."

Cutler now sits in a temporary reassignment center, or what is colloquially known as a "rubber room," from 8:30 a.m. to 3:20 p.m. each day doing office tasks as needed. He continues to receive his teaching salary. "My parents think I should leave and go do something else, but I'm not going to do that," he says. "I'm fighting this till the very end, no matter what."

We've written about rubber rooms and the **absent-teacher reserve pool** (the teachers who are paid to sit in the rooms) quite a bit over the years. In 2010, the United Federation of Teachers and the N.Y.C. school district **reached an agreement to close the rooms** and instead have teachers report to the central office for clerical work. But as *Ed Week* **reporter Stephen Sawchuk has written**—and as Cutler's story corroborates—not much has changed. The rooms may now be in an office setting, but the teachers in them are still getting paid for, as Cutler says, "just sitting around in limbo."

Cutler's account of the dismissal and arbitration offers a glimpse into how complex these cases can be—and perhaps into why these policies have yet to be truly undone. Be sure to check out Cutler's diaries from **both then and now**, as well as the rest of the series, entitled **Teenage Diaries Revisited**.

## Stuyvesant High School Principal Retires to Become Superintendent of the New York Military Academy

Posted: 19 Jun 2016 08:12 AM PDT

# Stuyvesant principal quits for post at Trump's former school

Jie Zhang retires after four years at helm for upstate gig at military academy


Stuyvesant High School

<u>LINK</u>
<u>Stuyvesant High School Principal Jie Zhang</u> announced Monday that she would retire in July to become superintendent at the <u>New York Military Academy</u>, a private boarding school upstate best known for having had Donald Trump as a student.


Former NYC Chancellor Dennis Walcott and Jie Zhang

Zhang has spent more than 30 years as an educator, which means she was likely not increasing her future pension by continuing in the post she has held for just four years. In fact, she should now be able to draw on that pension while receiving her private-sector salary from the military school, located in Cornwall-on-Hudson.

In an email to students Monday, Zhang did not explain the reasons for her decision other than to say it was "difficult." She wrote that she chose July 21 as her retirement date because it was on that date in 1985 when she landed at Kennedy Airport "to pursue my American dream."

Her first job as a teacher was at Rikers Island. She took the helm at Stuyvesant High School after a cheating scandal led to her predecessor's resignation.

Zhang's new school was bought at a bankruptcy auction last fall for a reported $15.825 million by a nonprofit controlled by Chinese investors, who pledged to reopen the 126-year-old high school after it filed for Chapter 11 protection in March 2015. The school sent letters assuring students that it would open in September of that year, but it did not.

Besides Trump, the school's alumni include Stephen Sondheim, John A. Gotti and Francis Ford Coppola, according to *The New York Times*. It was founded in 1889, but military schools have recently fallen out of favor, and that trend has contributed to the New York Military Academy's financial struggles. Its enrollment had fallen to fewer than 100 students from more than 600 in the 1960s.

Trump graduated from the school in 1964 and later credited it with maturing him after a rambunctious stretch at a Queens prep school. The *Washington Post* (which on Monday was banned by Trump from his campaign events) reported that his five years at the military school, which runs from eighth grade through twelfth, were not without controversy.

Though many alumni from the school went on to celebrated military careers, Trump got educational and medical deferments to avoid serving in the Vietnam War.

## Bernard Gassaway Becomes the Reason Why Nothing is Going Right At the NYC DOE - After He Says NYC has No Education Plan

Posted: 17 Jun 2016 05:47 AM PDT

Bernie has been saying that the NYC DOE needs help for years. I spoke with him after he resigned as Superintendent, and he was saying then that the NYC DOE was a mess.



Bernard Gassaway

There is just no accountability for any failures by the DOE chiefs, of which there are too many. Why do we need Tweed hiring anyone for too much money?

What a waste of public money.

Keep talking, Mr. Gassaway!

