**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
ELIZABETH COMBIER,

                         **Plaintiff,**

               **-against-**

**FRANCESCO PORTELOS, et al.,**

                         **Defendants.**
--------------------------------------------------------x

**REPORT AND**
**RECOMMENDATION**

**17-CV-2239 (MKB)**

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

     Plaintiff Elizabeth Combier ("plaintiff") brings this action against defendants Francesco

Portelos ("Portelos"), Lucio Celli ("Celli"), Bryan Glass, Esq. ("Glass"), Jordan Harlow,

Esq. ("Harlow") (collectively, the "individual defendants"), and against the New York City

Department of Education (the "DOE") and Carmen Fariña ("Fariña"), the former Chancellor

of the DOE[1] (together, the "DOE defendants"), asserting claims for violations of the Computer

Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq.; the Stored Communications Act

("SCA"), 18 U.S.C. § 2701 et seq.; 42 U.S.C. § 1983 ("section 1983"); the First, Fifth and

Fourteenth Amendments to the United States Constitution; and various claims under New York

state law.  See generally Second Amended Complaint ("SAC") (Dec. 12, 2017), Electronic

Case Filing Docket Entry ("DE") #39.[2]

---

[1] If this case were to continue, the current DOE Chancellor, Richard A. Carranza, would presumably be
substituted for Carmen Fariña.  See Fed. R. Civ. P. 25(d) (providing for automatic substitution of public officer
with successor).

[2] In addressing subject matter jurisdiction, the SAC cites a series of penal statutes, i.e., 18 U.S.C. §§ 241, 242,
1343, 1962, 1964.  See SAC p. 2.  (Because the SAC contains several errors in the numbering of paragraphs, this
opinion cites to the page numbers of the pleading.)  However, plaintiff does not purport to bring any claims for

Currently pending before this Court, on a referral from the Honorable Margo K. Brodie, are defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Order Referring Motions (Apr. 4, 2018); Motion to Dismiss filed by Celli (Jan. 3, 2018) ("First Celli Motion"), DE #44; Motion to Dismiss filed by the DOE Defendants (Jan. 30, 2018), DE #51; Motion to Dismiss filed by Glass and Harlow (Jan. 30, 2018), DE #55; Motion to Dismiss filed by Portelos (Feb. 1, 2018), DE #57. Defendant Celli also moves to dismiss the case for failure to prosecute, which Judge Brodie likewise referred to the undersigned magistrate judge. See Motion to Dismiss for Lack of Prosecution (Feb. 23, 2018) ("Second Celli Motion"), DE #60. For the reasons that follow, this Court recommends that defendants' Rule 12(b)(6) motions be granted in their entirety and that this action be dismissed on that basis.

## BACKGROUND

This case involves what is essentially a dispute between private parties competing to represent tenured New York City public school teachers in disciplinary hearings ("3020-a hearings").[3] In sum, the Second Amended Complaint alleges that in an effort to destroy her business as a non-attorney advocate representing teachers in 3020-a hearings, the individual defendants engaged in a scheme to hack into her website, alter the content of her blog and disseminate false information about her through internet postings and mass emails. The

_____

violations of those statutes, several of which do not provide for private causes of action. See, e.g., Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994); Powers v. Karen, 768 F.Supp. 46, 51 (E.D.N.Y. 1991), aff'd, 963 F.2d 1522 (2d Cir. 1992).

[3] Section 3020-a of the New York Education Law provides for an extensive administrative hearing and appeals process in connection with disciplining tenured teachers and administrators within the New York state school system. See Burkybile v. Bd. of Educ. Hastings-on-Hudson, Union Free Sch. Dist., 411 F.3d 306, 309 (2d Cir. 2005).

following facts are drawn from plaintiff's Second Amended Complaint and are accepted as true for purposes of this motion.

Since 2010, plaintiff has been self-employed as an advocate for tenured New York City public school teachers subject to disciplinary hearings, and has assisted attorneys working on the same subject matter. See SAC pp. 5, 15. She is also the editor of several websites and blogs, including Parentadvocates.org and NYC Rubber Room Reporter. See id. p. 6.

In 2011, defendant Glass, an attorney, asked plaintiff to assist him in representing a teacher in a 3020-a hearing. See id. pp. 8, 15. In 2012, Glass asked plaintiff to train his associate, defendant Harlow, to handle such hearings. See id. pp. 9, 15; see also Plaintiff's Opposition to Defendants' Motion to Dismiss (Mar. 13, 2017) ("Pl. Opp.") at 5, DE #67 (stating that in 2013, Glass asked to assist his associate in handling 3020-a hearing). Plaintiff recruited five teachers who subsequently hired plaintiff and Glass. See id. Plaintiff alleges that Glass sought to steal plaintiff's clients and directed Harlow to take over the arbitration hearings without plaintiff. See SAC p. 9. In 2013 through 2014, Harlow and plaintiff worked together, but Harlow spoke negatively about plaintiff to clients so that she would lose those clients to Harlow. See id. p. 10. In fact, plaintiff further alleges that Harlow told a client, who had asked plaintiff for help, that she should never speak to plaintiff, that every teacher that plaintiff represented was ultimately terminated, and that plaintiff was ill-equipped to represent teachers. See id.

Defendants Portelos and Celli are teachers employed by the defendant DOE. See id. pp. 6, 8. Celli is a member of an advocacy group started by defendant Portelos -- UFT Solidarity. See id. p. 8. At Portelos' direction, Celli has defamed plaintiff and her friends,

with the intent of ending plaintiff's business.  See id.

From September 2015 to the present, defendants Portelos and Celli engaged in a scheme to damage plaintiff's business and deny her the "right to earn money" by recruiting teachers to solicit plaintiff's help with 3020-a hearings; having the teachers send plaintiff payment as a "thank you," even though plaintiff had not requested any payment; and then having the teachers, a few days later, demand that plaintiff return their money.  See id. p. 19. In addition, the individual defendants "broadcast[ed]" their accusation that plaintiff was practicing law without a license and should be prosecuted for participating in 3020-a hearings. See id. p. 20.  On September 20, 2015, Portelos organized a meeting in Queens with approximately 50 United Federation of Teachers ("UFT") members, wherein a former teacher told the assembled crowd that plaintiff was a homophobe.  See id. p. 18.  Portelos recorded the former teacher's speech and posted the video on his website.  See id.  From November 2015 to the present, Portelos and Celli also spread negative information about plaintiff through mass emailings and postings on Portelos' Facebook page, website and other social media.  See id. pp. 20-21.