Betsy Combier


Bernard Gassaway, left, talks about his resignation with Errol Louis

## *Principal of Failing Brooklyn School Quits, Saying City Lacks an Education Plan*

By ELIZABETH A. HARRISOCT. 10, 2014
Continue reading the main storyShare This Page

Share
Tweet
Email
More

LINK

The latest indictment of the Department of Education's management of failing schools was personified last week by Bernard Gassaway, the recently self-retired principal of Boys and Girls High School.

As he stepped down after five tortured years at the helm of the storied Bed-Stuy school, Gassaway took a verbal backhand to the DOE for failing to produce a plan to turn around the chronically failing school.

Predictably, the DOE shot back that Gassaway was the problem and that the they were planning to get rid of him anyway. But the hard truth is that we as a community – from DOE policy makers, Gassaway and school leadership to the parents and surrounding community-based institutions – ultimately failed the students of Boys and Girls and have been doing so for years.

I believe that the wider community of parents, teachers and neighborhood-based institutions - not just a singular principal or a fix-all plan handed down from Mount Tweed - has the resilience to produce a thriving learning environment if it is engaged through an effective community school model.

The mayor, having promised 100 community schools, has already designated 42 of them. Boys and Girls, in a cluster with other schools in the area, should be included in the next round.

Boys and Girls offers robust services as many community schools do, and is the site of countless community events. It also has the support of local politicians. However it struggles to offer the high academic standards and broad collaboration that are essential elements of effective community schools.

Specifically, parents and the surrounding community have remained under-informed regarding the school and under-engaged in determining its fate. A community school is not just a school within a neighborhood, but an academic and socio-economic hub for the surrounding community. Is this yet another supposed solution-in-a-box? No.

A community school model doesn't suddenly address all the challenges posed by poverty, institutional racism, and DOE bureaucracy. For instance, Boys and Girls will continue to fail under any plan, under any leader, if it continues to be used as the high school of last resort. But with adequate resources, intelligently invested in a community school model, Boys and Girls can begin to address the physical and emotional needs of not just the whole child, but the whole family.

While the Children's Aid Society in New York and Community in Schools, a national network of community schools, provide evidence that community schools demonstrate higher academic achievement levels, the model ultimately rises and falls on the strength and organizing skills of the community behind it.

This is a critical moment in the transition for Boys and Girls, which just named Gassaway's replacement. We've all seen principals, who, from a single centralized command, keep

parents at a distance, see community institutions simply as service providers rather than partners, and treat peer schools as competitors. With so much pressure to meet city and state standards, schools often morph into fortresses and focus their attention inward. In effective community schools, principals are not dictators, but savvy community organizers and collaborators who know how to harvest the talent of the people and organizations around them.

Neither a new principal nor a new plan by the DOE will alone "fix" Girls and Boys. But within a community school framework, they can both provide a rare opportunity to re-think how to build investment and accountability among a broader set of people deeply engaged in the success of a school.

****

Mark Winston Griffith is the Executive Director of the Brooklyn Movement Center, a community organizing group developing leadership among Central Brooklyn parents.

# *Principal of Failing Brooklyn School Quits, Saying City Lacks an Education Plan*

**By ELIZABETH A. HARRIS**OCT. 10, 2014

Continue reading the main storyShare This Page

Share
Tweet
Email
More

LINK
The principal of a long-struggling high school in Brooklyn handed in his resignation this week — and offered Mayor Bill de Blasio's Education Department one of its sternest public rebukes yet.

"The problem is, there is no plan," the principal, Bernard Gassaway of Boys and Girls High School, said of the city's approach to struggling schools. "They're making it up as they go along."

Mr. de Blasio and the schools chancellor, Carmen Fariña, have distanced themselves aggressively from the approach taken by the administration of former Mayor Michael R. Bloomberg to the city's worst performing schools, which rested primarily on closing them and replacing them with new, generally smaller ones. But Mr. Gassaway's critique, perhaps

the first of Ms. Fariña's tenure to be made so loudly by an insider, comes amid growing questions about what the city plans to do instead.