In March 2016, defendant Celli sent a series of emails to about 50 addresses, including those of the Manhattan and Bronx District Attorneys and other public officials and members of the media, accusing plaintiff of working against teachers and colluding with the General Counsel of the DOE.  See id. p. 21.  Specifically, Celli claimed that plaintiff secretly recorded arbitration hearings and made *ex parte* phone calls to the New York State Public Employment Relations Board.  See id. pp. 21-22.

Plaintiff further alleges that in July or August 2016,[4] Portelos hacked into plaintiff's blog, "NYC Rubber Room Reporter," deleted a section titled "The 3020-a Arbitration Newswire," and, on September 30, 2016, added the deleted section to his guide to 3020-a hearings for UFT members, which Portelos posted on his website, "UFT Solidarity." See id. pp. 7, 22. In his guide, Portelos states that union members should avoid non-lawyer assistance and directs readers to hire defendant Glass to represent them in 3020-a hearings. See id. p. 7. In turn, Glass posted a comment on Portelos' social media to "beware of snake-oil salesmen," which plaintiff believes is a reference to her. See id. p. 9.

According to plaintiff, Portelos, Celli, Glass and Harlow created a poster of plaintiff (reproduced at Pl. Opp. at 55), which was sent to her on October 11, 2016, by her former client, Jim Geist, who threatened her with criminal prosecution for posting his Social Security number on her website, Parentadvocates.org. See SAC pp. 22, 23. Plaintiff claims that the posting of Mr. Geist's Social Security number was due to an error by Glass and Harlow, who entered that number in the online public data of the New York State Supreme Court in connection with his 3020-a hearing. See id. p. 23. In fact, Mr. Geist's Social Security number does not appear on plaintiff's website. See id. The aforementioned poster was used by defendants to solicit plaintiff's former clients to "sign up" to be refunded the money they had paid plaintiff over the years. See id. pp. 23-24.

On October 19, 2016, Portelos sent an email to teachers in New York City and Los Angeles, warning them about plaintiff's rendering of "illegal legal consultation" to a teacher in connection with the teacher's 3020-a hearing. See id. p. 24. Portelos also attached the poster

---

[4] On page 7 of the SAC, plaintiff alleges that the hacking occurred in July 2016, while on page 22, plaintiff alleges that the hacking occurred in August 2016.

described above and the address of a blog, nycrubberroomreportercom.blogspot.com, in which plaintiff is accused of stealing from a church.  See id.

The amended pleading further alleges that, without plaintiff's knowledge, Portelos posted articles on another blog, nycrubberroom.com, and listed as the owner of the blog plaintiff's foundation, the E-Accountability Foundation, with plaintiff's home address and phone number.  See id. p. 25.  As a result, in March 2017, plaintiff was threatened with a federal lawsuit by a photographer for posting a photograph by him on that blog, without his authorization.  See id.

On September 21, 2017,  "[w]ith the support of the individual [d]efendants in this case," Mr. Geist (plaintiff's former client) filed a complaint against plaintiff with the West Milford, New Jersey, Police Department for posting his Social Security number.  See id. pp. 23, 25.  In addition, the Second Amended Complaint alleges that on December 4, 2017, Portelos posted false information on his UFT Solidarity website to the effect that plaintiff was being investigated by the Manhattan District Attorney's Office.  See id. p. 25.

Although the Second Amended Complaint contains virtually no allegations regarding Chancellor Fariña or the DOE, plaintiff contends that the DOE "bears vicarious liability" for the acts of the individual defendants for its failure to supervise its employees and to enforce its policies as to internet use and computer abuse.  See id. p. 11.  According to plaintiff, the DOE was aware of the individual defendants' scheme to malign plaintiff's reputation but did not act to prevent it.  See id. p. 19.  Moreover, Celli and Portelos are alleged to have sent mass emails disparaging plaintiff using their DOE email and/or DOE computers during the school day, in violation of DOE policies, without repercussion.  See id. p. 26.

## PROCEDURAL HISTORY

Plaintiff commenced this action on April 13, 2017, <u>see</u> Complaint (Apr. 13, 2017), DE #1, and initially amended her Complaint on April 28, 2017, <u>see</u> Amended Complaint (Apr. 28, 2017), DE #5, both through her then-counsel of record. Following plaintiff's counsel's withdrawal, <u>see</u> Minute Entry and Order (Aug. 22, 2017), DE #31, defendants filed various motions to dismiss and requests for a pre-motion conference in anticipation of moving to dismiss; at a conference held on October 3, 2017, Judge Brodie dismissed plaintiff's section 1983 claims against defendants and granted plaintiff 30 days to further amend her pleading to "assert[] facts to support a federal claim." <u>See</u> Minute Order (Oct. 3, 2017) ("10/3/17 Order"). The Second Amended Complaint was filed on December 12, 2017, restating claims under section 1983 and adding federal claims under the CFAA and the SCA and for violating plaintiff's constitutional rights. <u>See</u> SAC. In response, defendants filed the instant motions to dismiss.[5]

## DISCUSSION

### I.     Motion to Dismiss Legal Standard

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the complaint's factual allegations as true, drawing all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Christiansen v. Omnicom Grp., Inc.</u>, 852 F.3d 195, 199 (2d Cir. 2017). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

---

[5] Like plaintiff, defendants Portelos and Celli are proceeding *pro se*.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555. A complaint should be dismissed where a plaintiff has not "nudged [her] claims across the line from conceivable to plausible[.]" Id. at 570.

A *pro se* complaint, "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). Pleadings of a *pro se* party should be read "'to raise the strongest arguments that they suggest.'" Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003)). Nevertheless, dismissal of a *pro se* complaint is appropriate where the plaintiff fails to state a plausible claim supported by more than conclusory allegations. See Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013). Of course, here, plaintiff is not the typical *pro se* litigant: Although not a lawyer, she has been representing teachers as an advocate in connection with administrative hearings for several years, and, moreover, was herself represented by counsel when the first two iterations of her pleading were filed. Therefore, plaintiff arguably is not entitled to the same degree of deference generally afforded to *pro se* litigants.