Boys and Girls, which has existed in some form since 1878 and is Bedford-Stuyvesant's main high school, has a long list of distinguished alumni, including Shirley Chisholm, Norman Mailer and Aaron Copland. But in recent years, its reputation has become checkered.

In 2005, a class-action lawsuit against the city alleged that some students at Boys and Girls were essentially warehoused in an auditorium for large portions of the day, segregated from the rest of the students and not given enough opportunity to earn the credits needed to graduate. The suit was settled in 2008; the city did not admit any wrongdoing.

In the last three school years of Mayor Bloomberg's term, Boys and Girls received three F grades, based on student performance, college and career readiness, student progress and other metrics. In the spring, Boys and Girls, along with Automotive High School in Williamsburg, Brooklyn, was classified by the state as being "out of time" to turn itself around and given a handful of options, including shutting the school down, converting it to a charter school and replacing its administration.

That was under Mr. Gassaway's watch, but he said that the school received dismal results because the most difficult students in the system were routinely assigned there, in unusually large numbers.

Whatever the reason, the atmosphere at the school — where enrollment has plummeted to about 800 students from over 2,000 in 2009, Mr. Gassaway said — could stand improvement.

"There's enough security," said Eli Bradley, 18, a student at Boys and Girls. "That's about it."

Another student at the school, a 16-year-old junior who declined to give his name for fear of reprisal, said on Friday that he was transferring.

"The school could be better, the teaching could be better, the resources could be a whole lot better," he said, pointing to ragged, overgrown tennis courts nearby. "I'm going to transfer soon. They don't give you a lot of opportunity here."

Mr. Gassaway said the de Blasio administration did not provide a coherent vision of how it planned to improve Boys and Girls, and he said the approaches the city planned to use, like social services for the students and increased professional development for the staff, were not sufficient. (Mr. Gassaway has not been shy about criticizing the Education Department. A former superintendent under Mr. Bloomberg, he publicly rebuked that administration after leaving the post.)

His voice joins a small chorus of those questioning the city's plans for struggling schools, and for struggling high schools in particular. Last week, charter school supporters held a rally to call attention to the city's failing schools and to demand that the city come up with a strategy to address them. Mr. Bloomberg often gave charter schools the space freed up by the closing of schools.

"The D.O.E. is innovating and investing to improve achievement outcomes at all our schools, especially those that have longstanding challenges," Devora Kaye, a department spokeswoman, said in an email. "We continue to focus on ensuring that we meet the whole needs of each child and family."

The city must present its plan for more than 200 of its most struggling schools to the New York State Department of Education by Nov. 7. Plans were originally due at the end of July, but the state granted an extension.

Mr. Gassaway's departure was reported Friday by The New York Post. Ms. Kaye said an interim principal would be put in place.

Nate Schweber contributed reporting.

## Attorney Howard Friedman Appointed NYC Department of Education General Counsel

Posted: 15 Jun 2016 07:35 PM PDT



Howard Friedman

# Department of Education gets new top lawyer amid segregation and safety challenges

By Philissa Cramer
LINK

PUBLISHED: June 15, 2016

When New York City's education department responds to a lawsuit challenging its handling of school violence, there will be a new name on the legal papers.

Howard Friedman, who has worked for the city's law department for nearly two decades, will become the Department of Education's general counsel next month. Chancellor Carmen Fariña announced the appointment in a statement that heralded Friedman's "dedication, passion, and innovative thinking.

The top legal slot had been open since Courtenaye Jackson-Chase left for the Children's Aid Society in February after a decade at the department. With her predecessor, Jackson-Chase tackled efforts to close the "rubber room" for teachers who were removed from the classroom after being accused of misconduct and to streamline disciplinary hearings for department employees. As those issues dropped from the department's public priorities under the de Blasio administration, Jackson-Chase reviewed the department's Respect for All anti-bullying policy.