In opposing defendants' motions, plaintiff has attached to her brief approximately 300 pages of exhibits. Many of the attached documents consist of email communications or other electronic communications between plaintiff and defendant Portelos or Celli. In addition, plaintiff has attached the affidavits of her and her husband.

Generally, a plaintiff may not support a deficient complaint through extrinsic documents submitted in opposition to a motion to dismiss. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998); Ahart v. Willingham, No. 3:05CV1016(JCH)(HBF), 2007 WL 842006, at *5 (D. Conn. Mar. 15, 2007). If, on a motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, extrinsic evidence that is attached to the pleadings or incorporated by reference may be considered on a motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Id. at 153 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). For a document to be deemed integral to the complaint, the plaintiff (1) must have "actual notice" of its contents and (2) must have "'relied upon th[e] document[ ] in framing the complaint.'" Id. (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).

Here, plaintiff's Second Amended Complaint quoted from many of the documents that she now proffers, and no defendant has objected to the Court's consideration of that extrinsic evidence. In any event, the Court need not determine whether it may consider these documents because they do not advance plaintiff's claims beyond the allegations in the Second Amended Complaint.

## II.    Rule 8 Pleading Requirements

Notwithstanding the special solicitude that courts typically afford *pro se* litigants, Rule

8 of the Federal Rules of Civil Procedure requires that even a *pro se* complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, "[e]ach averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1). "[U]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks and citations omitted). Although plaintiff's Second Amended Complaint is not "unintelligible," see Shomo v. State of New York, 374 F.App'x 180, 183 (2d Cir. 2010), it is at times rambling and filled with extraneous details. More importantly, in describing conduct, the pleading frequently fails to differentiate among the various defendants. See Atuahene v. City of Hartford, 10 F.App'x 33, 34 (2d Cir. 2001) (affirming dismissal of *pro se* complaint for "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct"); Milton v. Wazed, 16-CV-4542 (MKB) (JO), 2018 WL 2074179, at *7 n.16 (E.D.N.Y. Mar. 30, 2018) (quoting *In re* Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007)) (A complaint should provide "specification of any particular activities by any particular defendant.'"). This failure to identify which defendant took what action is itself a ground that warrants dismissal in this case.

### III. Section 1983 Claims

#### A. General Legal Principles

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by

the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, 566 U.S. 377, 383 (2012). Section 1983 does not itself create substantive rights; rather, it "provides 'a method for vindicating federal rights elsewhere conferred.'" Patterson v. County. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

"'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.'" Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) (quoting United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 941 F.2d 1292, 1295-96 (2d Cir. 1992)). Accordingly, "[i]n order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." Id. Section 1983 does not apply to "'merely private conduct, no matter how discriminatory or wrongful.'" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).

B.     Portelos and Celli

Plaintiff's theory of liability against Portelos and Celli under section 1983 is based on their employment with the DOE and their alleged use of school computers and/or conduct occurring during school hours. See SAC pp. 8, 11, 26; Pl. Opp. at 2. Plaintiff further alleges that the DOE "was aware of [Portelos' and Celli's] malicious acts yet did nothing to prevent, block, or stop" them. See SAC p. 19; see also Pl. Opp. at 3.

As discussed above, for liability to attach under section 1983, the defendant in question must have acted under color of state law.  See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).  "To act under color of state law or authority for purposes of section 1983, the defendant must 'have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  Monsky v. Moraghan, 127 F.3d 243, 245 (2d Cir. 1997) (quoting West v. Atkins, 487 U.S. 42, 49 (1988)); see United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999).  "It is 'axiomatic that under color of law means pretense of law and that acts of officers in the ambit of their personal pursuits are plainly excluded.'"  Monsky, 127 F.3d at 245 (quoting Pitchell, 13 F.3d at 547-48).  In other words, Portelos and Celli are not subject to liability under section 1983 merely because they are employed by the DOE.  See Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996); Keller v. Village of Hempstead, No. CV 13-3670, 2014 WL 2718573, at *4, *5 (E.D.N.Y. June 12, 2014).  Furthermore, "[m]ore is required than a simple determination as to whether [the defendant] was on or off duty when the challenged incident occurred. . . .  In short, courts look to the nature of the [defendant's] act, not simply his duty status."  Pitchell, 13 F.3d at 548.

Here, plaintiff does not allege that Portelos or Celli used or abused apparent state authority in engaging in a scheme to defame or harass plaintiff.  See generally Claudio v. Sawyer, 409 F.App'x 464, 466 (2d Cir. 2011); United States v. Giordano, 442 F.3d 30, 47 (2d Cir. 2006).  On the contrary, it is clear from the allegations in the Second Amended Complaint that Portelos and Celli were acting as private citizens in engaging in the conduct challenged by plaintiff.  See Kern, 93 F.3d at 43 (actions taken by lieutenant in fire

department, in his capacity as union president, are not taken under color of law); <u>Miron v.</u>

<u>Town of Stratford</u>, 976 F.Supp.2d 120, 149 (D. Conn. 2013) (actions taken in union capacity,

and not as police officer, were not under color of law).  Indeed, the crux of the dispute

between the parties concerns their advocacy on behalf of teachers whom they believed were

being mistreated by the State -- to wit, the DOE.  <u>See</u> <u>Cambriello</u>, 292 F.3d at 324 (affirming

dismissal of section 1983 claim against union, which represented employees in grievance

against county, and thus union was county's adversary and not state actor acting in concert

with it).

      Nor does Portelos' and Celli's alleged use of school computers, or actions taken by

them during school hours, supply the requisite state action under section 1983.  "The fact that

a defendant is on-duty is not sufficient to show that he or she acted under color of law."  <u>Isaacs</u>

<u>v. City of New York</u>, No. 10-CV-4177 (NGG)(RLM), 2012 WL 314870, at *2 (E.D.N.Y.