Friedman arrives as the department faces a full slate of legal issues. They include how to

Case 1:17-cv-02239-KAM-RLM Document 67 Filed 03/13/18 Page 358 of 359 PageID #: 845

 **Gmail**

**Betsy Combier <betsy.combier@gmail.com>**

---

# [ATR SUPPORT GROUP-PRIVATE] 24Q119: I.S. 119 The Glendale
1 message

---

**Mavis Shein** <notification+zzd=zriz@facebookmail.com>                    Thu, Oct 15, 2015 at 9:03 PM
Reply-To: Reply to Comment <g+40s4jx75000000lokov100gse5iqt11u000zg4sn6i0k31146@groups.facebook.com>
To: ATR SUPPORT GROUP-PRIVATE <ATRSUPPORT@groups.facebook.com>

---

 Facebook

Mavis Shein, Laurie Kessler Luft and 4 others posted in ATR SUPPORT GROUP-PRIVATE.

   **Mavis Shein**
    October 15 at 9:03pm

24Q119: I.S. 119 The Glendale
28Q080: PS 80 The Thurgood Marshall Magnet Scho
28Q161: P.S. 161 Arthur Ashe School

They had me reassigned to PS80 in D28, my home district..on SESIS yesterday...they
changed it to D24 today out of my license with a provisional assignment. I tried calling HR
no answer..I emailed them as well...according to the MOA I cannot be placed as a
provisional outside my district outside of my license area..the job is special ed. Thanks
cynthia for emailing me the email that they did not send me with the outline of assignment
information.

👍 **Like**        💬 **Comment**

 View on Facebook        **Edit Email Settings**

---

Reply to this email to comment on this post.

This message was sent to **betsy.combier@gmail.com**. If you don't want to receive these emails from Facebook in the future, please **unsubscribe**.
Facebook, Inc., Attention: Department 415, PO Box 10005, Palo Alto, CA 94303

# ORIGINAL



TRK# 7800 2978 2303

9622 0804 3 (000 000 000 0000) 0 00 7800 2978 2303

10469

10469

**BERON COMBIER**
315 EAST 65TH STREET
4C
New york NY 10065
US

(212) 794-8902

**TOLUCIO CELLI**

**2743 SEYMOUR AVENUE**

**Bronx NY 10469**
(917) 596-1762
INV:
PO: COPYLAND65 ST

REF: COPYLAND65 ST

DEPT: COPYLAND65 ST

SHIP DATE: 02MAR18
ACTWGT: 3.0 LB
CAD: 100780137/NET3980
DIMMED: 19 X 16 X 3 IN

BILL SENDER

**FedEx**
Home Delivery

(US)

552J1/07F5/DCA5

J181118012601uv

---

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: IMPORTANT: TRANSMIT YOUR SHIPPING DATA AND PRINT A MANIFEST:
At the end of each shipping day, you should perform the FedEx Ground End of Day Close procedure to transmit your shipping data to FedEx. To do so, click on the Ground End of Day Close Button. If required, print the pickup manifest that appears. A printed manifest is required to be tendered along with your packages if they are being picked up by FedEx Ground. If you are dropping your packages off at a FedEx drop off location, the manifest is not required.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide and applicable tariff, available upon request. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations, including limitations on our liability, can be found in the current FedEx Service Guide and applicable tariff apply. In no event shall FedEx Ground be liable for any special, incidental, or consequential damages, including, without limitation, loss of profit, loss to the intrinsic value of the package, loss of sale, interest income or attorney's fees. Recovery cannot exceed actual documented loss. Items of extraordinary value are subject to separate limitations of liability set forth in the Service Guide and tariff. Written claims must be filed within strict time limits, see current FedEx Service Guide.



RECEIVED
MAR 13 2018
PRO SE OFFICE