Feb. 1, 2012).  That Portelos and Celli may have used DOE time and equipment is not what

enabled them to commit the conduct complained of; their acts do not constitute the exercise of

real or apparent power granted to them by the DOE.  <u>Compare</u> <u>Pitchell</u>, 13 F.3d at 548 (off-

duty police officer who, while drunk, shot a guest in his home with bullets issued by the police

department was not acting under color of law); <u>Delcambre v. Delcambre</u>, 635 F.2d 407, 408

(5th Cir. 1981) (chief of police was not acting under color of law when he assaulted his sister-

in-law at the police station and while on duty, and thus he and the municipality could not be

held liable under section 1983) (cited with approval in <u>Pitchell</u>, 13 F.3d at 548); <u>Isaacs</u>, 2012

WL 314870, at *2-3 (dismissing section 1983 claim against on-duty corrections officer who,

while escorting a detainee to the hospital, became "involved in an altercation of a personal

nature" with a nurse); and Claudio v. Sawyer, 675 F.Supp.2d 403, 409 (S.D.N.Y. 2009) (dismissing section 1983 action; even assuming officer used department-issued weapon in shooting, more is required to show that he was acting under color of law) (Chin, J.), aff'd, 409 F.App'x 464 (2d Cir. 2011), with Gleason v. Scoppetta, 566 F.App'x 65, 68-69 (2d Cir. 2014) (where defendants used fire department computer system to access plaintiff's medical information, which was password protected, with access restricted to fire department, pleading plausibly alleged that defendants "misused power that they possessed 'only because' of authority that the City had granted them"); and Giordano, 442 F.3d at 45-46 (by claiming to control the police and by threatening victims that they would go to jail if they reported his abuse, mayor "invoked 'the real or apparent power' of his office to make the continuing sexual abuse possible"). Therefore, the Second Amended Complaint does not plausibly allege that Portelos and Celli were acting under color of state law.

C.     Glass and Harlow

Plaintiff contends that attorneys Glass and Harlow, private individuals, are liable under section 1983 as "state actors," because they collaborated with defendant Portelos. See Pl. Opp. at 29, 33-34. However, as plaintiff acknowledges, the conduct of private persons or entities generally does not constitute state action and cannot form the basis of a section 1983 claim. See Pl. Opp. at 24 ("[p]rivate individuals generally are not considered to act under color of law"); Harrison v. New York, 95 F.Supp.3d 293, 322 (E.D.N.Y. 2015). Here, the Second Amended Complaint does not allege any facts that would plausibly render the conduct of defendants Glass and Harlow state action.

Plaintiff relies on the alleged conspiracy between defendants Glass and Harlow and

defendant Portelos to impose liability on Glass and Harlow.  See Pl. Opp. at 29, 33-34.

Plaintiff has not identified any other state actor with whom Glass and Harlow are alleged to

have conspired.  However, as discussed above, it cannot plausibly be said that defendant

Portelos was acting under color of law.  Since Portelos is not liable for violating plaintiff's

constitutional rights under section 1983, neither are Glass or Harlow.  See Pitchell, 13 F.3d at

549 (where off-duty police officer is not liable for shooting plaintiff, neither is his partner for

failing to intervene).  Therefore, this Court recommends dismissing plaintiff's section 1983

claims against Glass and Harlow.

    D.    The DOE

    Similarly, if the purported state actors, Portelos and Celli, are not liable under section

1983 for inflicting a constitutional injury, section 1983 liability does not attach to the DOE.

See Claudio, 409 F.App'x at 466-67 (affirming dismissal, as claim against city must be based

on constitutional violation by a state actor); Pitchell, 13 F.3d at 549 (City of Hartford not

liable under section 1983 where police officers were not liable); Holland v. City of New York,

197 F.Supp.3d 529, 552 (S.D.N.Y. 2016).

    Plaintiff contends that the DOE had "the authority and capability to stop" the individual

defendants' actions but failed to do so.  See SAC p. 27.  The pleading further alleges that the

DOE's "negligence in monitoring/stopping/preventing the use of educators' email addresses

for the purpose" of damaging plaintiff violated her rights under the Due Process Clause of the

Fourteenth Amendment.  See id. p. 31.  However, it is well established that the substantive

due process clause of the Fourteenth Amendment does not require the State "to protect the life,

liberty, and property of its citizens against invasion by private actors."  DeShaney v.

Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). The purpose of the Due Process Clause is to protect people from the State, not to ensure that the State will protect them from one another. See id. at 196. Here, there is no plausible claim that any state actor "affirmatively encourage[ed] or condon[ed]" the conduct described by plaintiff. Okin v. Village of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 429 (2d Cir. 2009); see Claudio, 409 F.App'x at 467. Thus, the DOE's failure to protect plaintiff against the individual defendants' private conduct does not constitute a violation of the Due Process Clause.

In any event, even if Portelos and Celli could be deemed to have acted under color of state law, municipalities are not "vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 563 U.S. 51, 60 (2011). Because a municipality is liable only for its own involvement in a civil rights violation, a plaintiff suing a municipality under section 1983 must plausibly allege the existence of a municipal policy, custom, or practice that caused the claimed civil rights violation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692-94 (1978). This causal link must be sufficiently strong such that the municipal policy, custom, or practice can be considered a "moving force" behind the municipal employee's misconduct. See id. at 694.

Plaintiff's section 1983 claim against the DOE appears to be based on its alleged failure to discipline Portelos and Celli and/or prevent them from defaming plaintiff. See, e.g., Pl. Opp. at 2 (vaguely alleging that the DOE "has made the teacher discipline procedure an un-constitutional mess"); id. at 3 ("DOE does not hold people accountable for anything"); id. at 9 (the conduct of Portelos and Celli "actually violates the NYC DOE cyberbullying policy, but no one at the Department really cares"); id. at 38 (the DOE "has no internal structure to

16

discipline cyberbullies, and negligently overlooked the harm that Portelos created"). Contrary to the premise of plaintiff's theory, municipal liability under section 1983 may not be predicated on mere negligence. See <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 128 (2d Cir. 2004).

Charitably construed, plaintiff's theory of municipal liability would seem to be predicated upon the DOE's purported failure to properly train municipal employees, amounting to deliberate indifference to the rights of persons with whom those employees came in contact, <u>see</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 387-88 (1989), or constituting a persistent and widespread pattern of similar violations, <u>see</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167-68 (1970).[6]

To sustain a theory of municipal liability based on deliberate indifference, plaintiff must allege that the DOE made no meaningful attempt to forestall or prevent the claimed violations, even though "'the need for more or better supervision to protect against constitutional violations was obvious[.]'" <u>Amnesty Am.</u>, 361 F.3d at 127 (quoting <u>Vann v. City of New York</u>, 72 F.3d 1040, 1049 (2d Cir. 1995)); <u>see</u> <u>Carter v. Incorporated Village of Ocean Beach</u>, 759 F.3d 159, 164 (2d Cir. 2014). Alternatively, if properly pled, "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983). Such a theory of liability will be sustained only "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has

---

[6] Plaintiff does not argue that there was any express, unlawful policy at DOE. <u>See generally</u> <u>Monell</u>, 436 U.S. at 690.

acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

Plaintiff's allegations are far too conclusory to justify imposing municipal liability for the alleged acts of Portelos and Celli under either theory. See Gleason, 566 F.App'x at 70 ("Gleason's allegations regarding the City's 'unofficial policy' of ignoring breaches of firefighters' privacy interests are too conclusory to state a plausible claim against the City."). Although plaintiff alleges that the DOE was "aware" of their "scheme" against plaintiff, plaintiff has alleged no facts to support that conclusory assertion. Indeed, the DOE brought 38 disciplinary charges against Portelos, see SAC pp. 16-17, thereby undermining plaintiff's claim that the DOE did nothing in the face of a pattern of misconduct. See Sarus v. Rotundo, 831 F.2d 397, 401-02 (2d Cir. 1987) (claim of failure to train or supervise could not be sustained where officers were subjected to disciplinary proceedings). Moreover, plaintiff fails to identify any prior incidents that did not result in disciplinary proceedings against Portelos or others engaged in similar "schemes." See Frederique v. County of Nassau, 168 F.Supp.3d 455, 481 (E.D.N.Y. 2016); Zainc v. City of Waterbury, 603 F.Supp.2d 368, 381 (D. Conn. 2009).

For these reasons, this Court recommends dismissing plaintiff's section 1983 claims against the DOE.

E.   Chancellor Fariña

Similarly, in the absence of a constitutional violation by Portelos and Celli, Chancellor Fariña cannot be liable under section 1983. See Pitchell, 13 F.3d at 549. Moreover, the personal involvement of a defendant is a prerequisite to liability under section 1983. See

Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015); Scott v. Fischer, 616 F.3d 100, 110 (2d Cir. 2010). Like municipal liability, supervisory liability cannot rest on a theory of *respondeat superior*. See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003). In Iqbal, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . section 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676.

Here, neither the pleading nor plaintiff's memorandum of law in opposition cites any conduct by Chancellor Fariña concerning plaintiff. "In fact, Chancellor Fariña is only mentioned once in the body of the Second Amended Complaint[,]" wherein plaintiff "alleges that a photo of Chancellor Fariña was removed from [p]laintiff's website." City Defendants' Memorandum of Law in Support (Jan. 30, 2018) at 3,[7] DE #52 (citing SAC p. 22). Consequently, this Court recommends that the claims against Chancellor Fariña be dismissed.

## IV.    Constitutional Claims

Section 1983 provides the exclusive federal remedy for violations of constitutional rights under color of state law. See Jet v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); Pauk v. Bd. of Trs. of City Univ. of N.Y., 654 F.2d 856, 865 (2d Cir. 1981). Moreover, state action is required for suits brought directly under a provision of the Bill of Rights or the Fourteenth Amendment to the United States Constitution. See Shelley v. Kraemer, 334 U.S. 1, 13 (1948). As discussed above, in the absence of state action, this Court recommends dismissing plaintiff's claims against defendants for allegedly violating her constitutional rights.

---

[7] In this opinion, citations to pages in a document refer to the document's internal pagination, which may differ from pagination designated by the Electronic Case Filing system.

**V.     Computer Fraud And Abuse Act Claims**

A.     <u>General Legal Principles</u>

"The CFAA, in relevant part, provides a private federal cause of action against a person who 'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer.'" <u>Ramirez v. SupportBuddy Inc.</u>, No. 17 CV 5781 (VB), 2018 WL 2089362, at *4 (S.D.N.Y. May 4, 2018) (quoting <u>Jet One Grp., Inc. v. Halcyon Jet Holdings, Inc.</u>, No. 08-CV-3980 (JS)(ETB), 2009 WL 2524864, at *5 (E.D.N.Y. Aug. 14, 2009)); <u>see</u> 18 U.S.C. § 1030(a)(2).  Congress intended the statute to cover cases involving computer theft as opposed to mere trespass.  <u>See Fidlar Techs. v. LPS Real Estate Data Sols., Inc.</u>, 810 F.3d 1075, 1080 (7th Cir. 2016).

As relevant here, the statute permits a private right of action when a party has suffered damages and a loss of at least $5,000 during a one-year period.  <u>See</u> 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), 1030(g); <u>Ramirez</u>, 2018 WL 2089362, at *4; <u>Mount v. PulsePoint, Inc.</u>, 13 Civ. 6592 (NRB), 2016 WL 5080131, at *8 (S.D.N.Y. Aug. 17, 2016), <u>aff'd</u>, 684 F.App'x 32 (2d Cir. 2017); <u>accord</u> <u>Facebook, Inc. v. Power Ventures, Inc.</u>, 844 F.3d 1058, 1066 (9th Cir. 2016).  "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]" 18 U.S.C. § 1030(e)(11); <u>see</u> <u>Brown Jordan Int'l, Inc. v. Carmicle</u>, 846 F.3d 1167, 1174 (11th Cir. 2017).  Loss thus includes "any remedial costs of investigating the computer for damage, remedying the damage and any costs incurred because the computer cannot function while or

until repairs are made." <u>Nexans Wires S.A. v. Sark-USA, Inc.</u>, 319 F.Supp.2d 468, 474

(S.D.N.Y. 2004), <u>aff'd</u>, 166 F.App'x 559 (2d Cir. 2006). "Damage" is defined as "any

impairment to the integrity or availability of data, a program, a system, or information[.]" 18

U.S.C. § 1030(e)(8). "The complaint must [] allege with some particularity the 'damage' and

'loss' (as defined in the CFAA) claimed to be involved, with, moreover, facts showing that the

$5,000 threshold of Section 1030(a)(4) is satisfied." <u>Ipreo Holdings LLC v. Thomson Reuters</u>

<u>Corp.</u>, No. 09 Cv. 8099(BSJ), 2011 WL 855872, at *7 (S.D.N.Y. Mar. 8, 2011) (quoting

<u>Marketing Tech. Sols., Inc. v. Medizine LLC</u>, No. 09 Civ. 8122(LMM), 2010 WL 2034404,

at *7 (S.D.N.Y. May 18, 2010)).

B.  Portelos and Celli

Defendants Portelos and Celli argue that plaintiff has not sufficiently alleged that she

suffered a loss that would qualify for relief under the CFAA. <u>See</u> Portelos Memorandum in

Support (Feb. 1, 2018) at 10-11, DE #57-1; First Celli Motion at 1-4. The Second Amended

Complaint alleges that plaintiff "has suffered general and special damages including, without

limitation, harm to Plaintiff's reputation, emotional distress, lost earnings, and other pecuniary

loss." SAC at p. 27. However, non-economic losses such as reputational harm and emotional

distress are not compensable under the CFAA. <u>See</u> 18 U.S.C. § 1030(g) (expressly limiting

damages to "economic damages"); <u>Creative Computing v. Getloaded.com LLC</u>, 386 F.3d 930,

935 (9th Cir. 2004); <u>Jensen v. Cablevision Sys. Corp.</u>, 2:17-cv-00100 (ADS)(AKT), 2017 WL

4325829, at *13 (E.D.N.Y. Sept. 27, 2017); <u>Bose v. Interclick, Inc.</u>, No. 10 Civ.

9183(DAB), 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011); <u>accord</u> <u>Padmanabhan v.</u>

<u>Healey</u>, 159 F.Supp.3d 220, 224 (D. Mass. 2016), <u>aff'd</u>, 2017 WL 3404402 (1st Cir. 2017).

Despite the fact that the current pleading is her third in this case, plaintiff fails to allege any remedial costs of investigating or remedying damage to a computer or costs incurred because her computer would not function.  See Ramirez, 2018 WL 2089362, at *4; Mount, 2016 WL 5080131, at *8.  Nor has plaintiff explained how the alleged deletion of content from her website created an interruption in service that caused economic damages of at least $5,000, in lost revenue to her business or otherwise.  See Nexans Wires S.A. v. Sark-U.S.A., Inc., 166 F.App'x 559, 562-63 (2d Cir. 2006); Jensen, 2017 WL 4325829, at *13 (finding improbable that extra electricity costs caused by wireless router approached $5,000).  In fact, plaintiff states in her opposition brief that she added back most of the deleted content within one week.  See Pl. Opp. at 10.  In sum, plaintiff's perfunctory assertion that she suffered a cognizable loss as a direct and proximate cause of defendants' conduct is insufficient to satisfy the *Twombly/Iqbal* standard.  See Ramirez, 2018 WL 2089362, at *4-5 (granting motion to dismiss where plaintiff failed "to quantify her alleged costs or make specific allegations as to the costs of repairing or investigating the alleged damage to her computer"); Tamlyn v. BlueStone Advisors, LLC, No. 17 C 8893, 2018 WL 1920184, at *3 (N.D. Ill. Apr. 24, 2018) (holding that plaintiff was required to, but did not, specifically allege CFAA damages and explain how defendant caused them); Synopsys, Inc. v. Ubiquiti Networks, Inc., -- F.Supp.3d --, 2018 WL 1305912, at *8-9 (N.D. Cal. Mar. 13, 2018) (dismissing CFAA counterclaim where pleading alleged no facts that plaintiff incurred $5,000 loss in responding to illegal conduct); Bose, 2011 WL 4343517, at *4 (dismissing CFAA claim where plaintiff failed to quantify any damage caused or to make any specific allegation as to cost of repair or investigating damage to computer).

C.    Glass, Harlow and the DOE Defendants

Plaintiff's theory of liability against defendants Glass, Harlow and the DOE defendants appears to be based on the notion that they had "the authority and capability" to prevent Portelos from hacking into her blog and website.  See SAC p. 27.  However, even assuming *arguendo* that plaintiff had stated a claim under the CFAA against Celli and Portelos, her claim against Glass, Harlow and the DOE defendants should be dismissed; plaintiff does not allege that they committed any directly violative conduct, or that Portelos acted as their agent.  See generally Milton, 2018 WL 2074179, at *7 (dismissing claims where plaintiff pled no facts supporting inference that plaintiff was harmed by someone acting as defendants' agent); Yukos Capital S.A.R.L. v. Feldman, No. 15-cv-4964 (LAK), 2016 WL 4940200, at *3 (S.D.N.Y. Sept. 14, 2016) (dismissing SCA claim for failure to adequately allege agency relationship).  In opposing their motions to dismiss, plaintiff does not identify any basis for imposing a duty on Glass, Harlow or the DOE defendants to prevent Portelos from engaging in the purported CFAA violations.  Therefore, for this additional reason, this Court recommends dismissing the CFAA claims against Glass, Harlow and the DOE defendants.

## VI.    Stored Communications Act Claims

Plaintiff's claim brought pursuant to the SCA must also fail.  The factual allegations contained in plaintiff's pleading pertaining to the SCA claim consist of one paragraph: "Individual Defendants unlawfully and maliciously hacked into Plaintiff's blogs, websites, and other communications in order to harm her business and person."  SAC p. 28.  These allegations fail to provide sufficient information to sustain a claim under the SCA.

A.    General Legal Principles

The SCA, also known as Title II of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2701-2712, "'aims to prevent hackers from obtaining, altering or destroying certain electronic communications.'"  MDB LLC v. Hussain, 14-CV-9281 (VEC), 2016 WL 1267793, at *8 (S.D.N.Y. Mar. 29, 2016) (quoting Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F.Supp.2d 548, 555 (S.D.N.Y. 2008)).  The statute creates a private cause of action against one who "accesses an electronic communication service, *or* obtains an electronic communication while it is still in electronic storage, without authorization."  Pure Power Boot Camp, 587 F.Supp.2d at 555.  The SCA was intended to "'address[] the growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public.'"  Kaufman v. Nest Seekers, LLC, No. 05 CV 682(GBD), 2006 WL 2807177, at *4 (S.D.N.Y. Sept. 26, 2006) (quoting S.Rep. No. 99-541, at 35 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, at 3589); see Ehling v. Monmouth-Ocean Hosp. Serv. Corp., 961 F.Supp.2d 659, 666 (D.N.J. 2013) (quoting Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 875 (9th Cir. 2002)) ("'The legislative history of the [SCA] suggests that Congress wanted to protect electronic communications that are configured to be private.'").  Indeed, the statute provides that "[i]t shall not be unlawful . . . [to] access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public."  18 U.S.C. § 2511(2)(g)(i).  Therefore, the SCA applies to: "(1) electronic communications, (2) that were transmitted via an electronic communication service, (3) that are in electronic storage, and (4) that are not

24

public." Ehling, 961 F.Supp.2d at 667.

Any person with a computer connected to the Internet can "publish" information on the Internet in the form of a "web page" or "website." Konop, 302 F.3d at 874. A website consists of electronic information stored by a hosting service computer or "server." Id. By typing a web address into a computer connected to the Internet, a user is essentially requesting the server to make an electronic copy of the website and send it to the user's computer. Id. at 875. Once the information reaches the user's computer, the information is downloaded on to the user's screen. Id. While some websites are configured to be private and restricted from public view without a password or other confidential information, most websites are public. See id.

B.      Analysis

Defendants Harlow and Glass argue that plaintiff is not an "electronic service provider" and that she fails to allege that the conduct described in her latest pleading involved material in "electronic storage" of an "electronic communication service." See Harlow's and Glass' Memorandum of Law in Support of Motion to Dismiss (Jan. 30, 2018) at 11-12, DE #54. To the extent that defendants Glass and Harlow contend that plaintiff's website does not contain "electronic communications," the term has a broad definition. See 18 U.S.C. § 2510(12) (an "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system . . . ."). As discussed above, websites transmit electronic information between computers and servers, where the information is stored. If a computer user wants to view a website, the user requests that the server transmit a

copy of the website to the user's computer. When the server sends the information to the user's computer for viewing, a transfer of information has occurred. Therefore, plaintiff's website contains "electronic communications." See Konop, 302 F.3d at 876; Ehling, 961 F.Supp.2d at 667; Integrated Waste Solutions, Inc. v. Goverdhanam, Civil Action No. 10-2155, 2010 WL 4910176, at *6 (E.D. Pa. Nov. 30, 2010).

Nevertheless, plaintiff has neither alleged that her website is an "electronic communications service" nor proffered facts from which the Court could draw that inference. The statutory definition of "electronic communications service" includes "any service which provides to users thereof the ability to send or receive . . . electronic communications[.]" 18 U.S.C. § 2510(15). Generally, the definition of "electronic communication service" is limited to Internet service providers ("ISPs"), that is, telecommunication companies that carry Internet traffic and electronic bulletin boards. See In re JetBlue Airways Corp. Privacy Litig., 379 F.Supp.2d 299, 307-09 (S.D.N.Y. 2005); In re DoubleClick, Inc. Privacy Litig., 154 F.Supp.2d 497, 508, 511 & n.20 (S.D.N.Y. 2001) (legislative history "deals only with facilities operated by electronic communications services such as 'electronic bulletin boards' and 'computer mail facilit[ies]'"); accord In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 146-47 (9th Cir. 2013). Even operators of commercial websites that have email capabilities that enable their operators to communicate with their customers have repeatedly been found not to constitute electronic communication services. See, e.g., Ipreo Holdings, 2011 WL 855872, at *6; In re Michael Stores Pin Pad Litig., 830 F.Supp.2d 518, 523-24 (N.D. Ill. 2011); In re JetBlue, 379 F.Supp.2d at 307-09; Crowley v. CyberSource Corp., 166 F.Supp.2d 1263, 1270 (N.D. Cal. 2001). Here, plaintiff has not

alleged that her website functions as an electronic bulletin board or otherwise enables users to post messages or send emails. Therefore, she has failed to adequately allege that her website is an "electronic communication service." See Padmanabhan, 159 F.Supp.3d at 225; Martini v. Godaddy.com Inc., Case No. SACV08-0799 (RNBx), 2009 WL 10674914, at *3 (C.D. Cal. Mar. 16, 2009).

Defendants Harlow and Glass further argue that any electronic communications that were altered were not in "electronic storage." The SCA is limited to "communications temporarily stored by electronic communications services incident to their transmission[,]" *In re* DoubleClick, 154 F.Supp.2d at 512, as well as data stored for purposes of "backup protection," see 18 U.S.C. § 2510(17). Temporary storage covers email messages stored on an ISP's server pending delivery to the recipient. See *In re* DoubleClick, 154 F.Supp.2d at 511-12.

Plaintiff fails to allege that defendants accessed electronic communications in "electronic storage." Although plaintiff was not required to describe the operational details of her website and/or blog, the pleading must allege facts sufficient to state a plausible claim. Here, the Second Amended Complaint contains no facts to suggest that the information posted on plaintiff's blog was held in temporary or intermediate storage. "Rather, the website itself is the final destination for the information." Ehling, 961 F.Supp.2d at 667; see Cobra Pipeline Co., Ltd. v. Gas Natural, Inc., 132 F.Supp.3d 945, 951 (N.D. Ohio 2015) (any user of plaintiff's website reviewed data "after it ha[d] reached its final destination"); Snow v. DIRECTV, Inc., No. 2:04-CV-515FTM33SPC, 2005 WL 1226158, at *3 (M.D. Fla. May 9, 2005), adopted, 2005 WL 1266435 (M.D. Fla. May 27, 2005), aff'd, 450 F.3d 1314 (11th

Cir. 2006); cf. In the Matter of a Warrant to Search a Certain E-Mail Account Controlled and Maintained by Microsoft Corps., 829 F.3d 197, 227 n.4 (2d Cir. 2016) (Lynch, J., concurring) (recognizing majority view that once user of web-based email opens an email, that email is no longer in "electronic storage"), vacated on other grounds sub nom. United States v. Microsoft Corp., 138 S.Ct. 1186 (2018). Likewise, the pleading contains no allegations from which the Court could infer that defendants accessed a backup copy of plaintiff's website. See Gonzales v. Uber Techs., Inc., -- F.Supp.3d --, 2018 WL 1863148, at *6 (N.D. Cal. Apr. 18, 2018). Presumably, the offending defendant accessed the primary user-facing web portal rather than data stored for the purpose of "backup protection." Accordingly, plaintiff has not plausibly alleged that the "electronic communications" claimed to have been altered by Portelos were in "electronic storage" within the meaning of the SCA. See BHL Boresight, Inc. v. Geo-Steering Sols., Inc., Civil Action No. 4:15-CV-00627, 2016 WL 8648927, at *21 (S.D. Tex. Mar. 29, 2016), modified in part on other grounds, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017); Backhaut v. Apple, Inc., 74 F.Supp.3d 1033, 1041 (N.D. Cal. 2014).

Nor does the pleading allege that plaintiff's website was restricted from public view. "The touchstone of the [SCA] is that it protects private information." Ehling, 961 F.Supp.2d at 668; see 18 U.S.C. § 2511(2)(g)(i) (excepting from SCA coverage interception of electronic communication made through "an electronic communication system that is configured so that such electronic communication is readily accessible to the general public"); S. Rep. 99-541, at 35 (1986); see also Konop, 302 F.3d at 875 ("The legislative history of the [SCA] suggests that Congress wanted to protect electronic communications that are configured to be private."). Courts have held that information is protected by the SCA only if the plaintiff restricts access

to the electronic communication.  See, e.g., Ehling, 961 F.Supp.2d at 668 (finding that private Facebook wall posts are covered by the SCA); Integrated Waste Solutions, 2010 WL 4910176, at *6; Kaufman, 2006 WL 2807177, at *5.

Here, the challenged pleading does not allege that plaintiff's hacked website was restricted to subscribers or was otherwise configured to be private.  On the contrary, most websites are accessible to the general public.  Therefore, plaintiff has not plausibly alleged that her website contained nonpublic communications.

Moreover, as discussed with respect to the CFAA claims, even if the Second Amended Complaint stated a claim under the SCA against Portelos and/or Celli, it contains no allegations that would implicate the other defendants in the purported SCA violation.  See Yukos Capital, 2016 WL 4940200, at *3.

In sum, this Court recommends dismissing plaintiff's claims brought under the SCA.

**VII.    Leave to Amend**

Generally, when a court dismisses a *pro se* pleading, the plaintiff will be permitted leave to amend at least once.  See Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999).  Nevertheless, it is "within the sound discretion of the district court to grant or deny leave to amend."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  In this case, plaintiff has already amended her original complaint twice – once by her then-counsel, and once *pro se*, after a pre-motion conference at which Judge Brodie dismissed the federal claims.  Despite being afforded the opportunity to amend her complaint to "assert[ ] facts to support a federal claim," see 10/3/17 Order, plaintiff failed to cure those deficiencies, and added two entirely new but facially deficient federal claims.  Plaintiff's failure to cure the

deficiencies addressed by Judge Brodie is alone a sufficient ground upon which to deny leave to further amend. See, e.g., Milton, 2018 WL 2074179, at *10 (Brodie, D.J.) ("Courts are especially cautious of allowing a plaintiff multiple attempts to amend a complaint."); Wolf v. U.S. F.B.I., No. 16-CV-9436 (JMF), 2018 WL 582472, at *3 (S.D.N.Y. Jan. 26, 2018), appeal filed, 2018 WL 582472 (2d Cir.); Clark v. Kitt, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014), aff'd, 619 F.App'x 34 (2d Cir. 2015); Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P., 936 F.Supp.2d 376, 415-16 (S.D.N.Y. 2013).

As for those federal claims that were asserted for the first time in the Second Amended Complaint, plaintiff has not requested leave to amend to file a Third Amended Complaint, nor has she offered any basis to suggest that she is in possession of facts that would cure the defects in her CFAA and SCA claims. See Milton, 2018 WL 2074179, at *10; Wolf, 2018 WL 582472, at *3 (dismissing *pro se* pleading with prejudice); Clark, 2014 WL 4054284, at *15; Transeo, 936 F.Supp.2d at 415-16. In fact, plaintiff's opposition to the motions to dismiss ignores defendants' challenge to the pleading's deficient allegation of loss under the CFAA, and is entirely silent with respect to her SCA claim and the multiple deficiencies therein.[8] Since it appears unlikely that plaintiff could state a valid federal claim, this Court recommends that plaintiff's federal claims be dismissed with prejudice, without leave to try yet again to state a plausible federal claim.

---

[8] Plaintiff's failure to respond to defendants' arguments constitutes an abandonment of those claims, an independent ground for dismissal. See Artis v. Velardo, 7:14-cv-0833 (NSR), 2016 WL 154122, at *2 (S.D.N.Y. Jan. 12, 2016); Moreau v. Peterson, 7:14-cv-0201 (NSR), 2015 WL 4272024, at *4 (S.D.N.Y. July 13, 2015), aff'd, 672 F.App'x 119 (2d Cir. 2017).

## VIII.  State Law Claims

Having recommended dismissing all claims over which the Court has original jurisdiction, this Court recommends declining to exercise supplemental jurisdiction over the remaining state law claims.  <u>See</u> 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction.); <u>Purgess v. Sharrock</u>, 33 F.3d 134, 138 (2d Cir. 1994) ("exercise of supplemental jurisdiction is left to the discretion of the district court").

## IX.  Celli's Motion to Dismiss for Lack of Prosecution

Celli also argues that this action should be dismissed against him based upon plaintiff's failure to serve upon him a motion to seal.  <u>See</u> Second Celli Motion.

First, if the District Court adopts this Court's recommendation that defendants' Rule 12(b)(6) motions be granted, Celli's motion to dismiss for lack of prosecution will be rendered moot.  In any event, dismissal for failure to prosecute is "'a harsh remedy to be utilized only in extreme situations.'"  <u>Garcia v. City of New York</u>, 14-CV-4160 (NGG) (LB), 2016 WL 1275621, at *2 (E.D.N.Y. Mar. 31, 2016) (quoting <u>Minnette v. Time Warner</u>, 997 F.2d 1023 (2d Cir. 1993)).  Here, plaintiff's letter-motion to seal indicates that it was sent to Celli by first-class mail.  Therefore, Celli has not provided any basis for dismissal for failure to prosecute, and this Court recommends that Celli's motion be found moot or, in the alternative, that it be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends that defendants' motions

to dismiss be granted as to the federal claims and that the District Court decline to exercise

supplemental jurisdiction over the remaining state law claims.

Any objections to the recommendations contained herein must be filed with Judge

Brodie on or before July 23, 2018. Failure to file objections in a timely manner may waive a

right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a),

6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per

curiam*).

The Clerk is respectfully requested to docket this Report and Recommendation into the

ECF court file and send a copy by overnight courier to Lucio Celli at 2743 Seymour Avenue,

Bronx, New York 10469.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**July 5, 2018**

/s/     *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**